***EFILED***
Case Number 2023LA000191
Date: 2/16/2023 12:51 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

Donald Bannister and Betty Bannister, )
)
Plaintiffs, )
)
v. ) Case No.: 2023LA-2023LA000191
)
John Crane, Inc., )
Shell USA, Inc., )
Phillips 66 Company, )
3M Company, *f/k/a* Minnesota Mining )
and Manufacturing Company, )
Tyco Fire Products, L.P., successor in )
interest to The Ansul Company, )
Chemguard, )
E. I. du Pont de Nemours & Co., )
National Foam, Inc., )
HWRT Oil Company, )
ITG Brands LLC, and, )
R.J. Reynolds Tobacco Company, )
)
Defendants. )

**COMPLAINT**

Plaintiffs, Donald Bannister and Betty Bannister ("Plaintiff" or "Plaintiffs"), through Ted N. Gianaris and Joshua A. Edelson of Gianaris Trial Lawyers, LLC, states and alleges as follows for his Complaint against the Defendants named herein:

FACTS COMMON TO ALL COUNTS

1. Plaintiffs currently reside in Alton, Madison County, Illinois and are lawful spouses.

2. This is a case for damages based on Plaintiff's Prostate Cancer, Skin Cancer, Bladder Cancer diagnoses in 2005, 2006, and 2013, respectively, that were caused or contributed to by exposures, and failures to protect from exposures to cancer-causing chemicals, namely

PFAS/AFFF, asbestos, tobacco smoke, Polyaromatic Hydrocarbons (“PAHs”), and other toxic chemicals manufactured, sold, distributed, marketed, designed, supplied, and/or used by Defendants.

3. From 1964 to 2004, Plaintiff worked at the Wood River Refinery in Wood River, Madison County, Illinois as a general laborer, firefighter, and truck driver for Shell Oil Company and Phillips 66 on general cleaning, testing, and repair crews, catalytic cracking units, power units, tanks, equipment operating and repairs, fuel tanks, motors, furnaces, fire extinguishing with PFAS/AFFF, and many other job duties where he was regularly and routinely exposed to PFAS/AFFF, asbestos, PAHs, and other cancer-causing chemicals. Plaintiff was also sent by his employers to firefighting school for training where he worked utilized and was exposed to PFAS/AFFF.

4. There is increasing risk for the development of PFAS-associated health effects - both cancerous and non-cancerous - as evidence by the substantial human, animal, and experimental studies. PFAS, the main chemical in AFFF firefighting products, are extremely stable compounds, resistant to degradation, and as a result they persist in the environment for many years. (OECD 2013; ATSDR 2015; NTP 2016). Once humans are exposed to PFAS, these compounds remain in the body for extended periods. PFAS cannot be broken down or metabolized by the human body and there is associated and increased risk for developing Prostate Cancer and Bladder Cancer.

5. In 1963, Plaintiff had his first cigarette that was designed, manufactured, advertised, marketed, distributed, and sold by ITG Brands LLC and R.J. Reynolds Tobacco Company, and immediately became addicted and smoking such cigarettes regularly therefrom.

6.      The cigarette products designed, manufactured, advertised, marketed, distributed, and sold by ITG Brands LLC and R. J. Reynolds Tobacco Company that Plaintiff began to smoke in 1963 did not contain any warnings whatsoever.

7.      Plaintiff also purchased and smoked Winston Light cigarettes designed, manufactured, advertised, marketed, distributed, and sold by ITG Brands LLC and R.J. Reynolds Tobacco Company with the belief and in reliance that such products were a safer alternative to unfiltered cigarettes as advertised by such manufacturers; but they were not safer alternatives.

8.      Plaintiff had previously attempted to quit smoking on many occasions but was unable to do so because of his addiction from an early age to the cigarettes manufactured and/or sold by ITG Brands LLC and R.J. Reynolds Tobacco Company.

9.      As a direct and proximate result of said PFAS/AFFF, asbestos, PAHs, other toxic chemicals, and/or cigarette use and purchases, Plaintiff developed Prostate Cancer, Skin Cancer, and/or Bladder Cancer and first became aware during 2022 that such specific cancers were wrongfully caused by Defendants.

10.     Defendants HWRT Oil Company and John Crane, Inc. and are all corporations either organized under the laws of the State of Illinois or with their principal places of business located within the State of Illinois.

11.     Venue in this matter is proper in the Circuit Court of Madison County, Illinois, pursuant to 735 ILCS 5/2-101 (1), in that, at all relevant times herein, Defendants Shell Oil Company, HWRT Oil Company, 3M, John Crane, Inc., and Phillips 66 were and are residents, for the purposes of 735 ILCS 5/2-102(a), of Madison County, Illinois in that each maintains a fixed place of business at which the affairs Defendants and each of them are conducted in furtherance of defendants' corporate activity.

12. Venue in this matter is also proper in the Circuit Court of Madison County, Illinois, pursuant to 735 ILCS 5/2-101 (2), in that, at all relevant times herein, it is the county in which the transaction or some part thereof occurred out of which this cause of action arises.

13. This Court has jurisdiction over all Defendants pursuant to 735 ILCS 5/2-209 because Plaintiff was exposed to and/or purchased the cancer-causing chemicals in the State of Illinois and each Defendant committed a tortious act within this State.

**COUNT 1**
**VS. PFAS DEFENDANTS**
**(NEGLIGENCE)**

1. Plaintiff brings Count 1 against Defendants 3M Company, *f/k/a* Minnesota Mining and Manufacturing Company ("3M"), Tyco Fire Products, L.P., successor in interest to The Ansul Company ("Tyco"), Chemguard ("Chemguard"), E. I. du Pont de Nemours & Co. ("Dupont"), and National Foam, Inc. ("National Foam") (collectively the "PFAS Defendants").

2. At all times herein set forth, the PFAS Defendants collectively manufactured, sold, distributed, or supplied materials/products containing synthetic and toxic per- and polyfluoroalkyl substances, collectively known as "PFAS," which were highly utilized in coal mines where Plaintiff worked and by Plaintiff himself in the manner and for the purposes for which they were intended by the PFAS Defendants. These materials and/or products included, but are not limited to, the sale, manufacture, distribution, and/or supply of firefighting and fire suppression materials/products.

3. PFAS binds to proteins in the blood of animals and humans exposed to such materials and not only remain and persist over long periods of time, but, due to their unique chemical structure, accumulate and build up in the blood/body of the exposed individuals with

each additional exposure, no matter how small. PFAS can travel long distances, move through soil, seep into groundwater, or be carried through air.

4.     Plaintiff's exposure to and inhalation, ingestion, and absorption of PFAS from said products/materials were completely foreseeable and could or should have been anticipated by the PFAS Defendants.

5.     The PFAS Defendants knew or should have known that PFAS and its materials/products that contained PFAS were hazardous and had a toxic, poisonous, and highly deleterious effect upon the health of persons, including Plaintiff, inhaling, ingesting, absorbing through the skin or otherwise absorbing them.

6.     By at least the end of the 1980s, the PFAS Defendants, including at least 3M and DuPont, understood that, not only did PFAS (including at least PFOA and PFOS) get into and persist and accumulate in human blood and in the human body, but that once in the human body and blood, particularly longer-chain PFAS, such as PFOS and PFOA, had a long half-life, meaning that they would take a very long time (years) before even half of the material would start to be eliminated (assuming no further exposures), which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposures continued.

7.     By at least 2010, additional research and testing performed by the PFAS Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers, like Plaintiff, exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts, which such Defendants' own scientists, lawyers, and advisors recommended be studied further to assess the extent to which PFAS exposures were causing those effects.

8. When the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials first began learning of PFAS exposures in the United States and potential associated adverse health effects, the PFAS Defendants repeatedly assured and represented to such entities and the public that such exposures presented no risk of harm and were of no legal, toxicological, or medical significance of any kind.

9. The PFAS Defendants, especially 3M and Dupont, withheld and concealed its knowledge of the health hazards of PFAS, including its ability to cause cancer and fatal blood diseases, such as Prostate Cancer and Bladder Cancer, with the intent, expectation, and foreseeability that Plaintiff, his employers, and others similarly situated, as well as its customers, would rely upon its statements and omissions in determining whether to work with, around, and/or use its materials/products containing PFAS.

10. Plaintiff was unaware of the hazards of exposure to PFAS, specifically the effects of long-term exposure.

11. At all times herein relevant, the PFAS Defendants had a duty to exercise reasonable care and caution for the safety of Plaintiff and others who worked with and/or around PFAS and materials/products containing PFAS.

12. The PFAS Defendants failed to exercise ordinary care and caution for the safety of Plaintiff in one or more of the following respects:

a) Included PFAS in their materials and/or products, and/or specified the use of PFAS, even though it was completely foreseeable and could or should have been anticipated that persons, such as Plaintiff, working with or around them would inhale, ingest or otherwise absorb PFAS;
b) Included PFAS in their materials and/or products, and/or specified the use of PFAS, when they knew or should have known that the same would have a toxic, poisonous and highly deleterious effect upon the health of persons, such as Plaintiff, inhaling, ingesting or otherwise absorbing it;
c) Included PFAS in their materials and/or products, and/or specified the

use of the same, when adequate substitutes were available;

d) Failed to provide any or adequate warnings to persons, such as Plaintiff, working with and around its products/materials containing PFAS of the dangers of inhaling, ingesting or otherwise absorbing the same;

e) Failed to provide any or adequate instructions concerning safe and/or safer methods of working with and around its materials/products containing PFAS to Plaintiff, Plaintiff's employers, and/or others similarly situated, including specific instructions on how to avoid inhaling, ingesting, or otherwise absorbing the same; and/or,

f) Failed to conduct tests on their respective materials/products containing PFAS to determine the hazards to which persons, such as Plaintiff, who might be exposed while working with and around the same.

13.     As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the PFAS Defendants, Plaintiff was exposed to and inhaled, ingested, or otherwise absorbed PFAS in a sufficient amount to cause and/or contribute to his Prostate Cancer and Bladder Cancer diagnoses.

14.     As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the PFAS Defendants, Plaintiff has been disabled and disfigured, compelled to expend and become liable for large sums of money for hospital, medical, and other healthcare services necessary for the treatment of his Prostate Cancer and Bladder Cancer, and caused him to experience great physical pain and mental anguish and will continue to incur these damages in the future.

15.     The PFAS Defendants in this case knew of the risks PFAS presented to the health of human beings, especially those like Plaintiff who worked with and around PFAS, and instead of informing those like Plaintiff about the risks associated with exposure to PFAS and giving them a chance to choose if the risk was worth the use, the PFAS Defendants simply took that agency away from people like Plaintiff.

16.     The PFAS Defendants believed that their bottom lines were more important than the health and lives of people like Plaintiff and believed that their bottom lines were more

important than Plaintiff's health and the love and comfort that the rest of Plaintiff's family received from him. The PFAS Defendants were wrong.

WHEREFORE, Plaintiff, Donald Bannister, prays this Court to enter judgment in his favor and against the PFAS Defendants named herein jointly and severally, to award compensatory damages in excess of the jurisdictional limit for this court, and to grant such other and further relief as this Court deems appropriate.

## COUNT 2
## VS. PFAS DEFENDANTS
## (STRICT LIABILITY: DESIGN DEFECT & FAILURE TO WARN)

1.    Plaintiff brings Count 2 against the PFAS Defendants.

2.    At all times herein set forth, the PFAS Defendants collectively manufactured, sold, distributed, or supplied PFAS or materials/products containing PFAS that were utilized in the coal mines where Plaintiff worked and by Plaintiff himself in the manner and for the purposes for which they were intended by the PFAS Defendants. These materials and/or products included, but are not limited to, the sale, manufacture, distribution, and/or supply of firefighting and fire suppression materials/products.

3.    PFAS binds to proteins in the blood of animals and humans exposed to such materials and not only remain and persist over long periods of time, but, due to their unique chemical structure, accumulate and build up in the blood/body of the exposed individuals with each additional exposure, no matter how small. PFAS can travel long distances, move through soil, seep into groundwater, or be carried through air.

4.    By at least the end of the 1980s, the PFAS Defendants, including at least 3M and DuPont, understood that, not only did PFAS (including at least PFOA and PFOS) get into and persist and accumulate in human blood and in the human body, but that once in the human body

and blood, particularly longer-chain PFAS, such as PFOS and PFOA, had a long half-life, meaning that they would take a very long time (years) before even half of the material would start to be eliminated (assuming no further exposures), which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposures continued.

5.      By at least 2010, additional research and testing performed by the PFAS Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers, like Plaintiff, exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts, which such Defendants' own scientists, lawyers, and advisors recommended be studied further to assess the extent to which PFAS exposures were causing those effects.

6.      When the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials first began learning of PFAS exposures in the United States and potential associated adverse health effects, the PFAS Defendants repeatedly assured and represented to such entities and the public that such exposures presented no risk of harm and were of no legal, toxicological, or medical significance of any kind.

7.      The PFAS Defendants, especially 3M and Dupont, withheld and concealed its knowledge of the health hazards of PFAS, including its ability to cause cancer and fatal blood diseases, such as Prostate Cancer and Bladder Cancer, with the intent, expectation, and foreseeability that Plaintiff, his employers, and others similarly situated, as well as its customers, would rely upon its statements and omissions in determining whether to work with, around, and/or use its materials/products containing PFAS.

8. Plaintiff's exposure to and inhalation, ingestion, and absorption of PFAS from said products/materials were completely foreseeable and could or should have been anticipated by the PFAS Defendants.

9. The PFAS and said materials/products containing PFAS were in a defective and unreasonably dangerous condition at the time they left the control of the PFAS Defendants in that:

    a) They contained and incorporated PFAS, a synthetic and highly toxic substance, and materials/products containing PFAS in a manner that would be inhaled, ingested, or absorbed by end-users and were not accompanied by any, or adequate, warnings or instructions regarding the hazards associated with the regular, expected and intended use of said materials/products and/or any such warning or instructions were not adequate;

    b) They designed and/or manufactured PFAS and materials/products containing PFAS when it knew or should have known that the unique chemical structure of PFAS was highly toxic to humans and resistant to environmental degradation and bind to proteins in the blood of humans exposed to PFAS where PFAS would not only remain and persist over long periods of time but would accumulate and build up in the blood/body of the exposed individual with each additional exposure, no matter how small and cause adverse health effects;

    c) They designed and/or manufactured PFAS and materials/products containing PFAS when it knew or should have known that the unique chemical structure of PFAS was resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment;

    d) They repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind;

    e) They continued to collectively manufacture, sell, distribute, and/or supply PFAS or materials/products containing PFAS that were utilized in coal mines and by Plaintiff after it knew or should have known that exposure to PFAS caused or contributed to many adverse health outcomes; and/or,

    f) They contained and incorporated, PFAS, a synthetic and highly toxic substance, and materials/products containing PFAS in a manner that would be inhaled, ingested, or absorbed by end-users and were more dangerous than an ordinary consumer would anticipate.

10.     The materials/products containing PFAS that Plaintiff was supplied, used, and worked around did not contain a warning of the health risks associated with PFAS and were defective in design and formulation and thus unreasonably dangerous when they left the hands of the PFAS Defendants, the manufacturers and suppliers, and reached the end user of the products, including Plaintiff, without substantial alteration in the condition in which they were sold and/or left the control of the PFAS Defendants.

11.     The PFAS Defendants, which are engaged in the business of selling materials/products containing PFAS, placed the materials/products containing PFAS into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the materials/products.

12.     The materials/products containing PFAS manufactured by the PFAS Defendants were unreasonable and dangerously defective beyond the extent contemplated by ordinary users with ordinary knowledge regarding these products.

13.     At all relevant times, said materials/products containing PFAS were used by Plaintiff in the manners and environments anticipated, expected, and intended by the PFAS Defendants, and which were reasonably foreseeable to the PFAS Defendants.

14.     The PFAS Defendants, through the foregoing acts and/or omissions, breached their duty to Plaintiff.

15.     The product defects alleged above were a substantial contributing cause of the injuries and damages suffered by Plaintiffs and as a direct and proximate result of one or more of the foregoing acts or omissions on the part of the PFAS Defendants, Plaintiff was exposed to and inhaled, ingested, or otherwise absorbed PFAS in a sufficient amount to cause and/or contribute to Plaintiff's Prostate Cancer and Bladder Cancer diagnosis.

16. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the PFAS Defendants, Plaintiff has been disabled and disfigured, compelled to expend and become liable for large sums of money for hospital, medical and other healthcare services necessary for the treatment of his Prostate Cancer and Bladder Cancer, and caused to experience great physical pain and mental anguish and will continue to incur these damages in the future.

17. The PFAS Defendants in this case knew of the risks PFAS presented to the health of human beings, especially those like Plaintiff who worked with and around PFAS, and instead of informing those like Plaintiff about the risks associated with exposure to PFAS and giving them a chance to choose if the risk was worth the use, the PFAS Defendants simply took that agency away from people like Plaintiff.

18. The PFAS Defendants believed that their bottom lines were more important than the health and lives of people like Plaintiff and believed that their bottom lines were more important than Plaintiff's health and the love and comfort that the rest of Plaintiff's family received from him. The PFAS Defendants were wrong.

WHEREFORE, Plaintiff, Donald Bannister, prays this Court to enter judgment in his favor and against the PFAS Defendants named herein jointly and severally, to award compensatory damages in excess of the jurisdictional limit for this court, and to grant such other and further relief as this Court deems appropriate.

**COUNT 3**
**VS. EMPLOYER DEFENDANTS**
**(NEGLIGENCE)**

1. Plaintiff was employed by Shell Oil Company, Phillips 66 Company, and HWRT Oil Compnay from 1967 – 2004 (collectively "Employer Defendants").

2.      Daily and throughout Plaintiff's employment with the Employer Defendants, Plaintiff was regularly and routinely exposed to various toxic substances known to be cancer-causing agents, including asbestos, PFAS/AFFF, PAHs, and potentially others that may be discovered during litigation (collectively the "toxic substances" or "toxic-containing substances, materials, products, and/or equipment").

3.      Plaintiff's last occupational exposure to the foregoing toxic substances was on or about 2004. Accordingly, Plaintiff would be precluded from recovery of benefits under the Illinois Workers Compensation and Occupational Disease Acts and, therefore, Plaintiff is entitled to bring this civil action pursuant to 820 ILCS 305/1.2.7 against these Defendants.

4.      Plaintiff's exposure to the toxic substances was foreseeable and could or should have been anticipated by the Employer Defendants, including that Plaintiff would be exposed at times and places outside the course of employment by the Employer Defendants.

5.      The Employer Defendants created an unreasonable risk of harm to Plaintiff and others by using toxic substances and toxic-containing materials, products, and/or equipment. As a result of creating such risk of harm, the Employer Defendants owed a duty to Plaintiff and others to use ordinary care in conducting any operations or activities in a manner designed to prevent or reduce exposure to toxic substances including, but not limited to, an affirmative duty to warn and/or communicate the hazards of the same. The Employer Defendants had a duty to see that areas in which Plaintiff worked were reasonably safe and to protect Plaintiff from harm in conducting any operations or activities including, but not limited to, harm arising from said operations or activities but occurring away from such locations.

6.      The Employer Defendants breached its duties to Plaintiff and were negligent in one or more of the following respects:

a) Specified/required the use, application, and/or removal of toxic substances and/or toxic-containing materials, products, and/or equipment by Plaintiff and others, including coworkers of Plaintiff and other contractors, in the vicinity of Plaintiff and/or in areas in which Plaintiff worked;

b) Required Plaintiff to perform work in the vicinity of those using, applying, and/or removing toxic substances and/or toxic-containing materials, products, and/or equipment;

c) Purchased and/or provided toxic substances and/or toxic-containing materials, products, and/or equipment for use by its employees, including Plaintiff, and in its operations;

d) Failed to replace toxic substances and/or toxic-containing materials and/or products with non-toxic substitutes;

e) Failed to warn and/or communicate to Plaintiff that he was working with and/or around toxic substances and/or toxic-containing materials, products, and/or equipment and of the hazards associated therewith, including that Plaintiff was being exposed and the adverse health effects thereof;

f) Failed to require and/or advise Plaintiff and others including Plaintiff's co-workers and other contractors to use equipment and practices designed to prevent or reduce the release, ingestion, inhalation, and/or exposure to toxic substances and/or toxic-containing materials;

g) Failed to provide equipment and controls designed to prevent or reduce the release of toxic substances and/or toxic-containing materials and exposure to such;

h) Failed to provide employees, including Plaintiff, with appropriate and/or adequate personal respiratory protection;

i) Failed to conduct medical monitoring of employees, including Plaintiff, and/or failed to advise employees, including Plaintiff, of the results of medical examinations and/or to do so completely and accurately;

j) Failed to require and/or advise its employees of practices designed to reduce and/or prevent carrying toxic substances and/or toxic-containing materials away from work; and/or,

k) Violated federal, state and/or local laws and regulations with regard to the above.

7.    As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions on the part of the Employer Defendants, Plaintiff was exposed to toxic substances as described, causing Plaintiff to develop Prostate Cancer and Bladder Cancer, and thereby causing him to sustain damages as outlined above.

WHEREFORE, Plaintiff, Donald Bannister, prays judgment be entered against the Employer Defendants named herein and for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems appropriate.

**COUNT 4**
**VS. EMPLOYER DEFENDANTS**
**(WILLFUL AND WANTON MISCONDUCT)**

1. The Employer Defendants possessed actual knowledge concerning the hazards of toxic substances including, but not limited to, that workers exposed to toxic substances are highly likely to be harmed in some manner. The Employer Defendants also possessed actual knowledge concerning the utilization of the toxic substances at the facilities where Plaintiff worked.

2. The Employer Defendants' knowledge concerning the hazards of the toxic substances and its utilization at the locations where Plaintiff worked was superior to any knowledge, information, or notice on the part of Plaintiff concerning the same. At all relevant times, Plaintiff lacked knowledge and information concerning the hazards of the toxic substances and had no or incomplete knowledge and information as to when and where toxic substances were utilized at the locations where he worked.

3. The Employer Defendants had a duty to refrain from willfully and wantonly subjecting its employees, including Plaintiff, to an unreasonable risk of harm.

4. The Employer Defendants willfully, wantonly, and in reckless and conscious disregard for the health, safety, and well-being of Plaintiff breached said duty in one or more of the following respects:

a) Specified/required the use, application, and/or removal of toxic substances and/or toxic-containing materials, products, and/or equipment by Plaintiff and others, including coworkers of Plaintiff and

other contractors, in the vicinity of Plaintiff and/or in areas in which Plaintiff worked;

b) Required Plaintiff to perform work in the vicinity of those using, applying, and/or removing toxic substances and/or toxic-containing materials, products, and/or equipment;

c) Purchased and/or provided toxic substances and/or toxic-containing materials, products, and/or equipment for use by its employees, including Plaintiff, and in its operations;

d) Failed to replace toxic substances and/or toxic-containing materials and/or products with non-toxic substitutes;

e) Failed to warn and/or communicate to Plaintiff that he was working with and/or around toxic substances and/or toxic-containing materials, products, and/or equipment and of the hazards associated therewith, including that Plaintiff was being exposed and the adverse health effects thereof;

f) Failed to require and/or advise Plaintiff and others including Plaintiff's co-workers and other contractors to use equipment and practices designed to prevent or reduce the release, ingestion, inhalation, and/or exposure to toxic substances and/or toxic-containing materials;

g) Failed to provide equipment and controls designed to prevent or reduce the release of toxic substances and/or toxic-containing materials and exposure to such;

h) Failed to provide employees, including Plaintiff, with appropriate and/or adequate personal respiratory protection;

i) Failed to conduct medical monitoring of employees, including Plaintiff, and/or failed to advise employees, including Plaintiff, of the results of medical examinations and/or to do so completely and accurately;

j) Failed to require and/or advise its employees of practices designed to reduce and/or prevent carrying toxic substances and/or toxic-containing materials away from work; and/or,

k) Violated federal, state and/or local laws and regulations with regard to the above.

l) Concealed and/or misrepresented the hazards of the toxic substances to its employees, including Plaintiff;

m) Concealed from and/or misrepresented to their employees, including Plaintiff, some and/or all of the times, places, and ways in which the toxic substances were used at such locations and/or exposure levels at the same; and/or,

n) Violated federal, state and/or local laws and regulations with regard to the above.

5.    As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions on the part of the Employer Defendants, Plaintiff was exposed to toxic

substances as described, causing Plaintiff to develop Prostate Cancer and Bladder Cancer, and thereby causing him to sustain damages as outlined above.

6. An award of punitive damages is necessary and appropriate to punish the Employer Defendants for its willful, wanton, and/or intentional misconduct and/or reckless disregard for the health, safety and well-being of Plaintiff and others, and to deter these Defendants and others similarly situated from engaging in like misconduct in the future.

WHEREFORE, Plaintiff, Donald Bannister, prays judgment be entered against the Employer Defendants named herein and for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems appropriate. Plaintiff further prays for an award of punitive damages separately as to these Defendants.

**COUNT 5 – NEGLIGENCE**
**(VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. Since 1963, Plaintiff has smoked cigarette products that were designed, manufactured, advertised, marketed, distributed, and/or sold by these Defendants.

2. These Defendants, prior to selling and/or distributing their cigarette products that Plaintiff purchased and smoked, knew that exposure, inhalation, and ingestion of cigarette smoke was harmful to human beings and that it could cause injuries, including Prostate Cancer, Skin Cancer, and Bladder Cancer.

3. These Defendants' cigarette products, including contained latent characteristics and/or latent functional defects at the time they were manufactured and at the time Plaintiff was exposed to them in that said product contained tar, nicotine, and other harmful substances that these Defendants knew or in the exercise of reasonable care, should have known would cause injuries to those who regularly used them.

4.      These Defendants were in the business of designing, manufacturing, advertising, marketing, distributing, and/or selling cigarette products during the times pertinent to this suit, and knew that Plaintiff and others similarly situated would encounter its cigarette products, and would be exposed to the inhalation of the smoke from said products and result in the development of life-threatening or fatal injuries including, but not limited to, Prostate Cancer, Skin Cancer, and Bladder Cancer.

5.      These Defendants were negligent in the following respects:

a)  Prior to 1966 and after Plaintiff had already been exposed to and hooked on these Defendants' cigarette products, failing to warn of the addictive nature of its cigarette products and the adverse health effects from using such products and/or the potential to develop a habit or an addiction and suffer health effects from consistent exposure to cigarette smoke from its cigarette products as a bystander;

b)  Designing, manufacturing, developing, selling, and marketing cigarette products that were milder, had better taste, and contained nicotine so that foreseeable users, such as Plaintiff, would find smoking these Defendants' products pleasurable and in turn would lead Plaintiff, and others similarly situated, to begin smoking and/or to increase consumption;

c)  Designing, manufacturing, selling, and marketing cigarette products as "light" or "filtered" that it knew were no safer, and were even more hazardous than other "regular" cigarettes;

d)  Failing to disclose and/or warn that its "light" or "filtered" cigarettes would not be less hazardous as smokers would smoke more and/or alter their smoking habits such that their intake of tar, nicotine, and other harmful substances would not be reduced;

e)  Continuing to fraudulently market and sell multiple brands as "light" or "filtered" cigarettes and causing smokers, such as Plaintiff, to wrongly believe that its "light" or "filtered" cigarettes reduce the harms of smoking;

f)  Failing to develop and utilize alternative design, manufacturing methods, and/or materials to reduce and/or eliminate harmful materials and/or characteristics from the cigarette products these Defendants designed, manufactured, advertised, marketed, distributed, and/or sold;

g)  Continuing to manufacture, distribute, and sell cigarette products when these Defendants knew at the time of said manufacture, distribution, and/or sale that such products could cause, and in fact were more likely to cause injuries, including EC, to foreseeable users, such as Plaintiff, when used as intended;

h) Concealing information while affirmatively misrepresenting to Plaintiff and other members of the public through advertising, "informational" communications, sponsorship of sports activities, concerts, and other events, testimony and public statements by officers, agents, and employees of the cigarette manufacturers, by labels and otherwise, that its cigarette products manufactured, distributed and/or sold were safe and/or not proven to be dangerous in their ordinary and foreseeable use, which material misrepresentations induced Plaintiff to use and/or continue to use these Defendants' cigarette products and expose himself to the hazards of developing disease and/or suffering injuries, including EC;

i) Failing to test and/or adequately test its cigarette products before offering them for sale and use by Plaintiff, and other persons similarly situated;

j) Failing to remove and recall all said cigarette products from the stream of commerce and the marketplace upon ascertaining that said products would cause serious injuries, including EC, which is permanent and likely fatal;

k) Manipulating, failing to reduce, and/or eliminating nicotine from its cigarette products to prevent Plaintiff, who was likely addicted to the nicotine in these Defendants' cigarette products, from quitting and/or reducing consumption;

l) Including nicotine, or artificially high levels of nicotine, in its cigarette products to prevent Plaintiff, and other persons similarly situated, from quitting and/or reducing consumption;

m) Utilizing tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances deleterious, poisonous, and highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

n) Designing and manufacturing cigarettes to be inhalable and thus unreasonably dangerous; and/or,

o) Placing additives and ingredients in its cigarettes to make them easier to inhale and unreasonably addictive.

6. These Defendants' cigarette products that Plaintiff was exposed to were used by Plaintiff in the manner in which they were intended or reasonably foreseeable to these Defendants.

7. These Defendants' cigarette products failed to perform as safely as Plaintiff expected it would in that they caused him to develop Prostate Cancer and Bladder Cancer because of his life-long exposure and inhalation of cigarette smoke from these Defendants' cigarette products.

8. These Defendants' cigarette products suffered from a manufacturing and design defect in that they contained arsenic, carcinogens, toxic chemicals, toxic gases, nicotine, tars, and other substances that Defendants knew or should have known were extremely harmful in that exposure to such substances causes injuries and death, and for which there were available materials to substitute and/or manufacturing methods to reduce and/or eliminate these substances in the design and manufacture of the product.

9. As a direct and proximate result of these Defendants' negligent acts and/or omissions, Plaintiff developed Prostate Cancer, Skin Cancer, and Bladder Cancer and has been compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of his cigarette induced disease and conditions now and has experienced great physical pain and mental anguish, now and in the future, as a result of the inhalation, ingestion, and absorption of these Defendants' cigarette products.

WHEREFORE, Plaintiff, Donald Bannister, prays judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest and such other and further relief as this Court deems appropriate.

**COUNT 6 - STRICT LIABILITY: DESIGN DEFECT & FAILURE TO WARN**
**(VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. These Defendants, referenced above, were and have been designers, manufacturers, advertisers, distributors, and/or sellers of cigarette products.

3. The products complained of were cigarette products designed, manufactured, advertised, distributed, and/or sold by these Defendants and used by Plaintiff.

4.    The aforesaid products were distributed, supplied, sold, and/or otherwise placed into the stream of commerce, and/or caused to be placed into the stream of commerce, by these Defendants.

5.    Plaintiff was exposed to these Defendants' cigarette products over many years during which time smoke from these Defendants' cigarette products were breathed in and inhaled by Plaintiff, which caused or contributed to him developing Prostate Cancer, Skin Cancer, and Bladder Cancer.

6.    At the time these Defendants designed, manufactured, advertised, marketed, distributed, and/or sold the aforesaid cigarette products, such products were expected to, and did, reach Plaintiff in a condition without substantial change from that in which such products were when within the possession of these Defendants.

7.    These Defendants' cigarette products were in a condition unreasonably dangerous to users, like Plaintiff, and said products were expected to and did reach Plaintiff without substantial change affecting that condition.

8.    These Defendants' cigarette products were, by way of defective design and failures to warn of the health hazards of its "light" or "filtered" cigarette products, in a condition unreasonably dangerous to users, like Plaintiff, and said products were expected to and did reach Plaintiff without substantial change affecting that condition.

9.    These Defendants' cigarette products were unreasonably dangerous due to their design and failures to warn and the risk of danger to users, like Plaintiff, outweighed the benefits.

10.    These Defendants' cigarette products were dangerous beyond the expectation of the ordinary user or consumer when used as intended or in a manner reasonably foreseeable by these Defendants.

11. These Defendants' cigarette products were unreasonably dangerous because a less dangerous design and/or modification was economically and scientifically feasible and because these Defendants could have warned of the health hazards associated with its “light” or “filtered” cigarette products.

12. These Defendants' cigarette products were in an unreasonably dangerous and defective condition in that such products:

a) Contained, by design, tar, nicotine, carcinogens, toxic gasses, and other substances deleterious, poisonous, and highly harmful to Plaintiff;
b) Contained by design tar, nicotine, carcinogens, toxic gasses, and other substances deleterious, poisonous, and highly harmful when and after it became feasible to design and manufacture reasonably comparable products not containing those substances or containing less of them;
c) Failed to filter the harmful substances so that during ordinary use, such materials would not be liberated into the air and/or breathed by the smoker such as Plaintiff;
d) Through the use of filters, manufacturing methods, engineering methods, and/or the materials utilized were designed in such a way to make smoking its cigarette products more tasteful, pleasurable and less likely to trigger the smoker's own biological self defense mechanisms which otherwise may have limited and/or altered the smoker's behavior in such a way that the smoker may have smoked less, inhaled less deeply or not at all;
e) Prior to 1966 and after Plaintiff had already been exposed to and hooked on these Defendants’ cigarette products, failing to warn of the addictive nature of its cigarette products and the adverse health effects from using such products and/or the potential to develop an addiction and suffer health effects from consistent exposure to cigarette smoke from its cigarette products as a bystander;
f) Designing, manufacturing, selling, and marketing cigarette products as “light” or “filtered” that it knew were no safer, and were even more hazardous than other “regular” cigarettes;
g) Failing to disclose and/or warn that its “light” or “filtered” cigarettes would not be less hazardous as smokers would smoke more and/or alter their smoking habits such that their intake of tar, nicotine, and other harmful substances would not be reduced;
h) Continuing to fraudulently market and sell multiple brands as “light” or “filtered” and causing smokers, such as Plaintiff, to wrongly believe that its “light” or “filtered” cigarettes reduce the harms of smoking;
i) Utilized tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances

deleterious, poisonous, and highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

j)  The nature and degree of the danger of Defendants' cigarette products were beyond the expectation of the ordinary consumer when used as intended or in a reasonably foreseeable manner;

k)  Designing and manufacturing their cigarettes to be inhalable and thus unreasonably dangerous; and/or,

l)  Placing additives and ingredients in cigarettes to making them easier to inhale and addictive.

13.    Plaintiff, unaware of the defective and unreasonably dangerous condition of these Defendants' cigarette products, and at a time when such products were being used for the purposes for which they were intended, was constantly exposed to, and breathed, smoke from these Defendants' cigarette products.

14.    These Defendants knew that their cigarette products would be used without inspection for defects.

15.    As a direct and proximate result of the foregoing acts or omissions on the part of these Defendants and the unreasonably dangerous condition of its cigarette products, by way of design defect and failures to warn, these Defendants are strictly liable to Plaintiff for his injuries therefrom, including Plaintiff's development of Prostate Cancer, Skin Cancer, and Bladder Cancer and the large sums of monies for hospital, medical, and other health care services necessary for the treatment of his cigarette induced disease and the great physical pain and mental anguish, now and in the future, as a result of the inhalation, ingestion, and absorption of these Defendants' cigarette products.

WHEREFORE, Plaintiff, Donald Bannister, prays judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest and such other and further relief as this Court deems appropriate.

**COUNT 7 - FRAUDULENT CONCEALMENT**
**(VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. The cigarette manufacturers, including Defendants herein, have concealed vast amounts of knowledge regarding the health hazards of cigarettes and their addictive nature over the course of the last 66 years.

3. The cigarette manufacturers, including Defendants herein, fraudulently market(ed) and sell and sold multiple brands as "filtered" or "light" knowing that smokers wrongly believe that such cigarettes reduce the harms of smoking and despite knowing internally that such cigarettes are just as addictive, dangerous, and deadly as non-filtered cigarettes.

4. Plaintiff was unaware of the extent of danger of these Defendants' cigarette products, the addictive nature of these Defendants' cigarette products, and that light, low tar, low nicotine, and/or filtered cigarettes were just as dangerous as unfiltered cigarettes. The knowledge and information concealed by the cigarette manufacturers, including the Defendants named herein, was concealed by entities which had superior knowledge regarding the health aspects of cigarettes than Plaintiff.

5. Indeed, Plaintiff was not aware of any dangers of smoking cigarettes when he first began to smoke.

6. Had these Defendants not for many years concealed and/or suppressed their knowledge of the dangers of their cigarette products or spread false information designed to cause confusion, including that the products caused cancer and other serious health issues, Plaintiff would not have started smoking or been hooked at an early age and/or would have been able to stop earlier and thereby his risk of injury from cigarettes, including Prostate Cancer, Skin Cancer, and Bladder Cancer, would have been eliminated or greatly reduced.

7.     By the time Plaintiff started smoking and was hooked on these Defendants' cigarette products he was also not aware that the cigarettes were as addictive as they are. Had these Defendant not concealed and/or suppressed its knowledge of the addictiveness of its cigarette products from Plaintiff and the public, Plaintiff would not have started smoking or been hooked at an early age and/or would have significantly reduced his cigarette intake and thereby his risk of injury from cigarettes, including Prostate Cancer, Skin Cancer, and Bladder Cancer, would have been greatly reduced or eliminated.

8.     Plaintiff switched to "light" or "filtered" cigarettes, including Winston Lights, because he believed that they were safer than regular cigarettes and free from many health risks. Plaintiff continued his cigarette intake believing that such cigarettes were less of a health risk. Had these Defendants not concealed and/or suppressed their aforementioned knowledge of the dangers of their cigarette products from Plaintiff and the public, including the dangers of such cigarettes, Plaintiff would have stopped smoking entirely, been more likely to be able to stop smoking, or significantly reduced his cigarette intake rather than switch to such cigarettes and thereby his risk of injury from such cigarettes, including Prostate Cancer, Skin Cancer, and Bladder Cancer, would have been reduced or eliminated.

9.     The knowledge and information concealed by the cigarette manufacturers, including the Defendants named herein, was concealed by entities that had superior knowledge regarding the health aspects of cigarettes than Plaintiff.

10.     These Defendants had a duty to disclose to the American public, including Plaintiff, all material facts about the health hazards of smoking cigarettes, including their highly addictive qualities.

11.    These Defendants directly, and indirectly through its trade associations, repeatedly made representations and statements about the safety of cigarettes and their effect on human health and the issue of nicotine addiction, and repeatedly and consistently made public statements: (A) denying that cigarettes were hazardous; (B) denying that cigarettes caused cancer or other serious illnesses; (C) denying that cigarettes contained any harmful ingredients; (D) denying that the ingredients of cigarettes including nicotine and other chemicals were manipulated to cause people to continue to smoking or initiate or sustain addiction; (E) denying that nicotine in cigarettes is addictive.

12.    Such statements and representations were materially false, incomplete, and fraudulent at the time these Defendants, and their agents, made them and knew of their falsity.

13.    These Defendants intended for the American Public, including Plaintiff, to rely upon such false statements so that: people would start smoking; current smokers would continue to smoke; fewer smokers would attempt to quit or recognize the urgent need to quit; and lawmakers would not pass laws intended to reduce smoking and/or exposure to cigarette smoke.

14.    As a direct and proximate result of the aforementioned concealment and/or suppression of material information by the cigarette manufacturers, including Defendant herein, Plaintiff smoked and/or continued to smoke and was otherwise exposed to these Defendants' cigarette products that caused or contributed to him developing Prostate Cancer, Skin Cancer, and Bladder Cancer and becoming liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of his cigarette induced disease and the great physical pain and mental anguish, now and in the future.

WHEREFORE, Plaintiff, Donald Bannister, prays judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for

costs, pre-judgment interest, post-judgment interest and such other and further relief as this Court deems appropriate.

**COUNT 8 – WILLFUL AND WANTON MISCONDUCT**
**(VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. These Defendants had a duty to refrain from willful and wanton acts, omissions, and/or misconduct which would foreseeably expose Plaintiff and others similarly situated to an unreasonable risk of harm.

2. These Defendants willfully, wantonly, and in reckless and conscious disregard for the health, safety, and well-being of Plaintiff breached said duty in one or more of the following respects:

a. Prior to 1966 and after Plaintiff had already been exposed to and addicted to its cigarette products, failed to warn of the addictive nature of its cigarette products and the adverse health effects from using such products;
b. Designing and developing cigarette products that were milder, had better taste and contained nicotine so that foreseeable users, such as Plaintiff, would find smoking these Defendants' products pleasurable which in turn would lead the Plaintiff, and others similarly situated, to begin smoking and/or to increase consumption;
c. Failing to develop and utilize alternative design, manufacturing methods, and/or materials to reduce and/or eliminate harmful materials and/or characteristics from the cigarette products it designed, manufactured, advertised, marketed, distributed and/or sold;
d. Continuing to manufacture, distribute, and sell cigarette products when it knew at the time of said manufacture, distribution and/or sale that such products could cause, and in fact were more likely to cause cancer to foreseeable users, such as Plaintiff, when used as intended;
e. Concealing information while affirmatively misrepresenting to Plaintiff and other members of the public in advertising, "informational" communications, sponsorship of sports activities, concerts, and other events, testimony and public statements by officers, agents and employees of the cigarette manufacturers, by labels and otherwise, that the cigarette products manufactured, distributed and/or sold were safe and/or not proven to be dangerous in their ordinary and foreseeable use, which material misrepresentations induced Plaintiff to unknowingly use and/or continue to use the Defendants' cigarette products himself and

expose himself to the hazards of developing disease and/or suffering injuries such as Prostate Cancer, Skin Cancer, and Bladder Cancer;

f.  Failing to test and/or adequately test its cigarette products before offering them for sale and use by Plaintiff, and other persons similarly situated;

g.  Failing to remove and recall all said cigarette products from the stream of commerce and the marketplace upon ascertaining that said products would cause injuries;

h.  Manipulating, failing to reduce, and/or eliminating nicotine from its cigarette products to prevent Plaintiff, who was addicted to the nicotine in its cigarette products, from quitting and/or reducing consumption;

i.  Including nicotine, or artificially high levels of nicotine, in its cigarette products to prevent Plaintiff and other persons similarly situated from quitting and/or reducing consumption;

j.  Utilizing tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances deleterious, poisonous, and, highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

k.  Designing and manufacturing its cigarettes to be inhalable and thus unreasonably dangerous; and/or,

l.  Placing additives and ingredients in cigarettes to making them easier to inhale and addictive.

3.  As a direct and proximate result of the Defendants' willful and wanton acts and/or omissions, Plaintiff developed Prostate Cancer, Skin Cancer, and Bladder Cancer and has been compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of his cigarette induced disease and conditions now, and in the future, and has experienced great physical pain and mental anguish as a result of the inhalation, ingestion, and absorption of said cigarette products.

WHEREFORE, Plaintiff, Donald Bannister, prays judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems appropriate.

**COUNT 9 - VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT**
**(VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. At all times relevant herein, there was a statute in effect entitled the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*. (the "Act").

2. These Defendants are subject to the provisions of the Act, and Plaintiff is one of the persons the Act was enacted to protect.

3. The Act makes it unlawful for a business to use "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact" in the conduct of any trade or commerce. 815 ILCS 505/2. The Act also makes unlawful "the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act." *Id*.

4. These Defendants advertised and sold cigarette products without any warning and/or filtered cigarettes products, which touted or implied health benefits.

5. However, these Defendants knew that their cigarette products were dangerous and that the purported benefits of "filtered" or "light" cigarette products were illusory, and that the public - even the US government and physicians - were being misled by such false promises.

6. As described above, these Defendants violated the Act by making, disseminating, and causing to make and disseminate untrue, false, and misleading statements to Plaintiff and other Illinois consumers to promote the sale and use of tobacco products. These untrue, false, and misleading statements included, but were not limited to:

a. Prior to 1966, failed to warn of the addictive nature of its cigarette products and the adverse health effects from using such products when it knew of such adverse health effects and addictiveness;

b.  Continuing to manufacture, distribute, and sell cigarette products when it knew at the time of said manufacture, distribution and/or sale that such products could cause, and in fact were more likely to cause cancers when used as intended;

c.  Concealing information while affirmatively misrepresenting to Plaintiff and other members of the public in advertising, "informational" communications, sponsorship of sports activities, concerts, and other events, testimony and public statements by officers, agents and employees of the cigarette manufacturers, by labels and otherwise, that the cigarette products manufactured, distributed and/or sold were safe and/or not proven to be dangerous in their ordinary and foreseeable use, which material misrepresentations induced Plaintiff to unknowingly use and/or continue to use these Defendants' cigarette products;

d.  Failing to test and/or adequately test its cigarette products before offering them for sale and use by Plaintiff, and other persons similarly situated;

e.  Failing to remove and recall all said cigarette products from the stream of commerce and the marketplace upon ascertaining that said products would cause injuries;

f.  Manipulating, failing to reduce, and/or eliminating nicotine from its cigarette products to prevent Plaintiff, who was addicted to the nicotine in its cigarette products, from quitting and/or reducing consumption;

g.  Including nicotine, or artificially high levels of nicotine, in its cigarette products to prevent Plaintiff and other persons similarly situated from quitting and/or reducing consumption;

h.  Utilizing tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances deleterious, poisonous, and, highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

i.  Purposely placing additives and ingredients in cigarettes to making them easier to inhale and addictive;

j.  Marketing and/or advertising filters as safer or less hazardous to health than non-filtered cigarettes when it knew such cigarette products were not;

k.  Knowingly concealing from the public that filtered cigarettes were no safer or even more hazardous that other cigarettes;

l.  Designing, selling, and marketing brands as "light" or "filtered" knowing that smokers wrongly believed that light or filtered cigarettes reduce the harms of smoking when they further know that filtered cigarettes are no safer or healthier than non-filtered cigarettes;

m.  Maintaining and failing to disclose and/or warn of their superior knowledge not only to consumers but even to the FDA in that it knew the FDA's methodology of measuring tar from filtered cigarettes did not accurately measure tar-intake in actual consumer use;

n.  Failing to disclose and/or warn that switching to filtered or light
cigarettes would not be less hazardous because smokers would smoke
more and/or alter their smoking habits such that their intake of tar,
nicotine and other harmful substances would not be reduce;

o.  Continuing even today to fraudulently market and sell multiple brands
as "filtered" causing smokers to believe that filtered cigarettes reduce
the harms of smoking.

7.      As described above, these Defendants violated the Act by omitting or concealing

material facts to deceptively promote the sale and use of filtered and light cigarettes to Plaintiff

and other Illinois consumers.

8.      These Defendants knew at the time of making or disseminating these misstatements

and material omissions or causing or contributing to these misstatements and material omissions

to be made or disseminated, that they were untrue, false, or misleading there therefore likely to

deceive Illinois consumers.

9.      Additionally, these Defendants knew or should have known that its marketing and

promotional efforts created an untrue, false, and misleading impression of the risks and benefits of

filtered and light cigarettes.

10.     These Defendants have and continue to engage in unlawful and deceptive business

practices in violation of the Act as set forth above.

11.     These Defendants' practices as described herein are deceptive business practices

that violate the Act because the practices were and are intended to deceive consumers, including

Plaintiff, and occurred and continue to occur in the course of conduct involving trade and

commerce throughout Illinois.

12.     These Defendants' conduct was intended to deceive Illinois consumers and to get

them to begin to use and continue to use in perpetuity its cigarette products and in the belief that

they were a safer and healthy alternative.

13. These Defendants' conduct deceived Plaintiff into beginning to purchase and smoke its cigarettes.

14. Had these Defendants not concealed and/or suppressed their aforementioned knowledge of the dangers of their filtered and non-filtered cigarette products from Plaintiff and the public, Plaintiff would not have purchased these Defendants' filtered and non-filtered cigarettes and/or stopped smoking filtered cigarettes or entirely or significantly reduced his cigarette intake rather than continue to smoke, and his risk of injury from filtered cigarettes, including Prostate Cancer, Skin Cancer, and Bladder Cancer, would have been reduced or eliminated.

15. The consumer fraud acts of these Defendants as described above caused injury to Plaintiff and were performed willfully, intentionally, and/or with reckless disregard for the rights and safety of Plaintiff, and the public, and were in violation of the Act thus entitling Plaintiff to actual and treble damages, attorney fees, as well as any other relief the Court deems just and proper.

WHEREFORE, Plaintiff, Donald Bannister, respectfully requests that this Court enter judgment against these Defendants for compensatory damages in an amount in excess of $50,000, including treble damages and attorneys' fees as appropriate under the Illinois Consumer Fraud and Deceptive Business Practices Act, together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper.

**COUNT 10 - NEGLIGENCE**
**(VS. JOHN CRANE, INC.)**

1. On and prior to 1979, John Crane, Inc. ("John Crane"), was engaged in the business of designing, processing, manufacturing, selling, and distributing asbestos-containing gaskets and packing, and other asbestos products.

2.     Among the asbestos containing products manufactured, distributed, and/or sold by John Crane were asbestos-containing gaskets and packing.

3.     Plaintiff was employed during the period of time between 1964 and 1979 and during this time period Plaintiff was exposed to John Crane asbestos-containing gaskets and packing while working at the Wood River Refinery in Wood River, Madison County, Illinois.

4.     At all times mentioned herein, the asbestos-containing gaskets and packing produced by John Crane was being used in a manner for which they were intended and in a manner which was reasonably foreseeable.

5.     At all times mentioned herein, John Crane owed Plaintiff the duty of ordinary care in its marketing, designing, selling, labeling, manufacturing, and/or distributing of asbestos-containing products.

6.     John Crane breached its duty of ordinary care and was negligent in that it knew and/or should have known that its asbestos containing products were likely to injure and cause respiratory disease in persons who were exposed to its products without warnings or without adequate warnings; that exposure to John Crane asbestos containing products was likely to cause injury and respiratory disease and failed to place warnings or adequate warnings on its products, although it knew or in the exercise of ordinary care, should have known, that such warnings were necessary to avoid injury to individuals, including Plaintiff.

7.     In addition, John Crane was negligent in that it:

    a.  Marketed a product containing asbestos fibers;
    b.  Failed to advise the plaintiff of the dangers of asbestos fibers, although it knew of the dangers;
    c.  Failed to provide instruction as to what wearing apparel, if any, would be safe to wear while using and/or working in proximity to the its products;
    d.  Failed to publish a safe plan for handling its asbestos products;

    e. Failed to place adequate warnings on their containers, although the Defendants knew of the danger to persons working near asbestos containing products, including the Plaintiff;
f. Failed to develop alternative, non-asbestos containing products in a timely manner when adequate substitutes were available;
g. Continued to sell a known cancer-causing product to wit;
h. Failed to inform users that asbestos containing products caused mesothelioma and cancer in laboratory animals and humans;
i. Failed to provide safe packaging for its products; and/or,
j. Negligently designed the asbestos containing products.

8. As a proximate result of the Plaintiff's frequent and regular exposure to the asbestos containing products sold, designed, labeled, distributed, marketed, and/or manufactured by John Crane, Plaintiff developed asbestos-related diseases.

9. As a direct and proximate result of the aforementioned said wrongful acts/or omissions of John Crane, Plaintiff developed said asbestos-caused diseases and suffered severe shocks to the nervous and respiratory system and became sick and disabled and was caused great pain, discomfort and physical impairment and will continue to suffer the same in the future all of which injuries are permanent, and has become liable to large sums of money for medical and hospital care.

WHEREFORE, Plaintiff, Donald Bannister, prays judgment be entered against Defendant, John Crane, Inc., for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems appropriate.

**COUNT 11 – LOSS OF CONSORTIUM**
**(VS. ALL DEFENDANTS)**

1. As a direct result of the acts and omissions, willful and wanton misconduct, deceptive practices, as described above, and resulting injuries sustained by Donald Bannister, as described above, Plaintiff, Betty Bannister, has suffered and will continue to suffer a loss of

consortium, society, services, capacity to exchange love, and companionship of her and Donald Bannister's marital relationship.

WHEREFORE, Plaintiffs, Donald Bannister and Betty Bannister, pray judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems appropriate.

Respectfully submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: *_/s/ Joshua A. Edelson_*___________________
Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiffs*

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

DONALD BANNISTER and BETTY BANNISTER,

PLAINTIFFS

Case No. 2023LA000191

VS.

JOHN CRANE, INC., et al.,

DEFENDANTS

**DEFENDANT: JOHN CRANE**

**Registered Agent: CT Corporation System, 208 SO LaSalle St, Suite 814, Chicago, IL 60604**

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

WITNESS: Thomas McRae, the Clerk of the Circuit Court and the seal thereof at Edwardsville, Illinois. 2/16/2023 2:54 PM

155 N MAIN ST EDWARDSVILLE IL 62025 /s/ Stacey Turner

CIRCUIT COURT MADISON COUNTY ILLINOIS

served this summons by handing a copy to__________________on , __________, 2023.

___________________________
Process Server

Signed and sworn to before me ___________, 2023.

____________________________ Notary Public

Gianaris Trial Lawyers
Ted Gianaris and Joshua A. Edelson
Attorneys for Plaintiff
One Court Street, Alton, IL 62002
(618) 619-0010

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

DONALD BANNISTER and BETTY BANNISTER,

PLAINTIFFS

Case No. 2023LA000191

VS.

JOHN CRANE, INC., et al.,

DEFENDANTS

**DEFENDANT: Shell Oil Company,**

**Registered Agent: CT Corporation System 208 SO Lasalle Street Suite 814, Chicago, IL 60604**

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

WITNESS: Thomas McRae, the Clerk of the Circuit Court and the seal thereof at Edwardsville, Illinois. 2/16/2023 2:54 PM

155 N MAIN ST EDWARDSVILLE IL 62025 /s/ Stacey Turner

CIRCUIT COURT MADISON COUNTY, ILLINOIS

I served this subpoena by handing a copy to__________________ on , __________, 2023.

_____________________________
Process Server

Signed and sworn to before me ___________, 2023.

_____________________________ Notary Public

Gianaris Trial Lawyers
Ted Gianaris and Joshua A. Edelson
Attorneys for Plaintiff
One Court Street, Alton, IL 62002
(618) 619-0010

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

DONALD BANNISTER and BETTY BANNISTER,

PLAINTIFFS

Case No. 2023LA000191

VS.

JOHN CRANE, INC., et al.,

DEFENDANTS

**DEFENDANT: 3M COMPANY, f/k/a Minnesota Mining and Manufacturing Company**

**Registered Agent: Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703**

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

WITNESS: Thomas McRae, the Clerk of the Circuit Court and the seal thereof at Edwardsville, Illinois. 2/16/2023 2:54 PM

155 N MAIN ST EDWARDSVILLE IL 62025 /s/ Stacey Turner

I served the subpoena by handing a copy to__________________on , __________, 2023.

______________________________
Process Server

Signed and sworn to before me ___________, 2023.

______________________________ Notary Public

Gianaris Trial Lawyers
Ted Gianaris and Joshua A. Edelson
Attorneys for Plaintiff
One Court Street, Alton, IL 62002
(618) 619-0010

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

DONALD BANNISTER and BETTY BANNISTER,

PLAINTIFFS

Case No. 2023LA000191

VS.

JOHN CRANE, INC., et al.,

DEFENDANTS

**DEFENDANT: TYCO FIRE PRODUCTS, L.P., successor in interest to The Ansul Company**

**Registered Agent: CT Corporation System, 701 S Carson St, Suite 200, Carson City, NV 89701**

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

WITNESS: Thomas McRae, the Clerk of the Circuit Court and the seal thereof at Edwardsville, Illinois. 2/16/2023 2:54 PM

155 N MAIN ST EDWARDSVILLE IL 62025 /s/ Stacey Turner

I [illegible] handing a copy to__________________ on , __________, 2023.

_________________________
Process Server

Signed and sworn to before me ___________, 2023.

______________________________ Notary Public

Gianaris Trial Lawyers
Ted Gianaris and Joshua A. Edelson
Attorneys for Plaintiff
One Court Street, Alton, IL 62002
(618) 619-0010

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

DONALD BANNISTER and BETTY BANNISTER,

PLAINTIFFS

Case No. 2023LA000191

VS.

JOHN CRANE, INC., et al.,

DEFENDANTS

**DEFENDANT: CHEMGUARD**

**Registered Agent: One Stanton Street, Marinette, WI 54143 (phone: 1-715-735-7411)**

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

CIRCUIT COURT MADISON COUNTY ILLINOIS

WITNESS: Thomas McRae, the Clerk of the Circuit Court and the seal thereof at Edwardsville, Illinois. 2/16/2023 2:54 PM

/s/ Stacey Turner

155 N MAIN ST EDWARDSVILLE IL 62025

I served the subpoena by handing a copy to__________________on , __________, 2023.

______________________________
Process Server

Signed and sworn to before me ___________, 2023.

______________________________ Notary Public

Gianaris Trial Lawyers
Ted Gianaris and Joshua A. Edelson
Attorneys for Plaintiff
One Court Street, Alton, IL 62002
(618) 619-0010

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

DONALD BANNISTER and BETTY BANNISTER,

PLAINTIFFS

Case No.

VS.

2023LA000191

JOHN CRANE, INC., et al.,

DEFENDANTS

**DEFENDANT: E.I. du PONT de NEMOURS & CO.**

**Registered Agent: CT Corporation System, 208 SO LaSalle Street, Suite 814, Chicago, IL 60604**

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

WITNESS: Thomas McRae, the Clerk of the Circuit Court and the seal thereof at Edwardsville, Illinois. 2/16/2023 2:54 PM

CIRCUIT COURT MADISON COUNTY, ILLINOIS

155 N MAIN ST EDWARDSVILLE IL 62025 /s/ Stacey Turner

I served the subpoena by handing a copy to__________________on , __________, 2023.

______________________
Process Server

Signed and sworn to before me ___________, 2023.

______________________________ Notary Public

Gianaris Trial Lawyers
Ted Gianaris and Joshua A. Edelson
Attorneys for Plaintiff
One Court Street, Alton, IL 62002
(618) 619-0010

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

DONALD BANNISTER and BETTY BANNISTER,

PLAINTIFFS

Case No. 2023LA000191

VS.

JOHN CRANE, INC., et al.,

DEFENDANTS

**DEFENDANT: NATIONAL FOAM, INC.**

**Registered Agent: 350 E. Union Street, West Chester, PA 19382**

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

WITNESS: Thomas McRae, the Clerk of the Circuit Court and the seal thereof at Edwardsville, Illinois. 2/16/2023 2:54 PM

155 N MAIN ST EDWARDSVILLE IL 62025

/s/ Stacey Turner

CIRCUIT COURT MADISON COUNTY, ILLINOIS

[illegible] by handing a copy to__________________on , __________, 2023.

____________________________
Process Server

Signed and sworn to before me ___________, 2023.

_____________________________ Notary Public

Gianaris Trial Lawyers
Ted Gianaris and Joshua A. Edelson
Attorneys for Plaintiff
One Court Street, Alton, IL 62002
(618) 619-0010

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

DONALD BANNISTER and BETTY BANNISTER,

PLAINTIFFS

Case No.

2023LA000191

VS.

JOHN CRANE, INC., et al.,

DEFENDANTS

**DEFENDANT: HWRT OIL COMPANY, LLC**

**Registered Agent: Matthew W. Schrimpf, 1 Piasa Lane, Hartford, IL 62048**

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

CIRCUIT COURT MADISON COUNTY, ILLINOIS

WITNESS: Thomas McRae, the Clerk of the Circuit Court and the seal thereof at Edwardsville, Illinois. 2/16/2023 2:54 PM

155 N MAIN ST EDWARDSVILLE IL 62025

/s/ Stacey Turner

I served the subpoena by handing a copy to__________________on , __________, 2023.

______________________
Process Server

Signed and sworn to before me ___________, 2023.

_____________________________ Notary Public

Gianaris Trial Lawyers
Ted Gianaris and Joshua A. Edelson
Attorneys for Plaintiff
One Court Street, Alton, IL 62002
(618) 619-0010

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

DONALD BANNISTER and BETTY BANNISTER,

PLAINTIFFS

Case No. 2023LA000191

VS.

JOHN CRANE, INC., et al.,

DEFENDANTS

**DEFENDANT: ITG BRANDS LLC**

**Registered Agent: Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703**

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

CIRCUIT COURT MADISON COUNTY, ILLINOIS

WITNESS: Thomas McRae, the Clerk of the Circuit Court and the seal thereof at Edwardsville, Illinois. 2/16/2023 2:54 PM

155 N MAIN ST EDWARDSVILLE IL 62025 /s/ Stacey Turner

I served the subpoena by handing a copy to__________________on , __________, 2023.

____________________________
Process Server

Signed and sworn to before me ___________, 2023.

_____________________________ Notary Public

Gianaris Trial Lawyers
Ted Gianaris and Joshua A. Edelson
Attorneys for Plaintiff
One Court Street, Alton, IL 62002
(618) 619-0010

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

DONALD BANNISTER and BETTY BANNISTER,

PLAINTIFFS

Case No. 2023LA000191

VS.

JOHN CRANE, INC., et al.,

DEFENDANTS

**DEFENDANT: RJ REYNOLDS TOBACCO COMPANY**

**Registered Agent: Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703**

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

CIRCUIT COURT MADISON COUNTY, ILLINOIS

WITNESS: Thomas McRae, the Clerk of the Circuit Court and the seal thereof at Edwardsville, Illinois. 2/16/2023 2:54 PM

/s/ Stacey Turner

155 N MAIN ST EDWARDSVILLE IL 62025

I served the subpoena by handing a copy to__________________on , __________, 2023.

___________________________
Process Server

Signed and sworn to before me ___________, 2023.

____________________________ Notary Public

Gianaris Trial Lawyers
Ted Gianaris and Joshua A. Edelson
Attorneys for Plaintiff
One Court Street, Alton, IL 62002
(618) 619-0010

February 16, 2023

IN THE CIRCUIT COURT
FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

CASE NUMBER: 2023 LA 000191

DONALD BANNISTER

Plaintiff(s)

VS.

JOHN CRANE INC

Defendant(s)

FILED
FEB 16 2023
CLERK OF CIRCUIT COURT #17
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

ASSIGNMENT ORDER

The above case is hereby assigned to the Honorable SARAH SMITH for setting and disposition.

Clerk to send copies of this Order to the attorneys of record and any pro se party.

DATE: February 16, 2023

s/Steve Stobbs
Chief Judge

***EFILED***
Case Number 2023LA000191
Date: 3/15/2023 4:47 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

e-Served
by MyDocFileServe
2702741
Mar 15 2023 04:47 PM

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| DONALD BANNISTER and BETTY BANNISTER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 23 LA 191 |
| | ) | |
| JOHN CRANE, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT PHILLIPS 66 COMPANY'S ANSWER AND DEFENSES TO PLAINTIFFS' COMPLAINT**

NOW COMES Defendant PHILLIPS 66 COMPANY, by and through its attorneys, Swanson, Martin & Bell, LLP, and for its Answer and Defenses to Plaintiffs' Complaint, states as follows:

**FACTS COMMON TO ALL COUNTS**

1. This Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 1.

2. Paragraph 2 states legal conclusions to which no responses are required. To the extent responses are deemed required, this Defendant denies the allegations in Paragraph 2 as they pertain to it. This Defendant lacks knowledge and/or information sufficient to admit or deny the allegations contained in Paragraph 2 as they pertain to others.

3. This Defendant denies the allegations of Paragraph 3 as they pertain to it. This Defendant lacks knowledge and/or information sufficient to admit or deny the allegations contained in Paragraph 3 as they pertain to others.

4. This Defendant denies the allegations of Paragraph 4.

5. Paragraph 5 makes no allegation of fact against this Defendant requiring a response. To the extent a response may be deemed required, this Defendant is without sufficient

knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 5.

6. Paragraph 6 makes no allegation of fact against this Defendant requiring a response. To the extent a response may be deemed required, this Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 6.

7. Paragraph 7 makes no allegation of fact against this Defendant requiring a response. To the extent a response may be deemed required, this Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 7.

8. This Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 8.

9. Paragraph 9 states legal conclusions to which no responses are required. To the extent responses are deemed required, this Defendant denies the allegations in Paragraph 9.

10. Paragraph 10 makes no allegation of fact against this Defendant requiring a response.

11. Paragraph 11 states legal conclusions to which no responses are required.

12. Paragraph 12 states legal conclusions to which no responses are required.

13. Paragraph 13 states legal conclusions to which no responses are required.

**COUNTS 1 AND 2**

Counts 1 and 2 of Plaintiffs' Complaint make no claims nor seek any relief against this Defendant. Consequently, no response on the part of this Defendant is required. However, to the extent that any of the allegations contained in Counts 1 and 2 are deemed to state causes of action against this Defendant, Defendant denies each and every allegation contained in said Counts, including all subparagraphs contained therein, to the extent consistent with its Answers to Counts

3 and 4. This Defendant lacks knowledge and/or information sufficient to admit or deny allegations contained in Counts 2 and 3 directed against other defendants.

WHEREFORE, this Defendant prays that Counts 1 and 2 the Complaint be dismissed with prejudice as to Defendant Phillips 66 Company and that Defendant Phillips 66 Company be awarded its costs and expenses incurred herein, as well as any further relief the Court deems just and proper.

**THIS DEFENDANT DEMANDS TRIAL BY JURY OF TWELVE**

**COUNT 3**
**VS. EMPLOYER DEFENDANTS (NEGLIGENCE)**

1. This Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 1 of Count 3.

2. This Defendant denies the allegations of Paragraph 2 of Count 3 as they pertain to it. This Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 2 of Count 3 as they pertain to others.

3. Paragraph 3 of Count 3 states legal conclusions to which no responses are required. To the extent responses are deemed required, this Defendant denies the allegations of Paragraph 3 of Count 3.

4. Paragraph 4 of Count 3 states legal conclusions to which no responses are required. To the extent responses are deemed required, this Defendant denies the allegations of Paragraph 4 of Count 3.

5. Paragraph 5 of Count 3 states legal conclusions to which no responses are required. To the extent a response may be deemed required, this Defendant denies the allegations contained in Paragraph 5 of Count 3.

6.      Paragraph 6 of Count 3 states legal conclusions to which no responses are required.  To the extent a response may be deemed required, this Defendant denies the allegations contained in Paragraph 6 of Count 3, including all its subparagraphs.

7.      Paragraph 7 of Count 3 states legal conclusions to which no responses are required.  To the extent a response may be deemed required, this Defendant denies the allegations contained in Paragraph 7 of Count 3.

WHEREFORE, this Defendant prays that Count 3 of the Complaint be dismissed with prejudice as to Defendant PHILLIPS 66 COMPANY, and that Defendant be awarded its costs and expenses incurred herein, as well as any further relief the Court deems just and proper.

**THIS DEFENDANT DEMANDS TRIAL BY JURY OF TWELVE**

**COUNT 4**
**VS. EMPLOYER DEFENDANTS**
**(WILLFUL AND WANTON MISCONDUCT)**

1.      This Defendant denies the allegations of Paragraph 1 of Count 4.

2.      This Defendant denies the allegations of Paragraph 2 of Count 4.

3.      Paragraph 3 of Count 4 states legal conclusions to which no responses are required.

4.      Paragraph 4 of Count 4 states legal conclusions to which no responses are required.  To the extent a response may be deemed required, this Defendant denies the allegations contained in Paragraph 4 of Count 4, and all its subparagraphs.

5.      Paragraph 5 of Count 4 states legal conclusions to which no responses are required.  To the extent a response may be deemed required, this Defendant denies the allegations contained in Paragraph 5 of Count 4.

6.    Paragraph 6 of Count 4 should be stricken pursuant to 735 ILCS 5/2-604.1. Subject to and without waiving the same, this Defendant denies the allegations contained in Paragraph 6 of Count 4.

WHEREFORE, this Defendant prays that Count 4 of the Complaint be dismissed with prejudice as to Defendant PHILLIPS 66 COMPANY, and that Defendant be awarded its costs and expenses incurred herein, as well as any further relief the Court deems just and proper.

**THIS DEFENDANT DEMANDS TRIAL BY JURY OF TWELVE**

**COUNTS 5 THROUGH 10**

Counts 5 through 10 of Plaintiffs' Complaint make no claims nor seek any relief against this Defendant.  Consequently, no response on the part of this Defendant is required.  However, to the extent that any of the allegations contained in Counts 5 through 10 are deemed to state causes of action against this Defendant, Defendant denies each and every allegation contained in said Counts, including all subparagraphs contained therein, to the extent consistent with its Answers to Counts 3 and 4.  This Defendant lacks knowledge and/or information sufficient to admit or deny allegations contained in Counts 5 through 10 directed against other defendants.

WHEREFORE, this Defendant prays that Counts 5 through 10 of the Complaint be dismissed with prejudice as to Defendant Phillips 66 Company and that Defendant Phillips 66 Company be awarded its costs and expenses incurred herein, as well as any further relief the Court deems just and proper.

**THIS DEFENDANT DEMANDS TRIAL BY JURY OF TWELVE**

**COUNT 11 – LOSS OF CONSORTIUM**
**(VS. ALL DEFENDENTS)**

1.    Paragraph 1 of Count 11 states legal conclusions to which no responses are required.  To the extent responses are deemed required, this Defendant denies the allegations in Paragraph 1 of Count 11 as they pertain to it.  This Defendant lacks knowledge and/or

information sufficient to admit or deny the allegations contained in Paragraph 1 of Count 11 as they pertain to others.

WHEREFORE, this Defendant prays that Count 11 of the Complaint be dismissed with prejudice as to Defendant Phillips 66 Company and that Defendant Phillips 66 Company be awarded its costs and expenses incurred herein, as well as any further relief the Court deems just and proper.

**THIS DEFENDANT DEMANDS TRIAL BY JURY OF TWELVE**

**DEFENDANT'S DEFENSES**

This Defendant, in further answer to a Plaintiffs' claims for relief and for its Affirmative and Other Defenses to the same, states as follows:

1. Plaintiffs' Complaint fails to state a claim upon which relief can be granted and/or fails to set forth with sufficient specificity facts or alleged facts upon which the claim is based so as to fully and completely apprise this Defendant of the nature and basis of the claims and allegations made against it in violation of 735 ILCS 5/2-612, as well as Madison County's Standing Case Management Order for All Asbestos Personal Injury Cases, section I (A).

2. Plaintiffs' Complaint fails to allege with sufficient particularity the specific "toxic substances" or "toxic-containing substances, materials, products, and/or equipment" attributable to this Defendant that Plaintiff was allegedly exposed to, the time frame when he was allegedly exposed to such, and the nature and scope of such alleged exposure.

3. Plaintiff's Complaint fails to allege that the purported exposure attributable to this Defendant was a substantial factor in the proximate causation of Plaintiff's alleged injuries.

4. The allegations of Plaintiffs' Complaint are insufficient in that they fail to set forth facts that show this Defendant either owed a duty to Plaintiffs, or plead with sufficient specificity that this Defendant's conduct or alleged failure to act rose to the level of negligence.

5. Plaintiffs' Complaint is barred by the exclusivity provisions of the workers' compensation and occupational disease laws of the State of Illinois. See 820 ILCS 305/1 *et seq*., 820 ILCS 310/1 *et seq*.

6. Plaintiffs' complaint is barred by the applicable statute of limitations since Plaintiffs failed to file the lawsuit within two (2) years of the date that the alleged cause of action accrued (i.e. when he knew of his injury and he knew or should have known it was wrongfully caused). 735 ILCS 5/13-202 and 13-203. If Plaintiffs wants to take advantage of the "discovery rule" which tolls the statute of limitations until Plaintiffs knew or should have known of the existence of his right to sue, then Plaintiffs must plead facts necessary to explain why the cause of action was not discovered sooner. Pratt v. Sears Roebuck & Company, 71 Ill. App. 3d 825, 390 N.E. 2d 471 (1st Dist. 1979). Plaintiffs' Complaint fails to do so.

7. Plaintiffs' Complaint is barred by the State of Illinois' statute of repose inasmuch as 735 ILCS 5/13-214(b) provides for a ten year statute of repose involving the design, planning, supervision, observation or management of construction or construction of an improvement to real property.

8. The negligence of Plaintiff was the sole proximate cause or a proximate contributing cause of the injuries and damages complained of. Accordingly, Plaintiffs' recovery, if any, should be barred or otherwise limited pursuant to 735 ILCS 5/2-1116.

9. Plaintiff and/or others in his proximity failed to use the alleged products and materials at issue as reasonably anticipated.

10. Plaintiff and/or others in his proximity used the alleged products and materials at issue for purposes not intended.

11. Plaintiff and/or others in his proximity failed to undertake the precautions a reasonable, careful user of the products and materials at issue would take to protect themselves

against dangers that a reasonable careful user would reasonably appreciate under the same or similar circumstances.

12. Plaintiff and/or others in his proximity, and any employers, persons, or entities other than this Defendant were sophisticated purchasers and users of the products and materials at issue and who required no warnings in order to be fully apprised of the potential dangers of the use of such products and materials.

13. The complained of injuries and damages, if any, were solely and proximately caused by the intervening and superseding conduct of others over whom this Defendant neither had nor exercised any control over, barring any possible recovery by Plaintiffs against this Defendant.

14. Plaintiffs have failed to join all parties necessary for a just adjudication of this matter.

15. Defendant is not jointly and severally liable in that the fault of it, if any, was less than twenty-five percent (25%) of the total fault attributable to all parties, pursuant to 735 ILCS 5/2-1117.

16. At all times material herein, the state of medical and industrial art was such that there was no generally accepted or recognized knowledge of the potential health hazards associated with the use of the alleged substances at issue in Plaintiffs' Complaint.

17. If any of the allegations of Plaintiffs' Complaint with respect to the substances at issue are proven, then Plaintiffs is barred from any recovery due to the fact that there was no known substitute for said substances.

18. The state of the medical and scientific knowledge and the published literature and other materials reflecting said state of the medical art at all times pertinent hereto was such that this Defendant did not know nor could have known that said substances at issue, if any, presented a foreseeable risk of harm to Plaintiff in the normal and expected use of said

substances according to the law in full force and effect at the time of the transactions complained of.

19.    If Plaintiff sustained injuries as a result of the alleged exposure to substances purportedly attributable to this Defendant, which this Defendant denies, the amount of any such exposure and any attributable to the alleged injuries and damages was and is negligible in degree and amount, and, hence, *de minimis;* therefore, this Court should give no cognizance thereto and should deny Plaintiffs any recovery against this Defendant.

20.    At all times pertinent, any substances allegedly attributable to this Defendant were in compliance with all health and safety statutes and regulations applicable to said substances.

21.    Plaintiffs' agreements with third-parties – including, but not limited to, any other defendant hereto – whether by prior settlement payment, release, covenant not to sue or not to enforce a judgment, etc., shall reduce via setoff or otherwise bar any damages from this Defendant by the stipulated amount of such agreements or the amount of consideration paid by said third-parties, whichever is greater.

22.    Plaintiffs failed to mitigate damages.

23.    Defendant asserts and incorporates the applicable local order deeming counterclaims for contribution filed and denied. *See* Madison County's Standing Case Management Order for All Asbestos Personal Injury Cases, section I (B).

24.    Defendant incorporates and adopts herein the defenses made in response to Plaintiff's Complaint by other co-defendants in this cause of action.

25. Defendant reserves the right to amend and assert any additional defenses, which may become available or apparent during the course of discovery.

**Respectfully Submitted,**
**SWANSON, MARTIN & BELL, LLP**

By: /s/ Gary C. Pinter
One of the attorneys for
Defendant PHILLIPS 66 COMPANY

Gary C. Pinter, ARDC #6293560
**SWANSON, MARTIN & BELL, LLP**
103 West Vandalia St., Suite 215
Edwardsville, IL 62025
Office: 618-655-3131
Direct: 618-655-3119
E-mail: gpinter@smbtrials.com

## VERIFICATION

I, Gary C. Pinter, being first duly sworn on oath, depose and state that I am an attorney for PHILLIPS 66 COMPANY in the above-entitled case; that I am informed as to the allegations for which PHILLIPS 66 COMPANY has answered that there is insufficient knowledge to form a belief as to the truth or falsity of the allegations of the Complaint; that PHILLIPS 66 COMPANY, in fact lacks such information; and that I believe said assertions of insufficient knowledge are true.

s/ Gary C. Pinter
Gary C. Pinter (ARDC# 6293560)
Under penalties as provided by law Pursuant to 735 ILCS 5/1-109, I certify that the statements set forth herein are true and correct.

## PROOF OF SERVICE

On **March 15, 2023,** the undersigned certifies that a copy of the foregoing has been electronically served upon all counsel of record through MyDocFileServe.

s/ Gary C. Pinter

***EFILED***
Case Number 2023LA000191
Date: 3/15/2023 4:47 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

e-Served
by MyDocFileServe
2702741
Mar 15 2023 04:47 PM

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCIT**
**MADISON COUNTY, ILLINOIS**

DONALD BANNISTER and BETTY BANNISTER, )
Plaintiffs, )
v. ) No. 23 LA 191
JOHN CRANE, INC., *et al.*, )
Defendants. )

**DEFENDANT PHILLIPS 66 COMPANY'S ENTRY OF APPEARANCE**

The undersigned, Gary C. Pinter of the law firm of Swanson Martin & Bell, LLP, hereby enters his appearance as counsel of record on behalf of PHILLIPS 66 COMPANY.

**DEFENDANT DEMANDS A TRIAL BY JURY**.

**SWANSON, MARTIN & BELL, LLP**

By: /s/ Gary C. Pinter
One of the attorneys for
Defendant PHILLIPS 66 COMPANY

Gary C. Pinter, ARDC #6293560
**SWANSON, MARTIN & BELL, LLP**
103 West Vandalia St., Suite 215
Edwardsville, IL 62025
Office: 618-655-3131
Direct: 618-655-3119
E-mail: gpinter@smbtrials.com

**PROOF OF SERVICE**

On **March 15, 2023,** the undersigned certifies that a copy of the foregoing has been electronically served upon all counsel of record through MyDocFileServe.

/s/ Gary C. Pinter

***EFILED***
Case Number 2023LA000191
Date: 3/16/2023 4:20 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| DONALD BANNISTER and BETTY BANNISTER, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 2023-LA-191 |
| JOHN CRANE, et al., | ) | |
| Defendants. | ) | |

**ENTRY OF APPEARANCE**

Come now, Matthew B. Champlin and Emilee M. Bramstedt, of HeplerBroom LLC, and hereby enter their appearance as counsel for Defendant, HWRT Oil Company, LLC, in the above-referenced cause.

**HEPLERBROOM LLC**

By: */s/ Matthew B. Champlin*

Matthew B. Champlin, #6282642
Emilee M. Bramstedt, #6335610
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
Telephone: (618) 656-0184
mbc@heplerbroom.com
emb@heplerbroom.com
*Attorneys for HWRT Oil Company, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 16, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system. The undersigned further certifies that a true and correct copy of the foregoing document was served electronically on March 16, 2023 on the following counsel of record:

Ted N. Gianaris
Joshua A. Edelson
GIANARIS TRIAL LAWYERS
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
***Attorneys for Plaintiff***

/s/ *Matthew B. Champlin*

***EFILED***
Case Number 2023LA000191
Date: 3/16/2023 4:20 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| DONALD BANNISTER and BETTY BANNISTER, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 2023-LA-191 |
| JOHN CRANE, et al., | ) | |
| Defendants. | ) | |

**DEFENDANT HWRT OIL COMPANY, LLC'S
MOTION TO DISMISS COUNTS 3, 4, AND 11 OF
PLAINTIFFS' COMPLAINT PURSUANT TO 735 ILCS 5/2-619**

COMES NOW, Defendant, HWRT Oil Company, LLC (hereinafter "HWRT"), by and through its attorneys, HeplerBroom, LLC, and for its Motion to Dismiss Counts 3, 4, and 11 of Plaintiffs' Complaint Pursuant to 735 ILCS 5/2-619, states as follows:

1. Plaintiffs filed the instant suit on February 16, 2023.

2. Relevant to Plaintiffs' claims against HWRT, Plaintiffs allege that Donald Bannister was employed by "Shell Oil Company, Phillips 66 Company, and HWRT Oil Company from 1967-2004." *Plaintiffs' Complaint* at Count 3, ¶ 1. Plaintiffs allege that during the course of Donald Bannister's employment, he was exposed to "various toxic substances known to be cancer-causing agents." *Complaint* at Count 3, ¶ 2. He was allegedly last exposed to these substances in 2004. *Complaint* at Count 3, ¶ 3. Plaintiffs

claim that Donald Bannister was later diagnosed with various cancers, and "first became aware during 2022" that the cancers "were wrongfully caused by Defendants." *Complaint* at Facts Common to All Counts, ¶ 9. Counts 2 (negligence), 3 (willful and wanton), and 11 (loss of consortium) are brought against the "employer defendants," including HWRT.

3. If Donald Bannister was an employee of HWRT as alleged,[1] Section 2-619 of the Code of Civil Procedure requires dismissal of Plaintiffs' claims because they were not commenced within the time limited by law. *See* 735 ILCS 5/2-619(a)(5).

4. Under the Illinois Workers' Occupational Diseases Act, 820 ILCS 310/1(f), a claimant cannot bring a claim for occupational disease as a result of exposure to benzene and similar substances unless disablement occurs within two years after the last exposure to the hazards of the disease. This provision operates as a statute of repose.

5. Here, Plaintiffs allege that Mr. Bannister's "last occupational exposure" to the alleged toxic substances was in 2004. *Complaint* at Count 3, ¶ 3. Therefore, under Section 310/1(f), Plaintiffs time in which to file an occupational disease claim expired by the end of 2006. At that time, Mr. Bannister's claims under the Act expired, and at all times prior to May 17, 2019, the Occupational Disease Act and Workers Compensation Act were the exclusive avenues for an employee to recover for work-related injuries or illness from his employer. *See* 820 ILCS 310/5 and 820 ILCS 310/11.

---

[1] In reality, and as set forth in the attached affidavit provided to counsel for Plaintiffs, HWRT never employed Bannister. *See Affidavit of Matt Schrimpf*, attached hereto as *Exhibit A*. That said, HWRT understands that for purposes of a Section 2-619 motion, the facts as pleaded by Plaintiffs are taken as true.

6.      On May 17, 2019, the legislature amended the Occupational Diseases Act to include the following language:

> Subsection (a) of Section 5 and Section 11 do not apply to any injury or death resulting from an occupational disease as to which the recovery of compensation benefits under this Act would be precluded due to the operation of any period of repose or repose provision.

820 ILCS 310/1.1.  Subsection (a) of Section 5 provides that there is no common law or statutory right to recover damages from one's employer, and Section 11 provides that recovery under the Act is exclusive and "in place of any and all other civil liability whatsoever."  *See* 820 ILCS 310/5(a) and 820 ILCS 310/11.  The 2019 amendment therefore eliminated Occupational Diseases Act exclusivity and allows civil lawsuits when claims under the Act are barred by the statute of repose.  It is based upon this amendment that Plaintiffs assert that they are entitled to bring suit against the alleged "employer defendants."  *Plaintiffs' Complaint* at Count 3, ¶ 3.

7.      Section 1.1 does not apply retroactively, however.  There is no mention of retroactive application in Section 1.1, and retroactive application impacts vested rights of employers.  At all times during Mr. Bannister's alleged employment, the exclusive remedy for workplace occupational disease was the Occupational Diseases Act.  In 2006, when the 2-year repose period ran under the Act, there was no right to file a civil action, and Plaintiffs' right to recovery was thereby extinguished.  In short, the law in Illinois at the time of Donald Bannister's alleged exposure was that employers were not liable for

occupational diseases that manifested themselves (*i.e.*, disablement occurring) more than 2 years after last exposure. *See* 820 ILCS 310/1(f). And that is the case here.

## ARGUMENT

### I. Section 1.1 of the Occupational Disease Act does not apply retroactively, and the 2019 legislation cannot revive Plaintiffs' time-barred claim.

8. To determine whether a new statutory amendment is to be applied retroactively, the Illinois Supreme Court determines whether the legislature has prescribed the temporal reach of the new amendment. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 38 (2001). Because Section 1.1 does not indicate whether it is to be applied retroactively, the Statute on Statutes must be used as the default guide for the temporal reach of this new statute. *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 331-332 (2006). The Statute on Statutes provides, in pertinent part:

> **No new law shall be construed to repeal a former law,** whether such former law is expressly repealed or not, **as to any . . . right accrued**, or claim arising under the former law, **or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect,** save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding.

5 ILCS 70/4 (emphasis added).

9. Section 4 of the Statute on Statutes permits the retroactive application of "procedural or remedial provisions," but explicitly "prohibits retroactive application of

statutory changes that affect substantive provisions or vested rights." *People v. Glisson*, 202 Ill. 2d 499, 509 (2002). Indeed, it is well-established that the "legislature lacks the power to reach back and breathe life into a time-barred claim." *Sepmeyer v. Holman*, 162 Ill. 2d 249, 254 (1994). This long-standing principle is centered upon the view that a defendant has a constitutionally protected right to not be sued after a plaintiff's claim becomes barred by the applicable statute. *See Bd. of Educ. of Normal Sch. Dist. v. Blodgett*, 155 Ill. 441, 446 (1895) ( "when the bar of a statute of limitations has become complete by the running of the full statutory period, the right to plead the statute as a defense is a vested right, which cannot be destroyed by legislation . . ."); *M.E.H. v. L.H.*, 177 Ill. 2d 207, 218 (1997) ("a defense based on the expiration of a limitations period is a vested right protected by the constitution and beyond legislative interference."). The expiration of a prescribed statutory period for a cause of action creates a vested right protected by the State's constitution. *M.E.H.*, 177 Ill. 2d at 218; *Sepmeyer*, 162 Ill. 2d at 255; *Blodgett*, 155 Ill. at 446.

10. The fact that Section 1.1 removes a time-barred claim from the purview of the Occupational Diseases Act as opposed to expressly invalidating or extending the statute of repose contained therein does not change the analysis. During the period of Mr. Bannister's claimed employment, and for nearly 15 years after his employment, any cause of action for benzene exposure was limited to a claim to be brought under the Occupational Diseases Act. Any such claim had to be brought within 2 years of last

exposure. HWRT therefore has had a constitutionally protected right not to be sued for Mr. Bannister's occupational disease claim since 2006. A legislative enactment passed over a decade later cannot revive Plaintiffs' extinguished claims to the detriment of HWRT.

11. Plaintiffs' claims are time-barred, and dismissal of HWRT is required pursuant to 735 ILCS 5/2-619(a)(5).

WHEREFORE, Defendant, HWRT Oil Company, LLC, respectfully requests that this Court dismiss Counts 3, 4, and 11 of Plaintiffs' Complaint, with prejudice, award Defendant costs associated with this action, and grant Defendant any further relief this Court deems appropriate.

Respectfully submitted,

**HEPLERBROOM, LLC**

**By:** *<u>/s/ Matthew B. Champlin</u>*
Matthew B. Champlin, #6282642
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
Telephone: (618) 656-0184
mbc@heplerbroom.com
***Attorneys for HWRT Oil Company, LLC***

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 16, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system. The undersigned further certifies that a true and correct copy of the foregoing document was served electronically on March 16, 2023 on the following counsel of record:

Ted N. Gianaris
Joshua A. Edelson
GIANARIS TRIAL LAWYERS
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com

*Attorneys for Plaintiff*

/s/ *Matthew B. Champlin*

IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | | |
|---|---|---|
| DONALD BANNISTER and BETTY BANNISTER, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 2023-LA-191 |
| JOHN CRANE, et al., | ) | |
| Defendants. | ) | |

**AFFIDAVIT**

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | |
| | ) | ss. |
| COUNTY OF MADISON | ) | |

I, Matt Schrimpf, being first duly sworn upon my oath, do depose and state that I am of legal age, suffering under no legal disability and, if called to testify at the trial of this matter, would competently testify as follows:

1. I am an owner and shareholder of Piasa Enterprises, Inc., and I am familiar with and knowledgeable of the companies owned by Piasa Enterprises, Inc, and the companies' employees.

2. Piasa Enterprises, Inc. wholly owns HWRT Oil Company, LLC.

3. Plaintiff filed this lawsuit against several Defendants, including HWRT Oil Company. Plaintiff Donald Bannister alleges that he was employed by HWRT Oil Company at some point between 1967 and 2004. *See Complaint* at Count III, ¶ 1. He alleges his last occupational exposure to benzene was on or about 2004. *See Complaint* at Count III, ¶ 3.



4. HWRT Oil Company, LLC (improperly named in the lawsuit as HWRT Oil Company) was not formed until 2004. When HWRT Oil Company, LLC was formed in 2004, I was the Corporate Secretary.

5. Based upon my personal knowledge and confirmation through review of company records, Donald Bannister was never employed by HWRT Oil Company, LLC.

FURTHER AFFIANT SAYETH NOT.

DATED this 3 day of MARCH, 2023.

MATTHEW W. SCHRIMPF

SUBSCRIBED and sworn to before me this 3rd day of March, 2023.

OFFICIAL SEAL
DAVID M. FRITZ
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires May 10, 2026

Notary Public

***EFILED***
Case Number 2023LA000191
Date: 3/17/2023 10:54 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT MADISON COUNTY, ILLINOIS**

**Donald Bannister**

Plaintiff,

**V.**

**John Crane, Inc., et al.**

Defendants.

**Index No: 2023LA000191**

Job ID: 11456

## AFFIDAVIT OF SERVICE

STATE OF ILLINOIS )
) ss.:
COUNTY OF SANGAMON )

I, John Pennell, being duly sworn, deposes and says that I am over the age of 18 years and not a party to this action, and that I was authorized by law to make service within the boundaries of the state where service was effectuated.

On February 22, 2023 at 19:10 (UTC), I served the within **SUMMONS AND COMPLAINT** upon **3M COMPANY, f/k/a Minnesota Mining and Manufacturing Company at Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL, 62703** in the manner indicated below:

REGISTERED AGENT: By delivering a true copy of the aforementioned documents to Lyle Neeman, Intake Dept, of the above named Defendant(s).

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| Sex | Color of Skin/Race | Color of Hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Male | Caucasian | Gray | Over 61 Years | 5" 4' To 5" 8' | 131-160 Lbs |

**Other Features:**

Sworn and subscribed before me on 02/22/2023 by an affiant who is personally known to me or produced identification.

Notary Public

02/22/2023 — Date

10/04/2024 — Commission Expires

OFFICIAL SEAL
RACHEL PENNELL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-04-2024

**John Pennell**

License No. 117.001609
Legalex Litigation Support Services
99 Wall Street, Suite 851, New York, NY, 10005

***EFILED***
Case Number 2023LA000191
Date: 3/17/2023 10:54 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

# AFFIDAVIT OF SERVICE

State of Illinois County of Madison Case No. 2023LA191

**Title of Action:** Donald Bannister and Betty Bannister – v- John Crane, Inc. et al.,

I the undersigned am an adult resident of the state and not a party to the action. I hereby certify that on 2/24/2023 at 3:05 pm. I duly served:

Name: ChemGuard
*Plaintiff*

By Serving: Joan Hansen, *Name* — Security officer authorized to accept legal service on behalf of ChemGuard *Title*

Business: 2300 Aerial Drive, Marinette, WI 54143
*Address*

**Manner of Service:**

☐ Personal Service

☒ Corporate Service: by leaving, during office hours, copies at the office of the person / entity being served, leaving same with the person apparently in charge thereof,

☐ After diligent search and inquiry, having made ____ attempts by leaving true and correct copies of the above documents with a competent member of the family over the age of fourteen, and informed that person of the contents thereof

☐ By posting copies in a conspicuous manner and mailing to the address of the person / entity being served (use only for evictions)

**Non-Service:**
After due search, careful inquiry and diligent attempts at the address(s) listed above, I have been unable to affect process upon the person/entity being served because of the following reason(s):

☐ Unknown at address ☐ Moved, no forwarding ☐ Vacant
☐ Not home three attempts ☐ Evading ☐ Search conducted, whereabouts unknown

**Notes:** ChemGuard moved offices from One Stanton St., Marinette, WI., to 2300 Aerial Dr., Marinette, WI 54143

**Type of Documents Served:**

☒ Authenticated Summons and Complaint

At the time of service, I did place upon it the date, time, and my name, leaving a true and correct copy thereof, and that the server knew the person served to be the defendant (or other) mentioned and named therein.

**Admission of Service:**

Subscribed and sworn to before me on Feb. 25, 2023

Jeffrey C. Skorik
*Notary Public*, Marinette *County, State of Wisconsin*

My commission expires June 24, 2025

JEFFREY C. SKORIK NOTARY PUBLIC STATE OF WISCONSIN

[signature] *Signature*

Service Fee: ________

***EFILED***
Case Number 2023LA000191
Date: 3/17/2023 10:54 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT MADISON COUNTY, ILLINOIS**

**Donald Bannister**
Plaintiff,

**v.**

**John Crane, Inc., et al.**
Defendants.

**Index No: 2023LA000191**
Job ID: 11453

**AFFIDAVIT OF SERVICE**

STATE OF ILLINOIS )
) ss.:
COUNTY OF COOK )

I, Eugene Sherman, being duly sworn, deposes and says that I am over the age of 18 years and not a party to this action, and that I was authorized by law to make service within the boundaries of the state where service was effectuated.

On February 22, 2023 at 14:34 (UTC), I served the within **SUMMONS AND COMPLAINT** upon **E.I. du PONT de NEMOURS & CO.** at **CT CORPORATION SYSTEM, 208 S. LASALLE STREET, SUITE 814, CHICAGO, IL, 60604** in the manner indicated below:

REGISTERED AGENT: By delivering a true copy of the aforementioned documents to Derrick Hackett, Intake Specialist, of the above named Defendant(s).

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| **Sex** | **Color of Skin/Race** | **Color of Hair** | **Age** | **Height** | **Weight** |
|---|---|---|---|---|---|
| Male | African American | Black | 35-50 Years | 5" 9' To 6" | 161-200 Lbs |
| **Other Features:** | | | | | |

Sworn and subscribed before me on 02/22/2023 by an affiant who is personally known to me or produced identification.

[signature]
Notary Public

2/22/23
Date

Commission Expires

OFFICIAL SEAL
YELENA OGULNIK
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 12/27/2026

[signature]
**Eugene Sherman**
License No. 117.001609
Legalex Litigation Support Services
99 Wall Street, Suite 851, New York, NY, 10005

***EFILED***
Case Number 2023LA000191
Date: 3/17/2023 10:54 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

# IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT MADISON COUNTY, ILLINOIS

**Donald Bannister**

Plaintiff,

**V.**

**John Crane, Inc., et al.**

Defendants.

**Index No: 2023LA000191**

Job ID: 11452

## AFFIDAVIT OF SERVICE

STATE OF ILLINOIS )
) ss.:
COUNTY OF MADISON )

I, Ray Sinclair, being duly sworn, deposes and says that I am over the age of 18 years and not a party to this action, and that I was authorized by law to make service within the boundaries of the state where service was effectuated.

On February 24, 2023 at 2:02 PM (EDT), I served the within **SUMMONS AND COMPLAINT** upon **HWRT OIL COMPANY, LLC** at **Matthew W. Schrimpf, 1 Piasa Lane, Hartford, IL, 62048** in the manner indicated below:

BUSINESS: By delivering a true copy of the aforementioned documents to Matthew, Registered agent, of the above named Defendant (s).

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| Sex | Color of Skin/Race | Color of Hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Male | Caucasian | Brown | 35-50 Years | Over 6" | Over 200 Lbs |

**Other Features:**

Sworn and subscribed before me on 03/02/2023 by an affiant who is personally known to me or produced identification.

Cristine L Crawford
Notary Public

3-3-23 Date

10-28-25 Commission Expires

OFFICIAL SEAL
CRISTINE L. CRAWFORD
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-28-2025

Ray Sinclair

**Ray Sinclair**

License No. 129. 366781

Legalex Litigation Support Services

99 Wall Street, Suite 851, New York, NY, 10005

***EFILED***
Case Number 2023LA000191
Date: 3/17/2023 10:54 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT MADISON COUNTY, ILLINOIS**

**Donald Bannister**

Plaintiff,

**V.**

**John Crane, Inc., et al.**

Defendants.

**Index No: 2023LA000191**

Job ID: 11449

## AFFIDAVIT OF SERVICE

STATE OF ILLINOIS )
) ss.:
COUNTY OF SANGAMON )

I, John Pennell, being duly sworn, deposes and says that I am over the age of 18 years and not a party to this action, and that I was authorized by law to make service within the boundaries of the state where service was effectuated.

On February 22, 2023 at 19:10 (UTC), I served the within **SUMMONS AND COMPLAINT** upon **ITG BRANDS LLC** at **Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL, 62703** in the manner indicated below:

REGISTERED AGENT: By delivering a true copy of the aforementioned documents to Lyle Neeman, Intake Dept, of the above named Defendant(s).

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| Sex | Color of Skin/Race | Color of Hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Male | Caucasian | Gray | Over 61 Years | 5" 4' To 5" 8' | 131-160 Lbs |
| **Other Features:** | | | | | |

Sworn and subscribed before me on 02/22/2023 by an affiant who is personally known to me or produced identification.

Notary Public

02/22/2023 10/04/2024

Date Commission Expires

OFFICIAL SEAL
RACHEL PENNELL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-04-2024

**John Pennell**

License No. 117.001609
Legalex Litigation Support Services
99 Wall Street, Suite 851, New York, NY, 10005

***EFILED***
Case Number 2023LA000191
Date: 3/17/2023 10:54 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT MADISON COUNTY, ILLINOIS**

**Donald Bannister**
Plaintiff,

**V.**

**John Crane, Inc., et al.**
Defendants.

**Index No: 2023LA000191**

Job ID: 11457

**AFFIDAVIT OF SERVICE**

STATE OF ILLINOIS )
) ss.:
COUNTY OF COOK )

I, Eugene Sherman, being duly sworn, deposes and says that I am over the age of 18 years and not a party to this action, and that I was authorized by law to make service within the boundaries of the state where service was effectuated.

On February 22, 2023 at 14:34 (UTC), I served the within **SUMMONS AND COMPLAINT** upon **JOHN CRANE INC** at **CT CORPORATION SYSTEM, 208 S. LASALLE STREET, SUITE 814, CHICAGO, IL, 60604** in the manner indicated below:

REGISTERED AGENT: By delivering a true copy of the aforementioned documents to Derrick Hackett, Intake Specialist, of the above named Defendant(s).

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| Sex | Color of Skin/Race | Color of Hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Male | African American | Black | 35-50 Years | 5" 9' To 6" | 161-200 Lbs |
| **Other Features:** | | | | | |

Sworn and subscribed before me on 02/22/2023 by an affiant who is personally known to me or produced identification.

[signature]
Notary Public

2/22/23
Date

OFFICIAL SEAL Commission Expires
YELENA OGULNIK
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 12/27/2026

[signature]
**Eugene Sherman**
License No. 117.001609
Legalex Litigation Support Services
99 Wall Street, Suite 851, New York, NY, 10005

***EFILED***
Case Number 2023LA000191
Date: 3/17/2023 10:54 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

# IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT MADISON COUNTY, ILLINOIS

**Donald Bannister**

Plaintiff,

**v.**

**John Crane, Inc., et al.**

Defendants.

**Index No: 2023LA000191**

Job ID: 11458

## AFFIDAVIT OF SERVICE

STATE OF PENNSYLVANIA )
) ss.:
COUNTY OF CHESTER )

I, Joseph Valentine, being duly sworn, deposes and says that I am over the age of 18 years and not a party to this action, and that I was authorized by law to make service within the boundaries of the state where service was effectuated.

On February 24, 2023 at 11:45 AM (EDT), I served the within **SUMMONS AND COMPLAINT** upon **NATIONAL FOAM, INC.** at **350 E. Union Street, West Chester, PA, 19382** in the manner indicated below:

BUSINESS: By delivering a true copy of the aforementioned documents to Damian Kerns, Chain Coordinator, of the above named Defendant(s).

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| Sex | Color of Skin/Race | Color of Hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Male | Caucasian | Black | 35-50 Years | 5" 4' To 5" 8' | 131-160 Lbs |
| **Other Features:** | | | | | |

Sworn and subscribed before me on 02/28/2023 by an affiant who is personally known to me or produced identification.

Notary Public

Commonwealth of Pennsylvania - Notary Seal
STEPHANIE HOPE SEGAL - Notary Public
Bucks County
My Commission Expires Apr 11, 2024
Commission Number 1240980

3/1/2023
Date

Commission Expires

Joseph Valentine
License No. N/A
Legalex Litigation Support Services
99 Wall Street, Suite 851, New York, NY, 10005

***EFILED***
Case Number 2023LA000191
Date: 3/17/2023 10:54 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT MADISON COUNTY, ILLINOIS**

**Donald Bannister**

Plaintiff,

**V.**

**John Crane, Inc., et al.**

Defendants.

**Index No: 2023LA000191**

Job ID: 11455

## AFFIDAVIT OF SERVICE

STATE OF ILLINOIS )
) ss.:
COUNTY OF SANGAMON )

I, John Pennell, being duly sworn, deposes and says that I am over the age of 18 years and not a party to this action, and that I was authorized by law to make service within the boundaries of the state where service was effectuated.

On February 22, 2023 at 19:10 (UTC), I served the within **SUMMONS AND COMPLAINT** upon **PHILLIPS 66 COMPANY** at **Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL, 62703** in the manner indicated below:

REGISTERED AGENT: By delivering a true copy of the aforementioned documents to Lyle Neeman, Intake Dept, of the above named Defendant(s).

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| Sex | Color of Skin/Race | Color of Hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Male | Caucasian | Gray | Over 61 Years | 5" 4' To 5" 8' | 131-160 Lbs |
| **Other Features:** | | | | | |

Sworn and subscribed before me on 02/22/2023 by an affiant who is personally known to me or produced identification.

Notary Public

02/22/2023 10/04/2024

Date Commission Expires

OFFICIAL SEAL
RACHEL PENNELL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-04-2024

**John Pennell**
License No. 117.001609
Legalex Litigation Support Services
99 Wall Street, Suite 851, New York, NY, 10005

***EFILED***
Case Number 2023LA000191
Date: 3/17/2023 10:54 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT MADISON COUNTY, ILLINOIS**

**Donald Bannister**

Plaintiff,

**v.**

**John Crane, Inc., et al.**

Defendants.

**Index No: 2023LA000191**

Job ID: 11451

## AFFIDAVIT OF SERVICE

STATE OF ILLINOIS )
) ss.:
COUNTY OF SANGAMON )

I, John Pennell, being duly sworn, deposes and says that I am over the age of 18 years and not a party to this action, and that I was authorized by law to make service within the boundaries of the state where service was effectuated.

On February 22, 2023 at 19:10 (UTC), I served the within **SUMMONS AND COMPLAINT** upon **RJ REYNOLDS TOBACCO COMPANY** at **Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL, 62703** in the manner indicated below:

REGISTERED AGENT: By delivering a true copy of the aforementioned documents to Lyle Neeman, Intake Dept, of the above named Defendant(s).

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| Sex | Color of Skin/Race | Color of Hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Male | Caucasian | Gray | Over 61 Years | 5" 4' To 5" 8' | 131-160 Lbs |
| **Other Features:** | | | | | |

Sworn and subscribed before me on 02/22/2023 by an affiant who is personally known to me or produced identification.

Notary Public

02/22/2023 10/04/2024

Date Commission Expires

OFFICIAL SEAL
RACHEL PENNELL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-04-2024

**John Pennell**

License No. 117.001609
Legalex Litigation Support Services
99 Wall Street, Suite 851, New York, NY, 10005

***EFILED***
Case Number 2023LA000191
Date: 3/17/2023 10:54 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT MADISON COUNTY, ILLINOIS

| | |
|---|---|
| **Donald Bannister**<br>Plaintiff,<br>**V.**<br>**John Crane, Inc., et al.**<br>Defendants. | **Index No: 2023LA000191**<br>Job ID: 11448<br> |

## AFFIDAVIT OF SERVICE

STATE OF ILLINOIS )
) ss.:
COUNTY OF COOK )

I, Eugene Sherman, being duly sworn, deposes and says that I am over the age of 18 years and not a party to this action, and that I was authorized by law to make service within the boundaries of the state where service was effectuated.

On February 22, 2023 at 14:34 (UTC), I served the within **SUMMONS AND COMPLAINT** upon **SHELL OIL COMPANY** at **CT CORPORATION SYSTEM, 208 S. LASALLE STREET, SUITE 814, CHICAGO, IL, 60604** in the manner indicated below:

REGISTERED AGENT: By delivering a true copy of the aforementioned documents to Derrick Hackett, Intake Specialist, of the above named Defendant(s).

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| Sex | Color of Skin/Race | Color of Hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Male | African American | Black | 35-50 Years | 5" 9' To 6" | 161-200 Lbs |
| **Other Features:** | | | | | |

Sworn and subscribed before me on 02/22/2023 by an affiant who is personally known to me or produced identification.

Notary Public

2/22/23
Date

Commission Expires

OFFICIAL SEAL
YELENA OGULNIK
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 12/27/2026

**Eugene Sherman**
License No. 117.001609
Legalex Litigation Support Services
99 Wall Street, Suite 851, New York, NY, 10005

***EFILED***
Case Number 2023LA000191
Date: 3/17/2023 10:54 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT MADISON COUNTY, ILLINOIS

Donald Bannister
Plaintiff,

v.

John Crane, Inc., et al.
Defendants.

**Index No: 2023LA000191**

Job ID: 11450

## AFFIDAVIT OF SERVICE

STATE OF NEVADA )
) ss.:
COUNTY OF CARSON CITY )

I, Ted Tackett, being duly sworn, deposes and says that I am over the age of 18 years and not a party to this action, and that I was authorized by law to make service within the boundaries of the state where service was effectuated.

On February 27, 2023 at 3:07 PM (PST), I served the within SUMMONS AND COMPLAINT upon **TYCO FIRE PRODUCTS, L.P., successor in interest to The Ansul Company at CT Corporation System, 701 S Carson St, Suite 200, Carson City, NV, 89701** in the manner indicated below:

CORPORATION: By delivering a true copy of the aforementioned documents to Ana Gomes, Registered agent, of the above named Defendant(s).

A description of the Recipient, or other person served on behalf of the Recipient is as follows:

| Sex | Color of Skin/Race | Color of Hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Female | Caucasian | Brown | 21-34 Years | 5" 4' To 5" 8' | 100-130 Lbs |
| **Other Features:** | | | | | |

Sworn and subscribed before me on 02/28/2023 by an affiant who is personally known to me or produced identification.

[signature]
Notary Public

FEBRUARY 28, 2023 OCTOBER 13, 2026
Date Commission Expires

RUTH DE LEON
Notary Public, State of Nevada
Appointment No. 22-0894-02
My Appt. Expires Oct 13, 2026

[signature]
**Ted Tackett**

License No. R-2022-05114
Legalex Litigation Support Services
99 Wall Street, Suite 851, New York, NY, 10005

***EFILED***
Case Number 2023LA000191
Date: 3/22/2023 3:54 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

**STATE OF ILLINOIS, CIRCUIT COURT**

Madison COUNTY

# APPEARANCE

For Court Use Only

**Instructions**

Directly above, enter the name of the county where the case was filed.

Enter the name of the person or company that filed this case as Plaintiff/Petitioner.

Enter the name of the Defendant/Respondent.

Enter the Case Number given by the Circuit Clerk.

Donald Bannister and Betty Bannister
**Plaintiff / Petitioner** *(First, middle, last name or Company)*

v.

John Crane, Inc., et al.
**Defendant / Respondent** *(First, middle, last name)*

2023LA000191
**Case Number**

In **1**, check the box next to "Myself," if you are not an attorney. If you are an attorney, enter the name of your client in **1**, check the box next to "Their attorney," and enter your attorney or firm name in the blank.

**1. The appearance of** E.I. du Pont de Nemours and Company (now known as "EIDP, Inc.") **is entered in this case by:**
*First Middle Last*

☐ Myself
☑ Their attorney: **Tyler W. Schwettman; Shook, Hardy & Bacon L.L.P.**
*Attorney or Firm Name*

**2. I would like a trial with** *(check only one; you do not have a right to jury trial in every case)*:
☐ a judge ☐ a judge and a 6-person jury ☒ a judge and a 12-person jury

**IMPORTANT:** If you are requesting a trial by jury and e-filing the form, you may need to e-file this form two separate times, once as an Appearance and once as a Jury Demand. Check with Illinois Court Help at ilcourthelp.gov or call (833) 411-1121. You can also check with your local Circuit Clerk's office.

Under Illinois Supreme Court Rule 137, your signature means that you have read the document, that to the best of your belief, it is true and correct and that you are not filing it for an improper purpose, such as to cause delay.

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name.

Enter your complete address, telephone number, and email address, if you have one.

If you are an attorney, enter your firm name and attorney number.

/s/ Tyler W. Schwettman
*Your Signature*

**The Plaza In Clayton**
**190 Carondelet Plaza, Suite 1350**
*Street Address*

Tyler W. Schwettman
*Your Name*

**St. Louis, MO 63105**
*City, State, ZIP*

**(314) 690-0200**
*Telephone*

tschwettman@shb.com
*Email*

Shook, Hardy & Bacon L.L.P.
*Firm Name (if any)*

6333327
*Attorney # (if any)*

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

Enter the Case Number given by the Circuit Clerk: 2023LA000191

# PROOF OF DELIVERY

In **1a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information.

In **1b**, check the box to show how you are sending the document.

**CAUTION:** If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the other options.

In **c**, fill in the date and time that you are sending the document.

**1.** I am sending the *Appearance*

a. To:

Name: Gary (*First*) C. (*Middle*) Pinter (*Last*)

Address: Swanson, Martin & Bell, LLP; 330 N Wabash Ave #3300, Chicago, IL 60611 (*Street, Apt #* / *City* / *State* / *ZIP*)

Email address: gpinter@smbtrials.com

b. By:

☑ An approved electronic filing service provider (EFSP)

☐ Email *(not through an EFSP)*

*Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

☐ Personal hand delivery to:

- ☐ The party
- ☐ The party's family member who is 13 or older, at the party's residence
- ☐ The party's lawyer
- ☐ The party's lawyer's office

☐ Mail or third-party carrier

c. On: 03/21/2023 (*Date*) at: 5:00 (*Time*) ☐ a.m. ☑ p.m.

In **2**, if you are sending the document to more than 1 party or lawyer, fill in **a**, **b**, and **c**. Otherwise leave **2** blank.

In **2a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information.

In **2b**, check the box to show how you are sending the document.

**CAUTION:** If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the

In **c**, fill in the date and time that you are sending the document.

**2.** I am sending the *Appearance*

a. To:

Name: Matthew (*First*) B. (*Middle*) Champlin (*Last*)

Address: HelperBroom LLC; 130 North Main StreetP.O. Box 510Edwardsville, IL 62025 (*Street, Apt #* / *City* / *State* / *ZIP*)

Email address: matthew.champlin@heplerbroom.com

b. By:

☑ An approved electronic filing service provider (EFSP)

☐ Email *(not through an EFSP)*

*Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

☐ Personal hand delivery to:

- ☐ The party
- ☐ The party's family member who is 13 or older, at the party's residence
- ☐ The party's lawyer
- ☐ The party's lawyer's office

☐ Mail or third-party carrier

c. On: 03/21/2023 (*Date*) at: 5:00 (*Time*) ☐ a.m. ☑ p.m.

Enter the Case Number given by the Circuit Clerk: 2023LA000191

| | |
|---|---|
| If you are sending your document to more than 2 parties or lawyers, check the box and file the *Additional Proof of Delivery* with this form. | ☐ I have completed an *Additional Proof of Delivery* form. |
| Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony. | **I certify that everything in the *Proof of Delivery* is true and correct. I understand that a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.** |
| If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name. | /s/ Tyler Schwettman<br>*Your Signature*<br><br>**The Plaza In Clayton**<br>**190 Carondelet Plaza, Suite 1350**<br>*Street Address*<br><br>Tyler Schwettman<br>*Print Your Name*<br><br>**St. Louis, MO 63105**<br>*City, State, ZIP* |
| Enter your complete address, telephone number, and email address, if you have one. | **(314) 690-0200**<br>*Telephone*<br><br>tschwettman@shb.com<br>*Email*<br><br>Shook, Hardy & Bacon L.L.P.<br>*Firm Name (if any)*<br><br>6333327<br>*Attorney # (if any)* |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

***EFILED***
Case Number 2023LA000191
Date: 3/22/2023 4:30 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

***DONALD BANNISTER and BETTER BANNISTER V. JOHN CRANE, INC., et al.***

Verified Statement of Out-of-State Attorney Pursuant to Supreme Court Rule 707

I, Jennifer E. Hackman, submit this Verified Statement pursuant to Illinois Supreme Court Rule 707.

1. My full name is Jennifer Elaine Hackman, my date of birth is June 29, 1989. The address of offices from which I practice law and related email address and telephone numbers are as follows:

SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108
Phone: (816) 474-6550
Dbdwerlkotte@shb.com

2. I represent E.I. du Pont de Nemours and Company in *Bannister, et al. v. John Crane, Inc., et al.*, Case No. 2023LA000191 (Madison County, Illinois Circuit Court).

3(a). I have not filed any other appearance pursuant to this rule during this calendar year.

3(b). I have not received a registration number from the ARDC.

4(a). I list each jurisdiction of admission, including any state, territory, or commonwealth of the United States, the District of Columbia, or in a foreign country, and my full admission name and license number.

| TITLE OF COURT | FULL ADMISSION NAME | LICENSE |
|---|---|---|
| State Bar of Kansas (11/20/2015) | Jennifer Elaine Hackman | 26987 |
| USDC KS (7/8/2016) | Jennifer Elaine Hackman | N/A |
| State Bar of Missouri (9/16/2015) | Jennifer Elaine Hackman | 68109 |
| USDC WDMO | Jennifer Elaine Hackman | N/A |

4(b). I attach a letter or certificate of good standing for each of the jurisdictions listed in paragraph 4(a) above.

5. I have no office or other presence in Illinois for the practice of law.

6. I submit to the disciplinary authority of the Supreme Court of Illinois.

7. I have undertaken to become familiar with and to comply, as if admitted to practice in Illinois, with the rules of the Supreme Court of Illinois, including the Illinois Rules of Professional Conduct and the Supreme Court Rules on Admission and Discipline of Attorneys, and other Illinois law and practices that pertain to the proceeding;

(8) The full name, business address and ARDC number of the Illinois attorney with whom I have associated in the matter is:

SHOOK, HARDY & BACON L.L.P.
Tyler Schwettman
The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
ARDC #6333327

9. I certify that I have served this Statement upon the parties and/or entities listed below and that these parties are all entitled to service under this rule.

**Parties:**

Gary C. Pinter
Swanson, Martin & Bell, LLP
330 N Wabash Ave #3300, Chicago, IL 60611
618-655-3131
gpinter@smbtrials.com

***Counsel for Phillips 66 Company***

MATTHEW B. CHAMPLIN, Partner
HelperBroom LLC
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
618-307-2453
matthew.champlin@heplerbroom.com

***Counsel for HWRT Oil Company***

**Local Counsel:**
Tyler Schwettman
Shook, Hardy & Bacon, LLP
The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
Phone: (314) 690-0200
ARDC #6333327
tschwettman@shb.com

**Client:**
CORTEVA AGRISCIENCE
PO BOX 30649, 974 CENTRE RD
WILMINGTON, DE 19805-7649
FOR: E. I. du Pont de Nemours and Company (Former Name) (Domestic State: DE); EIDP, Inc (True Name)

**ARDC:**
Via Rule707@iardc.org

**Verification**

I verify the accuracy and completeness of each of the above statements.

Date: March 22, 2023

*/s/ Jennifer E. Hackman*

# The Supreme Court of Kansas

## Certificate of Good Standing

I, **Douglas T. Shima**, Clerk of the Supreme Court of the State of Kansas, do hereby certify that the Supreme Court of Kansas is the highest court of law, and the court of last resort within the State of Kansas, and has exclusive jurisdiction over and control of the admission of applicants to the bar of this state.

I do further certify that on November 20, 2015,

Jennifer Elaine Hackman

was duly admitted to practice as an attorney and counselor of the Supreme Court and all other courts of the State of Kansas and is, on the date indicated below, a member in good standing of the Kansas Bar.

Witness my hand and the seal of the Supreme Court, hereto affixed at my office in Topeka, Kansas, this 8th day of February, 2023.

Douglas T. Shima

**Active Status**

*Clerk of the Supreme Court of Kansas*

# *The Supreme Court of Missouri*

## *Certificate of Admission as an Attorney at Law*

I, Betsy AuBuchon, Clerk of the Supreme Court of Missouri, do hereby certify that the records of this office show that on 9/16/2015,

*Jennifer Elaine Hackman*

was duly admitted and licensed to practice as an Attorney and Counselor at Law in the Supreme Court of Missouri and all courts of record in this state, and is, on the date indicated below, a member in good standing of this Bar.

IN TESTIMONY WHEREOF, I hereunto set my hand and affix the seal of the Supreme Court of Missouri at my office in Jefferson City, Missouri, this 9th day of February, 2023.

Betsy AuBuchon

Clerk of the Supreme Court of Missouri

# UNITED STATES DISTRICT COURT

for the

# DISTRICT OF KANSAS

# CERTIFICATE OF GOOD STANDING

I, Skyler B. O'Hara, Clerk of this Court, certify that Jennifer E. Hackman, Bar # 26987, was duly admitted to practice in this court on July 8, 2016, and is in good standing as an Active member of the Bar of This Court.

Dated at Kansas City, Kansas on 02/08/2023.

Skyler B. O'Hara
CLERK

Kim Leininger
DEPUTY CLERK

UNITED STATES DISTRICT COURT DISTRICT OF KANSAS

# CERTIFICATE OF GOOD STANDING

**UNITED STATES OF AMERICA** )
) ss.
**WESTERN DISTRICT OF MISSOURI** )

I, Paige Wymore-Wynn, Clerk of the United States District Court for the Western District of Missouri,

DO HEREBY CERTIFY that Jennifer Hackman was duly admitted to practice in said Court on November 16, 2022.

Jennifer Hackman is currently an active member and has not been disciplined by this Court.

Dated at Jefferson City, Missouri
on February 8, 2023

Paige Wymore-Wynn
Paige Wymore-Wynn, Acting Clerk

By Crystal Berner
Crystal Berner, Deputy Clerk

***EFILED***
Case Number 2023LA000191
Date: 3/22/2023 4:37 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

***DONALD BANNISTER and BETTER BANNISTER V. JOHN CRANE, INC., et al.***

Verified Statement of Out-of-State Attorney Pursuant to Supreme Court Rule 707

I, Amy M. Crouch, submit this Verified Statement pursuant to Illinois Supreme Court Rule 707.

1. My full name is Amy Marie Crouch, my date of birth is March 5, 1975. The address of offices from which I practice law and related email address and telephone numbers are as follows:

SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108
Phone: (816) 474-6550
Dbdwerlkotte@shb.com

2. I represent E.I. du Pont de Nemours and Company in *Bannister, et al. v. John Crane, Inc., et al.*, Case No. 2023LA000191 (Madison County, Illinois Circuit Court).

3(a). I have not filed any other appearance pursuant to this rule during this calendar year.

3(b). I have not received a registration number from the ARDC.

4(a). I list each jurisdiction of admission, including any state, territory, or commonwealth of the United States, the District of Columbia, or in a foreign country, and my full admission name and license number.

| JURISDICTION | FULL ADMISSION NAME | LICENSE |
|---|---|---|
| State Bar of Missouri (09/24/1999) | Amy Marie Crouch | 48654 |

4(b). I attach a letter or certificate of good standing for each of the jurisdictions listed in paragraph 4(a) above.

5. I have no office or other presence in Illinois for the practice of law.

6. I submit to the disciplinary authority of the Supreme Court of Illinois.

7. I have undertaken to become familiar with and to comply, as if admitted to practice in Illinois, with the rules of the Supreme Court of Illinois, including the Illinois Rules of Professional Conduct and the Supreme Court Rules on Admission and Discipline of Attorneys, and other Illinois law and practices that pertain to the proceeding;

(8) The full name, business address and ARDC number of the Illinois attorney with whom I have associated in the matter is:

SHOOK, HARDY & BACON L.L.P.
Tyler Schwettman
The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
ARDC #6333327

9. I certify that I have served this Statement upon the parties and/or entities listed below and that these parties are all entitled to service under this rule.

**Parties:**

Gary C. Pinter
Swanson, Martin & Bell, LLP
330 N Wabash Ave #3300, Chicago, IL 60611
618-655-3131
gpinter@smbtrials.com

***Counsel for Phillips 66 Company***

MATTHEW B. CHAMPLIN, Partner
HelperBroom LLC
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
618-307-2453
matthew.champlin@heplerbroom.com

***Counsel for HWRT Oil Company***

**Local Counsel:**
Tyler Schwettman
Shook, Hardy & Bacon, LLP
The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
Phone: (314) 690-0200
ARDC #6333327
tschwettman@shb.com

**Client:**
CORTEVA AGRISCIENCE
PO BOX 30649, 974 CENTRE RD
WILMINGTON, DE 19805-7649
FOR: E. I. du Pont de Nemours and Company (Former Name) (Domestic State: DE); EIDP, Inc (True Name)

**ARDC**:
Via Rule707@iardc.org

**Verification**

I verify the accuracy and completeness of each of the above statements.

Date: March 22, 2023 */s/ Amy M. Crouch*

# *The Supreme Court of Missouri*

## *Certificate of Admission as an Attorney at Law*

I, Betsy AuBuchon, Clerk of the Supreme Court of Missouri, do hereby certify that the records of this office show that on 9/24/1999,

*Amy Marie Crouch*

was duly admitted and licensed to practice as an Attorney and Counselor at Law in the Supreme Court of Missouri and all courts of record in this state, and is, on the date indicated below, a member in good standing of this Bar.

IN TESTIMONY WHEREOF, I hereunto set my hand and affix the seal of the Supreme Court of Missouri at my office in Jefferson City, Missouri, this 12th day of December, 2022.

Betsy AuBuchon

Clerk of the Supreme Court of Missouri

***EFILED***
Case Number 2023LA000191
Date: 3/23/2023 3:38 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

***DONALD BANNISTER and BETTER BANNISTER V. JOHN CRANE, INC., et al.***

Verified Statement of Out-of-State Attorney Pursuant to Supreme Court Rule 707

I, Brent Dwerlkotte, submit this Verified Statement pursuant to Illinois Supreme Court Rule 707.

1.      My full name is David Brenton Dwerlkotte, my date of birth is September 9, 1984.  The address of offices from which I practice law and related email address and telephone numbers are as follows:

SHOOK, HARDY & BACON L.L.P.

2555 Grand Blvd.

Kansas City, Missouri  64108

Phone: (816) 474-6550

Dbdwerlkotte@shb.com

2.      I represent E.I. du Pont de Nemours and Company in *Bannister, et al. v. John Crane, Inc., et al.*, Case No. 2023LA000191 (Madison County, Illinois Circuit Court).

3(a).   I have not filed any other appearance pursuant to this rule during this calendar year.

3(b).   I have not received a registration number from the ARDC.

4(a).   I list each jurisdiction of admission, including any state, territory, or commonwealth of the United States, the District of Columbia, or in a foreign country, and my full admission name and license number.

| JURISDICTION | FULL ADMISSION NAME | LICENSE NUMBER |
|---|---|---|
| State Bar of Missouri (9/15/2010) | David B. Dwelkotte | 62864 |
| USDC WDMO (6/6/2014) | David B. Dwelkotte | N/A |
| USDC EDMO (5/11/2021) | David B. Dwelkotte | N/A |

4(b).   I attach a letter or certificate of good standing for each of the jurisdictions listed in paragraph 4(a) above.

5.      I have no office or other presence in Illinois for the practice of law.

6.      I submit to the disciplinary authority of the Supreme Court of Illinois.

7.      I have undertaken to become familiar with and to comply, as if admitted to practice in Illinois, with the rules of the Supreme Court of Illinois, including the Illinois Rules of Professional Conduct and the Supreme Court Rules on Admission and Discipline of Attorneys, and other Illinois law and practices that pertain to the proceeding;

(8) The full name, business address and ARDC number of the Illinois attorney with whom I have associated in the matter is:

SHOOK, HARDY & BACON L.L.P.
Tyler Schwettman
The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
ARDC #6333327

9. I certify that I have served this Statement upon the parties and/or entities listed below and that these parties are all entitled to service under this rule.

**Parties:**

Gary C. Pinter
Swanson, Martin & Bell, LLP
330 N Wabash Ave #3300, Chicago, IL 60611
618-655-3131
gpinter@smbtrials.com

***Counsel for Phillips 66 Company***

MATTHEW B. CHAMPLIN, Partner
HelperBroom LLC
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
618-307-2453
matthew.champlin@heplerbroom.com

***Counsel for HWRT Oil Company***

**Local Counsel:**
Tyler Schwettman
Shook, Hardy & Bacon, LLP
The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
Phone: (314) 690-0200
ARDC #6333327
tschwettman@shb.com

**Client:**
CORTEVA AGRISCIENCE
PO BOX 30649, 974 CENTRE RD
WILMINGTON, DE 19805-7649
FOR: E. I. du Pont de Nemours and Company (Former Name) (Domestic State: DE); EIDP, Inc (True Name)

**ARDC**:
Via Rule707@iardc.org

**Verification**

I verify the accuracy and completeness of each of the above statements.

Date: March 22, 2023

*/s/ Brent Dwerlkotte*

AO 136 (Rev. 10/13) Certificate of Good Standing

# UNITED STATES DISTRICT COURT

for the
EASTERN DISTRICT OF MISSOURI

## CERTIFICATE OF GOOD STANDING

I, GREGORY J. LINHARES, Clerk of this Court,

certify that **Brent Dwerlkotte**, Bar # 62864MO,

was duly admitted to practice in this Court on 05/11/2021, and is in good standing as a member

of the Bar of this Court.

Dated at St. Louis, Missouri *(Location)* on January 31, 2023 *(Date)*

*CLERK*

/s/ Joshua Cowen
*DEPUTY CLERK*

# *The Supreme Court of Missouri*

## *Certificate of Admission as an Attorney at Law*

I, Betsy AuBuchon, Clerk of the Supreme Court of Missouri, do hereby certify that the records of this office show that on 9/15/2010,

### *David Brenton Dwerlkotte*

was duly admitted and licensed to practice as an Attorney and Counselor at Law in the Supreme Court of Missouri and all courts of record in this state, and is, on the date indicated below, a member in good standing of this Bar.

IN TESTIMONY WHEREOF, I hereunto set my hand and affix the seal of the Supreme Court of Missouri at my office in Jefferson City, Missouri, this 27th day of January, 2023.

Betsy AuBuchon

Clerk of the Supreme Court of Missouri



# CERTIFICATE OF GOOD STANDING

**UNITED STATES OF AMERICA** )
) ss.
**WESTERN DISTRICT OF MISSOURI** )

I, Paige Wymore-Wynn, Clerk of the United States District Court for the Western District of Missouri,

DO HEREBY CERTIFY that David Brenton Dwerlkotte was duly admitted to practice in said Court on June 6, 2014.

David Brenton Dwerlkotte is currently an active member and has not been disciplined by this Court.

Dated at Jefferson City, Missouri
on January 26, 2023

*Paige Wymore-Wynn*
Paige Wymore-Wynn, Acting Clerk

By *M. Warren*
Melissa Warren, Deputy Clerk

***EFILED***
Case Number 2023LA000191
Date: 3/24/2023 10:35 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

e-Served
by MyDocFileServe
2708807
Mar 24 2023 10:35 AM

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiff,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA-000191

**Defendants Demand**
**Trial by Jury of Twelve (12)**

**ENTRY OF APPEARANCE FOR DEFENDANT R.J. REYNOLDS TOBACCO COMPANY**

Now comes José A. Isasi, II, as Lead Counsel, and the law firm of Jones Day, and enters his appearance on behalf of defendant R.J. Reynolds Tobacco Company. Jihan Walker also enters her appearance on behalf of R.J. Reynolds Tobacco Company.

Respectfully submitted,

/s/ *José A. Isasi, II*

José A. Isasi, II, #6211214
Jihan Walker, #6328896
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601
(312) 269-1584
Email: jihanwalker@jonesday.com
Email: jisasi@jonesday.com
*Attorneys for Defendant R.J. Reynolds Tobacco Company*

29722789

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic mail on all counsel on the below service list, this 24th day of March 2023.

*/s/Jihan Walker*
Jihan Walker

Ted N. Gianaris,
Joshua A. Edelson
GIANARIS TRIAL LAWYERS, LLC
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
Email: tgianaris@lawforpeople.com
Email: jedelson@lawforpeople.com

***Attorneys for Plaintiff***

José A. Isasi, II
Jihan Walker
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
Email: jihanwalker@jonesday.com
Email: jisasi@jonesday.com

Kevin C. McGinley
THOMPSON COBURN LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 236-3467
Email: kmcginley@thompsoncoburn.com

***Attorneys for Defendant R.J. Reynolds Tobacco Company***

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, Illinois 62025
(618) 655-3131
Email: gpinter@smbtrials.com
***Attorney for Phillips 66 Company***

29722789

***EFILED***
Case Number 2023LA000191
Date: 3/24/2023 10:35 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

e-Served
by MyDocFileServe
2708807
Mar 24 2023 10:35 AM

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiff,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA-000191

**Defendants Demand Trial by Jury of Twelve (12)**

**ENTRY OF APPEARANCE AS CO-COUNSEL**
**FOR DEFENDANT R.J. REYNOLDS TOBACCO COMPANY**

Now comes Carl L. Rowley, Kevin C. McGinley, Michael W. Vogel, and the law firm of Thompson Coburn LLP, and enter their appearance as co-counsel on behalf of defendant R.J. Reynolds Tobacco Company.

Respectfully submitted,

/s/ *Carl L. Rowley*
Carl L. Rowley, #6195075
Kevin C. McGinley #6286841
Michael W. Vogel, #6314202
Thompson Coburn LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 277-4700 FAX (618)-236-3434
Email: crowley@thompsoncoburn.com
Email: kmcginley@thompsoncoburn.com

Email: mvogel@thompsoncoburn.com

*Attorneys for Defendant R.J. Reynolds Tobacco Company*

**Certificate Of Service**

The undersigned states that on the 24th day of March 2023, the Defendant filed the foregoing and served a copy of the foregoing electronically on all counsel of record via the Court's E-Filing System. In addition, a copy was also emailed to the following attorneys of record:

Ted Gianaris
Josh Edelson
Gianaris Trial Lawyers
One Court Street
Alton, Illinois 62002
(618) 816-9999
Email: tgianaris@lawforpeople.com
Email: jedelson@lawforpeople.com
*Attorneys for Plaintiff*

José A. Isasi, II
Jihan Walker
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
Email: jihanwalker@jonesday.com
Email: jisasi@jonesday.com
*Attorneys for Defendant R.J. Reynolds Tobacco Company*

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, Illinois 62025
(618) 655-3131
Email: gpinter@smbtrials.com
*Attorney for Phillips 66 Company*

/s/ *Carl L. Rowley*

29722234

***EFILED***
Case Number 2023LA000191
Date: 3/24/2023 10:35 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiff,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA-000191

**Defendants Demand**
**Trial by Jury of Twelve (12)**

**JURY DEMAND ON BEHALF OF**
**R.J. REYNOLDS TOBACCO COMPANY**

R.J. Reynolds Tobacco Company demands trial by jury of twelve in the above-captioned matter.

Respectfully submitted,

*/s/ José A. Isasi, II*

José A. Isasi, II, #6211214
Jihan Walker, #6328896
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
Email: jihanwalker@jonesday.com
Email: jisasi@jonesday.com

Carl L. Rowley, #6195075
Kevin C. McGinley #6286841
Michael W. Vogel, #6314202
THOMPSON COBURN LLP
525 West Main Street, Suite 300
Belleville, Illinois  62220
(618) 236-3467
Email: crowley@thompsoncoburn.com
Email: kmcginley@thompsoncoburn.com
Email: mvogel@thompsoncoburn.com

*Attorneys for Defendant R.J. Reynolds Tobacco Company*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic mail on all counsel on the below service list, this 24th day of March 2023.

*/s/Jihan Walker*
Jihan Walker

Ted N. Gianaris,
Joshua A. Edelson
GIANARIS TRIAL LAWYERS, LLC
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
Email: tgianaris@lawforpeople.com
Email: jedelson@lawforpeople.com

***Attorneys for Plaintiff***

José A. Isasi, II
Jihan Walker
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
Email: jihanwalker@jonesday.com
Email: jisasi@jonesday.com

Carl L. Rowley
Kevin C. McGinley
Michael W. Vogel
THOMPSON COBURN LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 236-3467
Email: crowley@thompsoncoburn.com
Email: kmcginley@thompsoncoburn.com
Email: mvogel@thompsoncoburn.com

***Attorneys for Defendant R.J. Reynolds Tobacco Company***

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, Illinois 62025
(618) 655-3131
Email: gpinter@smbtrials.com
***Attorney for Phillips 66 Company***

***EFILED***
Case Number 2023LA000191
Date: 3/24/2023 10:35 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

e-Served
by MyDocFileServe
2708807
Mar 24 2023 10:35 AM

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiff,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA-000191

**Defendants Demand
Trial by Jury of Twelve (12)**

**DEFENDANT R.J. REYNOLDS TOBACCO COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1. Pursuant to 735 ILCS 5/2-615, Defendant R.J. Reynolds Tobacco Company ("Reynolds") moves to dismiss all claims asserted against it in Plaintiffs' Complaint, including negligence (Counts 5), strict liability (Count 6), fraudulent concealment (Count 7), Illinois Consumer Fraud Act ("ICFA") (Count 8), willful and wanton misconduct (Count 9), and loss of consortium (Count 11). As discussed below, Plaintiffs fails to allege their claims with the specificity required by Illinois law, and their willful and wanton misconduct claim is not cognizable under Illinois law.

**ARGUMENT**

2. Illinois is a fact pleading jurisdiction. *Knox Coll. v. Celotex Corp.*, 88 Ill. 2d 407,

29722787.1

421-28 (1981).  To survive a § 2-615 motion to dismiss, Plaintiffs must allege "sufficient facts to state all the elements of the asserted cause[s] of action."  *Purmal v. Robert N. Wadington & Assocs.*, 354 Ill. App. 3d 715, 720 (1st Dist. 2004).  "The pleader must state the facts essential to his cause of action.  A pleading which merely paraphrases the law, as though to say that the pleader's case will meet the legal requirements, *without stating the facts* is insufficient."  *Knox Coll.*, 88 Ill. 2d at 424 (internal citations omitted) (emphasis added).  Indeed, a plaintiff may not rely on "mere conclusions of law or fact unsupported by specific factual allegations, regardless of whether they generally inform the defendant of the nature of the claim against him or her."  *Weidner v. Midcon Corp.*, 328 Ill. App. 3d. 1056, 1059 (5th Dist. 2002).

## I.    Plaintiff Donald Bannister Failed To Plead The Facts Essential To His Negligence And Strict Liability Claims

3.    *First*, Plaintiff fails to allege sufficient facts to establish the elements of his negligence claim.  Specifically, Plaintiff "must set out sufficient facts to establish that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused injury to the plaintiff."  *Weidner*, 328 Ill App. 3d at 1060.  "It is not sufficient that a complaint merely allege a duty; the plaintiff must allege facts from which the law will raise a duty and specific facts showing an omission of that duty and resulting injury."  *Id.* at 1060 (affirming dismissal of negligence claim where allegations were "conclusory and nonspecific as to duties, acts, or omissions of defendants").  Here, Plaintiff generally alleges that Reynolds included various compounds such as tar and carcinogens in its cigarettes. Compl. at Count 5, ¶ 3. But Plaintiff fails to distinguish between Reynolds and the other cigarette manufacturer defendant, ITG Brands LLC ("ITG").  Nor does Plaintiff identify the specific Reynolds and ITG cigarette products or brands that he allegedly smoked or to which he was allegedly exposed.  *See id.*  Plaintiff also fails to specifically allege the factual circumstances of his cigarette smoking, omitting the

alleged dates, locations, and frequency of those exposures. *See id.* at Count 5, ¶ 1. Further, Plaintiff's allegations of proximate cause are entirely conclusory. *Id.* at Count 5, ¶ 9. Plaintiff's allegations are insufficient under Illinois law, and his negligence claim should be dismissed.

4.      *Second*, Plaintiff fails to allege sufficient facts to establish the elements of his strict liability claim. A strict liability claim may proceed under different theories of liability including a manufacturing defect, a design defect, or a failure to warn. *Mikolajczk v. Ford Motor Co.*, 231 Ill. 2d 516, 548 (2008). To establish a design defect theory, plaintiff must allege "(1) a condition of the product that results from manufacturing or design, (2) the condition made the product unreasonably dangerous, (3) the condition existed at the time the product left the defendant's control, (4) the plaintiff suffered an injury, and (5) the allegedly defective condition made the product unreasonably dangerous." *Id.* at 543. Here, too, Plaintiff fails to distinguish among Reynolds and ITG, Compl. at Count 6, ¶ 2, identify the relevant cigarette brands, *id.* at Count 6, ¶ 3, identify the factual circumstances of his smoking, *id.* at Count 6, ¶ 5, and allege with any factual support that Reynolds' acts or omissions proximately caused his injuries, *id.* at Count 6, ¶ 15. Accordingly, his strict liability claim should be dismissed.

## II.      Plaintiff Donald Bannister Failed To Plead The Facts Essential To His Fraudulent Concealment Claim

5.      Plaintiff fails to allege sufficient facts to establish the elements of his fraudulent concealment claim. The elements of a fraudulent concealment claim are: "(1) the concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had he been aware of it;

and (5) that reliance by the person from whom the fact was concealed led to his injury." *Schrager v. N. Cmty. Bank*, 328 Ill. App. 3d 696, 706-07 (1st Dist. 2002). Specifically, Plaintiff has failed to allege with the required particularity and specificity the (A) omissions by Reynolds that Plaintiff relied upon to his detriment; (B) facts establishing that Reynolds had a duty to speak; and (C) facts identifying how the alleged fraudulent concealment proximately caused Plaintiff's alleged injury.

**A. Plaintiff Failed To Allege The Omissions By Reynolds That He Relied Upon To His Detriment**

6. Illinois is a fact pleading jurisdiction, *Knox Coll.*, 88 Ill. 2d at 421-28, and Plaintiff's fraud-based claims must be pled to a "higher standard." *Bd. of Educ. of City of Chi. v. A.C. & S., Inc.*, 131 Ill. 2d 428, 457 (1989). He is required "to allege with the required particularity and specificity the exact misrepresentations that [the defendant] made, when [defendant] made them and to whom [defendant] made them." *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 310 (1st Dist. 2002); *see also Hirsch v. Feuer*, 299 Ill. App. 3d 1076, 1086-87 (1st Dist. 1998) (affirming dismissal of fraudulent concealment claim for the "most fatal error" of failing to plead "the specific false representations").

8. Here, although Plaintiff makes generic allegations regarding tobacco industry conduct, the complaint is entirely devoid of any facts, much less the specific and particularized facts required by Illinois law, linking any alleged omission or statement to Plaintiff. Plaintiff generally alleges that Reynolds "repeatedly made representations and statements" on five topics addressing the health effects and addictive nature of smoking, Compl. at Count 7, ¶ 11, but does not identify any particular statement or omission or identify when any alleged statement or omission was made. Plaintiff's allegations are not limited to a discrete period of time but rather span "the course of the last *66 years*." *Id.* at Count 7, ¶ 2 (emphasis added). Likewise, Plaintiff does not confine his fraudulent concealment allegations to Reynolds' conduct, but instead casts a

large net that includes all cigarette manufacturers and their trade associations—entities that are not parties to this case.  *See id.* ("The cigarette manufacturers, including Defendants herein, have concealed vast amounts of knowledge . . . ."); *see also id.* at Count 7, ¶ 9 ("The knowledge and information concealed by the cigarette manufacturers, including the Defendants herein, was concealed by entities that had superior knowledge . . . .); *see also id.* at Count 7, ¶ 11 ("These Defendants directly, and indirectly through its (sic.) trade associations, repeatedly made representations and statements . . . .").  Thus, Reynolds has no way of knowing which alleged omissions or statements are at issue, when they were made, who made them, and to whom they were made.  This is plainly insufficient under Illinois law.

9.    Plaintiff must also plead specific facts showing "actual reliance[,]" namely that "the misrepresentations [] reach[ed] the [P]laintiff and he [] in fact reasonably rel[ied] on them." *People ex rel. Peters v. Murphy-Knight*, 248 Ill. App. 3d 382, 391 (1st Dist. 1993).  In *Murphy-Knight*, the court affirmed the dismissal of a fraud claim where the plaintiff "allege[d] in conclusory fashion" reliance on representations by the defendants, finding there were "no facts alleged which would indicate that [the] plaintiff was ever shown the letter, proposal or brochure in which the alleged misrepresentations were made."  *Id*.  Plaintiff here does not identify *any* alleged omission or statement by Reynolds that he actually saw, heard, or reasonably relied upon to his detriment.  Although Plaintiff alleges in conclusory fashion that "Defendants intended for the American Public, including Plaintiff, to rely upon such false statements,"  Compl. at Count 7, ¶ 13, similar to *Murphy-Knight*, there is *no* allegation that Plaintiff relied on any particular omission or statement by Reynolds to his detriment.  Accordingly, Plaintiff's fraudulent concealment claim should be dismissed.

**B.    Plaintiff Donald Bannister Failed To Allege Facts Establishing The Requisite Duty To Speak**

10.    The Court should dismiss Plaintiff's fraudulent concealment claim for the independent reason that he has not alleged facts establishing Reynolds' duty to speak. A fraudulent concealment claim fails unless the defendant "was under a duty to disclose [the allegedly concealed] fact to plaintiff." *Connick*, 174 Ill. 2d at 500. "There is no duty to speak absent a fiduciary or other legal relationship between the parties." *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 295 Ill. App. 3d 567, 573 (1st Dist. 1998); *Magna Bank of Madison Cnty. v. Jameson*, 237 Ill. App. 3d 614, 618 (5th Dist. 1992). A duty to disclose may arise if there is a "special relationship" between the parties such that the plaintiff places trust and confidence in a defendant and the defendant is in a position of influence and superiority. *See Wigod v. Wells Fargo Bank, N.A.* 673 F.3d 547, 571-72 (7th Cir. 2012); *see also Connick*, 174 Ill. 2d at 500. Plaintiff bears the burden of establishing a duty to speak, *Arbor*, 295 Ill. App. 3d at 573, and the "special relationship threshold is a high one." *Wigod*, 673 F.3d at 572.

11.    Plaintiff has not pleaded facts supporting the requisite duty to speak. *First*, Plaintiff has alleged no facts that would support a conclusion that he had a fiduciary or "special relationship" with Reynolds giving rise to a duty to speak. Rather, Plaintiff's allegations demonstrate no more than an arms-length, downstream manufacturer-consumer relationship, which does not establish a duty to speak. *See e.g.*, Compl. Count 6, ¶¶ 3-4 (describing only Reynolds general design, manufacture, and marketing of cigarettes). Illinois courts have found allegations of more direct relationships than alleged here insufficient. In *Miller*, the relationship between an individual car dealer and a purchasing customer "did not give rise to a confidential relationship sufficient to impose a general duty of disclosure under the fairly rigorous principles of common law." *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 657 (1st Dist.

2001); *see also Connick*, 174 Ill. 2d at 500 (holding a car manufacturer did not have duty to disclose safety risks of car model absent "confidential or fiduciary relationship" with plaintiff).

12.    *Second*, Plaintiff alleges that Reynolds and other cigarette manufacturers had "superior knowledge regarding the health aspects of cigarettes" compared to Plaintiff.  Compl. at Count 7, ¶¶ 4, 9.  However, "asymmetric information alone does not show the degree of dominance needed to establish a special trust relationship."  *Wigod*, 673 F.3d at 573; *see also Miller*, 326 Ill. App. 3d at 657 (holding no duty to speak despite the "disparity of influence and knowledge" between the parties).

13.    *Lastly*, Plaintiff alleges that "Defendants had a duty to disclose to the American public, including Plaintiff, all material facts about the health hazards of smoking cigarettes, including their highly addictive qualities."  Compl. at Count 7, ¶ 10.  On this point, the recent decision in *Gorski*—a smoking and health case pending in Cook County—is instructive.  *See* Order on Defs.' Partial Mot. to Dismiss, *Gorski v. Philip Morris USA Inc.*, et al, No. 2021-L-008024 (Ill. Cir. Ct. Cook Cnty. Mar. 2, 2022) (Senechalle, J.) (Ex. A).  In *Gorski*, the plaintiff smoker brought, *inter alia*, fraudulent concealment claims against Reynolds, PM USA, and Liggett Group LLC. *Id.* at 1.  Like Plaintiff, Mr. Gorski alleged the cigarette manufacturer defendants "engaged in a campaign designed to deceive the public and hide the true dangers of smoking cigarettes[,]" and that "the manufacturers denied that cigarettes posed health risks and concealed research and knowledge to the contrary from the public" and that "this effort spanned multiple decades." *Id.* at 2-3.  Nonetheless, the court concluded that "Illinois case law does not support the existence of a duty to disclose" and dismissed the fraudulent concealment claim with prejudice, further explaining that "[a] product manufacturer, simply by virtue of its superior knowledge of its product, does not owe a common law duty to disclose information to the consuming public about

its knowledge of safety risks or potential dangers of use." *Id.* at 7 (internal citations omitted).[1] This Court should reach the same conclusion and dismiss Plaintiff's fraudulent concealment claim.

### C. Plaintiff Donald Bannister Failed To Plead Facts Showing How The Alleged Concealment Proximately Caused His Alleged Injury

15. Proximate cause is a separate, required element of Plaintiff's fraudulent concealment claim. *See Turcios v. DeBruler Co.*, 2015 IL 117962, at ¶ 23. Proximate cause is composed of two separate requirements: cause-in-fact and legal cause. *Id.* In the context of a fraud claim, cause-in-fact refers to whether the alleged fraud is a "but for" cause of the plaintiff's alleged injury. *Id.* Critically, a defendant's "[c]onduct is a material element and a substantial factor if, absent the conduct, the injury would not have occurred." *Krywin v. Chi. Transit Auth.*, 238 Ill. 2d 215, 226 (2010).

16. Here, the question is whether, absent Plaintiff's alleged reliance on Reynolds' alleged fraudulent concealment, Plaintiff's injury would not have occurred. Plaintiff claims that due to Reynolds' alleged concealment of information, he "would not have started smoking or been hooked at an early age and/or would have been able to stop [smoking] earlier and thereby his risk

---

[1] Additionally, any claim that Reynolds failed to warn of the health risks of smoking after 1969 is preempted and should be dismissed. *See* 15 U.S.C.A. § 1334(b); *see also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 524 (1992) (plurality op.); *Altria Group Inc. v. Good*, 555 U.S. 70, 84-85 (2008) (adopting the preemption framework applied by the plurality in *Cipollone*); *Espinoza v. Philip Morris USA Inc.*, 500 F. Supp. 2d 979, 985 (N.D. Ill. 2007) (holding preempted state law claims "based upon a 'failure-to-warn theory' that 'requires a showing that' cigarette 'advertising or promotions should have included additional, or more clearly stated, warnings"); *Tormey v. American Tobacco Co.*, 850 N.Y.S. 2d 309, 310 (App. Div. 4th Dep't 2008) (concluding a failure to warn claim as to nonsmokers is "necessarily 'based on smoking and health' and therefore is preempted by the Act."); *Wilson v. American Tobacco Co.*, 898 F.2d 155, at *1; *DeLuca v. Liggett & Meyers, Inc.*, 2001 WL 629398, at *3 (N.D. Ill. May 24, 2001); *Crook v. R.J. Reynolds Tobacco Co.*, 978 F. Supp. 1482, 1485 (N.D. Ga. 1997). Indeed, Plaintiff appears to recognize that any failure to warn after 1969 is preempted because Plaintiff limits his allegations to the time period *before* warning labels were affixed to cigarette packages in 1966. *See* Compl. at ¶ 80(a) (alleging a failure to warn "*[pr]ior to 1966* and after Plaintiff had already been exposed to and hooked on these Defendants' cigarette products . . . .") (emphasis added); *see also e.g.*, ¶¶ 96(e) (same); 116(a) (same); and 124 (a) (same).

of injury from cigarettes, including [esophageal cancer], would have been eliminated or greatly reduced." Compl. at Count 7, ¶ 6; *see also id.* at Count 7 ¶¶ 7-8, 14. These conclusory statements are vague, non-committal and patently insufficient because Plaintiff does not identify which statements he saw and relied on, or how those specific statements influenced his smoking decisions.

17.     In *Prescott*, another smoking and health case from Cook County, the court found substantially similar allegations in two separate iterations of the complaint insufficient. Mem. Op. and Order at 7, *Prescott v. Philip Morris USA Inc., et al.*, No. 2018-L-003905 (Ill. Cir. Ct. Cook Cnty. Aug. 4, 2020) (Sheahan, J.) (Ex. B); Order on Mot. of Defs.' to Dismiss the Fraud Counts in Pl.'s Third Am. Compl. at 3-5, *Prescott* (June 10, 2021) (Senechalle, J.) (Ex. C). The *Prescott* plaintiff alleged that "had defendants not concealed certain information, plaintiff's decedent would have never started smoking, stopped smoking at some point, or reduced his smoking[,]" and that the decedent's "injuries were a direct and proximate result of the concealment." Ex. B at 5-6. The court dismissed the fraudulent concealment claims, concluding that "[n]either of these assertions are factual allegations pleaded with specificity in the context of fraud—they are conclusory recitations of cause-in-fact and legal cause." *Id.* at 6 (internal citations omitted). The court dismissed the fraudulent concealment claims in the next iteration of the *Prescott* complaint with prejudice because it again left critical causation questions unanswered. Ex. C at 4-5 (finding plaintiff failed to allege the specific research results defendants did not disclose or that decedent was waiting for the tobacco companies' disclosure). Because Plaintiff here fails to adequately allege proximate cause, his fraudulent concealment claim should be dismissed.

## III.     Plaintiff Donald Bannister Failed To Plead The Facts Essential To His ICFA Claim

18.     Plaintiff fails to allege with sufficient specificity and particularity the elements of

his ICFA claim.  The elements of an ICFA claim include:  (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damages to the plaintiff, (5) proximately caused by the deception.  *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 72 (2007). "A complaint alleging a consumer fraud violation must be pled with the same particularity and specificity as that required under common law fraud."  *See e.g., White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 283 (1st Dist. 2006).  Plaintiff must allege that he was "actually [] deceived by a statement or omission that is made by the defendant.  If [he] *has neither seen nor heard any such statement, then [he] cannot have relied on the statement and, consequently, cannot prove proximate cause.*"  *De Bouse v. Bayer*, 235 Ill. 2d 544, 554 (2009) (emphasis added).  Illinois courts "have consistently rejected the market theory"—that advertising campaigns or statements deceived unspecified persons without connection to a plaintiff resulting in the plaintiff's injury—and "have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission."  *De Bouse*, 235 Ill. 2d at 555.

19.    Here, Plaintiff alleges that "Defendants violated the Act by making, disseminating, and causing to make and disseminate untrue, false, and misleading statements to Plaintiff and other Illinois consumers[,]" and lists conclusory and incomplete lists of the types of misrepresentations or omissions Plaintiff claims were deceptive.  Compl. at Count 9, ¶ 6.  Yet, Plaintiff does not identify *any* specific advertisements or statements that he actually saw at any particular time, or allege facts showing how he was deceived by the statements or omissions allegedly contained therein and how this deception proximately caused his alleged injury.  Accordingly, Plaintiff's

ICFA claim should be dismissed.[2]

**IV. Plaintiff Donald Bannister's Willful And Wanton Misconduct Claim Is Not Cognizable Under Illinois Law**

20. Plaintiff's Complaint purports to assert a cause of action for "willful and wanton misconduct." *See* Compl. at Count 8, ¶¶ 1-3. However, the Illinois Supreme Court has made clear that "[t]here is no separate and independent tort of willful and wanton misconduct." *Ziarko v. Soo Line R.R.*, 161 Ill. 2d 267, 274 (1994); *see also Krywin*, 238 Ill. 2d at 235 (same). Accordingly, courts have repeatedly granted motions to dismiss such claims. *See e.g.*, *Love v. Rockford, Ill. Mun. Police Dep't*, 2013 WL 159246, at *2 (N.D. Ill. Jan. 15, 2013). Plaintiff's willful and wanton misconduct claim should thus be dismissed.

**V. Plaintiff Betty Bannister's Loss of Consortium Claim Should Be Dismissed**

21. In Count 11, Plaintiff Betty Bannister alleges a cause of action for loss of consortium against all Defendants, including Reynolds. But because the Complaint fails to allege sufficient facts to state a claim as to Donald Bannister, Betty Bannister's claim for loss of consortium based on the same allegations also necessarily fails to state a claim. An action for loss of consortium is not a separate and distinct action, but it is dependent upon the defendant's liability for the injuries to the family member, here Donald Bannister, being established. *Tjaden v. Moses*, 94 Ill. App. 2d 361, 366 (3d Dist. 1968). This means that the defendant's breach of duty to the injured family member supports both the injured family member's cause of action and the deprived family members' suit for loss of consortium.

---

[2] Without seeking the requisite leave of court and without even attempting to meet his evidentiary burden to demonstrate entitlement to a claim for punitive damages, Plaintiff also includes an improper request for treble damages in this Count. *See* Compl. at Count 9, ¶ 15. Illinois law plainly disallows such claims. *See* 735 ILCS 5/2-604.1; *see also Vincent v. Alden-Park Strathmoor, Inc.*, 241 Ill. 2d 498, 499 (2011) (holding that plaintiffs asserting causes of action based "on products liability based on any theory or doctrine are not permitted to include in their complaints a prayer for relief seeking punitive damages.").

As held in *Bitner v. Pekin Memorial Hospital*, where the injured party fails to state a claim, a claim by the injured party's spouse must also be dismissed for failure to state a claim under 735 ILCS 5/2-615. *See Bitner*, 317 Ill. App. 3d 935, 939 (3d Dist. 2000) ("Because all of [the husband's] claims are without merit, [the wife's] claims for loss of consortium, which are founded upon [the husband's], are equally untenable," and the trial court properly dismissed all claims of the plaintiffs' complaint). Here, because Plaintiffs fail to state a claim against Reynolds as to Donald Bannister, Plaintiffs cannot state a cognizable claim for loss of consortium, and Count 11 of Plaintiffs' Complaint must be dismissed accordingly.

**CONCLUSION**

For these reasons, the Court should dismiss Counts 5-9, and 11 of Plaintiffs' Complaint.

Dated: March 24, 2023

Respectfully submitted,

/s/ *José A. Isasi, II*

José A. Isasi, II, #6211214
Jihan Walker, #6328896
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
Email: jihanwalker@jonesday.com
Email: jisasi@jonesday.com

Carl L. Rowley, #6195075
Kevin C. McGinley #6286841
Michael W. Vogel, #6314202
THOMPSON COBURN LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 236-3467
Email: crowley@thompsoncoburn.com
Email: kmcginley@thompsoncoburn.com
Email: mvogel@thompsoncoburn.com

*Attorneys for Defendant R.J. Reynolds Tobacco Company*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic mail on all counsel on the below service list, this 24th day of March 2023.

/s/Jihan Walker
Jihan Walker

Ted N. Gianaris,
Joshua A. Edelson
GIANARIS TRIAL LAWYERS, LLC
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
Email: tgianaris@lawforpeople.com
Email: jedelson@lawforpeople.com
***Attorneys for Plaintiff***

José A. Isasi, II
Jihan Walker
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
Email: jihanwalker@jonesday.com
Email: jisasi@jonesday.com

Carl L. Rowley
Kevin C. McGinley
Michael W. Vogel
THOMPSON COBURN LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 236-3467
Email: crowley@thompsoncoburn.com
Email: kmcginley@thompsoncoburn.com
Email: mvogel@thompsoncoburn.com
***Attorneys for Defendant R.J. Reynolds Tobacco Company***

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, Illinois 62025
(618) 655-3131
Email: gpinter@smbtrials.com
***Attorney for Phillips 66 Company***

# Exhibit A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| MICHAEL GORSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 21 L 8024 |
| | ) | |
| PHILIP MORRIS USA INC., R.J. REYNOLDS TOBACCO COMPANY, LIGGETT GROUP LLC, and WALGREEN CO., | ) | Judge Robert E. Senechalle |
| | ) | |
| Defendants. | ) | |

ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS

**The Subject Motions.**

This matter is before the court on a joint motion filed by defendants, Philip Morris, USA, Inc., (Philip Morris) and R.J. Reynolds Tobacco Company (R.J. Reynolds) to dismiss certain counts of plaintiff's complaint. Defendant, Liggett Group, LLC (Liggett), by a separate filing, has joined in the Philip Morris/R.J. Reynolds partial motion to dismiss. Therefore, the motions to be decided are Philip Morris and R.J. Reynolds' motion to dismiss Counts III thru VIII, and Liggett's motion to dismiss Counts IV, VI and VIII.

The counts at issue seek to state common law claims against Philip Morris and R.J. Reynolds for fraudulent misrepresentation (Count V), fraudulent concealment (Count III) and a statutory claim for fraud under the Illinois Consumer Fraud Act (Count VII). Also at issue in the motions to dismiss are three counts against Philip Morris, R.J. Reynolds and Liggett, alleging conspiracy to commit fraudulent concealment (Count IV), conspiracy to commit fraudulent misrepresentation (Count VI) and conspiracy to violate the Illinois Consumer Fraud Act (Count VIII).

The court has considered the written submissions of the parties and the arguments made at the hearing on the motion. The court is duly advised in the premises.

**Consolidated Cases.**

This case is one of 18 personal injury actions filed by separate plaintiffs against Philip Morris, R.J. Reynolds and Liggett. Walgreen Co. (Walgreen) is a defendant in some of the cases.

The 18 cases have been consolidated for the purpose of being presided over by one judge for motion practice and case management.[1] The allegations in the cases, as they relate to the manufacturer defendants, share a common fact pattern. The plaintiffs are long time cigarette smokers who have contracted serious illness allegedly caused by smoking. In some of the cases, the injured person has died. In those cases, the plaintiffs are estate representatives, bringing wrongful death and survival act claims. In each of the cases, the purported liability of the defendants is premised on allegedly tortious conduct in the manufacture, marketing, and sale of cigarettes over a span of many years.

The claims in the consolidated cases are similar. The majority of the factual assertions, as they relate to the alleged tortious conduct of the defendants, mirror one another in most, if not all, of the cases. This Court heard and decided a motion to dismiss in a previously consolidated case, *Prescott*, 18 L 3905. The *Prescott* case is no longer pending. The motion in *Prescott* raised issues similar to those raised in the instant case. This Court's order in *Prescott* is referenced frequently in defendants' submissions on the instant motion.

This Court will endeavor to apply the law consistently in its rulings on the various motions filed in the consolidated cases. The examination of a complaint for its sufficiency, however, is a fact driven analysis. Thus, prior rulings in *Prescott* are instructive, but not controlling.

**Relevant Facts.**

Plaintiff, Michael Gorski (Gorski), was born in 1960. He began smoking at age 16 and has continued to smoke for 45 years. He has smoked Newport menthol, Camel and Winston cigarettes manufactured by R.J. Reynolds. He has also smoked Marlboro Red cigarettes, manufactured by Philip Morris.[2] Gorski was diagnosed with pharyngeal cancer in 2020. He alleges that despite the cancer diagnosis, he remains unable to stop smoking.

Plaintiff's negligence and product liability claims against Philip Morris and R.J. Reynolds (Counts I and II), and those same claims made against Walgreens (Counts IX and X) are not the subject of these motions. At issue here, are the fraud-based claims asserted in plaintiff's complaint.

Plaintiff contends that the three manufacturer defendants engaged in a campaign designed to deceive the public and hide the true dangers of smoking cigarettes. Plaintiff alleges that the manufacturers denied that cigarettes posed health risks and concealed research and knowledge to the contrary from the public. According to facts set forth in the complaint, this

---

[1] There may be additional cases that have been filed and consolidated of which this court is not yet aware.

[2] Gorski alleges that he smoked Marlboro Red cigarettes for nearly 40 years.

effort spanned multiple decades. Plaintiff alleges that he relied on the false representations of the defendant manufacturers regarding the safety of cigarettes, smoked his entire adult life and was injured thereby. Although Liggett did not manufacture cigarettes smoked by Gorski, Liggett is alleged to have conspired with Philip Morris, R.J. Reynolds and others to misrepresent the true health dangers of cigarette smoking.

**Analysis**.

Defendants' motions to dismiss are brought pursuant to section 2-615 of the Illinois Code of Civil Procedure. *735 ILCS 5/2-615.* A section 2-615 motion attacks the legal sufficiency of a complaint. *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003). The motion does not raise affirmative factual defenses, but instead, relies on defects apparent on the face of the complaint. *Canel v. Topinka*, 212 IL 2d 311, 317-18 (2004). All well pleaded facts within the four corners of the complaint are regarded as admitted and true, together with all reasonable inferences drawn therefrom; those facts are viewed in the light most favorable to the plaintiff. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006).

*Fraudulent Misrepresentation* (Count V).

The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996).

A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made. *State ex rel. Leibowitz v. Family Vision Care, LLC,* 2019 IL App (1st) 180697, ¶21.

Defendants' motions to dismiss argue that plaintiff has failed to plead facts sufficient to properly allege element four (reliance) and element five (damages proximately caused by that reliance). Defendants contend that "Plaintiff's complaint fails to 'specify with any degree of particularity' which specific statements impacted his smoking decisions **and** importantly, how they allegedly did so." See *Defendants' Partial Motion to Dismiss, pg. 8.*

Plaintiff's complaint, unlike the complaint found insufficient in *Prescott*, does identify specific representations made by defendants, alleged to be false, which plaintiff read or heard and upon which he relied. In paragraph 121, plaintiff pleads eight separate representations

made by defendants which are alleged to be false.    Plaintiff identifies when and by whom the representations were made.

In paragraph 124, plaintiff alleges that defendants made false representations in certain print advertisements, including false and misleading representations concerning filtered cigarettes.  Copies of the specific ads are contained in paragraph 124.  The four ads are each for filtered cigarettes, namely, Winston, Marlboro, and Newport.  These are among the cigarettes which plaintiff alleges (paragraph 2) that he smoked.

The four ads each show cigarettes.  They accentuate the filter part of the cigarette, displaying the filter prominently.  The Marlboro ad says "you get a lot to like with a Marlboro." The Newport message infers that when you smoke Newport you are "alive with pleasure."  The manufacturer of Winston boasts that "All Winston will ever give you is real taste."  Plaintiff's complaint alleges that the ads were false and deceptive.  Besides pleasure and real taste, the complaint alleges that cigarettes also give smokers cancer, emphysema, COPD, heart disease and other adverse health consequences.  So the representations in the print ads to the effect that all you get from cigarettes is pleasure or real taste, are, according to the assertions in the complaint, false and misleading.

Plaintiff alleges in paragraph 121 that he heard, read and relied on the false statements made by the defendants which are set forth in paragraphs 121 (a) through (h), or substantially similar statements.

The reasonable inferences the Court draws from the allegations in paragraph 124 are that plaintiff saw, read and relied on the truth of the allegedly false and misleading print advertisements that are depicted in paragraph 124 (e).

Defendants argue in their motion and reply, that Gorski's allegations in his complaint regarding the specific false statements and advertisements he says he heard or read and relied on lack credibility.  Defendants' position in this regard arises out of the fact that several plaintiffs in other recently filed tobacco cases allege that they saw or heard and relied upon the exact same false materials which Gorski's complaint asserts were seen or heard and relied upon by Gorski.  Seemingly, defendants are suggesting by this argument that Gorski's allegations regarding the specific representations he heard and relied upon should be disregarded by this Court when evaluating the sufficiency of the complaint.

It is well settled law in Illinois that, in evaluating the sufficiency of a complaint on a § 2-615 motion to dismiss, all well-pleaded facts and all reasonable inferences that may be drawn from those facts must be taken as true.  *People ex rel. Lindblom v. Sears Brands, LLC*, 2019 IL App (1st) 180588, ¶39.  The court does not minimize the seriousness of the suggestion inherent in defendants' argument regarding identical allegations of what materials were seen or heard

and relied upon by different plaintiffs in other tobacco complaints. All the court is concluding at this point, is that the instant argument is not properly raised in a 2-615 motion to dismiss, where the truth or believability of an allegation of fact is not an issue.

As to the causation prong of a fraudulent misrepresentation claim (element five), the court finds that the allegations of paragraphs 126-129 , construed in the light most favorable to the plaintiff, are sufficient to plead the causation element of a common law fraud claim. The assertions which carry the day on pleading proximate cause are those alleging that reliance on the identified statements and specified advertisements resulted in plaintiff not curtailing his smoking at all and him choosing and continuing to smoke filtered cigarettes, believing them to reduce any potential health risk connected to cigarette smoking.

As defendants' point out, the complaint in this case has its share of drafting flaws.[3] The critical inquiry, however, *"is whether the allegations of the complaint, when construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." Bogenberger v. PiKappa Alpha Corp.*, 2018 IL 120951, ¶ 23. For the reasons stated above, the Court finds that Count V has adequately stated a cause of action for fraudulent misrepresentation against R.J. Reynolds and Philip Morris. The Court, however, expresses no opinion as to the merits of the claim.

*Violation of the Illinois Consumer Fraud Act (Count VII).*

The Illinois Consumer Fraud Act (CFA) provides, in pertinent part as follows:

> *"Unfair..........or deceptive trade acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely,......in the conduct of any trade or commerce are hereby declared unlawful......" (815 ILCS 505/2.*

Section 10a of the CFA provides a private right of action to any person who suffers actual damages as a result of a violation of the Act.

Case law teaches that the CFA expands a consumer's rights beyond those of the common law and provides broader protection than does the common law action of fraud.

[3] . Section 2-603 (b) of our Code of Civil Procedure, *735 ILCS 5/2-603 (b)*, requires that each count of a complaint be divided into numbered paragraphs, "each paragraph containing, as nearly as may be, a separate allegation." Many of the paragraphs in Gorski's complaint contain multiple allegations of fact, rendering the complaint cumbersome to read and follow. The frequent combining of the conjunctions "and/or" cast doubt on what the actual allegation of fact is. There are allegations of fact which are, on their face, not sustainable. One example is the allegation in paragraph 129 that, but for the misrepresentations made by defendants, plaintiff would not have started smoking. Plaintiff first smoked at age 16 in 1976. (Complaint, ¶2). The only statement made by the Tobacco manufacturers and allegedly heard by Mr. Gorski **before** he started smoking was made in 1971 when Gorski was 11 years old. (Complaint, ¶121 a.).

*Rubin v. Marshall Field & Co., 232 Ill. App. 3d 522, 533 (1st. Dist. 1992).* It stands to reason that in a case where plaintiff states a common law claim for fraudulent misrepresentation in a consumer transaction, a sufficient CFA claim can also be stated.

This court has found that the allegations of plaintiff's complaint, when construed in a light most favorable to plaintiff, adequately pleads facts supporting the contentions that plaintiff actually heard or read identified statements and saw specific advertisements that were false or deceptive, was deceived by them, and was thereby damaged. That finding distinguishes plaintiff's CFA claim from the one found to be insufficient in *De Bouse v. Bayer AG, 235 Ill. 2d 544 (2009)*, cited by defendants in support of their motion to dismiss.

Plaintiff has pled facts sufficient to state a cause of action against Philip Morris and R.J. Reynolds for violation of the CFA.

*Fraudulent Concealment (Count III).*

In order to establish a common law claim for fraudulent concealment, a plaintiff must prove that the defendant was under a duty to disclose the fact concealed. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996). Most cases involving a duty to disclose arise out of a breach of fiduciary relationship. *Miller v. William Chevrolet/Geo*, 326 Ill. App. 3d 642, 657 (1st. Dist. 2001). Here, no fiduciary relationship existed between the parties at any relevant time.

Courts have on occasion found that a confidential relationship may also give rise to a duty. A confidential relationship exists when a plaintiff puts sufficient trust in a defendant that the latter is in a position of "influence and superiority" over the plaintiff. *Connick*, 174 Ill. 2d at 501. The defendant must be clearly dominant, either because of superior knowledge of the matter derived from overmastering influence on the one side, or from weakness, dependence, or trust justifiably reposed on the other side. *Miller*, 326 Ill. App. 3d 642 at 657. The standard for identifying a special trust relationship is extremely similar to that of a fiduciary relationship. *Squires-Cannon v. Forest Pres. Dist.*, 897 F. 3d 797, 805 (7th Cir. 2018).

Plaintiff's complaint fails to allege facts, which if proven at trial, could establish the existence of a special trust relationship between plaintiff and the defendants. In paragraphs 61 and 63 plaintiff alleges that defendants were "in a superior position to consumers, including Mr. Gorski." The factual allegations, if proven, show the existence of a significant imbalance of information about cigarettes between defendants and the plaintiff. Asymmetric information alone, however, does not show the degree of dominance needed to establish a special trust relationship. *Wigod v. Wells Fargo Bank, N.A., 673 F. 3d 547, 573 (7th Cir. 2012).*

In paragraph 63, plaintiff alleges that he placed his trust and confidence in defendants. This conclusory statement is unsupported by any factual allegations. The special relationship

threshold in a duty to disclose claim is a high one. *Wigod,* 673 F. 3d 547 at 572; *Miller,* 326 Ill. App. 3d 642, 657. It has not been met in plaintiff's Count III.

In its response to defendants' motion, plaintiff argues that defendants voluntarily assumed a duty to disclose material information about cigarette smoking. Plaintiff cites *Union Nat'l Bank & Trust Co. v. Carlstrom*, 134 Ill App. 3d 985 (3d Dist. 1985). This Court first notes that the "duty to disclose" issue in *Union Nat'l* arose in the context of the affirmative defense of equitable estoppel in the Bank's suit on a promissory note. There was no claim for fraudulent concealment by a product seller in *Union Nat'l*. In addition, that case is so factually inapposite as to be of little import to the issue here.

In *Union Nat'l,* Dale and Barbara Carlstrom were long time customers of Union National Bank. The Carlstroms did most of their business with bank vice-president, Elton Bates. Dale filed for divorce. The parties and their lawyers met with Bates to go over the parties' financial situation at the Bank. Bates explained the various loan obligations that the Carlstroms owed to Union National, individually and jointly. No mention was made by Bates of a loan guarantee, previously signed by Barbara, on a $60,000 loan given by the bank to Dale. After the parties divorced, Dale defaulted on the note and the Bank sued Barbara on her guarantee. Barbara asserted the affirmative defense of equitable estoppel. The court at trial found that once the Bank undertook to advise its own bank customers, with whom it had an established relationship, about the status of their financial affairs with the bank, it had the duty not to deliberately conceal or misrepresent. This finding was affirmed on appeal.

The holding in *Union Nat'l* cannot fairly be interpreted as imposing a tort duty of disclosure on a product manufacturer when advertising its product to the public. In Illinois, there is no legal duty to speak absent a fiduciary or other legal relationship between the parties. *Magna Bank v. Jameson,* 237 Ill. App. 3d 614, 618 (1992). A product manufacturer, simply by virtue of its superior knowledge of its product, does not owe a common law duty to disclose information to the consuming public about its knowledge of safety risks or potential dangers of use. *Connick v. Suzuki Motor Co.,* 174 Ill. 2d at 500.

As our Supreme Court has stated on several occasions, the existence of a duty turns in large part on public policy considerations. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436 (2006); *Jones v. Chicago HMO Ltd of Illinois*, 191 Ill. 2d 278, 303 (2000); *Simkins v. CSX Transp., Inc.,* 2012 IL 110662, ¶37 (Justice Freeman's dissenting opinion). Our Supreme Court has not been persuaded to expand the tort duty to disclose product information in the manner proposed by plaintiff, here. Illinois case law does not support the existence of a duty to disclose under the facts alleged by plaintiff.

For the foregoing reasons, defendants, Philip Morris and R.J. Reynolds' motion to dismiss Count III, fraudulent concealment, is granted.

*Conspiracy to Commit Fraudulent Concealment (Count IV).*

This Court has ruled, above, that plaintiff has failed to state a cause of action for fraudulent concealment. Because plaintiff has failed to state an independent cause of action underlying its conspiracy allegations, the claim for conspiracy to commit fraudulent concealment also fails. See *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 772 (2nd Dist. 2007). The motions of Philip Morris, R. J. Reynolds and Liggett to dismiss Count IV are granted.

*Conspiracy to Commit Fraudulent Misrepresentation (Count VI).*
*Conspiracy to Violate the Illinois Consumer Fraud Act (Count VIII).*

Defendants, Philip Morris and R.J. Reynolds, base their motion to dismiss the conspiracy counts entirely on their position that the underlying torts and statutory violation which the parties allegedly conspired to commit, have not been properly pled. Having found that plaintiff has sufficiently pled claims for fraudulent misrepresentation, and for violation of the Illinois Consumer Fraud Act, the motion to dismiss the conspiracy to commit fraudulent concealment claim (count VI) and the motion to dismiss the Illinois Consumer Fraud Act claim (count VIII) filed by Philip Morris and R.J. Reynolds are denied.

Defendant, Liggett , in its joinder motion, adopts the argument made by Philip Morris and R.J. Reynolds that the underlying claims are not properly pled and, therefore, the conspiracy claims premised thereon must also fail. Having found the two aforementioned underlying claims to be sufficiently pled, Liggett's argument to dismiss on this initial ground fails.

Liggett makes two additional arguments. First, it argues that because plaintiff never smoked any cigarettes manufactured by Liggett, plaintiff cannot prove causation on the two conspiracy claims leveled against Liggett.

The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action, either an unlawful purpose or a lawful purpose by unlawful means, (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act. See *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (2004) and *Adcock v. Brakegate*, 164 Ill. 2d 54, 62-63 (1994). The function of a conspiracy claim is to extend tort liability from the active wrongdoer to wrongdoers who may have only planned, assisted or encouraged the active wrongdoer. *Adcock*, 164 Ill. 2d at 62. Thus, it is not necessary for

plaintiff to allege that he smoked Liggett's cigarettes or that he relied on specific representations by Liggett in order to state a claim against Liggett for civil conspiracy.

The key to stating a civil conspiracy claim is to plead facts, which, if proven at trial, would be sufficient to establish the existence of an agreement between the defendant and others to accomplish, through concerted action, an unlawful purpose. As mentioned above, this complaint is not the model of clarity. Nonetheless, when all of the facts alleged in Count VI, including the numerous incorporated allegations from prior paragraphs, and all reasonable inferences drawn from those facts are construed in the light most favorable to plaintiff, the Court concludes that a claim for civil conspiracy is stated in Count VI against Liggett. The facts set forth in Count VI and Count VIII sufficiently allege that Liggett made an arrangement to work together with Philip Morris and R.J. Reynolds to defraud the public about the true dangers of cigarette smoking, and that Liggett participated in concerted action with the others to carry out the fraud.

The Court takes note of Liggett's argument in its Reply about the significance of the U.S. District Court's ruling in the DOJ's RICO action against Liggett and other tobacco manufacturers. *United States v. Philip Morris, USA, Inc.*, 449 F. Supp 2d 1 D.D.C 2006). Liggett contends in its Reply (pg. 4) that the District Court, on page 919 of its opinion, found no basis for conspiracy liability against Liggett and that Liggett was found not liable. Liggett made this argument to garner support for its position that the conspiracy claim brought against it by Gorski should be dismissed. Liggett's interpretation of the District Court's finding is untenable.

This Court has reviewed the relevant portions of the opinion in *United States v. Philip Morris, USA, Inc.* What the District Court actually found was that "*there was clear and convincing evidence that Liggett participated in the RICO Enterprise and conspiracy during its formative years....*" *United States v. Phillip Morris, USA, Inc.* 449 F. Supp 2d at 906. The District Court went on to find that Liggett was liable for its prior substantive violations of 1962 (c). The opinion, on page 869, refers to Liggett as a defendant member of the enterprise who "*shared the common goals of the enterprise and acted in furtherance of those goals.*" The court concluded that Liggett withdrew its participation in the conspiracy in 1997 and was not likely to violate RICO in the future. For this reason, the court declined to enter injunctive relief going forward against Liggett. These findings and rulings in the RICO case do not support Liggett's contention that the District Court found no basis for conspiracy liability against Liggett.

For all of the foregoing reasons, Liggett's motion to dismiss the conspiracy claims asserted against it in Count VI and Count VIII is denied.

**Conclusion and Order.**

1. Defendants', Philip Morris and R.J. Reynolds' motion to dismiss Count III (fraudulent concealment) is granted. This dismissal of Count III is with prejudice.

2. Defendants', Philip Morris, R.J. Reynolds and Liggett's motions to dismiss Count IV (conspiracy to commit fraudulent concealment) are granted. This dismissal of Count IV is with prejudice.

3. Defendants', Philip Morris and R.J. Reynolds' motion to dismiss Count V (fraudulent misrepresentation) is denied.

4. Defendants', Philip Morris, R.J. Reynolds and Liggett's motions to dismiss Count VI (conspiracy to commit fraudulent misrepresentation) are denied.

5. Defendants', Philip Morris and R.J. Reynolds' motion to dismiss Counts VII (Illinois CFA) is denied.

6. Defendants', Philip Morris, R.J. Reynolds and Liggett's motions to dismiss Count VIII (conspiracy to violate the Illinois CFA) are denied.

ENTER: ______________________

ENTERED
Judge Robert E. Senechalle-1915
MAR 02 2022
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

# Exhibit B

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT, LAW DIVISION**

JOAN PRESCOTT, as Independent Executor of the estate of DAVID P. DOWDLE, deceased,

Plaintiff,

v.

PHILIP MORRIS USA, INC., R.J. REYNOLDS TOBACCO COMPANY, LIGGETT GROUP LLC, ITG BRANDS, LLC, and WALGREEN, CO.,

Defendant.

Case No. 2018 L 3905

**MEMORANDUM OPINION AND ORDER**

Before the Court are several motions to dismiss brought by defendants Phillip Morris USA, Inc., R.J. Reynolds Tobacco Company, Liggett Group LLC, and Walgreen, Co. The motions are fully briefed, and the Court has reviewed all submitted materials and considered the well-articulated arguments made by counsel on both sides during the hearing on this matter.

***Introduction***

This case arises out of allegations that the various defendants manufactured, promoted, and sold unreasonably dangerous cigarettes to plaintiff's decedent, David P. Dowdle. Mr. Dowdle started smoking in elementary school and smoked for much of his life, until he quit in 2007. (Second Am. Compl. ¶ 3). In 2016, Mr. Dowdle was diagnosed with laryngeal cancer, and he died in 2019. (*Id* at ¶¶ 10-11).

Plaintiff has asserted claims for negligence and strict liability against the manufacturer

defendants. Further, plaintiff alleges that the manufacturer defendants engaged in a conspiratorial "campaign designed to deceive the public" and hide "the true dangers of smoking cigarettes." (*Id* at ¶ 104). This campaign spanned decades, and plaintiff asserts defendants both denied that cigarettes posed health risks and concealed research to the contrary. (*Id* at ¶¶ 104, 155). As a result of the alleged campaign, plaintiff alleges Mr. Dowdle became addicted to cigarettes, which ultimately caused him to develop cancer and die.

Additionally, plaintiff alleges that Walgreens is liable because it sold cigarettes to Mr. Dowdle. Plaintiff asserts that Walgreens executives developed a close relationship with tobacco companies in the 1970s. (*Id* at ¶¶ 221-23). According to plaintiff, this relationship gave Walgreens access to superior knowledge about cigarettes' health risks, which it failed to act upon by ceasing to sell cigarettes. (*Id* at ¶¶ 230-33). Plaintiff also seeks to hold Walgreens strictly liable for selling an unreasonably dangerous product.

***Manufacturer Defendants' Motions to Dismiss***

Philip Morris and R.J. Reynolds move to dismiss plaintiff's fraud-based claims against them pursuant to section 2-615, and Liggett Group has joined in the motion. A motion to dismiss under section 2-615 attacks the legal sufficiency of a complaint based upon defects apparent on the face of the complaint. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 23. "The critical inquiry is whether the allegations of the complaint, when construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Id.* In making this determination, the court must take all well-pleaded facts in the complaint as true. *Id.* However, legal conclusions must be disregarded. *Safeway Ins. Co. v. Daddono*, 334 Ill. App. 3d 215, 218 (1st Dist. 2002). Dismissal is appropriate when "it is clear that a plaintiff cannot prove a set of facts that will entitle him to the relief sought." *Id.*

Plaintiff has asserted claims for fraudulent misrepresentation against the manufacturer defendants (Count 9 and Count 10). To establish her fraud claim, plaintiff must establish five elements: "(1) a false statement of material fact; (2)...defendant's knowledge or belief that the statement was false; (3)...defendant's intent that the statement induce the plaintiff to act; (4)...plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement." *Bauer v. Giannis*, 359 Ill. App. 3d 897, 902 (2d Dist. 2005). Plaintiff must also establish that defendants' actions were the proximate cause of the decedent's injury. *See Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶¶ 51-52, 75. While Illinois is a fact-pleading state, fraud claims are subject to "heightened pleading standards" beyond the baseline Illinois pleading requirements. *Bayview Loan Servicing, LLC v. Szpara*, 2015 IL App (2d) 140331, ¶ 35. To survive a section 2-615 motion to dismiss, plaintiff must plead each element of her fraudulent misrepresentation claims with "sufficient specificity, particularity, and certainty." *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15.

In this case, plaintiff attempted to remedy the defects in the first amended complaint with respect to the fraud claims. However, the fraudulent misrepresentation claims asserted in the second amended complaint still suffer from a number of interconnected defects, beginning with the pleading of the fraudulent statements themselves. To adequately plead fraudulent misrepresentation, detailing "what misrepresentations were made" is a basic requirement. *Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428, 457 (1989). Plaintiff's complaint, taken at its face, does not meet this basic requirement. Plaintiff lists some of defendants' statements that she alleges to be false and then notes that "Mr. Dowdle is unable to allege in full the thousands of pre-1969 advertisements, and the continuing press releases, testimony by cigarette manufacturers' officers and employees...that the cigarette manufacturers...have prepared, participated in, given, and

released over the last 50 years." (Compl. ¶¶ 154, 167). Plaintiff insists both that Mr. Dowdle lacked access to all of defendants' false or misleading statements, and that listing all relevant statements would result in lengthy pleadings. (*Id.*). However, finding and listing out any misleading or false statement ever made by the manufacturer defendants was not plaintiff's burden – to adequately plead her fraud claim, plaintiff has to point to the specific statements that induced Mr. Dowdle to act. Instead, plaintiff merely alleges that plaintiff's decedent "heard some or all of" defendants' allegedly false or misleading statements. (Compl. ¶ 176 (emphasis added)). The specific statements that Mr. Dowdle heard is crucial information that only plaintiff could know. Yet, plaintiff has failed to provide this information in the second amended complaint.

Plaintiff similarly fails to plead the decedent's reliance on defendants' statements with the requisite specificity. Throughout the second amended complaint, plaintiff asserts that plaintiff's decedent believed and justifiably relied upon statements made by defendants. However, merely asserting justifiable reliance is not enough to meet the heightened standard of fraud pleading. An "allegation that plaintiffs 'relied' without more is simply a conclusory statement that gives no insight into facts that plaintiffs would ever be able to prove supporting that claim." *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 850 (1st Dist. 2009). Here, plaintiff's pleading of reliance similarly offers the manufacturer defendants and this Court no insight into the facts plaintiff would be able to prove to support the assertion that Mr. Dowdle relied on defendants' statements.

The aforementioned defects permeate the rest of plaintiff's fraudulent misrepresentation claims. For example, plaintiff's failure to pinpoint the specific statements Mr. Dowdle relied upon also affects the pleading of causation for purposes of her fraud claims. Indeed, because plaintiff fails to plead the specific statements that induced plaintiff's decedent, it follows that plaintiff did not and could not adequately plead that those unspecified fraudulent statements were the proximate

cause of Mr. Dowdle's injuries. Individually and altogether, these defects render plaintiff's pleading of her fraudulent misrepresentation claims inadequate.

Plaintiff has also asserted claims for fraudulent concealment against the manufacturer defendants (Count 6 and Count 7). Much like fraudulent misrepresentation, to adequately plead a claim of fraudulent concealment, plaintiff must allege each element of the claim subject to the heightened requirements of fraud pleading. *See Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 419-20 (1st Dist. 2003). The elements of a fraudulent concealment claim are as follows:

> (1) the concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak…; (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

*Schrager v. N. Cmty. Bank*, 328 Ill. App. 3d 696, 706-07 (1st Dist. 2002) (quoting *Stewart v. Thrasher*, 242 Ill. App. 3d 10, 16 (4th Dist. 1993)). Plaintiff must also establish that reliance on defendants' concealment was the proximate cause of plaintiff's decedent's injuries. *See Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶ 84.

In the second amended complaint, plaintiff lays out a number of alleged omissions on the manufacturer defendants' part. However, plaintiff fails to plead with specificity that plaintiff's decedent would have acted differently had he been aware of the concealed information. This defect affects elements four and five of plaintiff's fraudulent concealment claims. *See Schrager*, 328 Ill. App. 3d at 706-07. This defect also affects plaintiff's ability to plead proximate causation vis-avis her fraudulent concealment claims. In the second amended complaint, plaintiff first asserts that had defendants not concealed certain information, plaintiff's decedent would have never started smoking, stopped smoking at some point, or reduced his smoking. Second, plaintiff asserts that

plaintiff's decedent's injuries were a direct and proximate result of the concealment. (Second Am. Compl. ¶¶ 121-22). Neither of these assertions are factual allegations pleaded with specificity in the context of fraud – they are conclusory recitations of cause-in-fact and legal cause. *See Norabuena v. Medtronic, Inc.*, 2017 IL App (1st) 162928, ¶¶ 37-38 (finding plaintiff's pleadings conclusory and thus "insufficient to state a legal claim" under Illinois's fact-pleading standard when the complaint reasserted that plaintiff's injuries occurred "'as a direct and proximate result'" of defendant's actions or omissions). Such conclusory recitations are not enough to allege fraudulent concealment under the heightened requirements of fraud pleading. Accordingly, plaintiff's fraudulent concealment claims are insufficiently pled.

Finally, plaintiff's conspiracy claims are predicated on the fraudulent misrepresentation and fraudulent concealment claims. Because the fraud claims are dismissed, the conspiracy claims lack an underlying tort and therefore also must be dismissed. *See Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 75 ("[P]laintiffs' claim of civil conspiracy was properly dismissed because plaintiffs failed to properly allege an underlying tort.").

Ultimately, the Court finds that plaintiff has failed to adequately plead any fraud claims. Since plaintiff's fraud claims have only been ruled upon once thus far, the Court grants plaintiff leave to amend to remedy the defects identified herein. The Court stresses, however, that plaintiff must make significant changes to adequately plead the fraud counts. The fraudulent misrepresentation claims must include the specific statements that Mr. Dowdle heard, not just any of defendants' statements that plaintiff believes to be false. Additionally, for both the fraudulent misrepresentation and fraudulent concealment claims, plaintiff must allege the specific facts that support the conclusion that Mr. Dowdle relied upon the statements – assurances that he relied upon or believed everything he heard will not suffice. Plaintiff must identify what crucial pieces of

information would have altered Mr. Dowdle's behavior. Did he insist throughout his life that cigarettes were not addictive? Did he assure family members that the specific cigarettes he smoked were better for his health because they had lower tar or nicotine levels? These are the kind of facts that would support plaintiff's conclusory reliance allegations and meet the heightened standard of fraud pleading. Plaintiff must allege the facts that tie the specific statements Mr. Dowdle heard to his decision to smoke. Including these specific facts to support Mr. Dowdle's reliance will also bolster plaintiff's pleading of proximate cause, as the causal link between the statements and his behavior will be clearer.

For the foregoing reasons, the manufacturer defendants' section 2-615 motions are granted and plaintiff's claims for fraudulent misrepresentation (Count 9 and Count 10), fraudulent concealment (Counts 5 and Count 6), and conspiracy (Counts 7, 8, 11, and 12) are hereby dismissed without prejudice with leave for plaintiff to file an amended complaint.

***Walgreens' Motions to Dismiss***

Plaintiff has asserted claims for negligence (Count 13 and Count 14) and strict liability (Count 15 and Count 16) against Walgreens. Walgreens moves to dismiss under section 2-619 and contends that both claims are preempted by the Federal Cigarette Labeling and Advertising Act. The Act prohibits state law claims regarding the advertising or promotion of cigarettes labeled in accordance with the provisions of the statute. However, the United States Supreme Court has held that the Act only preempts "failure to warn" claims relating to advertising cigarettes, and the statute does not preempt state law claims relating to the actual sale of cigarettes as a defective product. *Cippollone v. Liggett Group, Inc.*, 505 U.S. 504, 524-25 (1992). Though many of plaintiff's allegations against Walgreens could be characterized as failure to warn theories, plaintiff has alleged that Walgreens was negligent and breached the standard of care by selling cigarettes

to Mr. Dowdle which it knew were defective and unreasonably dangerous. (Second Am. Compl. ¶ 233). Similarly, plaintiff's strict liability claims relate to the selling of unreasonably dangerous products, and to the extent plaintiff alleges a failure to warn claim, it is based on actions taken before the statute was enacted. *See id.* ¶ 89(b), 246. Accordingly, plaintiff has asserted theories of recovery that are not preempted, and Walgreens' section 2-619 motion based on federal preemption is denied.

Walgreens also moves to dismiss the strict liability claim pursuant to the Illinois Seller's Exception Statute. That statute provides for dismissal when a defendant provides (as Walgreens has done here) "the correct identity of the manufacturer of the product allegedly causing injury, death or damage" (i.e., the manufacturer defendants). 735 ILCS 5/2-621(a)-(b). However, Walgreens acknowledges that a plaintiff can avoid dismissal under the statute when she can establish that the non-manufacturing defendant (1) "exercised some significant control over the design or manufacture of the product," (2) created the purported defect, or (3) had "actual knowledge" of the purported defect. 735 ILCS 5/2-621(c); *see Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 775-76 (1st Dist. 2008).

Plaintiff does not maintain that either of the first two exceptions are applicable here, but does allege that Walgreens had "actual knowledge" that the cigarettes it sold were unreasonably dangerous. Plaintiff's allegations in this respect are sufficient to avoid dismissal under the Seller's Exception Statute. At this point in the litigation, plaintiff cannot be expected to make a more involved "showing" of Walgreens' "actual knowledge" before any discovery has occurred, as Walgreens contends. Plaintiff is not omniscient and is not required to fully explicate Walgreens' institutional knowledge without the benefit of discovery. This makes Walgreens' citation to *Logan v. West Coast Cycle Supply Co.*, 197 Ill. App. 3d 185 (2d Dist. 1990) inapt, because that case

stands for the reasonable proposition that – after the parties have completed discovery – the plaintiff cannot defeat a section 2-621 motion by speculating as to what the evidence may show. Because plaintiff has adequately alleged Walgreens' actual knowledge, Walgreens' motion to dismiss pursuant to the Illinois Seller's Exception Statute is denied.

Lastly, Walgreens moves to dismiss plaintiff's negligence claim against it pursuant to section 2-615. To prove her negligence claim, plaintiff must establish Walgreens' "duty, a breach of that duty, proximate cause, and damages." *Cangemi v. Advocate South Suburban Hosp.*, 364 Ill. App. 3d 446, 458 (1st Dist. 2006). Walgreens offers three arguments as to why plaintiff failed to sufficiently allege both duty and proximate cause. First, Walgreens argues that plaintiff failed to allege that Walgreens designed or manufactured cigarettes. Second, Walgreens contends plaintiff failed to allege specific facts to support her claim that Walgreens had "superior knowledge" of the health risks of cigarettes. And third, Walgreens argues plaintiff has not pled sufficient facts establishing proximate cause. The Court will address each of these arguments in turn.

Walgreens' first argument is easily disposed of. Plaintiff does not allege that Walgreens designed or manufactured the cigarettes at issue. Therefore, plaintiff's negligence claim against Walgreens cannot rest on fault premised on the design or the manufacturing process of cigarettes. Plaintiff instead alleges that Walgreens' duty arose through its superior knowledge of cigarettes' health risks. Neither party disputes that a duty may arise when a seller has superior knowledge of a product's risks. Walgreens contends that plaintiff has not sufficiently alleged that it had superior knowledge of the health risks involved with cigarettes. The Court disagrees. While Illinois law requires plaintiffs to do more than "mere pleading of elements," it does not require plaintiffs to "plead facts with precision when the information needed to plead those facts is within the

knowledge and control of the defendant rather than the plaintiff." *Holton v. Resurrection Hosp.*, 88 Ill. App. 3d 655, 658 (1st Dist. 1980). Indeed, requiring plaintiffs "to allege facts with precision where the necessary information is within the defendant's knowledge, and plaintiff has not had the benefit of discovery" is "'both unrealistic and unnecessary.'" *John Burns Const. Co. v. City of Chicago*, 234 Ill. App. 3d 1027, 1034 (1st Dist. 1992) (quoting *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 25 (1st. Dist. 1979). In her complaint, plaintiff alleges that Walgreens gained superior knowledge through its close relationship with tobacco companies. At the pleading stage – before any discovery has taken place – these allegations are sufficient to establish Walgreens' duty.

Finally, Walgreens argues that plaintiff has failed to sufficiently allege proximate cause with respect to her negligence claims. Plaintiff alleges that if Walgreen had not sold cigarettes to Mr. Dowdle, he would have smoked less or stopped smoking at an earlier age, and thus that his risk of injury would have been reduced or eliminated. While these allegations may not be sufficient to support fraud-based claims, taken in the light most favorable to plaintiff, they sufficiently plead that Walgreens' negligence played a substantial factor in Mr. Dowdle's injury. Proximate cause is typically a question of fact reserved for a jury. *See Rogers v. Reagan*, 355 Ill. App. 3d 527, 532 (1st Dist. 2005). The Court finds no reason to deviate from the general rule in this case, and Walgreens' section 2-615 motion to dismiss is denied.

For the reasons given, Walgreens' motions to dismiss are denied. The manufacturer defendants' motions to dismiss are granted and Counts 5, 6, 7, 8, 9, 10, 11, and 12 are dismissed without prejudice. Plaintiff has 28 days from the date of this order to file an amended complaint.

ENTERED:

Judge Patricia O'Brien Sheahan
AUG 04 2020
Circuit Court - 2136

Judge Patricia O'Brien Sheahan
Circuit Court of Cook County

# Exhibit C

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| **JOAN PRESCOTT, as Independent Executor of the Estate of DAVID P. DOWDLE, deceased.** <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **PHILIP MORRIS USA INC.; R.J. REYNOLDS TOBACCO COMPANY; LIGGETT GROUP, LLC.; and WALGREEN, Co.,** <br><br> **Defendants.** | ) | **Case No: 18 L 3905** <br><br> **Judge Robert E. Senechalle, Jr.** <br> **Calendar 33** |

**ORDER ON THE MOTION OF DEFENDANTS', PHILIP MORRIS USA INC., R.J. REYNOLDS TOBACCO COMPANY; AND LIGGETT GROUP, LLC., TO DISMISS THE FRAUD COUNTS IN PLAINTIFF'S THIRD AMENDED COMPLAINT**

This matter is before the court on the motion of Philip Morris USA, INC. (Philip Morris), R.J. Reynolds Tobacco Company (R.J. Reynolds) and Liggett Group, LLC (Liggett) to dismiss the eight fraud-based counts of plaintiff's third amended complaint (TAC). Counts V and VI are premised on fraudulent concealment and Counts VII and VIII on conspiracy to commit fraudulent concealment; Counts IX and X are based on fraudulent misrepresentation and Counts XI and XII on conspiracy to commit fraudulent misrepresentation.[1] The court has considered the motion, response and reply, and the arguments made at the hearing on the motion. The court is duly advised in the premises.

**Background**.[2]

Plaintiff's decedent, David P. Dowdle (Mr. Dowdle) was a long time smoker. This lawsuit arises out of allegations that Philip Morris and R.J. Reynolds manufactured, promoted and sold unreasonably

---

[1] Each of the three tobacco manufacturers is named as a defendant in all eight of the fraud based counts. Philip Morris and Reynolds filed a joint motion to dismiss these counts. Liggett joined in that motion. After briefs were filed and the motion to dismiss was argued before the court, the plaintiff agreed to dismiss Liggett from some of the fraud counts. By virtue of an order entered May 26, 2021, Liggett was dismissed from Counts V, VI, IX and X. Liggett remains a party to Counts VII, VIII, XI and XII. By virtue of its joinder filing, Liggett moves to dismiss those four counts.

[2] Much of the background information is taken from Judge Sheahan's order of August 4, 2020, which is attached as an exhibit to the manufacturer defendants' Motion.

dangerous cigarettes to Mr. Dowdle. He started smoking in elementary school and smoked for much of his life. Mr. Dowdle quit smoking in 2007. He was diagnosed with laryngeal cancer in 2016 and died in 2019.

Plaintiff has asserted claims for negligence and strict liability against two of the manufacturer defendants, Philip Morris and R.J. Reynolds. Those claims are not the subject of this motion.

Plaintiff has also asserted fraud-based claims against Philip Morris and RJ Reynolds. Those fraud counts seek to state causes of action for fraudulent misrepresentation and fraudulent concealment. They are premised on plaintiff's contention that the manufacturer defendants engaged in a campaign designed to deceive the public and hide the true dangers of smoking cigarettes. Plaintiff contends that the manufacturers denied that cigarettes posed health risks and concealed research to the contrary. It is alleged that this effort spanned decades.

Finally, plaintiff includes conspiracy counts against all three manufacturer defendants, including Liggett Group, claiming that all three manufacturers, along with others not named in the complaint, participated in a scheme to misrepresent and conceal facts about the dangers of smoking.

**Analysis.**

*A. The Fraudulent Misrepresentation Counts (IX and X):*

Fraudulent misrepresentation is a form of common-law-fraud. The elements of a cause of action for fraudulent misrepresentation are: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from that reliance. *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750 ¶ 15; *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 847 (1St. Dist. 2009).

Illinois is a fact-pleading jurisdiction. The plaintiff is not required to set forth evidence in the complaint but must allege facts sufficient to bring a claim within a legally recognized cause of action, not simply plead conclusions. *Doe v. Coe,* 2019 IL 123521, ¶ 32.

There is a higher standard of specificity required for pleading claims of fraud. *Bayview Loan Servicing, LLC v. Szpara*, 2015 IL App (2d) 140331, ¶ 34. A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made. *Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 496-97 (1996).*

After a thorough analysis of the allegations in plaintiff's third amended complaint, it is this Court's conclusion that the fraudulent misrepresentation counts (IX and X) fail to meet the factual specificity requirement for pleading claims sounding in common law fraud.

A shortcoming found by Judge Sheahan to exist with the first and second amended complaints was plaintiff's failure to plead with specificity what representations were made that induced Mr. Dowdle to act. Plaintiff's generalized allegations, summarizing statements that were made on a particular subject matter, without specifying what the specific statement was, when it was made, who made it and to whom it was made fall short of a properly pled common law fraud complaint. Such specificity is required to afford defendants the opportunity to understand what exact conduct they must prepare to defend.

In an effort to remedy deficiencies found in her first amended complaint, plaintiff added ¶ 179 to the third amended complaint. Plaintiff cited to this paragraph in multiple places in her response as an illustration of how the insufficiencies in her earlier pleadings had been corrected. Paragraph 179 of the third amended complaint alleges the following:

> *"Mr. Dowdle, during the course of his smoking history, heard some or all of the false or misleading statements and/or similar statements made directly or indirectly by the Defendants, including advertisements and other marketing materials falsely representing or suggesting that cigarettes were not as dangerous from a health standpoint than they actually are, that there was no link between cigarettes and various types of cancer such as laryngeal cancer, that cigarettes were not addictive, and that light cigarettes were safer and less hazardous than other cigarettes."*

It is apparent that the alleged "representations" or "suggestions" which plaintiff says defendant made at an unspecified time, to an unspecified audience, either directly or indirectly, are mere characterizations of an unidentified statement that plaintiff attributes to defendants. For example, paragraph 179 alleges that defendants in some advertisement or marketing material represented that "*cigarettes were not as dangerous from a health standpoint than they actually are*." It is difficult to understand what this even means. What was defendants' statement? Paragraph 179 adds no clarity to plaintiff's pleading of her common law fraud claims.

The third amended complaint is replete with non-specific allegations, conclusions and ambiguous assertions that leave the two named defendants in these counts without notice as to what specific statements each of them made that were heard by Mr. Dowdle, when they were made, over what medium, and to whom they were made. The complaint is also silent on facts showing when Mr. Dowdle heard what statements and what specific actions he took in reliance on those statements.

Counts IX and X fail to state a cause of action for common law fraudulent misrepresentation.

B. *The Fraudulent Concealment Counts (V and VI).*

To state a claim for fraudulent concealment, a plaintiff must plead facts, which, if proven at trial, would establish the following elements: (1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a

representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently, had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages. See *Wolff v. Bethany N. Suburban Grp.*, 2021 IL App (1st) 191858, ¶ 51, and *Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶ 82. In addition to repeating its argument that plaintiff's allegation regarding defendants' alleged fraudulent conduct are too non-specific to meet Illinois' fraud pleading standards, defendants also argue that plaintiff has not, in Counts V and VI, pled sufficient facts to allege the existence of a duty to speak.

A duty to disclose a material fact may arise out of several situations. First, if plaintiff and defendant are in a fiduciary or confidential relationship, then defendant is under a duty to disclose all material facts. Second, a duty to disclose material facts may arise out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500 (1996).

Plaintiff does not allege the existence of a fiduciary or confidential relationship between Mr. Dowdle and the defendants. Likewise, there are no factual averments in the complaint that could support a finding that plaintiff placed trust and confidence in the defendants, thereby placing defendants in a position of influence and superiority over plaintiff. In ¶ 123 of her TAC, plaintiff does allege that knowledge and information was concealed by defendants who had superior knowledge regarding the health aspects of cigarettes. However, case law is clear that plaintiff must show that because of the special relationship of the parties, plaintiff placed trust and confidence in the defendant. Only then, would superior knowledge on defendant's part give rise to a duty to disclose. *Connick* at 500.

The bare allegation that defendants possessed superior knowledge about the product sold to plaintiff by defendant, does not activate the tort duty to speak. For purposes of stating a viable claim for fraudulent concealment, the fact that the parties possessed "asymmetric" information alone does not show the degree of dominance needed to establish a special trust relationship. See *Wigod v. Wells Fargo Bank, N.A., 673 F. 3d 547, 573 (7th Cir. 2012).*

Plaintiff's TAC, ¶ 109, alleges that defendants were involved in the Tobacco Industry Research Committee (TIRC) beginning in 1954 and also in the Council for Tobacco Research (CTR) in 1964, thereby "affirmatively assumed a duty to disclose any adverse information regarding the health hazards of smoking." No case law is cited by plaintiff from which this Court could conclude that a common-law duty to disclose all research results to the public arises, when a manufacturer participates in or is a member of a research program or organization. Plaintiff's "assumption of duty" theory is not factually developed and is unsupported by legal authority.[3]

An additional failing of the plaintiff's fraudulent concealment counts is the absence of any factual allegations which could support the conclusion that defendants' silence about its research was interpreted by Mr. Dowdle as a representation that the fact did not exist. What specific research results

[3] By way of contrast, see *Ringlestein v. Johnson & Johnson,* 2017 U.S. Dist. LEXIS 83047 (N.D. IL 2017), where the trial court concluded that under Illinois law, a pharmaceutical company had a duty to disclose known risks of its drugs to patients and their physicians.

did the defendants have that they failed to disclose and when did they have it? What facts does the plaintiff have that lead to the conclusion that Mr. Dowdle was waiting for the Tobacco companies to tell him about research results and at some point he concluded from their non-disclosure that no adverse health information about cigarettes existed. When did he come to that conclusion and what are the supporting facts?

For the reasons set forth above, this court finds that Counts V and VI do not state causes of action for fraudulent concealment.

C. *The Conspiracy Counts (VII, VIII, XI and XII)*.

Plaintiff's conspiracy claims are grounded on the fraudulent misrepresentation and fraudulent concealment counts. The court is dismissing the fraud counts. Conspiracy is not an independent tort and fails if the independent cause of action underlying the conspiracy allegation fails. *Metro Capital Bank & Trust v. Feiner,* 2020 IL App (1st) 190895, ¶ 56. Without an underlying tort claim pending, the conspiracy counts must also be dismissed.

***Leave to Re-Plead.***

Defendants' motion to dismiss requests that the fraud related counts be dismissed with prejudice. Defendants argue that "Plaintiff has had numerous opportunities to cure these deficiencies and has been provided with a roadmap by the Court about how to do so." The court agrees that this statement is correct as to the fraudulent misrepresentation counts. Since the first motion to dismiss was filed, the issue with the misrepresentation counts has been the need to specifically plead the "what, when, where, and to whom" specifics of the alleged misrepresentations and also the need to plead facts, not mere conclusions, on the element of reliance. It is apparent to the Court, that if plaintiff were able to satisfy the heightened pleading requirement for her fraudulent misrepresentation counts, she would have done so in her TAC.

The Court's view on its dismissal of the fraudulent concealment counts is somewhat different. The distinction is that this Court's finding that plaintiff has failed to sufficiently plead the existence of a "duty to speak" is a pleading shortcoming not raised in the dismissal order entered by Judge Sheahan.[4] If plaintiff, consistent with its obligations under Rule 137, concludes that it can write fraudulent concealment counts in a way that states a viable cause of action under Illinois Law, the court, in this order, will not foreclose that possibility.

Dismissal of the fraudulent concealment counts will be without prejudice. However, leave to replead is not being granted. Should plaintiff wish to replead the fraudulent concealment counts, plaintiff must file a motion requesting leave to do so, with the proposed pleading attached. The motion must make readily apparent what changes were made to the proposed amended counts which plaintiff believes makes them now sufficiently state causes of action.

---

[4] The Court notes that this is not the only deficiency that it found to exist with the fraudulent concealment counts. However, the failure of the plaintiff to properly plead facts establishing the "duty to speak" element was a significant shortcoming with these counts.

**Conclusion.**

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. Counts V, VI, VII, and VIII of plaintiff's third amended complaint are hereby dismissed with prejudice.

2. Counts IX, X, XI, and XII of plaintiff's third amended complaint are hereby dismissed without prejudice.

**Order Setting Case Management Conference.**

**IT IS HEREBY FURTHER ORDERED AS FOLLOWS:**

1. This case is set for case management conference via Zoom for June 28, 2021 at 11:00 a.m. Zoom meeting ID: 3047044273 Passcode 755217.

ENTER: [signature]

ENTERED
Judge Robert Senechalle-1915
JUN 10 2021
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT OF COOK COUNTY, IL
DEPUTY CLERK

***EFILED***
Case Number 2023LA000191
Date: 3/24/2023 11:15 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiff,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA-000191

**Defendants Demand Trial by Jury of Twelve (12)**

**ENTRY OF APPEARANCE FOR DEFENDANT ITG BRANDS LLC**

Now comes Carl L. Rowley, as Lead Counsel, and the law firm of Thompson Coburn LLP, and enter their appearance on behalf of defendant ITG Brands LLC. Kevin C. McGinley and Michael W. Vogel also enter their appearance on behalf of ITG Brands LLC.

Respectfully submitted,

/s/ *Carl L. Rowley*

Carl L. Rowley, #6195075
Kevin C. McGinley #6286841
Michael W. Vogel, #6314202
Thompson Coburn LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 277-4700 FAX (618)-236-3434
Email: crowley@thompsoncoburn.com
Email: kmcginley@thompsoncoburn.com

29722186

Email: mvogel@thompsoncoburn.com

*Attorneys for Defendant ITG Brands LLC*

**Certificate Of Service**

The undersigned states that on the 24th day of March 2023, the Defendant filed the foregoing and served a copy of the foregoing electronically on all counsel of record via the Court's E-Filing System. In addition, a copy was also emailed to the following attorneys of record:

Ted Gianaris
Josh Edelson
Gianaris Trial Lawyers
One Court Street
Alton, Illinois 62002
(618) 816-9999
Email: tgianaris@lawforpeople.com
Email: jedelson@lawforpeople.com
*Attorneys for Plaintiff*

José A. Isasi, II
Jihan Walker
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
Email: jihanwalker@jonesday.com
Email: jisasi@jonesday.com
*Attorneys for Defendant R.J. Reynolds Tobacco Company*

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, Illinois 62025
(618) 655-3131
Email: gpinter@smbtrials.com
*Attorney for Phillips 66 Company*

/s/ *Carl L. Rowley*

29722186

***EFILED***
Case Number 2023LA000191
Date: 3/24/2023 11:15 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

e-Served
by MyDocFileServe
2708886
Mar 24 2023 11:15 AM

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiff,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA-000191

**Defendants Demand
Trial by Jury of Twelve (12)**

**JURY DEMAND ON BEHALF OF ITG BRANDS LLC**

ITG Brands LLC demands trial by jury of twelve in the above-captioned matter.

Respectfully submitted,

/s/ *Carl L. Rowley*

Carl L. Rowley, #6195075
Kevin C. McGinley #6286841
Michael W. Vogel, #6314202
Thompson Coburn LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 277-4700 FAX (618)-236-3434
Email: crowley@thompsoncoburn.com
Email: kmcginley@thompsoncoburn.com
Email: mvogel@thompsoncoburn.com

*Attorneys for Defendant ITG Brands LLC*

**Certificate Of Service**

The undersigned states that on the 24th day of March 2023, the Defendant filed the foregoing and served a copy of the foregoing electronically on all counsel of record via the Court's E-Filing System.  In addition, a copy was also emailed to the following attorneys of record:

Ted Gianaris
Josh Edelson
Gianaris Trial Lawyers
One Court Street
Alton, Illinois 62002
(618) 816-9999
Email: tgianaris@lawforpeople.com
Email: jedelson@lawforpeople.com
*Attorneys for Plaintiff*

José A. Isasi, II
Jihan Walker
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
Email:  jihanwalker@jonesday.com
Email:  jisasi@jonesday.com
*Attorneys for Defendant R.J. Reynolds Tobacco Company*

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, Illinois 62025
(618) 655-3131
Email: gpinter@smbtrials.com
*Attorney for Phillips 66 Company*

/s/ *Carl L. Rowley*

29722793

***EFILED***
Case Number 2023LA000191
Date: 3/24/2023 11:15 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

e-Served
by MyDocFileServe
2708886
Mar 24 2023 11:15 AM

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiff,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA-000191

**Defendants Demand Trial by Jury of Twelve (12)**

**DEFENDANT ITG BRANDS LLC'S MOTION TO DISMISS AND NOTICE OF ADOPTION OF AND JOINDER IN DEFENDANT R.J. REYNOLDS TOBACCO COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant, ITG Brands LLC ("ITG"), pursuant to 735 ILCS 5/2-615, hereby files the instant motion dismiss all claims asserted against them in Plaintiffs' Complaint, including negligence (Count 5), strict liability (Count 6), fraudulent concealment (Count 7), willful and wanton misconduct (Count 8), Illinois Consumer Fraud Act ("ICFA") (Count 9), and loss of consortium (Count 11), and further gives notice to the parties and the court of its adoption of and joinder in Defendants R.J. Reynolds Tobacco Company's Motion to Dismiss ("Motion to Dismiss") filed and served March 23, 2023.

As set forth in the Motion to Dismiss, R.J. Reynolds Tobacco Company ("RJR") is entitled to dismissal of Plaintiffs' claims for negligence, strict liability, fraudulent concealment, willful and

wanton misconduct, the Illinois Consumer Fraud Act, and loss of consortium (Counts 5, 6, 7, 8, 9, and 11) asserted in Plaintiffs' Complaint. ITG is entitled to dismissal of Plaintiff's claims against it for the same reasons.

WHEREFORE, for the reasons set forth in the RJR's Motion to Dismiss, ITG respectfully requests this Court dismiss Plaintiffs' claims asserted against it in Counts 5, 6, 7, 8, 9, and 11 with prejudice and for such other and further relief the Court deems just and proper.

Dated:  March 24, 2023

Respectfully submitted,

/s/ *Carl L. Rowley*
Carl L. Rowley, #6195075
Kevin C. McGinley #6286841
Michael W. Vogel, #6314202
THOMPSON COBURN LLP
525 West Main Street, Suite 300
Belleville, Illinois  62220
(618) 236-3467
Email: crowley@thompsoncoburn.com
Email: kmcginley@thompsoncoburn.com
Email: mvogel@thompsoncoburn.com

*Attorneys for Defendant ITG Brands LLC*

**Certificate Of Service**

The undersigned states that on the 24th day of March 2023, the Defendant filed the foregoing and served a copy of the foregoing electronically on all counsel of record via the Court's E-Filing System. In addition, a copy was also emailed to the following attorneys of record:

Ted Gianaris
Josh Edelson
Gianaris Trial Lawyers
One Court Street
Alton, Illinois 62002
(618) 816-9999
Email: tgianaris@lawforpeople.com
Email: jedelson@lawforpeople.com
*Attorneys for Plaintiff*

José A. Isasi, II
Jihan Walker
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
Email: jihanwalker@jonesday.com
Email: jisasi@jonesday.com
*Attorneys for Defendant R.J. Reynolds Tobacco Company*

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, Illinois 62025
(618) 655-3131
Email: gpinter@smbtrials.com
*Attorney for Phillips 66 Company*

/s/ *Carl L. Rowley*

***EFILED***
Case Number 2023LA000191
Date: 3/24/2023 12:52 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

1012821

**IN THE CIRCUIT COURT**
**THRID JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Donald Bannister and Betty Bannister,<br><br>Plaintiffs,<br><br>vs.<br><br>John Crane, Inc.,<br>Shell USA, Inc.,<br>Phillips 66 Company,<br>3M Company, f/k/a/ Minnesota Mining and Manufacturing Company,<br>Tyco Fire Products, L.P., successor in Interest to The Ansul Company,<br>Chemguard,<br>E. I. du Pont de Nemours & Co.,<br>National Foam, Inc.,<br>HWRT Oil Company,<br>ITG Brands LLC, and<br>R.J. Reynolds Tobacco Company,<br><br>Defendants. | ) | Case No.: 2023-LA-000191<br><br>**JURY TRIAL DEMANDED** |

**ENTRY OF APPEARANCE, JURY DEMAND AND NOTICE FOR SERVICE BY E-MAIL**

NOW COMES ANN C. BARRON, of the law firm of HEYL, ROYSTER, VOELKER & ALLEN, P.C., and hereby enters her appearance on behalf of the Defendant, 3M Company, in the above-captioned matter.

In accordance with Supreme Court Rule 11, 12 and 131, Heyl, Royster, Voelker & Allen, P.C. hereby designates the below-listed primary e-mail address and a secondary e-mail address for use and completion of any service upon this Defendant via e-mail; and further, this Defendant notes that service via e-mail shall be effective only if the notice, pleading or document is transmitted to all two e-mail addresses designated below, per Supreme Court Rule 11.

By consent of Plaintiff and agreement of the Plaintiff and 3M Company, 3M Company's responsive pleading to Plaintiff's Complaint will be due on or before April 21, 2023.

**DEFENDANT DEMANDS TRIAL BY JURY OF TWELVE (12)**

3M Company, Defendant

BY: /s/ Ann C. Barron
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
Ann C. Barron, ARDC #6224429

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
105 West Vandalia Street
Mark Twain Plaza III, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 309.420.0402
PRIMARY E-MAIL: edwecf@heylroyster.com
SECONDARY E-MAIL #1: abarron@heylroyster.com

1012821

**CERTIFICATE OF FILING AND PROOF OF SERVICE**

I certify that on **March 24, 2023**, at or before 5:00 p.m., I electronically filed and transmitted the foregoing **Entry of Appearance, Jury Demand and Notice for Service by E-mail** with the Clerk of the Court for the Third Judicial Circuit, Madison County, Illinois by using the Odyssey eFileIL system.

I further certify that the individuals named below have been served by transmitting a copy from my e-mail address to all primary and secondary e-mail addresses of record designated by these individuals on **March 24, 2023**.

Ted N. Gianaris
Joshua A. Edelson
Gianaris Trial Lawyers, LLC
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
***Attorneys for Plaintiff***

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, IL 62025
gpinter@smbtrials.com
***Attorneys for Phillips 66 Company***

Matthew B. Champlin
Emilee M. Bramstedt
HeplerBroom LLC
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
mbc@heplerbroom.com
emb@heplerbroom.com
***Attorneys for HWRT Oil Company, LLC***

Tyler W. Schwettman
Shook, Hardy & Bacon, L.L.P.
The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
tschwettman@shb.com
***Attorneys for E.I. du Pont de Nemours and Company***

1012821

Under penalties as provided by law pursuant to section 1-109 of the Illinois Code of Civil Procedure [735 ILCS 5/1-109], I certify that the statements set forth in this **Certificate of Filing and Proof of Service** are true and correct, except as to matters therein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

/s/ Marti Smith
HEYL, ROYSTER, VOELKER & ALLEN, P.C.

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
105 West Vandalia Street
Mark Twain Plaza III, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 309.420.0402
PRIMARY E-MAIL: edwecf@heylroyster.com
SECONDARY E-MAIL #1: abarron@heylroyster.com

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

***EFILED***
Case Number 2023LA000191
Date: 3/24/2023 1:04 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

STATE OF ILLINOIS,
CIRCUIT COURT

Madison COUNTY

# MOTION TO CONTINUE OR EXTEND TIME

For Court Use Only

**Instructions**

Directly above, enter the name of the county where the case was filed.

Enter the name of the person who started the lawsuit as Plaintiff/Petitioner.

Donald Bannister and Betty Bannister
**Plaintiff / Petitioner** *(First, middle, last name)*

Enter the name of the people and businesses sued as Defendants/ Respondents.

v.

John Crane, Inc., et al.

**Defendants / Respondents** *(First, middle, last name, or business name)*

Enter the Case Number given by the Circuit Clerk.

2023LA000191
**Case Number**

In **1**, check if you are the Plaintiff/Petitioner or Defendant/Respondent.

1. ***Motion* by:** ☐ Plaintiff/Petitioner ☑ Defendant/Respondent

In **2**, check the box if you are asking the court to continue (reschedule) a court date that has already been scheduled.

In **2a**, check the reason for the court date you are asking the court to continue (reschedule).

In **2b**, enter the date and time of the court date you are asking the court to continue (reschedule).

In **2c**, explain why you need to continue (reschedule) the court date.

☐ 2. I am asking the court **to continue (reschedule)** a court date that has already been scheduled.
   a. Reason for court date: ☐ Motion ☐ Trial ☐ Status ☐ Other
   b. Date: ________ at ________ ☐ a.m. ☐ p.m.
   c. I need a continuance because: ________

In **3**, check the box if you are asking for more time to do something (e.g. file an *Answer*).

In **3a**, explain what you are asking for more time to do.

In **3b**, enter the date you are asking the judge to give you until.

In **3c**, explain why you need more time.

☑ 3. I am asking the court **for more time** to do something.
   a. I need more time to: respond to Plaintiffs' Complaint
      which has a deadline of: 03/24/2023
      *Date*
   b. I need until: 04/24/2023
      *Date*
   c. I need more time because: Defendant requests more time to assess claims made against it. Plaintiffs' counsel was consulted and has no objection to this extension.

Enter the Case Number given by the Circuit Clerk: 2023LA000191

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**I certify that everything in the *Motion To Continue Or Extend Time* is true and correct. I understand that making a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.**

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name.

Enter your complete address, telephone number, and email address, if you have one.

/s/ Tyler W. Schwettman
*Your Signature*

The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
*Street Address*

Tyler W. Schwettman
*Print Your Name*

St. Louis, MO 63105
*City, State, ZIP*

(314) 690-0200
*Telephone*

tschwettman@shb.com
*Email*

6333327
*Attorney # (if any)*

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

## PROOF OF DELIVERY

In **1a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information.

**1.** I am sending the *Motion to Continue or Extend Time*

a. To:

Name: Ted (*First*) N. (*Middle*) Gianaris (*Last*)

Address: Gianaris Trial Lawyers; One Court Street, Alton, IL 62002
*Street, Apt # — City — State — ZIP*

Email address: tgianaris@lawforpeople.com

In **1b**, check the box to show how you are sending the document.

**CAUTION:** If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the other options.

b. By:

- ☑ An approved electronic filing service provider (EFSP)
- ☐ Email *(not through an EFSP)*

*Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

- ☐ Personal hand delivery to:
  - ☐ The party
  - ☐ The party's family member who is 13 or older, at the party's residence
  - ☐ The party's lawyer
  - ☐ The party's lawyer's office
- ☐ Mail or third-party carrier

In **c**, fill in the date and time that you are sending the document.

c. On: 03/24/2023 (*Date*) at: 5:00 (*Time*) ☐ a.m. ☑ p.m.

Enter the Case Number given by the Circuit Clerk: 2023LA000191

In **2**, if you are sending the document to more than 1 party or lawyer, fill in **a**, **b**, and **c**. Otherwise leave **2** blank.

**2.** I am sending this document:

a. To:

Name: Joshua (First) A. (Middle) Edelson (Last)

Address: Gianaris Trial Lawyers, LLC; Oce Court Street, Alton, IL 62002 (*Street, Apt #* / *City* / *State* / *ZIP*)

Email address: jedelson@lawforpeople.com

In **2a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information.

b. By:

- [x] An approved electronic filing service provider (EFSP)
- [ ] Email *(not through an EFSP)*

*Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

- [ ] Personal hand delivery to:
  - [ ] The party
  - [ ] The party's family member who is 13 or older, at the party's residence
  - [ ] The party's lawyer
  - [ ] The party's lawyer's office
- [ ] Mail or third-party carrier

In **2b**, check the box to show how you are sending the document.

**CAUTION:** If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the other options.

c. On: 03/24/2023 (*Date*) at: 5:00 (*Time*) [ ] a.m. [x] p.m.

In **c**, fill in the date and time that you are sending the document.

- [x] I have completed an *Additional Proof of Delivery* form.

If you are sending your document to more than 2 parties or lawyers, check the box and file the *Additional Proof of Delivery* with this form.

**I certify that everything in the *Proof of Delivery* is true and correct. I understand that making a false statement on this form is perjury and has penalties provided by law under <u>735 ILCS 5/1-109</u>.**

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

/s/ Tyler W. Schwettman
*Your Signature*

The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
*Street Address*

Tyler W. Schwettman
*Print Your Name*

St. Louis, MO 63105
*City, State, ZIP*

(314) 690-0200
*Telephone*

tschwettman@shb.com
*Email*

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name.

Enter your complete address, telephone number, and email address, if you have one.

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

***EFILED***
Case Number 2023LA000191
Date: 3/24/2023 1:04 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

STATE OF ILLINOIS, CIRCUIT COURT

Madison COUNTY

# ADDITIONAL PROOF OF DELIVERY

For Court Use Only

**Instructions**

Directly above, enter the name of the county where the case was filed.

Enter the name of the person or company that filed this case as Plaintiff/Petitioner.

Enter the name of the Defendants/ Respondents.

Enter the Case Number given by the Circuit Clerk.

Donald Bannister and Betty Bannister
**Plaintiff / Petitioner** *(First, middle, last name or Company)*

v.

John Crane, Inc., et al.
**Defendants / Respondents** *(First, middle, last name, or business name)*

2023LA000191
**Case Number**

In **1**, enter the name of each court document you are sending.

In **1a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information.

In **1b**, check the box to show how you are sending the document.
**CAUTION:** If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the other options.

In **c**, fill in the date and time that you are sending the document.

**1. I am sending the following court document:** Motion to Continue or Extend Time

a. To:
Name: Gary (*First*) C. (*Middle*) Pinter (*Last*)
Address: Swanson, Martin & Bell; 330 N Wabash Ave., #3300, Chicago, IL 60611
*Street, Apt # City State ZIP*
Email address: gpinter@smbtrials.com

b. By:
☑ An approved electronic filing service provider (EFSP)
☐ Email *(not through an EFSP)*
*Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*
☐ Personal hand delivery to:
☐ The party
☐ The party's family member who is 13 or older, at the party's residence
☐ The party's lawyer
☐ The party's lawyer's office
☐ Mail or third-party carrier

c. On: 03/24/2023 (*Date*) at: 5:00 (*Time*) ☐ a.m. ☑ p.m.

Enter the Case Number given by the Circuit Clerk: 2023LA000191

In **2**, if you are sending the document to more than 1 party or lawyer, fill in **a**, **b**, and **c**. Otherwise leave **2** blank.

In **2a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information.

In **2b**, check the box to show how you are sending the document.

**CAUTION:** If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the

In **c**, fill in the date and time that you are sending the document.

**2.** I am sending this document:

a. To:

Name: Matthew (*First*) B. (*Middle*) Champlin (*Last*)

Address: HelperBroom LLC; 130 N Main St., Edwardsville, IL 62025 (*Street, Apt #* / *City* / *State* / *ZIP*)

Email address: matthew.champlin@helperbroom.com

b. By:

- [x] An approved electronic filing service provider (EFSP)
- [ ] Email *(not through an EFSP)*

*Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

- [ ] Personal hand delivery to:
  - [ ] The party
  - [ ] The party's family member who is 13 or older, at the party's residence
  - [ ] The party's lawyer
  - [ ] The party's lawyer's office
- [ ] Mail or third-party carrier

c. On: 03/24/2023 (*Date*) at: 5:00 (*Time*) [ ] a.m. [x] p.m.

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name.

Enter your complete address, telephone number, and email address, if you have one.

**I certify that everything in the *Proof of Delivery* is true and correct. I understand that a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.**

/s/ Tyler W. Schwettman
*Your Signature*

The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
*Street Address*

Tyler W. Schwettman
*Print Your Name*

St. Louis, MO 63105
*City, State, ZIP*

(314) 690-0200
*Telephone*

tschwettman@shb.com
*Email*

6333327
*Attorney # (if any)*

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

***EFILED***
Case Number 2023LA000191
Date: 3/31/2023 2:05 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

Donald Bannister and Betty Bannister, )
)
Plaintiffs, ) NO: 2023LA 000191
)
vs. )
)
John Crane, Inc., et al., )
)
Defendants. )

**CERTIFICATE OF SERVICE**

This is to certify that a true and accurate copy of Defendant, JOHN CRANE INC.'s **Notice and Designation of Expert and Lay Witnesses** were served upon Plaintiffs via Pohlman MyDocFileServe, this 31st day of March, 2023.

Respectfully submitted,

MANNING GROSS + MASSENBURG LLP

By: */s/ Mark I. Tivin*

Alexander J. Baker #6305401
Mark I. Tivin, #6210281
mtivin@mgmlaw.com
Pamela R. Gamble, #6282922
Anthony D. Danhelka, #6305698
Megha H. Rana, #6342609
1 South Dearborn St, Suite 1430
Chicago, IL 60603
Telephone: (312) 625-4995
Facsimile: (312) 291-9396
FIRM ID NO.: 63354
ATTORNEYS FOR DEFENDANT

**PROOF OF SERVICE**

The undersigned certifies that a true and accurate copy of the foregoing was served on all counsel of record via Pohlman MyDocFileServe this 31st day of March, 2023.

Gianaris Trial Lawyers, LLC
One Court Street
Alton, IL 62002
*Attorneys for Plaintiff*

*/s/ Mark I. Tivin*
ATTORNEYS FOR DEFENDANT
JOHN CRANE INC.

***EFILED***
Case Number 2023LA000191
Date: 3/31/2023 2:05 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

e-Served
by MyDocFileServe
2713915
Mar 31 2023 02:04 PM

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | | |
|---|---|---|
| Donald Bannister and Betty Bannister, | ) | |
| | ) | |
| Plaintiffs, | ) | NO: 2023LA 000191 |
| | ) | |
| vs. | ) | |
| | ) | |
| John Crane, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY OF APPEARANCE**

COMES NOW MANNING GROSS + MASSENBURG LLP, and hereby enters its appearance on behalf of Defendant, JOHN CRANE INC.

Respectfully submitted,

MANNING GROSS + MASSENBURG LLP

By: *_/s/ Mark I. Tivin_*

Alexander J. Baker #6305401
Mark I. Tivin, #6210281
mtivin@mgmlaw.com
Pamela R. Gamble, #6282922
Anthony D. Danhelka, #6305698
Megha H. Rana, #6342609
1 South Dearborn St, Suite 1430
Chicago, IL 60603
Telephone: (312) 625-4995
Facsimile: (312) 291-9396
FIRM ID NO.: 63354
ATTORNEYS FOR DEFENDANT

***EFILED***
Case Number 2023LA000191
Date: 3/31/2023 2:05 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

e-Served
by MyDocFileServe
2713915
Mar 31 2023 02:04 PM

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

Donald Bannister and Betty Bannister, )
Plaintiffs, ) NO: 2023LA 000191
vs. )
John Crane, Inc., et al., )
Defendants. )

**DEFENDANT JOHN CRANE INC.'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

COMES NOW Defendant JOHN CRANE INC., by and through its attorneys, MANNING GROSS + MASSENBURG LLP, and for its Motion to Dismiss Plaintiffs' Complaint, states as follows:

1. Plaintiffs filed an eleven-count complaint. Count X alleges negligence; Counts I, II, III, IV, V, VI, VII, VIII and IX are not directed against this defendant; and Count XI alleges loss of consortium (See Plaintiffs' Complaint as previously filed).

2. Count X claims that the products manufactured by this and other defendants caused injury to the Plaintiffs.

3. Pursuant to 735 ILCS 5/2-615 of the Illinois Code of Civil Procedure, Illinois law requires a Complaint to allege sufficient facts so as to bring the claim within a legally recognized cause of action. Notice pleading is insufficient in Illinois.

4. Pursuant to 735 ILCS 5/2-613 of the Illinois Code of Civil Procedure, each Defendant is entitled to separate counts with individualized facts

5. Plaintiffs' Complaint is deficient in failing to allege the particular products which Plaintiffs claim were manufactured by JOHN CRANE INC. to which the Plaintiff claims exposure;

there is no factual allegation of the time of the Plaintiff's alleged exposure to JOHN CRANE INC. products or location of this exposure. Further, there is no indication of the time in which any JOHN CRANE INC. products were placed into the stream of commerce or where in the chain of production this defendant was located.

6. Plaintiffs' Complaint also fails to allege sufficient facts to support a cause of action for "concurrent negligence" or the single indivisible injury rule. In Knox v. Keene Corp., 210 Ill. App. 3d 141, 569 N.E.2d (2d Dist. 1991), the Illinois Appellate Court indicated that in pleading a cause of action for an asbestos related injury, the plaintiff must allege that said products were used concurrently or in conjunction with one another. The instant Complaint fails to meet this requirement.

7. Count XI of Plaintiffs' Complaint is deficient in failing to allege sufficient facts to state a cause of action for loss of consortium. Moreover, as the loss of consortium claim is entirely derivative of Plaintiffs' other insufficient claims listed above, it must likewise be dismissed.

WHEREFORE, Defendant JOHN CRANE INC. prays that Plaintiffs' Complaint be dismissed with Plaintiffs to pay costs of suit.

Respectfully submitted,

MANNING GROSS + MASSENBURG LLP

By: */s/ Mark I. Tivin*

Alexander J. Baker #6305401
Mark I. Tivin, #6210281
mtivin@mgmlaw.com
Pamela R. Gamble, #6282922
Anthony D. Danhelka, #6305698
Megha H. Rana, #6342609
1 South Dearborn St, Suite 1430
Chicago, IL 60603
Telephone: (312) 625-4995

Facsimile:  (312) 291-9396
FIRM ID NO.:  63354
ATTORNEYS FOR DEFENDANT

***EFILED***
Case Number 2023LA000191
Date: 4/5/2023 4:44 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Donald Bannister and Betty Bannister, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 2023LA-000191 |
| | ) | |
| John Crane, Inc., et al.. | ) | |
| | ) | |
| Defendants | | |

**PLAINTIFF'S RESPONSE TO PHILLIPS 66 COMPANY'S AFFIRMATIVE DEFENSES TO COMPLAINT**

Comes now Plaintiff and in Response to Defendant Phillips 66 Company's Affirmative Defenses to Complaint states:

Affirmative Defenses 1. – 25. Denied.

WHEREFORE, Plaintiff respectfully request that this Court dismiss Defendant's claims and defenses pleaded as Affirmative Defenses in their entirety, award Plaintiff all costs and expenses incurred on its behalf, and for such other and further relief, at law or in equity, as this Court deems just and proper.

Respectfully Submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: */s/ Ted Gianaris*
Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiff*

PROOF OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served on this 5th day of April 2023, by electronic mail upon all counsel of record:

**HEYL, ROYSTER, VOELKER &ALLEN, P.C.**
Ann Barron
105 West Vandalia Street
Mark Twain Plaza III, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 309.420.0402
edwecf@heylroyster.com
abarron@heylroyster.com
**Defense Counsel for 3M**

**Thompson Coburn LLP**

Carl L. Rowley, #6195075
Kevin C. McGinley #6286841
Michael W. Vogel, #6314202
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 277-4700 FAX (618)-236-3434
crowley@thompsoncoburn.com
kmcginley@thompsoncoburn.com
mvogel@thompsoncoburn.com
**Defense Counsel for ITG Brands LLC and R.J. Reynolds Tobacco Company**

**SWANSON, MARTIN & BELL, LLP**

Gary C. Pinter, ARDC #6293560
103 West Vandalia St., Suite 215
Edwardsville, IL 62025
Office: 618-655-3131
Direct: 618-655-3119
gpinter@smbtrials.com
**Defense Counsel for Phillips 66 Company**

/s/ Ted Gianaris

***EFILED***
Case Number 2023LA000191
Date: 4/14/2023 12:21 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BANNISTER and BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M, f/k/a MINNESOTA MINING AND MANUFACUTURING COMPANY, TYCO FIRE PRODUCTS, L.P. successor in interest To the Ansul Company, CHEMGUARD E.I. DU PONT DE NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No: 2023LA-000191

**ENTRY OF APPEARANCE**

COMES NOW, Laura K. Beasley, of the law firm Baker Sterchi Cowden & Rice LLC, and hereby enters her appearance as counsel of record on behalf of Defendants Tyco Fire Products LP and Chemguard, Inc.

Respectfully Submitted,

/s/ Laura K. Beasley _____________
Laura K. Beasley #6274537
Baker Sterchi Cowden & Rice LLC
23 Public Square Suite 415
Belleville, Illinois 62220
Telephone: 618-257-2674
Facsimile: 618-257-2678
lbeasley@bakersterchi.com

*Attorneys for Tyco Fire Products LP and Chemgaurd, Inc.*

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was electronically filed with File & Serve*Illinois* this 14th day of April, 2023 which will send notification of such filing(s) to all counsel of record.

Ted N. Gianaris
Joshua A. Edelson
Gianaris Trial Lawyers
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiff*

/s/ Laura K. Beasley__________________

***EFILED***
Case Number 2023LA000191
Date: 4/14/2023 12:21 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

| | |
|---|---|
| **DONALD BANNISTER and BETTY BANNISTER,**<br><br>**Plaintiffs,**<br>**vs.**<br><br>**JOHN CRANE, INC., et al.,**<br><br>**Defendants.** | **Case No. 2023LA000191** |

**MOTION TO DISMISS OF DEFENDANTS
TYCO FIRE PRODUCTS LP AND CHEMGUARD, INC.**

Defendants Tyco Fire Products LP and Chemguard, Inc., by and through their attorneys, Baker, Sterchi, Cowden & Rice LLC, respectfully move this Court pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-301 to dismiss Plaintiffs' Complaint against them. Tyco and Chemguard contemporaneously file their Memorandum of Law in Support of Their Combined Motion to Dismiss and reference it as if fully stated herein.

Therefore, Defendants Tyco and Chemguard pray that this Honorable Court grant this Motion and dismiss Plaintiffs' Complaint pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-301.

Dated: April 12, 2023

Respectfully Submitted,

/s/ Laura K. Beasley ______________
Laura K. Beasley #6274537
Baker Sterchi Cowden & Rice LLC
23 Public Square Suite 415
Belleville, Illinois 62220
Telephone: 618-257-2674
Facsimile: 618-257-2678
lbeasley@bakersterchi.com

*Attorneys for Tyco Fire Products LP*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was electronically filed with File & Serve*Illinois* this 12th day of April, 2023 which will send notification of such filing(s) to all counsel of record.

Ted N. Gianaris
Joshua A. Edelson
Gianaris Trial Lawyers
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiff*

/s/ Laura K. Beasley___________________

***EFILED***
Case Number 2023LA000191
Date: 4/14/2023 12:21 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | |
|---|---|
| **DONALD BANNISTER and BETTY BANNISTER,**<br><br>**Plaintiffs,**<br>**vs.**<br><br>**JOHN CRANE, INC., et al.,**<br><br>**Defendants.** | **Case No. 2023LA000191** |

**MEMORANDUM OF LAW OF DEFENDANTS**
**TYCO FIRE PRODUCTS LP AND CHEMGUARD, INC.**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

Plaintiffs Donald and Betty Bannister assert claims against Defendants that produced, distributed, or used a variety of different products or substances—ranging from cigarettes to polyaromatic hydrocarbons to asbestos—that are all alleged to have caused Mr. Bannister's cancers. *See* Compl. 1–2 ¶ 2. Tucked into this scattershot pleading are two conclusory products-liability claims against Tyco Fire Products LP ("Tyco"), Chemguard, Inc. ("Chemguard"), and a few other Defendants based upon their alleged manufacture or distribution of products containing "per- and poly-fluoroalkyl substances" ("PFAS"). *See* Compl. 4 ¶ 2. Plaintiffs allege no specific facts supporting their claims against Tyco or Chemguard. Nor have they alleged a *prima facie* basis for this Court to exercise personal jurisdiction over those entities.

Accordingly, Tyco and Chemguard, by and through their attorneys, Baker, Sterchi, Cowden & Rice LLC, respectfully move this Court to dismiss the claims against them pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-301.

## I. The Complaint Does Not State a Claim Against Tyco or Chemguard.

Pursuant to 735 ILCS 5/2-615, the Court should dismiss Plaintiffs' claims against Tyco and Chemguard (Counts I and II) because the Complaint fails to allege sufficient facts to support a cause of action against them.

"Because Illinois is a fact-pleading jurisdiction, a plaintiff is required to set forth a legally recognized claim and plead facts in support of each element that bring the claim within the cause of action alleged." *Rodriguez v. Ill. Prisoner Rev. Bd.*, 376 Ill. App. 3d 429, 434 (5th Dist. 2007). The Code of Civil Procedure "do[es] not authorize notice pleading," *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 167-68 (1st Dist. 2003), and "conclusions of fact will not suffice to state a cause of action regardless of whether they generally inform the defendant of the nature of the claim against him," *Rodriguez*, 376 Ill. App. 3d at 434. "The court will not fill in the blanks" of an insufficiently pleaded complaint. *Id.*

Allegations that are vague or conclusory do not satisfy the pleading standard. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 408-09 (1996); *Turner-El v. West*, 349 Ill. App. 3d 475, 485 (5th Dist. 2004). A complaint is deficient if it alleges only conclusions about the elements of the cause of action, *Simpkins v. CSX Transp., Inc.,* 2012 IL 110662, ¶¶ 27-28, and "a pleading which merely paraphrases the law as though to say that the case will meet the legal requirements without stating the essential facts is insufficient," *In re Petition to Annex Certain Prop. to City of Wood Dale*, 244 Ill. App. 3d 820, 834-35 (2d Dist. 1993). Thus, to state a negligence claim for instance, a plaintiff must allege specific facts sufficient to allow the court to analyze whether "the plaintiff and the defendant stood in such a relationship to each other that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Chandler v. Ill. Cent. R.* Co., 207 Ill. 2d 331, 349 (2003). "[I]t is insufficient to allege that a defendant had a duty and that it was breached and the breach resulted in injury. The pleader must allege *specific facts*

from which the law will raise a duty and from which it can conclude that the duty was breached and this resulted in injury to the plaintiff." *In re Petition to Annex*, 244 Ill. App. 3d at 835 (emphasis added).

Here, Plaintiffs fail to allege any specific facts against Tyco or Chemguard. In Count I, Plaintiffs assert negligence claims against five "PFAS Defendants," including Tyco and Chemguard. But Plaintiffs do not allege specific facts about which products Tyco or Chemguard manufactured,[1] how Mr. Bannister came into contact with those products,[2] when those products were manufactured, what Mr. Bannister's relationship was to Tyco or Chemguard, what steps Tyco or Chemguard took with regard to the safety of those products, or how the unnamed Tyco or Chemguard products proximately caused any injury to Mr. Bannister. In short, Plaintiffs do not allege specific facts to establish any, let alone all, of the elements of a negligence cause of action against Tyco or Chemguard. *See Chandler*, 207 Ill. 2d at 349 (pleading requirements for negligence).

Count II, a claim for strict liability against the "PFAS Defendants," suffers from the same flaws as Count I. There are no specific allegations of fact against Tyco or Chemguard that set forth which of their products Mr. Bannister was allegedly exposed to, when and how the exposures

---

[1] In places, the Complaint refers to "PFAS/AFFF." *E.g.* Compl. 2 ¶ 3. "AFFF" is an initialism for "aqueous film-forming foam," a category of firefighting agents that contain various types of PFAS as functionally important, although quantitatively minor, ingredients. But whatever limited specificity that reference may convey is cancelled by Plaintiffs' allegation that the PFAS-containing products Mr. Bannister was exposed to "included, *but are not limited to*, . . . firefighting and fire suppression materials/products." *Id.* at 4 ¶ 2 (emphasis added). Thus, Plaintiffs' identification of the Tyco and Chemguard products at issue is fatally indefinite.

[2] Confusingly, the Complaint states that PFAS-containing products "were highly utilized in coal mines where Plaintiff worked." *See* Compl. 4 ¶ 2; *id.* at 8 ¶ 2. But the Complaint alleges that Mr. Bannister spent 40 years working at an oil refinery. *Id.* at 2 ¶ 3. There are no allegations that he ever worked in a coal mine.

occurred, what actions Tyco or Chemguard took regarding the safety of their unnamed products, or how any harm to Mr. Bannister was proximately caused by their actions. *See Brobbey v. Enterprise Leasing Co. of Chi.*, 404 Ill. App. 3d 420, 428 (1st Dist. 2010) (elements of strict product liability claim).

Thus, Plaintiffs have not alleged anything more than vague and conclusory assertions that merely reiterate the general elements of the causes of action but omit all necessary, relevant detail related to Tyco and Chemguard and linking those Defendants to Plaintiffs' claimed damages.

Counts I and II are deficient for an additional reason. The Code of Civil Procedure requires separate claims to be set forth using separate allegations of fact. *See* 735 ILCS 5/2-603. Accordingly, Plaintiffs must set out their claims against the manufacturers, distributors, or users of different products in separate causes of action, and each count must be supported by specific factual assertions against each Defendant. Plaintiffs, however, improperly lump all of the "PFAS Defendants" together without raising specific claims against them individually and without including separate factual allegations against the different manufacturers of different PFAS-containing products.

Because the Complaint fails to allege sufficient facts to support a cause of action against Tyco or Chemguard, it should be dismissed as to them or, in the alternative, made more definite pursuant to 735 ILCS 5/2-615.

## II.     The Complaint Fails to Establish a *Prima Facie* Basis for Exercising Personal Jurisdiction over Tyco or Chemguard.

The plaintiff has the burden of establishing a *prima facie* basis to exercise personal jurisdiction over a defendant. *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 16, 178 N.E.3d 1088, 1094 (citation omitted). Plaintiffs' claims against Tyco and Chemguard should be dismissed pursuant

to 735 ILCS 5/2-301 because the Complaint fails to allege sufficient facts to support the exercise of personal jurisdiction over either entity.

Illinois's long-arm statute, 735 ILCS 5/2-209, permits the exercise of personal jurisdiction up to the limits imposed by the U.S. Constitution. *Rios*, 2020 IL 125020, ¶ 17, 178 N.E.3d at 1094. "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). "A state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 918 (2011). Illinois courts may "exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (internal quotation marks and citation omitted).

Two categories of personal jurisdiction have been recognized: (1) general or all-purpose jurisdiction and (2) specific or case-linked jurisdiction. *Rios*, 2020 IL 125020, ¶ 19, 178 N.E.3d at 1094. General jurisdiction applies where the jurisdiction is "one in which the corporation is fairly regarded as at home," and specific jurisdiction applies where the suit arises out of or relates to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 582 U.S. 255, 262 (2017) (citation omitted).

The Complaint is silent as to any facts suggesting that Tyco or Chemguard are "essentially at home in Illinois." *See Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 18, 90 N.E.3d 440, 446. "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG*, 571 U.S. at

118. Chemguard is not an Illinois corporation, and none of Tyco's members is a citizen of Illinois.[3] Neither Tyco nor Chemguard has a principal place of business in Illinois. The Complaint does not suggest otherwise or offer any other basis for general jurisdiction over these entities.

The Complaint also does not allege any basis for specific jurisdiction over Tyco or Chemguard. "A state may assert specific personal jurisdiction over an out-of-state defendant only 'if the defendant has purposefully directed [its] activities at residents of the forum' and if 'the litigation results from alleged injuries that arise out of or relate to those activities.'" *Rios*, 2020 IL 125020, ¶ 20, 178 N.E.3d at 1094 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (internal quotation marks and citations omitted). The Complaint contains no allegation that Tyco or Chemguard purposely directed *any* activity at the State of Illinois or at Plaintiffs. *See* Compl. 4–12; *Malevitis v. Expedia Grp., Inc.*, 2021 IL App (1st) 200820-U, ¶ 27; *Morrison v. JSK Transp., Ltd.*, 2022 IL App (4th) 210542-U, ¶ 42. Plaintiffs' lone allegation about Tyco and Chemguard's relevant conduct is that "each Defendant committed a tortious act within this State." Compl. 4 ¶ 13. But this bare legal conclusion unsupported by specific factual allegations is insufficient to support a finding of personal jurisdiction. *See Forrester v. Seven Seventeen HB St. Louis Redevelopment Corp.*, 336 Ill. App. 3d 572, 579, 784 N.E.2d 834, 839 (2002); IL R S CT Rule 191.

Accordingly, Tyco and Chemguard respectfully request that this Court dismiss all claims against them for lack of personal jurisdiction pursuant to 735 ILCS 5/2-301.

---

[3] Although Tyco is registered to do business in Illinois, "the fact that a foreign corporation has registered to do business . . . does not mean that the corporation has thereby consented to general jurisdiction over all causes of action . . . ." *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 27, 90 N.E.3d 440, 447. Chemguard is not registered to do business in Illinois.

**Conclusion**

For the foregoing reasons, Tyco and Chemguard pray that this Honorable Court dismiss Plaintiffs' Complaint against them pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-301.

Respectfully Submitted,

/s/ Laura K. Beasley ______________

Laura K. Beasley #6274537
Baker Sterchi Cowden & Rice LLC
23 Public Square Suite 415
Belleville, Illinois 62220
Telephone: 618-257-2674
Facsimile: 618-257-2678
lbeasley@bakersterchi.com

*Attorneys for Tyco Fire Products LP*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was electronically filed with File & Serve*Illinois* this 12th day of April, 2023 which will send notification of such filing(s) to all counsel of record.

Ted N. Gianaris
Joshua A. Edelson
Gianaris Trial Lawyers
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiff*

/s/ Laura K. Beasley__________________

***EFILED***
Case Number 2023LA000191
Date: 4/21/2023 1:57 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

1012821

**IN THE**
**CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Donald Bannister and Betty Bannister, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2023LA000191 |
| | ) | |
| John Crane, et al., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**DEFENDANT 3M COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant 3M Company ("3M") moves pursuant to 735 ILCS 5/2-615 to dismiss Plaintiffs Donald and Betty Bannister's Complaint for failure to state a cause of action. In support, 3M states as follows:

1. Plaintiffs Donald and Betty Bannister filed an 11-count complaint, which lacks the specific allegations against 3M necessary to survive a motion to dismiss, is impermissibly ambiguous, and fails to comply with Illinois law.

2. Plaintiffs' complaint alleges various personal injuries that Mr. Bannister purportedly suffered based on purported exposure to a wide variety of substances, none of which are identified as being made by 3M. Although Plaintiffs vaguely attribute Mr. Bannister's injuries to a variety of purported causes and conditions arising years ago, ranging from his long-term smoking to alleged workplace exposure to a number of different chemicals and products over 40 years, the complaint lacks the factual specificity required to satisfy Illinois fact-pleading requirements. Plaintiffs' claims should be dismissed.

3. Regarding 3M in particular, Plaintiffs do not plead facts sufficient to state a claim that 3M may be liable for Mr. Bannister's injuries. The complaint is silent about what 3M products, if any, Mr. Bannister encountered and when. The complaint alleges no facts establishing a relationship between 3M and Mr. Bannister that would give rise to a legal duty. Further, the complaint does not state how any 3M product proximately caused any injury. These are all essential elements of Plaintiffs' claims against 3M, and their absence requires dismissal of the claims.

4. Additionally, Plaintiffs impermissibly lump 3M together with other "PFAS Defendants" in the same vague and conclusory counts, in blatant violation of Illinois's pleading rules. Plaintiffs also do not plead necessary facts about Mr. Bannister's work history. Instead, their allegations are inconsistent and ambiguous, claiming at some points in the complaint that Mr. Bannister was exposed to hazards through his work performing enumerated jobs at a refinery, but elsewhere citing his alleged work in a coal mine as the sole source of the supposed workplace exposures to PFAS.

5. Therefore, dismissal is appropriate because (1) Plaintiffs failed to allege any negligence or strict liability claim against 3M with the requisite factual specificity; (2) Plaintiffs improperly lump all PFAS Defendants together; (3) the Complaint is impermissibly ambiguous; and (4) the loss of consortium claim, which is derivative of Plaintiffs' other claims, must also fail.

6. *First*, the Complaint should be dismissed against 3M because Plaintiffs do not set forth sufficient specific factual averments to state a cause of action for negligence (Count 1) or strict products liability (Count 2). A section 2-615 motion to dismiss tests the sufficiency of a complaint and the question presented is whether the well-pleaded facts are sufficient to state a

cause of action upon which relief may be granted. *O'Keefe v. Walgreens Boot Alliance, Inc.*, 2020 IL App (5th) 190448, ¶ 13. "Because Illinois is a fact-pleading jurisdiction, a plaintiff is required to set forth a legally recognized claim and plead facts in support of each element that bring the claim within the cause of action alleged." *Rodriguez v. Ill. Prisoner Rev. Bd.*, 376 Ill. App. 3d 429, 434 (5th Dist. 2007). The Code of Civil Procedure "do[es] not authorize notice pleading," *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 167-68 (1st Dist. 2003), and "conclusions of fact will not suffice to state a cause of action regardless of whether they generally inform the defendant of the nature of the claim against him," *Rodriguez*, 376 Ill. App. 3d at 434. "The court will not fill in the blanks" of an insufficiently pleaded complaint. *Id.*

7. Thus, for instance, a plaintiff must allege specific facts sufficient to allow the court to analyze whether "the plaintiff and the defendant stood in such a relationship to each other that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Chandler v. Ill. Cent. R. Co.*, 207 Ill. 2d 331, 349 (2003); *see also Cangemi v. Advocate S. Suburban Hosp.*, 364 Ill. App. 3d 446, 458 (1st Dist. 2006) (plaintiffs must allege specific facts to establish duty, breach, proximate cause, and damages). "[I]t is insufficient to allege that a defendant had a duty and that it was breached and the breach resulted in injury. The pleader must allege *specific facts* from which the law will raise a duty and from which it can conclude that the duty was breached and this resulted in injury to the plaintiff." *In re Petition to Annex Certain Prop. to City of Wood Dale*, 244 Ill. App. 3d 820, 835 (2d Dist. 1993) (emphasis added); *see Elkins v. Caritas Family Solutions*, 2022 IL App (5th) 200251-U, ¶ 17 (complaint insufficient because it provided no specific factual allegations to support conclusory statements) (attached as Exhibit A).

8. While Plaintiffs assert a negligence claim against the five "PFAS Defendants," they do not allege specific facts about what products 3M manufactured, when such products were made, how Donald Bannister used or was exposed to those products, what Mr. Bannister's relationship (if any) was to 3M, or how the unnamed 3M products proximately caused any injury (and if so which injury) to Mr. Bannister.

9. Instead, Plaintiffs allege conclusions without factual support and not specific to 3M. As one example, Plaintiffs allege that the PFAS Defendants "[f]ailed to provide adequate warnings to persons, such as Plaintiff, working with and around [their] products/materials containing PFAS of the dangers of inhaling, ingesting or otherwise absorbing the same." Compl., Count 1, ¶ 12(d). But such bare conclusory assertions of ultimate fact do not satisfy the fact-pleading standard because Plaintiffs must provide *specific* factual averments to support their conclusion that 3M "failed to provide an adequate warning"—they must allege, for example, facts regarding the products and the warnings that were provided. *See Elkins*, 2022 IL App (5th) 200251-U, ¶ 17 (complaint must "describe the acts" complained about with specificity); *Webb v. Fin. Indus. Regulatory Auth., Inc.*, 2022 IL App (1st) 200854-U, ¶ 51 (plaintiffs must plead specific facts of defendant's wrongdoing to support their legal and factual conclusions) (attached as Exhibit B). Because Plaintiffs lump five defendants into this group, it is further impossible to determine what defendants, products, and exposures Plaintiffs believe are the source of their alleged injuries.

10. As another example, Plaintiffs vaguely allege that the PFAS Defendants breached their duties of care because they knew by at least 2010 that PFAS would have a harmful effect on humans. Compl., Count 1, ¶ 12(b). But Plaintiffs acknowledge that Mr. Bannister's last alleged occupational exposure occurred in 2004. *Id.*, Count 3, ¶ 3. With no specific factual averments that

3M knew of the claimed harmful effect of PFAS on humans at the relevant time of any purported use or exposure (none of which is alleged), Plaintiffs do not plead specific facts linking 3M to any breach of duty.

11. Count 2, a strict liability claim against the PFAS Defendants, suffers the same fatal defects as Count 1. There are no specific allegations of fact against 3M identifying which 3M products Mr. Bannister was allegedly exposed to, when and how the exposures occurred, or how any harm to Mr. Bannister was proximately caused by 3M's actions. To state a claim for strict liability, a plaintiff must allege specific facts that the product that caused an injury was unreasonably dangerous and that condition existed at the time it left the manufacturer's control. *Brobbey v. Enterprise Leasing Co. of Chi.*, 404 Ill. App. 3d 420, 428 (1st Dist. 2010) (elements of strict product liability claim). Plaintiffs have not alleged what 3M products were used, the time and nature of the use of those products, or the defect of the specific products. Thus, Plaintiffs have not sufficiently alleged that any product was unreasonably dangerous and the defect existed at the time it left 3M's control.

12. In short, Plaintiffs' vague and conclusory assertions reiterating general elements of the causes of action but omitting any details linking 3M to Plaintiffs' claimed damages require dismissal for failure to comply with Illinois fact-pleading rules.

13. *Second*, Counts 1 and 2 are deficient for the additional reason that they lump all the so-called "PFAS Defendants" together without raising specific claims against the individual defendants. Separate claims must be set forth using separate allegations of fact. *See* 735 ILCS 5/2-603(b); *Hartshorn v. State Farm Ins. Co.*, 361 Ill. App. 3d 731, 736 (2d Dist. 2005) (plaintiff improperly mixed allegations against separate defendants in the same count). Plaintiffs cannot combine their

vague allegations against a number of parties and still state a claim against 3M because 3M's liability necessarily depends on *3M-specific* facts, not conclusory allegations about the actions of all PFAS Defendants generally. Counts 1 and 2 fail on this ground.

14. *Third*, the Complaint should be dismissed because it is impermissibly ambiguous. Under Illinois's fact-pleading regime, ambiguous allegations "are insufficient under Illinois law" and require dismissal. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 35. Plaintiffs allege that Mr. Bannister worked at a refinery for 40 years and it was there that he was occupationally exposed to asbestos, PFAS, and other chemicals. Compl. ¶ 3. In fact, Plaintiffs list nearly a dozen jobs that Mr. Bannister performed at the refinery for several different companies. *Id.* At no point in that recitation of Mr. Bannister's work history do Plaintiffs suggest that he worked in a coal mine. But in Counts 1 and 2, Plaintiffs allege that Mr. Bannister was occupationally exposed to PFAS not at the refinery but "in coal mines where [he] worked" and through his own use of PFAS-containing products. Compl., Count 1, ¶ 2; *id.*, Count 2, ¶ 2. This is so despite that the fact that among the many different defendants Plaintiffs sued—oil companies, cigarette manufacturers, companies that produce asbestos, manufactures of PFAS—none of the defendants are coal mining companies. That internal ambiguity over where the unspecified exposures to unspecified 3M products allegedly occurred requires dismissal of the claims against 3M.

15. *Fourth*, Count 11 is a claim against all Defendants for Betty Bannister's loss of consortium due to Donald Bannister's injuries. A loss of consortium claim is derivative of the claim of the impaired spouse. *Brown v. Metzger*, 118 Ill. App. 3d 855, 858 (2d Dist. 1983). When the impaired spouse's claim fails, "the deprived spouse's claim for loss of consortium must also fail." *Ramirez v. City of Chicago*, 2019 IL App (1st) 180841, ¶ 20. Because Plaintiffs have failed to

adequately plead that 3M caused Donald Bannister's injuries, Betty Bannister's claim for loss of consortium necessarily fails.

Wherefore, Defendant 3M Company respectfully requests that this Motion be granted, that the Court dismiss Plaintiffs' Complaint as to 3M Company, and the Court award such other relief as is proper.

Dated: April 21, 2023

3M Company, Defendant

BY: /s/ Ann C. Barron
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
Ann C. Barron, ARDC #6224429

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
105 West Vandalia Street
Mark Twain Plaza III, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 309.420.0402
PRIMARY E-MAIL: edwecf@heylroyster.com
SECONDARY E-MAIL #1: abarron@heylroyster.com

1012821

**CERTIFICATE OF FILING AND PROOF OF SERVICE**

I certify that on **April 21, 2023**, at or before 5:00 p.m., I electronically filed and transmitted the foregoing **Defendant 3M Company's Motion to Dismiss Plaintiffs' Complaint** with the Clerk of the Court for the Third Judicial Circuit, Madison County, Illinois by using the Odyssey eFileIL system.

I further certify that the individuals named below have been served by transmitting a copy from my e-mail address to all primary and secondary e-mail addresses of record designated by these individuals on **April 21, 2023.**

Ted N. Gianaris
Joshua A. Edelson
Gianaris Trial Lawyers, LLC
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
***Attorneys for Plaintiff***

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, IL 62025
gpinter@smbtrials.com
***Attorneys for Phillips 66 Company***

Matthew B. Champlin
Emilee M. Bramstedt
HeplerBroom LLC
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
mbc@heplerbroom.com
emb@heplerbroom.com
***Attorneys for HWRT Oil Company, LLC***

Tyler W. Schwettman
Shook, Hardy & Bacon, L.L.P.
The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
tschwettman@shb.com
***Attorneys for E.I. du Pont de Nemours and Company***

1012821

Alexander J. Baker
Mark I. Tivin
Manning Gross + Massenburg LLP
1 South Dearborn St., Suite 1430
Chicago, IL 60603
mtivin@mgmlaw.com
***Attorneys for John Crane Inc.***

Carl L. Rowley
Kevin C. McGinley
Michael W. Vogel
Thompson Coburn LLP
525 West Main Street, Suite 300
Belleville, IL 62220
crowley@thompsoncoburn.com
kmcginley@thompsoncoburn.com
mvogel@thompsoncoburn.com
***Attorneys for ITG Brands LLC***

Jose A. Isasi, II
Jihan Wlaker
Jones Day
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
jisasi@jonesday.com
jihanwalker@jonesday.com
***Attorneys for Defendant R. J. Reynolds Tobacco Company***

Laura K. Beasley
Baker Sterchi Cowden & Rice LLC
23 Public Square, Suite 415
Belleville, IL 62220
lbeasley@bakersterchi.com
***Attorneys for Tyco Fire Products LP and Chemguard, Inc.***

Under penalties as provided by law pursuant to section 1-109 of the Illinois Code of Civil Procedure [735 ILCS 5/1-109], I certify that the statements set forth in this **Certificate of Filing and Proof of Service** are true and correct, except as to matters therein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

/s/ Marti Smith
HEYL, ROYSTER, VOELKER & ALLEN, P.C.

1012821

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
105 West Vandalia Street
Mark Twain Plaza III, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 309.420.0402
PRIMARY E-MAIL:  edwecf@heylroyster.com
SECONDARY E-MAIL #1: abarron@heylroyster.com

2022 IL App (5th) 200251-U

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

NOTICE This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

Appellate Court of Illinois, Fifth District.

Timothy W. ELKINS Jr., Plaintiff-Appellant,

v.

CARITAS FAMILY SOLUTIONS and Carolyn Yinger, Defendants-Appellees.

NO. 5-20-0251

|

03/23/2022

Appeal from the Circuit Court of Madison County. No. 18-L-1005, Honorable Thomas W. Chapman, Judge, presiding.

**ORDER**

JUSTICE WELCH delivered the judgment of the court.

***1** ¶ 1 *Held*: The trial court did not err in dismissing the plaintiff's *pro se* amended complaint where he failed to state a claim for a violation of his constitutional rights and where the defendants were entitled to absolute immunity by virtue of their roles in the juvenile court proceedings.

¶ 2 The plaintiff, Timothy Elkins Jr., *pro se* filed a five-count complaint in the circuit court of Madison County against the defendants, Carolyn Yinger and Caritas Family Solutions (Caritas), arguing that they violated his constitutional rights in juvenile proceedings involving his minor children where he was denied parenting time with the children. Thereafter, on January 31, 2020, the trial court dismissed his *pro se* complaint without prejudice, finding that the defendants were entitled to absolute and qualified immunity from civil liability by virtue of their roles in the juvenile court proceedings, and the plaintiff's vague allegations failed to state a claim. On February 20, 2020, the defendant appealed the court's order dismissing his *pro se* complaint.

¶ 3 On February 28, 2020, this court entered an order giving the plaintiff 14 days to show cause why his appeal should not be dismissed for lack of jurisdiction because the trial court's January 31 order was a dismissal without prejudice that granted the plaintiff leave to replead. On March 9, 2020, the plaintiff filed a response to the show cause order and an amended *pro se* complaint in the trial court.[1] On March 11, 2020, this court dismissed his appeal. On August 6, 2020, the trial court dismissed the plaintiff's amended *pro se* complaint with prejudice. For the reasons that follow, we affirm the court's dismissal of the plaintiff's amended *pro se* complaint.

¶ 4 I. BACKGROUND

¶ 5 The plaintiff is currently an inmate at the Dixon Correctional Center in Dixon, Illinois. He is serving a six-year sentence for the involuntary manslaughter of his son, who was two months old. Caritas is a child welfare and family services agency that works with the Illinois Department of Children and Family Services (DCFS) to oversee cases, arrange services, and assist parents in making the necessary changes to correct the conditions that brought their children into the foster care system. Yinger is employed as a caseworker at Caritas.

¶ 6 After the death of his youngest child, the plaintiff's remaining eight children were placed into DCFS's custody and became the subject of juvenile cases in the Madison County circuit court. Yinger was the caseworker assigned to these cases; she supervised the plaintiff's visits with the minor children and monitored his compliance with court mandated counseling and drug and alcohol rehabilitation programs.

¶ 7 On July 26, 2018, the plaintiff filed his initial *pro se* five-count complaint against the defendants. Specifically, in his complaint, he asserted the following: (1) Yinger violated his right to equal protection under the fourteenth amendment (U.S. Const., amend. XIV) by failing to follow the DCFS's procedures, being deceptive to the juvenile court, and coercing him into pleading guilty to involuntary manslaughter; (2) Caritas and Yinger violated his fifth and thirteenth amendment rights (U.S. Const., amends. V, XIII) by discriminating against him based on his gender because his wife was allowed to visit the children, even though she was also charged with the same crime and was on probation; (3) Caritas and Yinger violated his right to freedom of speech under the first amendment (U.S. Const., amend. I) by suspending his visits and not allowing him to participate in custody hearings; (4) Caritas and Yinger violated the eighth amendment's provision against cruel and unusual punishment where he was unable to visit his children (U.S. Const.,

Exhibit A

amend. VIII); and (5) Caritas and Yinger violated his rights to freedom of speech and religion under the first amendment (U.S. Const., amend. I) because he was unable to share his religious beliefs with his children. In the complaint, the plaintiff sought an injunction ordering Caritas and Yinger to allow him telephone contact and supervised visits with the children, compensatory damages in the amount of $87,000, and punitive damages in the amount of $27,000.

***2** ¶ 8 On October 22, 2018, Caritas and Yinger filed a motion to dismiss the plaintiff's complaint pursuant to sections 2-615 and 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619(a)(9) (West 2016)) on the basis that the plaintiff's claims were legally deficient because Caritas and Yinger were merely following the trial court's orders regarding suspension of his parenting time rights. On November 1, 2018, the plaintiff filed a *pro se* motion to deny the motion to dismiss, in which he contended that Yinger reported false information to the juvenile court so that his visits with his children would be suspended.

¶ 9 On June 19, 2019, Caritas and Yinger filed a supplemental memorandum in support of their motion to dismiss, in which they contended that the plaintiff's parenting time with his children was suspended due to his inexcusable behavior and inappropriate interactions with them during a June 26, 2017, visit; the juvenile court had entered an order revoking his supervised visits as long as he remained incarcerated; his parental rights to his two oldest children were being terminated; and his six youngest children were being returned to their mother's custody and any parenting time would be at her discretion, but any parenting time would remain supervised. On December 27, 2019, the plaintiff filed a response to the motion to dismiss, arguing that the defendants failed to follow procedures, he did not have access to services, and the allegation that he engaged in detrimental behavior that resulted in the suspension of his visits was false.

¶ 10 On January 31, 2020, the trial court entered an order granting the motion to dismiss, finding that the defendants were either "qualifiedly or absolutely immune." The court made the following findings, in pertinent part: (1) if the plaintiff was claiming that Yinger initiated or participated in the initiation of the juvenile proceedings against him, she was immune from those claims as social workers performing prosecutorial duties were entitled to absolute immunity; (2) if Yinger convinced him to plead guilty, she would be entitled to immunity as her role as a child welfare worker was functionally comparable to that of a prosecutor; (3) if Yinger caused the juvenile court to suspend his parenting time with his children, she would be entitled to absolute immunity with respect to any actions undertaken in the execution of the juvenile court's orders, and she would also be entitled to absolute immunity when acting in her advisory role making recommendations to the juvenile court; (4) if the plaintiff failed to object to the adjudicatory or dispositional orders, he should not be able to file this action to challenge orders that he previously agreed to; (5) if the plaintiff was complaining about Yinger's testimony in the juvenile court proceedings, social workers who testify in court are entitled to witness immunity; and (6) the plaintiff's complaint failed to adequately state a claim because it made vague allegations and did not plead specific facts to give the defendants fair notice of the alleged claims and the grounds upon which they rest. The court gave the plaintiff 21 days to replead.

¶ 11 On February 20, 2020, the plaintiff filed a notice of appeal of the trial court's order. On February 28, 2020, this court entered an order, giving the plaintiff 14 days to show cause why his appeal should not be dismissed for lack of jurisdiction on the basis that the trial court's January 2020 order was a dismissal without prejudice that granted him leave to replead. On March 9, 2020, the plaintiff filed a *pro se* amended complaint in the trial court. In the complaint, the plaintiff asserted that Yinger intentionally reported false information to deprive him of his constitutional rights (to separate him from his children). He alleged that Yinger's actions deprived him of his "first amendment rights of freedom of speech, free exercise of religion, eighth amendment ban against cruel and unusual punishments, and the fourteenth amendment equal protection of the law, due process." He also asserted that Yinger's intentional actions resulted in the loss of his rights to have contact with his children, practice his religion with his children, and associate with his children; and her actions caused him severe mental and physical injuries and was a violation of the fourteenth amendment (violation of his due process and equal protection rights). He sought similar relief as that sought in his initial complaint except that he did not request injunctive relief.

***3** ¶ 12 On March 11, 2020, this court dismissed the plaintiff's appeal for lack of jurisdiction. On July 17, 2020, Caritas and Yinger filed a motion to dismiss the amended complaint pursuant to sections 2-615, 2-619(a)(9), and 2-1005 of the Code (*id.* §§ 2-615, 2-619(a)(9), 2-1005), in which they contended that the amended complaint suffered from the same fatal and insuperable legal deficiencies as the

initial complaint that was dismissed by the trial court. On August 6, 2020, the court entered an order dismissing the plaintiff's *pro se* amended complaint with prejudice based on the reasoning of its January 31, 2020, order. The plaintiff appeals.

¶ 13 II. ANALYSIS

¶ 14 This case was decided on the defendants' combined motion to dismiss filed pursuant to section 2-619.1 of the Code (*id.* § 2-619.1). Section 2-619.1 allows a party to combine a section 2-615 motion to dismiss based on a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based on certain defects or defenses. *Id.*; *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003). When ruling on a motion to dismiss under either section 2-615 or section 2-619, the court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences from those facts in favor of the nonmoving party. *Edelman, Combs & Latturner*, 338 Ill. App. 3d at 164. Our review of motions to dismiss brought under both sections 2-615 and 2-619 is *de novo. Id.*

¶ 15 A section 2-615 motion to dismiss tests the legal sufficiency of a complaint. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. To survive a section 2-615 motion to dismiss, a complaint must be both legally and factually sufficient. *Edelman, Combs & Latturner*, 338 Ill. App. 3d at 167. A motion to dismiss under section 2-619 admits the sufficiency of the complaint but asserts a defense outside of the complaint that defeats it. *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 31. Section 2-619(a)(9) provides for an involuntary dismissal where the claim is barred by another affirmative matter avoiding the legal effect of or defeating the claim. *Id.*

¶ 16 In this case, the trial court dismissed the plaintiff's amended complaint, in part, based on section 2-615 because the plaintiff's vague and conclusory allegations were insufficient to state a claim. Illinois is a fact-pleading jurisdiction. *Id.* ¶ 40. In a complaint, a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). Conclusions of fact will not suffice to state a cause of action regardless of whether those conclusions generally inform defendants of the nature of the claim against them. *Edelman, Combs & Latturner*, 338 Ill. App. 3d at 167. Instead, under Illinois fact pleading, the pleader is required to set out ultimate facts that support the cause of action. *Id.*

¶ 17 In his *pro se* amended complaint, the plaintiff made the following allegations: (1) Yinger intentionally reported false information to deprive him of his constitutional rights; (2) Yinger's actions deprived him of his "first amendment rights of freedom of speech, free exercise of religion, eighth amendment ban against cruel and unusual punishments, and the fourteenth amendment equal protection of the law, due process"; (3) Yinger's intentional actions resulted in the loss of his rights to have contact with his children, to practice his religion with his children, and to associate with his children; and (4) Yinger's actions caused him severe mental and physical injuries and was a violation of his due process and equal protection rights. However, the amended complaint provides no factual allegations to support his assertions. Specifically, the complaint does not describe the acts that he was complaining about; he does not describe what allegedly false information Yinger reported to the juvenile court, when the alleged acts occurred, or how they allegedly resulted in him being deprived of his constitutional rights. Even liberally construing the plaintiff's *pro se* amended complaint (see *Murillo v. Page*, 294 Ill. App. 3d 860, 864 (1998)), his conclusory allegations are not sufficient to state a cause of action as they are devoid of any factual support.

***4** ¶ 18 Moreover, the plaintiff has failed to allege sufficient facts establishing the elements of a claim brought under 42 U.S.C § 1983. To state a section 1983 claim, which allows for a civil action for deprivation of rights, a plaintiff must allege that defendants deprived him of a right secured by the Constitution or laws of the United States and that defendants acted under color of state law. *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000). Under the traditional definition of acting under color of state law, a defendant in a section 1983 action must have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *West v. Atkins*, 487 U.S. 42, 49 (1988).

¶ 19 Here, the plaintiff's *pro se* amended complaint does not contain any factual allegations establishing that Yinger, in her

capacity as a Caritas caseworker, was acting under the color of state law when she allegedly reported false information to the juvenile court. Also, simply identifying various amendments under the Constitution and asserting that Yinger's actions deprived him of his rights under those amendments is not sufficient to state a claim under section 1983. In other words, the plaintiff failed to allege with any specificity the alleged rights under the Constitution or the laws of the United States of which he was allegedly deprived by Yinger or Caritas. Thus, we conclude that the plaintiff's conclusory allegations are not sufficient to state a cause of action, and the trial court properly dismissed his amended complaint under section 2-615.

¶ 20 We next consider whether the trial court properly granted the defendants' motion to dismiss based on immunity. Section 1983 does not impose liability on judges, prosecutors, and other persons acting under color of law who are preforming official functions in the judicial process. *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983). This immunity has been extended to witnesses. *Id.* Also, "Illinois courts have liberally protected the principles of absolute privilege of witnesses." *McNall v. Frus*, 336 Ill. App. 3d 904, 907 (2002). Witnesses enjoy absolute privilege from civil suit for statements made during judicial proceedings. *Id.* Further, social workers and similar public officials are entitled to absolute immunity in child custody cases because they formulate and present recommendations to the juvenile court as well as take other steps to present the case for decision by the court. *Millspaugh v. County Department of Public Welfare of Wabash County*, 937 F.2d 1172, 1176 (7th Cir. 1991). Absolute privilege embraces actions required or permitted by law in the course of judicial or quasi-judicial proceedings as well as actions that are necessarily preliminary to those proceedings. *Parrillo, Weiss & Moss v. Cashion*, 181 Ill. App. 3d 920, 928 (1989). The United States Court of Appeals for the Seventh Circuit has held that the dividing line between absolute and qualified immunity is whether the injury depends on a judicial decision. *Millspaugh*, 937 F.2d at 1175. Where there would be no loss if not for the judge's acts, then the prosecutor or witness who induces the judge to act has absolute immunity. *Id.*

¶ 21 Here, the claims in the plaintiff's *pro se* amended complaint are based on Yinger intentionally reporting allegedly false information about him to the juvenile court, which resulted in him losing parenting time with his minor children. As a social worker who was taking the requisite steps to present the case for decision by the juvenile court, Yinger was entitled to absolute immunity. Moreover, it is undisputed that the juvenile court, not Yinger, revoked the plaintiff's supervised parenting time while he remained incarcerated. Even if the court's decision was, at least in part, based on allegedly false information presented by Yinger, that decision was ultimately the juvenile court's responsibility. Accordingly, we affirm the trial court's dismissal of the plaintiff's *pro se* amended complaint.

¶ 22 III. CONCLUSION

***5** ¶ 23 For the reasons stated, we affirm the judgment of the circuit court of Madison County dismissing the plaintiff's *pro se* amended complaint.

¶ 24 Affirmed.

Presiding Justice Boie and Justice Cates concurred in the judgment.

**All Citations**

Not Reported in N.E. Rptr., 2022 IL App (5th) 200251-U, 2022 WL 872243

## Footnotes

1 Although the caption of the plaintiff's initial *pro se* complaint listed both Yinger and Caritas as the defendants, the caption of his amended complaint only identified Yinger as a defendant. However, throughout his amended complaint, he makes references to "the defendants."

1012821
No. 2023-LA-000191
Elkins v. Caritas Family Solutions, Not Reported in N.E. Rptr. (2022)
2022 IL App (5th) 200251-U

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works. Page 5 of 5 5

2022 WL 766987
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).
Appellate Court of Illinois, First District, FIRST DIVISION.

Nicholas WEBB & Thad Beversdorf, Plaintiffs-Appellants,
v.
FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., successor to Finra Dispute Resolution, Inc., Defendant-Appellee.

No. 1-20-0854
|
March 14, 2022

Appeal from the Circuit Court of Cook County, Illinois, County Department, Chancery Division, No. 2016 CH 04136, The Honorable Caroline Kate Moreland, Judge Presiding.

**ORDER**

JUSTICE PUCINSKI delivered the judgment of the court.

***1** ¶ 1 *Held*: We affirm the circuit court's granting of the defendant's motion to dismiss the plaintiffs' Second Amended Complaint with prejudice pursuant to 735 ILCS 5/2-619.1. Plaintiffs' claims for breach of contract, consumer fraud, and declaratory relief relating to FINRA's arbitration services all fall within the scope of arbitral immunity.

¶ 2 Plaintiff-Appellants Nicholas Webb and Thad Beversdorf (collectively, "Plaintiffs") appeal from the circuit court's dismissal of their Second Amended Complaint. According to the circuit court's characterization of Plaintiff's claims, Plaintiffs take issue with Defendant-Appellee's ("FINRA") adherence to its own rules and standards in providing arbitration services. The court granted FINRA's 735 ILCS 5/2-619.1 motion to dismiss Plaintiffs' Second Amended Complaint on the basis that pursuant to 735 ILCS 5/2-619(a)(9), Plaintiffs' claims were barred because FINRA was protected by the doctrine of arbitral immunity as to all counts. Having so ruled, the court declined to address FINRA's argument for dismissal pursuant to 735 ILCS 5/2-615 for failure to sufficiently plead a claim. We agree with the circuit court that dismissal was proper because the entirety of Plaintiffs' claims involve alleged actions on the part of FINRA that fall within the protections of arbitral immunity. For the following reasons, we affirm the circuit court's memorandum opinion and order.

¶ 3 BACKGROUND

¶ 4 The underlying matter arises from claims that Plaintiffs filed in FINRA's arbitration forum against their former employer, Jeffries. Jeffries terminated Plaintiffs' employment on October 21, 2013, citing poor performance. Plaintiffs asserted that by terminating their employment, Jeffries had breached their employment contracts, retaliated against them, violated wage and hour statutes, and engaged in fraudulent conduct. Each of the plaintiffs' employment contracts contained identical provisions stating that any arbitration proceeding brought with respect to an employment-related matter would be brought before FINRA in Manhattan, New York. Plaintiffs signed a FINRA Arbitration Submission Agreement ("Agreement") on November 1, 2013, submitting their dispute with Jeffries to arbitration governed by the FINRA By-Laws, Rules, and Code of Arbitration Procedure. By entering into the Agreement, Plaintiffs agreed to be bound by the aforementioned rules and procedures, and to be bound by and perform any decision rendered by the arbitrators pursuant to the Agreement. As per the Agreement, Plaintiffs paid the required arbitration fees, signed a submission agreement, and hired counsel to assist them in preparing and submitting a Statement of Claims.

¶ 5 Plaintiffs voluntarily withdrew from the arbitration process prior to the arbitration panel's rendering of a decision and filed suit against FINRA in the circuit court on March 23, 2016. They pled one count of breach of contract and one count seeking a declaratory judgment, arguing that they were "forced to withdraw their claims" from the arbitration forum because FINRA breached its duty to provide just and equitable arbitration services in several ways, including interfering with the arbitrators' decisionmaking, failing to properly train arbitrators, and failing to implement proper procedural mechanisms to facilitate a just and equitable dispute resolution process. The declaratory judgment count includes a list of alleged ways in which FINRA's arbitration

Exhibit B

rules were unfair and prevented FINRA's arbitration arm from properly adjudicating disputes. Plaintiffs claimed as damages the arbitration fees and legal fees they incurred as required by the arbitration agreement.

***2** ¶ 6 On April 27, 2016, FINRA filed a motion to remove the case to federal court on the grounds of federal question and diversity subject matter jurisdiction. The case proceeded before the United States District Court in the Northern District of Illinois, which stated that while it was "questionable" whether federal question jurisdiction existed, the matter was properly before the federal court because diversity jurisdiction existed and the court accepted Plaintiffs' counsel's representation that the amount in question exceeded $75,000. *Webb v. Financial Industry Regulatory Authority, Inc.*, 2017 WL 2868996, 1 n.1 (N.D. Ill. 2017) (not reported in Fed. Supp.) FINRA then moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court granted the motion on the grounds that FINRA was entitled to arbitral immunity. *Id.* at 1. In discussing the applicability of the immunity, the court stated that Plaintiffs could not avoid arbitral immunity by asserting that they were pleading a breach of contract claim, rather than attacking the arbitration process, because, as the court emphasized by discussing the pleadings and quoting directly from Plaintiffs' response to FINRA's motion to dismiss, "the crux of their complaint is that FINRA 'has not given the arbitrators or administrators the 'toolbox' needed ... '[t]o promote and enforce just and equitable principles of trade and business.' ' " *Id.* at 4. The court granted FINRA's motion to dismiss and dismissed all claims with prejudice. *Id.* at 5.

¶ 7 Plaintiffs appealed the decision of the district court to the Seventh Circuit, which issued its decision on this matter on May 8, 2018. *Webb v. Financial Industry Regulatory Authority, Inc.*, 889 F.3d 853 (7th Cir. 2018) (Ripple, J., concurring in part, dissenting in part). The Seventh Circuit's decision did not turn on arbitral immunity, but on the question of federal jurisdiction. The court determined that while diversity of citizenship existed, this matter did not present the sort of circumstances in which Illinois law permits the recovery of legal fees as damages; since Plaintiffs sought recovery of legal expenses in the underlying arbitration, and these could not be counted towards meeting the amount in controversy requirement for establishing diversity jurisdiction. *Id.* at 859. The court also found that federal question jurisdiction did not exist, as there was no "inescapable" provision of federal law that the court would have to analyze in deciding whether FINRA breached its arbitration agreement. *Id.* at 860. The court determined that this was a state-law contract claim, and therefore did not fall under federal question jurisdiction. *Id.* at 861. The Seventh Circuit remanded the case to the district court with instructions to remand to state court. *Id.*

¶ 8 Upon remand to the circuit court, the court gave Plaintiffs leave to file an amended complaint, which Plaintiffs did on December 12, 2018. It consisted of three counts: Count I for breach of contract, Count II for violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et seq.* ("Consumer Fraud Act"), and Count III for declaratory judgment. The breach of contract claim and the plea for a declaratory judgment restate the same allegations of FINRA misconduct as the original complaint. The Consumer Fraud Act count pleads additional facts that (1) FINRA advertises its arbitration services on its website and through its marketing materials; (2) FINRA competes in the alternative dispute resolution market for customers who will make use of those services; and (3) Plaintiffs relied on FINRA's advertising statements in submitting their employment dispute before FINRA's arbitration arm and incurring the required arbitration costs. The count states that FINRA misrepresented its services in the same ways as what is alleged in the breach of contract count. The only difference is that FINRA's alleged actions are now characterized as the source of FINRA's misrepresentations, rather than its breach of the arbitration contract.

¶ 9 FINRA filed a Section 2-619.1 motion to dismiss this complaint on February 11, 2019. FINRA again argued that arbitral immunity applied to the entire complaint and that Plaintiffs had failed to exhaust their administrative remedies under FINRA's Code of Arbitration Procedures and added an argument under Section 2-615 that the Consumer Fraud Act claim merely restated the breach of contract claim, and Plaintiffs could not plead both counts based on the same factual foundations. Plaintiffs responded with a motion seeking leave to conduct discovery pursuant to Illinois Supreme Court Rule 191(b). The circuit court granted FINRA's motion to dismiss Plaintiffs' First Amended Complaint in an order dated August 20, 2019, for reasons presented on the record. The court did not make a specific ruling on Plaintiffs' motion for leave to conduct discovery under Ill. Sup. Ct. R. 191(b). The court dismissed the complaint without prejudice and once again gave Plaintiffs leave to file an amended complaint.

*3 ¶ 10 Plaintiffs filed their Second Amended Complaint on October 1, 2020. The Second Amended Complaint consists of one count of violation of the Consumer Fraud Act, and a statement that Plaintiffs incorporate and adopt Counts I and III, for breach of contract and declaratory judgment, respectively, from their dismissed First Amended Complaint for the purpose of preserving their right to appeal. The facts pled in this count are rewordings of the same core allegations of procedural failings, interference with the authority of arbitrators, failure to provide adequately trained arbitrators, and failing to meet a standard of fairness and commercial integrity. The allegations add wording that FINRA "refus[ed] to administer the arbitration" and "block[ed] the administration of the arbitration" through the same sorts of actions previously pled in the breach of contract claims.

¶ 11 On July 8, 2020, the circuit court issued a Memorandum Opinion and Order granting FINRA's motion to dismiss under Section 2-619 based on the court's finding that the entirety of Plaintiffs' Second Amended Complaint fell within the scope of arbitral immunity. The court wrote, "Plaintiffs color their claim as a fraudulent inducement through statements contained in FINRA's advertising material. However, Plaintiffs' true issue lies with FINRA's alleged inability to comport its arbitration with its own rules and standards. This falls squarely within the established arbitral immunity." Having held that FINRA was protected by arbitral immunity for all of the activity alleged in the complaint, the court declined to address FINRA's Section 2-615 argument as moot.

¶ 12 Plaintiffs filed a timely notice of appeal on August 6, 2020, challenging the dismissal of their Second Amended Complaint.

¶ 13 ANALYSIS

¶ 14 Jurisdiction on Appeal

¶ 15 As an initial matter, the parties dispute the scope of what is properly submitted before this court for review. Plaintiffs identify in their appellants' brief and notice of appeal that they appeal from the final judgment entered by the circuit court on July 8, 2020 granting FINRA's motion to dismiss with prejudice Plaintiffs' Second Amended Complaint pursuant to 735 ILCS 5/2-619.1 (West 2019). FINRA argues that since this complaint only contains a single count for violation of the Consumer Protection Act, we lack jurisdiction to review the dismissal of Plaintiffs' claims of breach of contract and for declaratory judgment, which were dismissed without prejudice in a prior order, in which the circuit court allowed Plaintiffs to amend their First Amended Complaint and which Plaintiffs did not properly preserve for appeal.

¶ 16 FINRA further argues that we lack jurisdiction to review Plaintiffs' contention that the circuit court improperly denied their request pursuant to Rule 191(b) for leave to conduct discovery, which Plaintiffs filed in response to FINRA's motion to dismiss their First Amended Complaint. The circuit court does not mention the Rule 191(b) petition in its August 20, 2019 order ruling on FINRA's motion to dismiss; however, the circuit court granted the motion to dismiss the First Amended Complaint in its entirety and gave Plaintiffs leave to amend the complaint. Plaintiffs did not seek leave to conduct additional discovery pursuant to Rule 191(b) in connection with FINRA's motion to dismiss their Second Amended Complaint.

¶ 17 "It is well established that in Illinois, a party who files an amended pleading waives any objections to the trial court's ruling on prior complaints." *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶ 29. If a plaintiff does not file an appeal from a final order dismissing counts of his complaint, or alternatively, does not reallege, refer to, incorporate, or preserve the dismissed counts in a subsequent amended complaint, he waives the right to appeal the dismissal of those counts. *Id.* at ¶ 30. In order to properly preserve a dismissed count in his amended pleading, it is sufficient for a plaintiff to include a "simple paragraph or footnote in the amended pleadings notifying defendants and the court that plaintiff was preserving the dismissed portions of his former complaints for appeal." *Tabora v. Gottlieb Memorial Hosp.*, 279 Ill.App.3d 108, 114 (1st Dist. 1996).

*4 ¶ 18 The circuit court's order dismissing Plaintiffs' First Amended Complaint without prejudice, with leave to replead, was not a final, appealable order. *See* *Paul H. Schwendener, Inc. v. Jupiter Electric Co.*, 358 Ill.App.3d 65, 73 (1st Dist. 2005). However, Plaintiffs state in their Second Amended Complaint that they incorporate and adopt the previously-dismissed Counts I and III, for breach of contract and declaratory judgment, respectively, in order to preserve the right to appeal the dismissal of those counts. While the circuit court's final and appealable Memorandum

Opinion and Order dismissing the Second Amended Complaint with prejudice only discusses Plaintiffs' pleadings regarding FINRA's alleged violation of the Consumer Fraud Act, its holding ultimately dismisses the entire Second Amended Complaint with prejudice. As Plaintiffs sufficiently referenced and incorporated the remaining previously-dismissed pleadings, they properly preserved those counts for appeal, and we have jurisdiction to review the circuit court's dismissal of those claims. However, there is no final judgment from which Plaintiffs appeal the denial of their Rule 191(b) petition, and they include no such request for relief in their appellants' brief, despite devoting three pages of their Appellants' Brief to arguing that the circuit court improperly denied that petition. Furthermore, were we to remand this matter back to the circuit court to allow Plaintiffs' pleadings to go forward, that would be the proper time for Plaintiffs to seek additional discovery. Therefore, the question of whether the circuit court erred in not granting Plaintiffs leave to conduct discovery under Rule 191(b) is not before us on appeal.

¶ 19 Plaintiffs' Framing of the Issues Debated on Appeal

¶ 20 Plaintiffs argue that FINRA's position—as well as the circuit court's position in granting FINRA's motion to dismiss —is that FINRA is "above the law" by taking advantage of the doctrine of arbitral immunity to seemingly circumvent state law governing contracts. In furtherance of this argument, Plaintiffs allege that FINRA—and, again, the circuit court in rendering its judgment—improperly relies on federal law where state law governs.

¶ 21 Plaintiffs' framing is confusing, as it does not accurately describe FINRA's position in response to their argument on appeal, nor is it relevant based on the scope of the issues on appeal. Plaintiffs argue that the doctrine of arbitral immunity is based on state law because "no federal statute confers any legal immunity on arbitration forums, and there is no federal general common law." Plaintiffs further claim that FINRA attempts to position itself above the laws of the State of Illinois by citing to federal caselaw in its response on appeal, and that the application of federal law was already found to be improper by the Seventh Circuit Court of Appeals when it ruled that the matter was a state-law contract dispute that did not fall within federal question jurisdiction. *See Webb*, 889 F.3d.

¶ 22 In claiming that FINRA attempts to circumvent or disregard governing state law, Plaintiffs cite the Seventh Circuit's statement disagreeing with FINRA that federal securities law forms the cornerstone of Plaintiffs' complaint because FINRA's Code of Arbitration Procedures must be approved by the Securities and Exchange Commission. *See id.* at 860. However, what Plaintiffs omit is that this portion of the Seventh Circuit's opinion addresses whether federal question jurisdiction exists over what FINRA admits is a state-law claim, based on the test established in *Grable & Sons* for whether a state-law claim "aris[es] under" federal law so that transfer from state to federal court is proper. *Id.*; *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). Once the Seventh Circuit remanded this case to the district court with instructions to remand to state court, the matter of federal question jurisdiction was no longer at issue in this case, and is not relevant to the present appeal of the circuit court's dismissal of Plaintiffs' claims.

¶ 23 Plaintiffs are mistaken that FINRA now takes the position that state caselaw is not applicable to this matter. Citing to federal caselaw does not amount to an attempt to relitigate the matter of federal question jurisdiction, nor does it indicate any sort of attempt to position FINRA "above the law of the State of Illinois." The circuit court's order discusses the sole case that Plaintiffs relied on, *Grane v. Grane*, 143 Ill. App. 3d 979 (2d Dist. 1986), in addition to several federal cases on the topic of arbitral immunity. The state appellate court in *Grane* cites to several federal cases across various jurisdictions in discussing arbitral immunity. *See id.* at 985-86. Plaintiffs also cite to a few federal cases in their appellants' brief where they argue that arbitral immunity should not apply in this matter. This does not mean that the circuit court, the Second District court, or indeed this court, in citing to federal decisions, is ignoring governing state law. The State of Illinois recognizes the doctrine of arbitral immunity. *See Grane*, 143 Ill. App. 3d 979, 985. Since the enactment of the Federal Arbitration Act in 1925, placing arbitration agreements on the same footing as other legally-enforceable contracts, there has been a rich history of jurisprudence shaping the scope, enforceability, and process of arbitration, and it is simply a reality that many of these cases will come from federal courts. Plaintiffs cannot argue that the circuit court gave priority to federal over state law, particularly because in areas where a conflict of laws exists, federal law would preempt Illinois state law—the record does not indicate that this issue ever arose over the history of this litigation. *See Carter v. SSC Odin Operating Co., LLC*, 237 Ill.2d 30, 40 (2010) (Noting

that while Congress did not indicate intent to occupy the entire field of arbitration, the Federal Arbitration Act preempts state law where a conflict of laws arises.)

*5 ¶ 24 We recognize that what Plaintiffs are actually arguing is that this matter should be analyzed purely through the lens of contract law. Indeed, Plaintiffs include the question of whether they had an enforceable contract with FINRA in their list of issues on appeal. However, this argument provides no basis for why we should ignore the doctrine of arbitral immunity in a case where the pleadings concern the conduct and decision-making actions of arbitrators and the manner in which FINRA provided arbitration services. Plaintiffs offer no argument as to why a state court cannot assess whether arbitral immunity applies to state law claims arising from an arbitration dispute. In further argument against Plaintiffs' seeming position that the existence of a valid arbitration contract overrides the doctrine of arbitral immunity in this matter, the district court also found Plaintiffs' support for this argument to be lacking, stating, "They do not pinpoint exactly why this characterization [that arbitral immunity should not apply because this is a contract dispute] should make a difference, instead pointing out that the *International Medical Group* and *Tamari* cases cited by FINRA deal with challenges to the jurisdiction of an arbitral body while no such challenge has been brought here." *Webb*, 2017 WL 2868996 at 3 (referencing *International Medical Group, Inc. v. American Arbitration Ass'n, Inc.*, 312 F.3d 833 (7th Cir. 2002) and *Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir. 1977)). Plaintiffs do not appear to have provided us with any additional support for this argument.

¶ 25 Furthermore, the question of whether a valid arbitration contract existed between Plaintiffs and FINRA is not disputed —both FINRA and the circuit court recognize that Plaintiffs' signing of the FINRA Arbitration Submission Agreement legally bound them to submit to FINRA arbitration, and we need not review Plaintiffs' argument that their breach of contract claim properly pled the existence of an offer, acceptance, and consideration. The validity of the Agreement is not in dispute; the real issue is whether arbitral immunity bars Plaintiffs' claims, whether for breach of contract or otherwise. Similarly, Plaintiffs present as another issue on appeal the question of whether FINRA owed Plaintiffs any duty when they submitted their employment dispute to FINRA's arbitration forum, signed the Agreement, and fulfilled the conditions required of them under the terms of the Agreement. As the district court explained in its opinion dismissing Plaintiffs' complaint in federal court, the arbitral immunity caselaw does not suggest that plaintiffs can avoid arbitral immunity by reframing their complaint as a breach of contract action. *Webb*, 2017 WL 2868996 at 3. Again, the validity of the Agreement is not in dispute and the circuit court did not dismiss Plaintiffs' breach of contract claim because it did not find a valid, enforceable contract to exist.

¶ 26 Standard of Review

¶ 27 A Section 2-619.1 motion allows for a combined motion to dismiss under Sections 2-615 and 2-619, as well as motions for summary judgment under Section 2-1005. *Johnson v. Matrix Financial Services Corp.*, 354 Ill.App.3d 684, 688 (1st Dist. 2004).

¶ 28 A Section 2-615 motion to dismiss presents the question of whether the plaintiff has pled sufficient facts in the complaint to entitle him to relief if proven. *Powell v. American Service Ins. Co.*, 2014 IL App (1st) 123643, ¶ 13. In reviewing a dismissal pursuant to Section 2–615, all well-pleaded facts in the complaint are taken as true and are construed in the light most favorable to the plaintiff. *Id.* A dismissal pursuant to Section 2-615 is only proper where it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief. *Id.*; *Casualty Insurance Co. v. Hill Mechanical Group*, 323 Ill.App.3d 1028, 1033 (1st Dist. 2001). A plaintiff cannot simply rely upon conclusions of law or fact unsupported by specific factual allegations. *Powell*, 2014 IL App (1st) 123643, ¶ 13; *Grund v. Donegan*, 298 Ill.App.3d 1034, 1039 (1st Dist. 1998). The standard of review for a dismissal under Section 2-615 is *de novo*. *Powell*, 2014 IL App (1st) 123643, ¶ 13.

¶ 29 An order of dismissal pursuant to a Section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2019)) is similarly reviewed *de novo*. *Porter v. Decatur Memorial Hosp.*, 227 Ill. 2d 343, 352 (2008). The Section 2-619 motion admits as true all well-pleaded facts and all reasonable inferences to be drawn from the facts. *Id.* In addition, all pleadings and supporting documents must be construed in the light most favorable to the non-moving party. *Id.* A dismissal of a pleading pursuant to Section 2-619

is based on certain defects or defenses. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 18.

***6** ¶ 30 A motion to dismiss under Section 2-619(a)(9) specifically argues that the pleadings are barred by an affirmative matter not otherwise listed in this Section. 735 ILCS 5/2-619(a)(1) (West 2019). An affirmative matter under Section 2-619(a)(9) is "something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 (2004). In a Section 2-619(a)(9) motion, "the defendant does not admit the truth of any allegation in plaintiff's complaint that may touch on the affirmative matter raised in the 2-619 motion." *Barber-Colman v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1073 (1992). Where the movant supplies an affirmative matter, the opposing party cannot rely on bare allegations alone to raise issues of material fact. *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 835 (2006). Neither conclusory allegations nor conclusory affidavits are sufficient to defeat properly submitted facts in a Section 2-619 motion. *Allegis Realty Investors v. Novak*, 379 Ill. App. 3d 636, 641 (2008). The question on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993).

¶ 31 The circuit court granted FINRA's Section 2-619.1 motion to dismiss the Second Amended Complaint on the affirmative matter of arbitral immunity pursuant to FINRA's argument under Section 2-619. Having done so, the court determined that the argument for dismissal under Section 2-615 was moot, and did not address it. However, we may affirm the circuit court's judgment on any proper grounds supported by the record, even if the circuit court dismissed on improper grounds. *American Service Ins. Co. v. City of Chicago*, 404 Ill.App.3d 769, 776-77 (1st Dist. 2010).

¶ 32 The Circuit Court's Dismissal of Plaintiffs' Second Amended Complaint

¶ 33 Plaintiffs' Counts I and III of their First Amended Complaint and Count II of their Second Amended Complaint are predicated on the same occurrence, involving the same essential facts. Review of the circuit court's judgment hinges on whether any of their claims include properly-pled factual allegations that, if proven, would fall outside the scope of the activities protected by the doctrine of arbitral immunity.

¶ 34 Plaintiffs heavily stress in their argument on appeal that they entered into a legally-enforceable contract with FINRA, and the application of arbitral immunity entirely shields providers of arbitration services from ever having to perform the duties that arise from that contract. This argument can easily be dismissed at the outset of our review of the circuit court's decision, as the doctrine of arbitral immunity has been interpreted and applied to the alleged actions of numerous arbitrators and arbitration forums, including in the State of Illinois, and the issue of its legality is absolutely not within the scope of Plaintiffs' appeal. *See Grane*, 143 Ill. App. 3d at 985-86 (citing to numerous cases applying arbitral immunity and proceeding to analyze whether it applied to the facts of *Grane*, a case proceeding in state court).

¶ 35 We understand that Plaintiffs signed an agreement that they anticipated would, in exchange for their submission to the rules and procedures of FINRA's arbitration forum, provide for them a fair and equitable resolution to their dispute with their former employer, and that at some point in the arbitration, they felt that they did not receive the service they expected. It is undisputed that the Agreement is a legally binding contract. In fact, the arbitration agreement is recognized by our courts as a binding contract forming the basis of a valid arbitration, which is necessary in order to implicate arbitral immunity. *See Sacks v. Dietrich*, 663 F.3d 1065, 1070 (9th Cir. 2011) ("Because the arbitrators acted with full authority under the arbitration agreement, they cannot be subject to suit by a party representative.") However, it is well-established in our jurisprudence that a legally cognizable immunity may prevent a litigant from suing certain parties in certain situations.

***7** ¶ 36 The doctrine of arbitral immunity serves a purpose analogous to judicial immunity, which allows judges the freedom to act on their best view of the merits of a case without undue influence, by protecting them from harassing lawsuits from frustrated litigants; arbitral immunity extends this protection to private arbitrators. *See Coleman v. Dunlap*, 695 F.3d 650, 652 (7th Cir. 2012); *Aku v. Chicago Board*

*of Education*, 290 F.Supp.3d 852, 865 (N.D. Ill. 2017); *Olson v. National Ass'n of Securities Dealers*, 85 F.3d 381, 382-83 (8th Cir. 1996). Arbitral immunity renders arbitrators immune from suit for all acts which they perform in their capacity as arbitrators. *Grane*, 143 Ill.App.3d at 985 (quoting *Tamari*, 552 F.2d at 780). In general, it applies to "all acts within the scope of the arbitral process." *New England Cleaning Services, Inc. v. American Arbitration Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999). The immunity has been extended to cases where the authority of the arbitrator to resolve a dispute is challenged. *See* *Tamari*, 552 F.2d at 780. An arbitrator is "not liable for negligence, fraud, or misconduct, even where it is sufficient to invalidate the award." *Grane*, 143 Ill.App.3d at 985 (quoting 5 Am.Jur.2d Arbitration and Award, sec. 107 (1962) and citing further cases where the court applied arbitral immunity to claims of fraud and misconduct against arbitrators).

¶ 37 Arbitral immunity can be extended not only to individual arbitrators, but to organizations that sponsor arbitrations as well. *See* *New England Cleaning Services*, 199 F.3d at 545; *Honn v. National Ass'n of Securities Dealers, Inc.*, 182 F.3d 1014, 1017 (8th Cir. 1999); *Olson*, 85 F.3d at 382. A sponsoring organization's immunity extends to the administrative tasks it performs, to the extent that those tasks are integrally related to the arbitration. *New England Cleaning Services*, 199 F.3d at 545. Indeed, FINRA itself, as well as the National Association of Securities Dealers, which was a precursor organization to FINRA, has been found to be covered by arbitral immunity for acts done within the scope of arbitration. *See, e.g.*, *Lanza v. Financial Industry Regulatory Authority*, 953 F.3d 159 (1st Cir. 2020); *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155 (10th Cir. 2007); *Honn*, 182 F.3d (8th Cir. 1999); *Olson*, 85 F.3d (8th Cir. 1996).

¶ 38 Examples of where arbitral immunity has been found to apply cover a wide range of arbitration actions. *See* *Olson*, 85 F.3d at 383 ("A sponsoring organization is immune from civil liability for improperly selecting an arbitration panel, even when the selection violates the organization's own rules."); *Austern v. Chicago Bd. Options Exchange, Inc.*, 898 F.2d 882, 886 (2d Cir. 1990) ("[D]efective notice and improper selection of the arbitration panel *** were sufficiently associated with the adjudicative phase of the arbitration to justify immunity."); *Honn*, 182 F.3d at 1017-18 (Even if the sponsoring organization acted improperly in allowing certain witnesses to testify, in forwarding materials to the arbitrators, and in formulating and delivering responses to the plaintiff's subpoenas, it was performing functions that were necessary to arbitration administration and therefore immune.); *Cherdak v. American Arbitration Association Inc.*, 443 F.Supp.3d 134, 156-57 (D.D.C. 2020) (The sponsoring organization's "decision regarding whether or not it has performed a sufficient review of an arbitration clause's due process compliance is an act within the arbitral process" and therefore entitled to immunity.); *Pfannenstiel*, 477 F.3d at 1159 (Arbitral immunity extended to the plaintiff's claims that the sponsoring organization lost his personal property where the court determined that the plaintiff was seeking vacatur of the arbitrator's decision.)

¶ 39 The Seventh Circuit in *Tamari* analogized a plaintiff's attempt to sue an arbitrator to a dissatisfied litigant attempting to sue a juror in order to obtain a declaration that the jury's verdict was void on the ground that the selection of the jury was improper. *See* *Tamari*, 552 F.2d at 781. The court explained that this would place an unfair burden on jurors and would discourage individuals from becoming jurors. *Id.* The court went on to state that a party to an arbitration does not need to sue the arbitrator in order to seek judicial recourse for an improperly-conducted arbitration. It explained that the plaintiff could have filed an action in court to have the arbitrator's award set aside, or assert the alleged arbitral impropriety as a defense when the successful party to the arbitration attempts to enforce the award in court. *Id.* This should provide some solace to Plaintiffs in the present matter, as they proceed with their appeal under the mistaken belief that the doctrine of arbitral immunity places arbitrators and arbitration forums entirely above the law, free to act as they wish. Unfortunately for Plaintiffs, they did not wait for FINRA's arbitration panel to render a decision; they voluntarily withdrew from the process before any award was made.

***8** ¶ 40 We turn now to whether the alleged acts that form the basis of Plaintiffs' complaint against FINRA fall within the scope of decisional acts conducted in the course of the arbitral process and are therefore protected. Plaintiffs' Second Amended Complaint lists the following ways in which FINRA allegedly acted that form the basis of their Consumer Fraud Act claim:

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

a. by refusing to administer the arbitration by refusing to allow arbitrators from facilitating a just and equitable resolution of the disputes by preventing the arbitrators from using procedural mechanisms necessary to achieve a just and equitable resolution;

b. by refusing to administer the arbitration by barring its arbitrators from using procedural mechanisms to certify and authorize the exchange of information between the parties to a dispute;

c. by refusing to administer the arbitration by refusing to train its arbitrators in procedures such as the Sedona Principles to facilitate the exchange of information;

d. by blocking the administration of the arbitration by interfering in its arbitrators' exercise of their discretion and directing arbitrators to Rule in a fashion inconsistent with the industry standard for the administration arbitrations.

e. by blocking the administration of the arbitration by imposing interpretations of its Rules that are contrary to the facilitation of a just and equitable resolution of disputes and contrary to the industry standard for arbitrations; and,

f. by refusing to administer the arbitration by failing to provide arbitrators with the necessary authority to enforce just and equitable principles of trade and business, to maintain high standards of commercial honor and integrity and to prevent fraudulent and manipulative acts and practices.

¶ 41 In an attempt to avoid pleading acts that fall within the scope of arbitration activity, Plaintiffs style their Consumer Fraud Act count as one for false advertising. They claim that FINRA advertised its alternative dispute resolution services through its website, where FINRA made promises to administer arbitration services consistent with the industry standard for fair and equitable arbitration, that it would "enforce high standards of commercial honor and integrity," and would "promote just and equitable principles of trade and business." Plaintiffs plead that they relied on these representations in deciding to make use of FINRA's arbitration services, and in incurring the fees and costs of arbitration, including the cost of retaining counsel. They contend that FINRA misrepresented its services through the above-listed actions. However, Plaintiffs cannot evade the reality that an arbitration occurred (or rather, was underway before Plaintiffs chose to withdraw), and the core of their complaint relates to how FINRA administered that arbitration.

¶ 42 In their First Amended Complaint, and preserved for appeal in their Second Amended Complaint, Plaintiffs claim that FINRA breached the Agreement through the following actions:

a. by failing to provide the requisite sources of authority to its arbitrators to facilitate a just and equitable resolution of the pending disputes;

b. by failing to provide arbitrators the appropriate procedural mechanisms and safeguards to fulfill FINRA's contractual promises;

c. by failing to provide its arbitrators with procedural mechanisms to certify and authorize the exchange of information between the parties to a dispute;

***9** d. by failing to properly train its arbitrators;

e. by interfering in its arbitrators' exercise of their discretion and imposing interpretations of its Rules that are contrary to the facilitation of a just and equitable resolution of disputes submitted to FINRA; and,

d. [*sic*] by failing to provide arbitrators with the necessary authority to enforce just and equitable principles of trade and business, to maintain high standards of commercial honor and integrity and to prevent fraudulent and manipulative acts and practices.

¶ 43 Courts have not been receptive to attempts to circumvent arbitral immunity by pleading around the actions of the forum or arbitrators with which the plaintiffs actually take issue. In *Honn*, the federal district court had dismissed Honn's complaint alleging that NASD had deprived him of a fair and expeditious disposition of his claims "in selecting or allowing certain witnesses to testify in the arbitration, in forwarding materials to the arbitrators, and in formulating and delivering responses to Honn's subpoenas in connection with the arbitration." *Honn*, 182 F.3d at 1016-17. On appeal, he argued that because he "alleged that the '*non-arbitration arm*' of the NASD acted improperly, his claims are based upon actions that were not necessary to, and outside the scope of, NASD's arbitration-sponsoring role" and therefore arbitral immunity did not apply. *Id.* at 1017 (emphasis in original). Here, Plaintiffs similarly argue that they are alleging wrongdoing by FINRA actors other than the arbitrators—that some unspecified individuals committed some unspecified

acts that were not "decisional acts of the arbitrator" but rather "acts *preventing* the 'decisional acts of the arbitrators,' " as they state in their Appellants' Brief. The lack of any mention of who these individuals might have been, or in what ways the arbitrators were prevented from making decisional acts, across a combined fifty-five pages of briefing, is telling. Plaintiffs clearly take issue with the way they sensed the arbitration was going before they voluntarily withdrew and sued the arbitration forum. They cannot find any valid fault with the arbitration aside from how they believe the arbitration was conducted and how the arbitrators appeared to be preparing to rule, which they know is not a theory on which they can proceed, given that these acts fall squarely within the scope of arbitral immunity.

¶ 44 Another comparable case is *Pfannenstiel*, in which the Tenth Circuit found arbitral immunity to apply to the plaintiff's suit against the sponsoring organization for allegedly losing his property, in the form of boxes of evidence and hearing tapes, after the arbitration. 477 F.3d at 1157. Pfannenstiel argued that his claims concerned misconduct separate from and unrelated to the judicial function of the arbitration organization. *Id.* at 1159. The court disagreed, stating that while arbitrators and sponsoring organizations are not immune from all claims against them, the question to consider in applying arbitral immunity is whether the claim, "regardless of its nominal title, effectively seek[s] to challenge the decisional act of an arbitrator or arbitration panel." *Id.* The court found Pfannenstiel's attempt to characterize his claim as having nothing to do with the arbitration decision rendered against him. In doing so, the court looked to the fact that Pfannenstiel also sued Merrill Lynch (the opposing party to the arbitration) claiming that his issues against both parties were related, and was seeking to have the arbitration panel's decision vacated as part of his plea for relief. *Id.* at 1159-60. His basis for that demand was that he was denied his rights to a fair "trial" because of NASD's "neglectful" handling of evidence and protocol for setting standards for the transfer of evidence, and alleged cover-up of the aforementioned actions "rendering undue delay." *Id.* at 1160. The court further quoted from the complaint, noting that Pfannenstiel claimed NASD's actions "rendered unfair advantage to [Merrill Lynch] and deni[ed] plaintiff's rights to 'appeal' or obtain 'vacancy' under normal methods." The court concluded that Pfannenstiel's claim was "little more than a veiled attack on the decision rendered against him by the arbitration panel, and that, accordingly, the NASD is entitled to arbitral immunity from that claim." *Id.*

***10** ¶ 45 In the present matter, we similarly find that Plaintiffs' dispute is over the arbitration panel's decisionmaking, and having been told several times now that their claims run up against the doctrine of arbitral immunity, they attempt to point to activity they believe to be outside the arbitration process as the true source of their claims. More specifically, Plaintiffs cannot state with any degree of clarity and specificity what it is that FINRA did to obstruct the decisionmaking authority of the arbitrators, as they claim. Adding allegations of misleading advertising through promises on FINRA's website to enforce high standards of integrity and promote equitable principles does not avoid the fact that Plaintiffs take issue with how the arbitration was proceeding—precisely the realm to which arbitral immunity applies. Furthermore, as Plaintiffs plead in their original complaint, their employment contracts included provisions requiring any employment-related arbitration to proceed before FINRA—this calls into question their assertion that they relied on FINRA's advertising of its arbitration services as they shopped around for an arbitration forum in which to file their dispute. *See* *Webb*, 2017 WL 2868996, 1.

¶ 46 Like the plaintiffs in *Pfannenstiel* and *Honn*, Plaintiffs attempt to attack the arbitrators' decisionmaking by pleading that the basis for the improper arbitration results (or would-be results, given that Plaintiffs did not wait for the FINRA arbitration panel to render its decision) actually took place outside of the arbitration, but their pleadings indicate otherwise. Plaintiffs' complaints repeatedly reference the manner in which the arbitration was administered, the arbitrators' exercise of discretion and decisionmaking, the arbitrators' training, and the interpretation of arbitration rules and development of procedures for administering arbitration. All of this, even if improperly done, falls within the functions necessary to administer arbitration, and therefore shielded by arbitral immunity. *See, for example,* *Grane*, 143 Ill.App.3d at 985 (An arbitrator is "not liable for negligence, fraud, or misconduct, even where it is sufficient to invalidate the award.")

¶ 47 As in the arbitral immunity caselaw we have discussed above, arbitral immunity applies to a breach of contract claim against the arbitration forum; it also applies to Plaintiffs' Consumer Fraud Act claim, which merely rephrases the same alleged activity. To the extent that Plaintiffs have pled any actions outside the scope of the arbitration process, we cannot analyze whether this is the case, as Plaintiffs do not plead any

specific facts we can look at in order to make this decision. While the circuit court was obligated to read the complaints in the light most favorable to Plaintiffs, they were not required to take Plaintiffs at their word that FINRA undertook any acts outside the scope of arbitral immunity if Plaintiffs do not sufficiently plead such facts, even if they needed the opportunity to conduct discovery to refine those pleadings. To compare this matter to *Grane*, which Plaintiffs cite as a case where the court identified non-protected arbitrator actions, Plaintiffs do not refer to any activity by the arbitration panel or forum that falls outside of those respective roles, unlike the arbitrator in *Grane* who was not protected by immunity where he allegedly acted as a legal representative of some of the opposing parties to the arbitration and fraudulently induced the plaintiff and a codefendant to enter into binding arbitration. *Id.* All of the actions that Plaintiffs refer to here occurred after they signed the Agreement binding them to FINRA's arbitration process—in fact, the existence of a valid legal contract is something that Plaintiffs themselves vociferously assert. We agree with the circuit court that Plaintiffs fail to plead any non-protected activity on the part of FINRA, and therefore the court properly dismissed Plaintiffs' Second Amended Complaint on the basis of arbitral immunity.

¶ 48 We are further convinced by the decision of the district court regarding this matter, before which Plaintiffs and FINRA made essentially the same arguments on appeal here. The district court stated in its discussion of *International Medical Group* and *Tamari* that the Seventh Circuit cases were instructive "on the difference between situations when arbitral immunity applies (*e.g.*, when a claim is 'integrally related' to the administrative tasks of a sponsoring organization) and when it does not (*e.g.*, when a claim can be stated entirely without reference to the arbitration)." *Webb*, 2017 WL 2868996 at 3 (citing *International Medical Group*, 312 F.3d at 844.) It continued that both *International Medical Group* and *Tamari* stood for the proposition that because arbitration was analogous to judicial proceedings, arbitral immunity serves to prevent litigants from having courts second-guess how arbitrators administer their decisions and perform the tasks necessary to the arbitration process—precisely what Plaintiffs attempted to do before the circuit and district courts, and what they attempt to do before us now. *Id.* at 4; *see also International Medical Group*, 312 F.3d at 844; *Tamari*, 552 F.2d at 781). We agree with the District Court that at the core of Plaintiffs' complaint is an attack on FINRA's performance of the tasks and duties necessary to arbitrate Plaintiffs' employment dispute, and that this is precisely the sort of complaint that arbitral immunity serves to prevent, in order not to overly burden and discourage arbitrators in the performance of their professional duties. *Webb*, 2017 WL 2868996 at 4. To put it in other words, as we have seen in their three attempts to plead a valid claim against FINRA, they are unable to do so without reference to the arbitration, and specifically to the administrative tasks of FINRA as a sponsoring organization. *Id.*

¶ 49 Alternate Grounds for Affirming the Circuit Court's Order

***11** ¶ 50 While we find that the circuit court did not err in dismissing the entirety of Plaintiffs' Second Amended Complaint pursuant to Section 2-619(a)(9) on the grounds that that FINRA was protected by arbitral immunity, we briefly consider FINRA's argument that the court could have also dismissed the complaint under Section 2-615 because Plaintiffs fail to plead fraud with specificity and particularity, the misrepresentations pled concern future promises and not present fact, and Plaintiffs cannot prove causation under any set of facts.

¶ 51 We agree with FINRA that Plaintiffs have failed to plead a single specific, nonconclusory factual allegation of FINRA's wrongdoing; however, we apply our analysis to both the Consumer Fraud Act count in the Second Amended Complaint, as well as the counts for breach of contract and declaratory judgment preserved for appeal from Plaintiffs' First Amended Complaint. Taking all well-pled facts in the light most favorable to the Plaintiffs, we do not find that the pleadings are sufficient to entitle Plaintiffs to relief if proven. Plaintiffs have had three opportunities to identify how FINRA allegedly interfered with the arbitrators' decision-making and exercise of discretion, in what way FINRA imposed improper interpretations of its arbitration rules, undermined the authority of the arbitrators, refused to allow arbitrators to administer a fair and equitable dispute resolution, failing to train arbitrators, or any of their other conclusory accusations. We understand that Plaintiffs argued they were prevented by the circuit court from conducting discovery pursuant to Ill. Sup. Ct. R. 191(b), but even if they lacked full information of FINRA's actions at the time of pleading, they must provide more than vague allusions to obstruction and interference—a court is not required to deem bare conclusions of law or conclusory factual allegations

unsupported by specific facts admitted for the purposes of a Section 2-615 motion to dismiss. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 35. Furthermore, Plaintiffs cannot rely on ambiguous pleadings to state that the court must resolve those ambiguities in the light most favorable to them on a Section 2-615 motion to dismiss. *Id.* While nothing in their pleadings alleges misconduct that falls outside the protections of arbitral immunity, Plaintiffs' three counts could also have properly been dismissed pursuant to Section 2-615.

¶ 52 CONCLUSION

¶ 53 For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 54 Affirmed.

Justices Coghlan and Walker concurred in the judgment.

**All Citations**

Not Reported in N.E. Rptr., 2022 WL 766987

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

***EFILED***
Case Number 2023LA000191
Date: 4/24/2023 3:21 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

| | |
|---|---|
| DONALD BANNISTER and BETTY BANNISTER,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN CRANE, INC., ET AL.,<br><br>Defendants. | CASE NO. 2023LA000191 |

**E. I. DU PONT DE NEMOURS AND COMPANY'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

E. I. Du Pont de Nemours & Company (now known as "EIDP, Inc." and hereinafter "EIDP") moves, pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-301, to dismiss Plaintiffs Donald and Betty Bannister's Complaint for failure to state a cause of action and failure to allege a *prima facie* basis for this Court to exercise personal jurisdiction over EIDP. In support, EIDP states as follows:

1. On February 16, 2023, Plaintiffs filed an eleven-count Complaint against eleven defendants seeking damages based on Donald Bannister's diagnosis of prostate cancer, skin cancer, and bladder cancer. Plaintiffs assert Counts 1, 2, and 11 against EIDP—negligence, strict liability: design defect and failure to warn, and Mrs. Bannister's claim for loss-of-consortium. Plaintiffs claim that Mr. Bannister's injuries were "caused or contributed to" by exposures to chemicals, namely PFAS/AFFF, asbestos, tobacco smoke, and polyaromatic hydrocarbons ("PAHs") allegedly manufactured, sold, distributed, marketed, designed, supplied, and/or used by Defendants. Compl. ¶ 2.

## I. The Complaint Fails to Plead Specific Facts Necessary to State a Cause of Action Against EIDP, Nor Any Individual "PFAS Defendant."

2. Counts 1 and 2 should be dismissed because Plaintiffs failed to plead the specific facts necessary to state a cause of action against EIDP, nor any specific "PFAS Defendant." Count 11 for loss-of-consortium is a derivative claim and must be dismissed along with Plaintiff's other claims.

3. Illinois is a fact-pleading jurisdiction. *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1099 (Ill. 2012). "A plaintiff may not rely on conclusions of law or fact unsupported by **specific factual allegations**." *Id.* (emphasis added) (finding plaintiff's complaint "insufficient because it relied on the 'conclusory allegation' that defendant 'knew or should have known' of the dangers of secondhand asbestos exposure."). Indeed, the Illinois Code of Civil Procedure does not authorize notice pleading. *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 788 N.E.2d 740, 750 (Ill. App. Ct. 2003). "Conclusions of fact will not suffice to state a cause of action regardless of whether they generally inform the defendant of the nature of the claim against him. Rather, under Illinois fact pleading, the pleader is required to set out ultimate facts that support his or her cause of action." *Id.* (internal citations omitted).

4. Here, the Complaint fails to raise any specific claim against any individual Defendant in Counts 1 and 2. Instead the Complaint lumps together five Defendants—the so-called "PFAS Defendants"—and alleges that these Defendants "collectively manufactured, sold, distributed, or supplied materials/products containing synthetic and toxic per- and polyfluoroalkyl substances." Compl. Count 1 ¶ 2. The Complaint also alleges that the "PFAS Defendants knew or should have known that PFAS and its materials/products that contained PFAS were hazardous and had a toxic, poisonous, and highly deleterious effect upon the health of persons, including Plaintiff, inhaling, ingesting, absorbing through the skin or otherwise absorbing them." *Id.* at ¶ 5. Nowhere

do Plaintiffs make *any* allegation that is specific to EIDP. Plaintiffs come nowhere close to satisfying Illinois' pleading standards.

5. Count 1 asserts negligence against the five "PFAS Defendants," including EIDP. Compl. Count 1. To state a claim for negligence, "a plaintiff must set out sufficient facts to establish that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused injury to the plaintiff." *Weidner v. Midcon Corp.*, 767 N.E.2d 815, 819 (Ill. App. Ct. 2002); *see also In re Petition to Annex Certain Prop. to City of Wood Dale*, 611 N.E.2d 606, 617 (Ill. App. Ct. 1993) (same). Here, Plaintiffs do not identify: (i) any specific products EIDP manufactured; (ii) the time, place, or manner in which Mr. Bannister was allegedly exposed to those products; (iii) what actions or inactions EIDP (as opposed to "the PFAS Defendants") allegedly took; or (iv) how the unnamed EIDP products allegedly proximately caused any injury to Mr. Bannister. Plaintiffs do not allege specific facts to establish any, let alone all, of the elements of a negligence cause of action against EIDP. *See id.* (dismissing complaint where, "regardless of which defendant is listed, plaintiffs state[d] the exact same allegations of fault" and no "facts were pleaded to support that claims that defendants had a duty"); *see also Lewis v. Lead Indus. Ass'n, Inc.*, 793 N.E.2d 869, (Ill. App. Ct. 2003) (affirming dismissal of negligence claim against manufacturers of lead paint where plaintiffs failed to identify the specific defendant that manufactured the product).

6. Count 2 alleges a strict liability claim against the "PFAS Defendants." Compl. Count 2. A strict liability plaintiff must plead "that the injury resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control." *Sollami v. Eaton*, 772 N.E.2d 215, 219 (Ill. 2002). A strict liability plaintiff also must satisfy a "causation-in-fact element" that "establish[es]

a causative link between the tortious acts of a specific defendant and the injuries for which recovery is sought." *Lewis*, 793 N.E.2d at 876. Here, Count 2 is just as deficient as Count 1; there are no specific allegations of fact against EIDP that set forth which EIDP products Mr. Bannister was allegedly exposed to, when and how the exposures occurred, what actions EIDP allegedly took or did not take, or how EIDP caused any harm to Plaintiffs. *See id.* (dismissing strict liability claim where plaintiff failed to identify the defendant that manufactured the product).

7. In Count 11, Plaintiff Betty Bannister asserts a loss-of-consortium claim against all Defendants, including EIDP. Compl. Count 11. Although a loss-of-consortium claim is legally separate from the directly injured spouse's causes of action, it is nonetheless "necessarily predicated on the claim of a directly injured spouse in that it arises from the same operative facts. . ." *Monroe v. Trinity Hosp.-Advocate*, 345 Ill. App. 3d 896, 899, 803 N.E.2d 1002, 1005 (1st Dist. 2003). Mrs. Bannister's loss-of-consortium claim against EIDP derives from Plaintiffs' factually deficient negligence and strict liability claims and therefore fails due to the same factual deficiencies. Plaintiff Betty Bannister's loss-of-consortium claim should be dismissed along with Plaintiff's other claims.

**II. The Complaint Fails to Establish Personal Jurisdiction over EIDP.**

8. Plaintiffs have the burden of establishing a *prima facie* basis that personal jurisdiction exists over EIDP. *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 16, 178 N.E.3d 1088, 1094 (citation omitted). Plaintiffs' claims against EIDP should be dismissed pursuant to 735 ILCS 5/2-301 because the Complaint fails to allege any specific facts supporting the extension of personal jurisdiction over EIDP.

9. Illinois's long-arm statute, 735 ILCS 5/2-209, stretches only as far as the U.S. Constitution allows. *Rios*, 2020 IL 125020, ¶ 17, 178 N.E.3d at 1094. "The Due Process Clause

of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

10. Illinois courts may "exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (internal quotation marks and citation omitted).

11. Two categories of personal jurisdiction exist: general and specific. *Rios*, 2020 IL 125020, ¶ 19, 178 N.E.3d at 1094. General jurisdiction applies where the jurisdiction is "one in which the corporation is fairly regarded as at home," and specific jurisdiction applies where the suit arises out of or relates to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017) (citation omitted).

12. The Complaint includes no facts suggesting that EIDP is "essentially at home in Illinois." *See Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 18, 90 N.E.3d at 446. "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG*, 571 U.S. at 118. Plaintiffs do not allege that EIDP is an Illinois corporation, because it is not. Nor do Plaintiffs allege Illinois is EIDP's principal place of business, because it is not.[1]

[1] Although EIDP is registered to do business in Illinois, "the fact that a foreign corporation has registered to do business . . . does not mean that the corporation has thereby consented to general jurisdiction over all causes of action . . . ." *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 27, 90 N.E.3d 440, 447.

13. Plaintiffs allege only that personal jurisdiction is appropriate over EIDP under 735 ILCS 5/2-209, because "Plaintiff was exposed to [] the cancer-causing chemicals in the State of Illinois and each Defendant committed a tortious act within this state." But, "a state may assert specific personal jurisdiction over an out-of-state defendant only 'if the defendant has purposefully directed activities at residents of the forum' and if 'the litigation results from alleged injuries that arise out of or relate to those activities.'" *Rios*, 2020 IL 125020, ¶ 20, 178 N.E.3d at 1094 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)) (internal quotation marks and citations omitted).

14. The Complaint contains no allegation that EIDP purposefully directed any activity at the State of Illinois or at Plaintiffs, and, as detailed above, Plaintiffs identify no product sold by EIDP that allegedly caused Mr. Bannister's injury. *See* Compl. 4–12; *Malevitis v. Expedia Grp., Inc*., 2021 IL App (1st) 200820-U, ¶ 27; *Morrison v. JSK Transp., Ltd.*, 2022 IL App (4th) 210542-U, ¶ 42. Plaintiffs' vague, solitary allegation that "each Defendant committed a tortious act within this State," Compl. 4 ¶ 13, is unsupported by any specific factual allegations and is insufficient to support personal jurisdiction. *See Forrester v. Seven Seventeen HB St. Louis Redevelopment Corp.,* 336 Ill. App. 3d 572, 579, 784 N.E.2d 834, 839 (2002); IL R S CT Rule 191.

15. Plaintiff's Complaint allegations do not establish a *prima facie* case that personal jurisdiction exists over EIDP.

Wherefore, EIDP respectfully requests that this Court dismiss Plaintiffs' Complaint as to EIDP (Counts 1, 2, and 11), and requests such other relief as is proper.

**JURY DEMAND**

EIDP hereby demands a trial by jury in this cause if the action is not dismissed.

Dated: April 24, 2023

SHOOK, HARDY & BACON L.L.P.

*/s/ Tyler Schwettman*
Tyler W. Schwettman (6333327)
tschwettman@shb.com
The Plaza in Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
Telephone: 314.690.0200
Fax: 314.690.0249
tschwettman@shb.com

Brent Dwerlkotte (admitted *pro hac vice*)
Amy M. Crouch (admitted *pro hac vice*)
Jennifer E. Hackman (admitted *pro hac vice*)
2555 Grand Boulevard,
Kansas City, MO 64108
Tel: (816) 474-6550
Fax: (816) 421-5547
dbdwerlkotte@shb.com
amcrouch@shb.com
jhackman@shb.com

Molly H. Craig (*pro hac vice* pending)
James B. Hood (*pro hac vice* pending)
Virginia Rogers Floyd (*pro hac vice* pending)
HOOD LAW FIRM, LLC
172 Meeting Street
Post Office Box 1508
Charleston, SC 29402
Phone: (843) 577-4435
Facsimile: (843) 722-1630
molly.craig@hoodlaw.com
james.hood@hoodlaw.com
virginia.floyd@hoodlaw.com

***Attorneys for Defendant E. I. du Pont de Nemours and Company (now known as "EIDP, Inc.")***

**CERTIFICATE OF SERVICE**

I certify that on this 24th day of April 2023 a true and correct copy of the foregoing was electronically filed using the Court's electronic filing system.

*/s/ Tyler Schwettman*
Tyler W. Schwettman

***Attorney for Defendant E. I. du Pont de Nemours and Company (now known as "EIDP, Inc.")***

***EFILED***
Case Number 2023LA000191
Date: 5/3/2023 3:40 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BANNISTER and BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., et al.,

Defendants.

No: 23-LA-191

## ENTRY OF APPEARANCE AND JURY DEMAND

Comes now Elizabeth A. Dahlmann of the law firm of Walker and Williams, P.C., and hereby enters her appearance as attorney of record on behalf of defendant, National Foam, Inc. Defendant hereby demands trial by jury in this matter.

**WALKER AND WILLIAMS, P.C.**

**By: /s/Elizabeth A. Dahlmann**
**ELIZABETH A. DAHLMANN #06303134**
**ead@wawpc.net**
**4343 West Main Street**
**Belleville, Illinois 62226**
**(618) 277-1000**

## PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing was electronically filed with File & Serve*Illinois* this 3rd day of May, 2023 which will send notification of such filing(s) to all counsel of record.

Ted N. Gianaris
Joshua A. Edelson
Gianaris Trial Lawyers
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiff*

/s/Elizabeth A. Dahlmann
Elizabeth A. Dahlmann

***EFILED***
Case Number 2023LA000191
Date: 5/3/2023 3:40 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | | |
|---|---|---|
| DONALD BANNISTER and BETTY BANNISTER, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No: 23-LA-191 |
| JOHN CRANE, INC., et al., | ) | |
| Defendants. | ) | |

**DEFENDANT NATIONAL FOAM, INC.'S COMBINED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF PERSONAL JURISDICTION**

COMES now the Defendant National Foam, Inc., (National Foam), by and through its attorneys, Walker and Williams, P.C., and respectfully moves this Court to dismiss Plaintiff's causes of action asserted against National Foam pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-301. National Foam contemporaneously files its Memorandum of Law in Support of Combined Motion to Dismiss and references it as if fully stated herein.

WHEREFORE, the Defendant National Foam, Inc., respectfully seeks an Order of the Court dismissing Plaintiff's causes of action asserted against it with prejudice for failure to state and claim and lack of personal jurisdiction, and for such other and further relief as proper.

**WALKER AND WILLIAMS, P.C.**

**By:** /s/Elizabeth A. Dahlmann
**ELIZABETH A. DAHLMANN #6303134**
**ead@wawpc.net**
**4343 West Main Street**
**Belleville, Illinois 62226**
**Telephone (618) 277-1000**
**Facsimile (618) 233-1637**

*Attorneys for Defendant National Foam, Inc.*

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing was electronically filed with File & Serve*Illinois* this 3rd day of May, 2023 which will send notification of such filing(s) to all counsel of record.

Ted N. Gianaris
Joshua A. Edelson
Gianaris Trial Lawyers
One Court Street Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiff*

/s/Elizabeth A. Dahlmann
Elizabeth A. Dahlmann

***EFILED***
Case Number 2023LA000191
Date: 5/3/2023 3:40 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BANNISTER and BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., et al.,

Defendants.

No: 23-LA-191

**DEFENDANT NATIONAL FOAM, INC.'S MEMORANDUM OF LAW IN SUPPORT OF COMBINED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF PERSONAL JURISDICTION**

Defendant National Foam, Inc., hereby submits this Memorandum of Law in Support of its Combined Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction.

## INTRODUCTION

Plaintiffs Donald and Betty Bannister filed this action on February 16, 2023, against Defendants claiming they manufactured, distributed, and/or used various products or materials, including asbestos, tobacco, PFAS/AFF, and Polyaromatic Hydrocarbons ("PAHs") allegedly causing Mr. Bannister's prostate, skin, and bladder cancers. *See* Compl. 1-2 ¶ 2. Amongst the myriad of allegations are products-liability claims against National Foam, Inc. ("National Foam"), in Counts 1 and 2, and Mrs. Bannister's loss-of-consortium claim in Count 11. Plaintiffs lump a handful of Defendants, including National Foam, together as the "PFAS Defendants" alleging exposure to unspecified products containing "per- and polyfluoroalkyl substances" ("PFAS"). Compl. at 4, ¶ 2. PFAS are actually a wide range of chemical products including thousands of

different compounds used in hundreds of applications across various industries.[1] The complaint fails to identify any National Foam product allegedly causing injury to Plaintiffs, lacking basic factual allegations needed to state a products-liability claim. Similarly, the Complaint fails to establish a *prima facie* basis for this Court to exercise personal jurisdiction over National Foam.

## ARGUMENT

### I.    Plaintiffs Complaint Must Be Dismissed For Failure to State A Claim Pursuant to 735 ILCS 5/2-615.

Plaintiffs' Complaint fails set forth substantial allegations of fact against National Foam. A complaint must be dismissed if it is legally or factually insufficient. *Cummings v. Waterloo,* 683 N.E.2d 1222, 1225 (Ill. App. Ct. 5th Dist. 1997); *Misselhorn v. Doyle,* 629 N.E.2d 189, 191 (Ill. App. Ct. 5th Dist. 1994). "Fact pleading, as opposed to notice pleading, is required in Illinois; accordingly, a plaintiff must allege facts that are sufficient to bring his claim within the scope of a legally recognized cause of action." *Teter v. Clemens,* 112 Ill. 2d 252, 256, 492 N.E.2d. 1349, 1342 (1986). Where "there are not sufficient allegations of fact to state a cause of action, a motion to dismiss will properly be granted, no matter how many conclusions may have been stated and regardless of whether they inform the defendant in a general way of the nature of the claim against him." *Adkins v. Sarah Bush Lincoln Health Ctr.,* 129 Ill. 2d 497, 519-20 (1989).

The first products-liability cause of action against National Foam is asserted in Count I. Compl. at 4. In stating a cause of action for negligence, "a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Simpkins v. CSX Transp., Inc.*, 2012 IL 110662, ¶ 14, 965 N.E.2d 1092, 1096 (citation omitted). "[T]he duty analysis must begin with the threshold

---

[1] *See* Interstate Technology Regulatory Council, *PFAS Uses*, https://pfas-1.itrcweb.org/2-5-pfas-uses/

question of whether the defendant, by his act or omission, contributed to a risk of harm to this particular plaintiff," which, in a case alleging injury from exposure to a chemical component of a product, focuses "on the question of whether the injury was reasonably foreseeable at the time defendant engaged in the allegedly negligent action." *Id.* ¶¶ 21, 25, 965 N.E.2d at 1098. "[T]hough duty is always a question of law, in this case the attendant foreseeability question turns on specific facts regarding what defendant actually knew about the nature and potential harms from [the product at a particular time] or what defendant should have known at that time." *Id.* ¶ 25, 965 N.E.2d at 1099.

The particular product involved is critical in determining foreseeability. Plaintiffs cannot meet their burden of pleading a negligence claim without identifying a product. Hence rendering each of the Complaint's assertions about any alleged harm being foreseeable by National Foam as mere "conclusory allegations." *See Simpkins v. CSX Transp., Inc.*, 2012 IL 110662, ¶ 26, 965 N.E.2d 1092, 1099. For example, Plaintiffs alleges that "Plaintiff's exposure to and inhalation, ingestion, and absorption of PFAS from said [unspecified] products/materials were completely foreseeable and could or should have been anticipated by" PFAS Defendants. Compl. 5 ¶ 4; *see also* Compl. 10 ¶ 8. But because Plaintiffs do not identify any PFAS-containing product of National Foam they have "failed to allege facts specific enough to analyze whether, if those facts were proven true, defendant would have been able to reasonably foresee plaintiff's injury." *Simpkins*, 2012 IL 110662, ¶ 27, 965 N.E.2d at 1099.

With regards to the strict liability claim alleged in Count 2, Plaintiffs must plead "that the injury complained of resulted from a condition of the *product*, that the condition [of the *product*] was unreasonably dangerous, and that it existed at the time the *product* left the manufacturer's control." *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 525, 901 N.E.2d 329,

335 (2008) (emphasis added), *opinion modified on denial of reh'g* (Dec. 18, 2008). Plaintiffs must also satisfy a "causation-in-fact" element for strict liability that "establish[es] a causative link between the tortious acts of a specific defendant and the injuries for which recovery is sought." *Lewis v. Lead Indus. Ass'n, Inc.*, 793 N.E.2d 869, 876 (Ill. App. 2003). Because Plaintiffs fail to identify any National Foam product—an essential component of each element of a strict liability cause of action—the Complaint fails to plead sufficient facts to bring this claim within the scope of the cause of action. *See Teter*, 112 Ill. 2d at 256, 492 N.E.2d at 1342. In addition to not identifying a product, Plaintiffs do not sufficiently allege when and how exposures occurred, actions taken or not taken by National Foam ensuring safety, or how harm to Mr. Bannister was proximately caused by National Foam.

Mrs. Bannister's loss of consortium claim in Count 11 similarly fails. A loss of consortium claim is legally separate and distinct from the directly injured spouse's cause of action; however, it is necessarily predicated on the claim of the directly injured spouse as it arises from the same operative facts. *Monroe v. Trinity Hospital-Advocate,* 345 Ill.App.3d 896, 899, 803 N.E.2d 1002, 1005 (1st Dist. 2003). As Mr. Bannister's negligence and strict liability claims fail due to factual deficiencies, so must Mrs. Bannister's loss of consortium claim for the same deficiencies.

These claims are pure conjecture as Plaintiffs nowhere identify any National Foam product as the subject of their claims. Because Plaintiffs' Complaint fails to allege sufficient facts to support a cause of action against National Foam, it should be dismissed or, in the alternative, made more definite pursuant to 735 ILCS 5/2-615.

## II. This Court Lacks Personal Jurisdiction Over National Foam As Plaintiff's Complaint Does Not Establish a *Prima Facie* Basis for Jurisdiction.

When a nonresident defendant contests personal jurisdiction, the plaintiff bears the burden of establishing a *prima facie* basis for jurisdiction. *Russell v. SNFA,* 2013 IL 113909 at ¶ 28. Personal jurisdiction is a necessary component of every case because a "judgment is not valid unless the court has jurisdiction over the parties involved therein." In re Cnty Collector, 921 N.E.2d 462, 474 (Ill. App. Ct. 2009). The Complaint fails to make a *prima facie* showing and, indeed, no such basis exists; accordingly, the Complaint in this matter must be dismissed pursuant to 735 ILCS 5/2-301.

No matter how compelling a lawsuit is, this Court cannot exercise personal jurisdiction over a nonresident defendant unless the defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Abelesz v. OTP Bank*, 692 F.3d 638, 653-54 (7th Cir. 2012). This Court must therefore ensure that it has either general jurisdiction or specific jurisdiction over National Foam. *See, Daimler AG v. Bauman*, 571 U.S. 117, 122, 134 S. Ct. 746, 751 (2014). Notably, Plaintiffs allege only specific jurisdiction in the Complaint. Compl. 4 ¶13.

A. National Foam Which Was Incorporated in Delaware in 2013 (9 years after the exposures alleged in the Complaint occurred) and Has Its Principal Place of Business in North Carolina is Not Subject to General Jurisdiction.

General jurisdiction exists only where the defendant's contacts with the forum are "'so continuous and systematic as to render [the defendant] *essentially at home* in the forum state.'" *Daimler*, 571 U.S. 127 (emphasis added) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S. Ct. 2846, 2851 (2011)). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there"; paradigmatically, "the place of incorporation and principal place of business." *Id.* at 760. Beyond these paradigms, the United States Supreme Court has theorized only "an exceptional case" of general jurisdiction where the corporation's operations in a state might be "so substantial and of such a nature as to

render the corporation at home in that State." *Id.* at 761 at n.19 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), wherein the defendant's principal place of business had *temporarily* relocated to the forum state).

National Foam was incorporated in Delaware on March 19, 2013, as Eurostar US Tradeco Inc. *See* Declaration of Paul Williams ¶4 attached hereto as Exhibit "A." Eurostar US Tradeco Inc. changed its name to National Foam, Inc. on July 3, 2013. See Ex. A, ¶5. National Foam began operations on June 28, 2013, and did not manufacture, distribute, or sell any products anywhere before that date. See Ex. A, ¶6. National Foam has its headquarters and principal place of business in North Carolina. See Ex. A, ¶7. National Foam is not authorized to do business in Illinois and, thus, does not have an appointed agent for service of process in Illinois. See Ex. A, ¶8. National Foam has no property, offices, officers, or employees in Illinois and, correspondingly, no mailing address or telephone number in Illinois. See Ex. A, ¶9.

National Foam is not an Illinois Corporation, nor is its principal place of business in Illinois. Further, National Foam is not registered to conduct business in this State. Nothing in the Complaint alleges National Foam is essentially at home in Illinois. Therefore, National Foam is not subject to general personal jurisdiction in Illinois.

      B.   Because Plaintiffs' Exposure to PFAS is Alleged to Have Occurred From 1964 to 2004, And National Foam Did Not Begin Operations Until June 28, 2013, Plaintiffs' Alleged Injuries Could Not Possibly Arise Out of Or Relate to Any National Foam Activities.

A basis for specific jurisdiction over National Foam is similarly lacking in the Complaint. Specific jurisdiction may be asserted over a non-resident defendant if the defendant has "purposefully directed" [its] activities at residents of the forum, and the alleged injuries "arise out of or relate to" those activities. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Plaintiff alleges that "[f]rom 1964 to 2004, Plaintiff worked at the Wood River Refinery in Wood River, Madison County, Illinois as a general laborer, firefighter, and truck driver for Shell Oil Company and Phillips 66 on . . . fire extinguishing with PFAS/AFFF, and many other job duties where he was regularly and routinely exposed to PFAS/AFFF, asbestos, PAHs, and other cancer-causing chemicals." Compl. 2 ¶3.

"In the context of corporations, specific jurisdiction may be asserted when the suit directly arises out of or is connected to the defendant's purportedly wrongful acts within the forum state" (*Sabados v. Planned Parenthood of Greater Indiana*, 378 Ill.App.3d 243, 248, 317 Ill.Dec. 547, 882 N.E.2d 121 (2007) (*citing Illinois Commerce Comm'n v. Entergy–Koch Trading*, LP, 362 Ill.App.3d 790, 796, 298 Ill.Dec. 884, 841 N.E.2d 27 (2005))) such that it is reasonable to require the defendant to litigate in that state. (*citing World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

The Complaint alleges National Foam "committed a tortious act within this State." Compl. 4 ¶ 13. Beyond this unsupported generality, the Complaint lacks factual allegations to support a finding of personal jurisdiction. Logic dictates that National Foam's activities (anywhere) could not have occurred before it was incorporated on March 19, 2013, and practicality dictates that such activity would not have occurred before it began operations on June 28, 2013. Since the first activity of National Foam occurred at least 9 years after plaintiff's alleged exposure ended in 2004, the lawsuit does not directly arise out of, nor is it connected to the National Foam's purportedly wrongful acts within the forum state.

There are no allegations that any action of National Foam occurred within the State of Illinois, let alone an action that actually contributed to Plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, National Foam, Inc., respectfully requests that this Honorable Court dismiss the claims against it with prejudice pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-301.

**WALKER AND WILLIAMS, P.C.**

**By:** /s/Elizabeth A. Dahlmann
**ELIZABETH A. DAHLMANN #6303134**
**ead@wawpc.net**
**4343 West Main Street**
**Belleville, Illinois 62226**
**Telephone (618) 277-1000**
**Facsimile (618) 233-1637**

*Attorneys for Defendant National Foam, Inc.*

## PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing was electronically filed with File & Serve*Illinois* this 3rd day of May, 2023 which will send notification of such filing(s) to all counsel of record.

Ted N. Gianaris
Joshua A. Edelson
Gianaris Trial Lawyers
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiff*

/s/Elizabeth A. Dahlmann
Elizabeth A. Dahlmann

***EFILED***
Case Number 2023LA000191
Date: 5/3/2023 3:40 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BANNISTER and BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., et al.,

Defendants.

No: 23-LA-191

**DECLARATION OF PAUL WILLIAMS IN SUPPORT OF DEFENDANT NATIONAL FOAM, INC.'S MEMORANDUM OF LAW IN SUPPORT OF COMBINED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF PERSONAL JURISDICTION**

I, Paul Williams, hereby declare as follows:

1. I currently serve as the Chief Executive Officer for National Foam, Inc. ("National Foam") and have served in that capacity since March 19, 2013.

2. I make this Declaration in support of the Motion to Dismiss being filed by National Foam, which I understand to be named as a defendant in the above-captioned action.

3. Unless stated otherwise, I have personal knowledge of the facts set forth here and, if called on to do so, I could and would testify competently to them.

4. National Foam was incorporated in the State of Delaware on March 19, 2013, as Eurostar US Tradeco Inc. *See* Certificate of Incorporation attached hereto as Exhibit 1.

5. On July 3, 2013, Eurostar US Tradeco Inc. changed its name to National Foam, Inc. *See* Certificate of Amendment of Certificate of Incorporation of Eurostar US Tradeco Inc. attached hereto as Exhibit 2.

6. National Foam began operations on June 28, 2013, and did not manufacture, distribute, or sell any products anywhere before that date.

EXHIBIT A

7. National Foam has its headquarters and principal place of business in North Carolina.

8. National Foam is not authorized to do business in Illinois and, thus, does not have an appointed agent for service of process in Illinois.

9. National Foam has no property, offices, officers, or employees in Illinois and, correspondingly, no mailing address or telephone number in Illinois.

10. If National Foam were to have to litigate this action from North Carolina, it would suffer undue burden and expense because, among other reasons: (a) it has no officers, employees, or local resources within Illinois; and (b) all of its corporate records and witnesses even potentially relevant to the allegations in this action, if any, are located outside of Illinois.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 3rd day of May 2023.

[signature] P. WILLIAMS



I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "EUROSTAR US TRADECO INC.", FILED IN THIS OFFICE ON THE NINETEENTH DAY OF MARCH, A.D. 2013, AT 10:41 O`CLOCK A.M.

Jeffrey W. Bullock, Secretary of State

5305356 8100
SR# 20161304585

Authentication: 201903021
Date: 02-29-16

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 10:53 AM 03/19/2013
FILED 10:41 AM 03/19/2013
SRV 130329471 - 5305356 FILE

## CERTIFICATE OF INCORPORATION

## OF

## EUROSTAR US TRADECO INC.

FIRST: The name of the corporation is:

Eurostar US Tradeco Inc. (the "Corporation")

SECOND: The address of the registered office of the Corporation in the State of Delaware is 1209 Orange Street, in the City of Wilmington, County of New Castle, 19801. The name of the registered agent at such address is The Corporation Trust Company.

THIRD: The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of Delaware.

FOURTH: The Corporation is authorized to issue one class of stock, to be designated "Common Stock," with a par value of $0.0001 per share. The total number of shares of Common Stock that the Corporation shall have authority to issue is 1,000.

FIFTH: The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors. In addition to the powers and authority expressly conferred upon them by statute or by this Certificate of Incorporation or the Bylaws of the Corporation, the directors are hereby empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation. Election of directors need not be by written ballot, unless the Bylaws so provide.

SIXTH: The Board of Directors is authorized to make, adopt, amend, alter or repeal the Bylaws of the Corporation. The stockholders shall also have power to make, adopt, amend, alter or repeal the Bylaws of the Corporation.

SEVENTH: The name and mailing address of the incorporator is:

James H. O'Malley
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, MD 21209

EIGHTH: To the fullest extent permitted by the Delaware General Corporation Law, as the same exists or may hereafter be amended, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director. Any repeal or modification of the foregoing provisions of this Article EIGHTH by the stockholders of the Corporation shall not adversely affect any right or protection of a director of the Corporation existing at the time of, or increase the liability of any

director of the Corporation with respect to any acts or omissions occurring prior to. such repeal or modification.

THE UNDERSIGNED, being the incorporator named above, for the purpose of forming a corporation pursuant to the General Corporation Law of Delaware, does make this certificate, hereby declaring and certifying that this is my act and deed and the facts herein stated are true, and accordingly have hereunto set my hand this 19th day of March, 2013.

James H. O'Malley, Incorporator

# Delaware

The First State

*I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF AMENDMENT OF "EUROSTAR US TRADECO INC.", CHANGING ITS NAME FROM "EUROSTAR US TRADECO INC." TO "NATIONAL FOAM, INC.", FILED IN THIS OFFICE ON THE THIRD DAY OF JULY, A.D. 2013, AT 5 O'CLOCK P.M.*

EXHIBIT 2

Jeffrey W. Bullock, Secretary of State

5305356 8100
SR# 20161304585

Authentication: 201903020
Date: 02-29-16

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 05:24 PM 07/03/2013
FILED 05:00 PM 07/03/2013
SRV 130848358 - 5305356 FILE

CERTIFICATE OF AMENDMENT OF CERTIFICATE OF INCORPORATION
OF EUROSTAR US TRADECO INC.

June 28, 2013

EUROSTAR US TRADECO INC. (the "Corporation"), a corporation organized and existing under the General Corporation Law of the State of Delaware, hereby certifies as follows:

1. This Certificate of Amendment (the "Certificate of Amendment") amends the provisions of the Corporation's Certificate of Incorporation filed with the Secretary of State on March 19, 2013 (the "Certificate of Incorporation").

2. Article FIRST of the Certificate of Incorporation is hereby amended and restated in its entirety as follows:

FIRST: The name of the corporation is:

National Foam, Inc. (the "Corporation")

3. This amendment was duly adopted in accordance with the provisions of Sections 228 and 242 of the General Corporation Law of the State of Delaware.

4. All other provisions of the Certificate of Incorporation shall remain in full force and effect.

5. The foregoing amendment was approved by unanimous written consent of the Board of Directors of the Corporation in accordance with Section 141(f) of the General Corporation Law of the State of Delaware and submitted to the sole stockholder of the Corporation for approval. Thereafter, the sole stockholder of the Corporation approved the foregoing amendment by written consent in accordance with Section 228 of the General Corporation Law of the State of Delaware.

[*Signature Page Follows*]

IN WITNESS WHEREOF, the Corporation has caused this Certificate of Amendment to be signed this 28 day of June, 2013.

By [signature]
Authorized Officer
Name: Jason Chaitin
Title: Officer

# THIRD JUDICIAL CIRCUIT
# MADISON COUNTY, ILLINOIS

23LA 191

Bannister
Plaintiff/Petitioner

vs.

John Crane, Inc.
Defendant/Respondent

No. ~~23-L-19~~

Div. ______

FILED
MAY 04 2023
CLERK OF CIRCUIT COURT #36
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

**ORDER**

All motions set for hearing on June 8, 2023 before the Honorable Judge Smith at 9:00 am in Courtroom 351.

Plt. [signature]
JCI - [signature]
3M - [signature] Barron

Date 5/4/23

[signature]
Judge



**THOMAS McRAE**
**CLERK OF THE CIRCUIT COURT**
THIRD JUDICIAL COURT
155 N. MAIN ST.
EDWARDSVILLE, IL 62025

FILED
MAY 1 6 2023
CLERK OF CIRCUIT COURT #17
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

JONES DAY
JOSE' ISASI
77 W WACKER DR STE 3500
CHICAGO IL 60601

ME
2023 LA 000191

601 NFE 1270422C0005/13/23
FORWARD TIME EXP RTN TO SEND
:JONES DAY
110 N WACKER DR # 4800
CHICAGO IL 60606-1511

RETURN TO SENDER

FWD

013 5D7C1AAB 80

MAY 24 2023

CLERK OF CIRCUIT COURT #56
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiff,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA-000191

**AGREED BRIEFING SCHEDULE AND NOTICE OF HEARING**

This matter coming before the Court by agreement of Plaintiffs, Defendant R.J. Reynolds Tobacco Company ("Reynolds") and Defendant ITG Brands LLC ("ITG"), Reynolds and ITG having each filed a Motion to Dismiss Pursuant to 735 ILCS 5/2-615, Plaintiffs, Reynolds, and ITG having agreed to a briefing schedule of those Motions, and the Court being fully advised in the premises,

IT IS HEREBY ORDERED:

(1) Plaintiffs shall respond to Reynolds's and ITG's Motions to Dismiss on or before Tuesday, June 6, 2023;

(2) Reynolds and ITG shall file a reply in support of their Motions to Dismiss on or before Tuesday, June 20, 2023;

(3) Oral argument on Reynolds's and ITG's Motions to Dismiss are set for hearing on Tuesday, June 27, 2023 at 10:00 a.m. before Judge Sarah Smith.

ENTERED: 5-24-23

Sarah B. Smith
Judge

29845639.1



Thomas McRae
Circuit Clerk / Civil
155 N. Main St.
Edwardsville, IL 62025

FILED
MAY 30 2023
CLERK OF CIRCUIT COURT #69
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

23LA191

TIVIN MARK I
135 S LASALLE ST STE 2300
CHICAGO IL 60603

NIXIE 601 FE 1270 0005/27/23

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD

ANK BC: 62025195599 *1176-03133-27-39

013

***EFILED***
Case Number 2023LA000191
Date: 6/2/2023 2:28 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

DONALD BANNISTER and BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., ET AL.

Defendants.

CASE NO. 2023LA000191

**E. I. DU PONT DE NEMOURS AND COMPANY'S**
**<u>MOTION FOR SUBSTITUTION OF JUDGE</u>**

COMES NOW Defendant E. I. du Pont de Nemours & Company (now known as "EIDP, Inc." and hereinafter "EIDP") and for its Motion for Substitution of Judge states as follows:

1. EIDP brings its Motion for Substitution of Judge pursuant to 735 ILCS § 5/2-1001(a)(2).

2. Pursuant to 735 ILCS § 5/2-1001(a)(2)(i), each party is entitled to one substitution of judge without cause "as a matter of right." An application for substitution is granted by right without cause "if it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case." 735 ILCS § 5/2-1001(a)(2)(ii).

3. Judge Sarah Smith has not ruled on any substantial issue in the case.

4. Pursuant to 735 ILCS § 5/2-1001(a)(2), EIDP is entitled to a substitution of judge.

WHEREFORE, Defendant E. I. Du Pont de Nemours & Company (now known as "EIDP, Inc.") respectfully requests that this Honorable Court enter an order for substitution of judge.

Dated: June 2, 2023

SHOOK, HARDY & BACON L.L.P.

*/s/ Tyler W. Schwettman*
Tyler W. Schwettman (6333327)
The Plaza in Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
Telephone: 314.690.0200
Fax: 314.690.0249
tschwettman@shb.com

Brent Dwerlkotte (admitted *pro hac vice*)
Amy M. Crouch (admitted *pro hac vice*)
Jennifer E. Hackman (admitted *pro hac vice*)
2555 Grand Boulevard,
Kansas City, MO 64108
Tel: (816) 474-6550
Fax: (816) 421-5547
dbdwerlkotte@shb.com
amcrouch@shb.com
jhackman@shb.com

***Attorneys for Defendant E.I. du Pont de Nemours and Company (now known as "EIDP, Inc.")***

**CERTIFICATE OF SERVICE**

I certify that on this 2nd day of June 2023 a true and correct copy of the foregoing was electronically filed using the Court's electronic filing system.

*/s/ Tyler W. Schwettman*
Tyler W. Schwettman

***Attorney for Defendant E.I. du Pont de Nemours and Company (now known as "EIDP, Inc.")***

***EFILED***
Case Number 2023LA000191
Date: 6/5/2023 9:57 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BANNISTER and BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., et al.,

Defendants.

No: 23-LA-191

## AGREED STIPULATION FOR DISMISSAL

Come now the plaintiffs and **National Foam, Inc.,** by their respective attorneys and stipulate that this case shall be dismissed without prejudice as to plaintiffs' claims against **National Foam, Inc.,** only. Each party to bear their own costs.

**GIANARIS TRIAL LAWYERS, LLC**

BY /s/ Joshua A. Edelson

Ted N. Gianaris #6237156
Joshua A. Edelson - 6237156
One Court Street
Alton, Illinois 62002
Phone: (618)619-0010
E-mail: jedelson@lawforpeople.com
*Attorneys for Plaintiff*

**WALKER AND WILLIAMS P.C.**

BY /s/Elizabeth A. Dahlmann (w/consent)

Elizabeth A. Dahlmann – 06303134
4343 West Main Street
Belleville, Illinois 62226
Phone: (618)277-1000
E-mail: ead@wawpc.net
*Attorneys for National Foam, Inc.*

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | | |
|---|---|---|
| DONALD BANNISTER and BETTY BANNISTER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No: 23-LA-191 |
| | ) | |
| JOHN CRANE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Upon the Stipulation for Dismissal without prejudice filed herein by the plaintiffs Donald Bannister and Betty Bannister, it is hereby ordered that the defendant, National Foam, Inc., is hereby dismissed from this case without prejudice. Each party to bear their own costs. This order does not affect plaintiffs' case against any other defendant.

ENTERED this ___ day of ________________________________________ , A.D.20___.

______________________________________________
J U D G E

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

DONALD BANNISTER and BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., ET AL.

Defendants.

CASE NO. 2023LA000191

JUN 05 2023

CLERK OF CIRCUIT COURT #56
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

**ORDER**

Defendant E. I. du Pont de Nemours & Company's (now known as "EIDP, Inc.") Motion for Substitution of Judge is hereby GRANTED.

Date: 05 Jun 2023

Judge

***EFILED***
Case Number 2023LA000191
Date: 6/6/2023 4:52 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

Donald Bannister and Betty Bannister,

Plaintiffs,

v.

John Crane, Inc.,
Shell USA, Inc.,
Phillips 66 Company,
3M Company, *f/k/a* Minnesota Mining and Manufacturing Company,
Tyco Fire Products, L.P., successor in interest to The Ansul Company,
Chemguard,
E. I. du Pont de Nemours & Co.,
National Foam, Inc.,
HWRT Oil Company,
ITG Brands LLC, and
R.J. Reynolds Tobacco Company,

Defendants.

Case No.: 2023-LA-000191

**PLAINTIFFS' RESPONSE TO R.J. REYNOLDS TOBACCO COMPANY AND ITG BRANDS, LLC'S COMBINED MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs, Donald Bannister and Betty Bannister ("Plaintiff" or "Plaintiffs" collectively), through Ted N. Gianaris and Joshua A. Edelson of Gianaris Trial Lawyers, LLC, state as follows for their response to R.J. Reynolds Tobacco Company and ITG Brands, LLC's (collectively "Defendants") Combined Motion to Dismiss Plaintiffs' Complaint:

ARGUMENT

**I. Plaintiff, Donald Bannister, Has Not Failed To Plead The Facts Essential To His Negligence And Strict Liability Claims.**

Defendants allege that Plaintiff's Complaint fails to allege sufficient facts to establish the elements of his negligence claim. However, Plaintiff's Complaint alleges that he purchased and

smoked Winston Lights, which were produced and sold by Defendants. (*See* Complaint, ¶ 7). The Complaint also contains a date as to when Plaintiff first began smoking cigarettes and subsequently states that he then became immediately addicted. (*See* Complaint, ¶¶ 5-8). Likewise, Plaintiff's Negligence and Strict Liability counts are littered with factual allegations, including at least 12 different allegations as to how these Defendants were negligent (See Complaint, Counts 5 and 6). Lastly, Plaintiff's strict liability design defect count contains all the allegations necessary to support such claim, especially as it relates to "light" or "filtered" cigarette products such as Winston Lights (*See* Complaint, ¶ 7 and Count 6).

Simply put, Plaintiff has not Failed to plead the facts essential to his negligence and strict liability claims. Plaintiff respectfully requests this Court deny the first point of Defendants' Motion to Dismiss.

## II. Plaintiff, Donald Bannister, Has Not Failed To Plead The Facts Essential To His Fraudulent Concealment Claim.

Defendants argue that Plaintiff specifically failed to allege with the required particularity and specificity the "(A) omissions by Reynolds that Plaintiff relied upon to his detriment; (B) facts establishing that Reynolds had a duty to speak; and (C) facts identifying how the alleged fraudulent concealment proximately caused Plaintiff's alleged injury." (*See* Defendants' Motion, pg. 4). However, paragraphs 8-14 of Count 7 of Plaintiff's Complaint allege various relating to the foregoing. (*See* Complaint, Count 7, ¶¶ 8-14). All in all, Plaintiff's fraudulent concealment count contains all the allegations necessary to support such claim. (*See* Complaint, Count 7).

Furthermore, Plaintiff pleaded what duty were owed to Plaintiff by Defendants under the theory of fraudulent concealment. (*See* Complaint, Count 7, ¶ 10 alleging "[t]hese Defendants had a duty to disclose to the American public, including Plaintiff, all material facts about the health hazards of smoking cigarettes, including their highly addictive qualities"). Nevertheless, duty is

not a pleading requirement under Illinois law unless it is a statutory duty. *See* Il. Sup. Ct. Rule 133. Fraudulent concealment does not involve any statutory duties.

Based on the foregoing, Plaintiff has not Failed to plead the facts essential to his fraudulent concealment claim. Plaintiff respectfully requests this Court deny the second point of Defendants' Motion to Dismiss.

## III. Plaintiff, Donald Bannister, Has Not Failed To Plead The Facts Essential To His ICFA Claim.

Count 9 of Plaintiff's Complaint contains 15 detailed paragraphs containing numerous facts and allegations under the Illinois Consumer Fraud Act ("ICFA"). A review of each of those paragraphs demonstrates that Plaintiff has not failed to plead the facts essential to his ICFA claim. Plaintiff respectfully requests this Court deny the third point of Defendants' Motion to Dismiss.

## IV. Plaintiff, Donald Bannister's, "Willful And Wanton Misconduct" Claim Is Cognizable Under Illinois Law.

Defendants misstate the law as to whether a claim titled "willful and wanton misconduct" is cognizable under Illinois law. The Illinois Supreme Court case that Defendants cites to only did not hold that "willful and wanton" causes are action are impermissible. See *Ziarko v. Soo Line R. Co.*, 161 Ill. 2d 267, 282 (1994) (discussing whether contribution amongst joint tortfeasors is allowed where a defendant is liable for "willful and wanton" misconduct). In fact, the *Ziekro* court noted that "[i]t is well established that willful and wanton acts may be found where the tortious conduct was intentional. Willful and wanton conduct includes that which was performed intentionally. [citation omitted]." *Id.* at 274. To that end, Plaintiff is not aware of any Illinois case law that does not allow for a "willful and wanton misconduct" claim.

A "willful and wanton misconduct" claim is cognizable under Illinois law. Plaintiff respectfully requests this Court deny the fourth point of Defendants' Motion to Dismiss.

**V. Plaintiff, Betty Bannister's, Loss of Consortium Claim Should Not Be Dismissed.**

Stated briefly, and based on the foregoing, Plaintiff, Betty Bannister, has not failed to plead the facts essential to her loss of consortium claim. Count 11 explicitly states Plaintiff's losses. (*See* Complaint, Count 11, ¶ 1). Plaintiff, Betty Bannister, respectfully requests this Court deny the fifth point of Defendants' Motion to Dismiss.

CONCLUSION

For these reasons stated above, the Court should deny Defendants Motion to Dismiss Counts 5-9 and 11 of Plaintiffs' Complaint, or in the alternative allow Plaintiffs to re-plead where necessary given that Defendants' entire motion is made pursuant to 735 ILCS 5/2-615.

Respectfully submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: */s/ Joshua A. Edelson*
Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all attorneys of record via this Court's electronic filing system on May 6, 2023.

*/s/ Lori Rippeto*
**Gianaris Trial Lawyers, LLC**

**THOMAS McRAE**
**CLERK OF THE CIRCUIT COURT**
THIRD JUDICIAL COURT
155 N. MAIN ST.
EDWARDSVILLE, IL 62025

FILED
JUN 09 2023
CLERK OF CIRCUIT COURT #17
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

Ank

O'CONNELL TIVIN MILLER & BURNS LLC ME
MARK TIVIN 2023 LA 000191
135 S LASALLE ST STE 2300
CHICAGO IL 60603

NIXIE 601 FE 1270 0006/06/23
RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD
ANK BC: 62025195599 *1376-00173-06-44
0132BTAGHAE 5060

11

IN THE CIRCUIT COURT
FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

FILED
JUN 0 9 2023
CLERK OF CIRCUIT COURT #
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BANNISTER and BETTY BANNISTER, )
Plaintiff(s) )
Vs. )
JOHN CRANE, INC., et al, )
Defendant(s) )

Case No: 2023-LA-191

ORDER

The above-styled case is hereby reassigned to the Honorable Dennis Ruth for setting and disposition.

The case was previously assigned to the Honorable Sarah Smith..

**Clerk to send copies of this Order to the newly assigned Judge, to counsel of record herein, and to all unrepresented parties, if any.**

**DATE: June 8, 2023**

**Honorable Stephen A. Stobbs**
**Chief Judge**

***EFILED***
Case Number 2023LA000191
Date: 6/14/2023 11:55 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | | |
|---|---|---|
| DONALD BANNISTER AND BETTY BANNISTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Cause No. 23-L-000191 |
| | ) | |
| JOHN CRANE INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMO TO CLERK**

Please see below attorney Mark I. Tivin's corrected mailing address:

Mark I. Tivin , #6210281
MANNING GROSS + MASSENBURG, LLP
1 South Dearborn Street, Suite 1500
Chicago, IL 60603
(312) 477-5830
(312) 763-2499 (Facsimile)
mtivin@mgmlaw.com






THOMAS McRAE
CLERK OF THE CIRCUIT COURT
THIRD JUDICIAL COURT
155 N. MAIN ST.
EDWARDSVILLE, IL 62025

FILED
JUN 16 2023
CLERK OF CIRCUIT COURT #26
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

Ank

O'CONNELL TIVIN MILLER & BURNS LLC
MARK TIVIN
135 S LASALLE ST STE 2300
CHICAGO IL 60603

ME
2023 LA 000191

NIXIE 601 FE 1270 0006/13/23

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD

BC: 62025195599 *1176-00493-13-47

ANK
013 6

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

FILED
JUN 20 2023
CLERK OF CIRCUIT COURT #
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BANNISTER and BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., et al.,

Defendants.

No: 23-LA-191

**ORDER**

Upon the Stipulation for Dismissal without prejudice filed herein by the plaintiffs Donald Bannister and Betty Bannister, it is hereby ordered that the defendant, National Foam, Inc., is hereby dismissed from this case without prejudice. Each party to bear their own costs. This order does not affect plaintiffs' case against any other defendant.

ENTERED this 20TH day of JUNE, A.D.20 23

[signature]
JUDGE

2008

***EFILED***
Case Number 2023LA000191
Date: 6/20/2023 4:21 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

e-Served
by MyDocFileServe
2769659
Jun 20 2023 04:20 PM

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA000191

**REPLY IN SUPPORT OF DEFENDANT R.J. REYNOLDS TOBACCO COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant R.J. Reynolds Tobacco Company ("Reynolds") respectfully submits this reply memorandum in support of its Motion to Dismiss Plaintiffs' Complaint pursuant to 735 ILCS 5/2-615. In response to Reynolds Motion to Dismiss, Plaintiffs filed a four page Opposition that contains only one citation to case law and does little more than vaguely restate the deficient allegations in their Complaint.

## I. Plaintiffs Failed To Plead the Facts Essential To Their Negligence and Strict Liability Claims

With little explanation, Plaintiffs' Opposition asserts that their Complaint is "littered with factual allegations" supporting their negligence and strict liability claims. *See* Pl. Opp at 1-2.

A fundamental flaw in Plaintiffs' negligence claim, however, is that they failed to sufficiently plead facts establishing a duty that Reynolds' breached. Illinois law makes clear that "[i]t is not sufficient that a complaint merely allege a duty; the plaintiff must allege facts from which the law will raise a duty and specific facts showing an omission of that duty and resulting injury." *Weidner v. Midcon Corp.*, 328 Ill. App. 3d. 1056, 1059 (5th Dist. 2002). The Complaint alleges facts regarding Reynolds' general business of designing, manufacturing, marketing, and distributing "cigarette products" and claims that "Plaintiff and others similarly situated would encounter its [Defendants'] cigarette products." Compl. at Count 5, ¶ 4-5. But nowhere in the Complaint do Plaintiffs articulate what duty Reynolds owed to Plaintiffs or why the conduct outlined in Count 5 breached that specific duty.[1]

The Complaint additionally fails to connect Reynolds' alleged negligent conduct to Plaintiff Donald Bannister's smoking. The only specific allegations in Count 5 regarding Mr. Bannister's smoking is that he started smoking cigarettes in 1963—though the Complaint does not indicate which tobacco company, Reynolds or the other tobacco company defendant ITG Brands LLC ("ITG"), manufactured the cigarettes Mr. Bannister smoked at that point. *Id.* at ¶ 1. The Complaint similarly lacks any specific allegations regarding the factual circumstances of Mr. Bannister's cigarette smoking and omits the alleged dates, locations, and frequency of exposures to cigarettes. Plaintiffs' allegations are insufficient under Illinois law, and their negligence claim should be dismissed.

Plaintiffs similarly fail to allege sufficient facts to establish the elements of their strict

[1] Any claim that Reynolds failed to warn of the health risks of smoking cigarette products after 1969 is preempted and should be dismissed for the reasons stated in Reynolds' Motion to Dismiss at footnote 1, which Plaintiffs do not address or challenge in their Opposition.

liability claim. In response to Reynolds' Motion, Plaintiffs assert that their Complaint contains "all the allegations necessary to support" a strict liability design defect claim. *See*, Pls.' Opp. at 2. That assertion sidesteps the factual deficiencies in the Complaint that are highlighted in Reynolds' Motion, including Plaintiffs' failure to distinguish between conduct by Reynolds and ITG, missing allegations regarding relevant cigarette brands and Mr. Bannister's smoking history, and the conclusory nature of Plaintiffs' proximate cause allegations. For these reasons, Plaintiffs' strict liability claim should be dismissed.

## II.    Plaintiffs Failed To Plead The Facts Essential To Their Fraudulent Concealment Claim

Plaintiffs' generic allegations regarding the tobacco industry, restated in their Opposition, miss the mark and illustrate the Complaint's failure to meet Illinois' heightened pleading standard for fraud-based claims. *Bd. of Educ. of City of Chi. v. A.C. & S., Inc.*, 131 Ill. 2d 428, 457 (1989). Plaintiffs' claims are deficient for three independent reasons:

*First*, the Complaint fails to allege an omission by Reynolds upon which Mr. Bannister relied. Illinois law requires Plaintiffs "to allege with the required particularity and specificity the exact misrepresentations that [the defendant] made, when [defendant] made them and to whom [defendant] made them." *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 310 (1st Dist. 2002); *see also DOD Techs. v. Mesirow Ins. Servs., Inc.*, 381 Ill. App. 3d 1042, 1053 (1st Dist. 2008) ("While the fraudulent concealment count alleges that defendant intended that plaintiff rely on its misrepresentation and concealment, it does not allege that plaintiff actually relied on anything."); *People ex rel. Peters v. Murphy-Knight*, 248 Ill. App. 3d 382, 391 (1st Dist. 1993) (finding that fraud requires pleading "actual reliance[,]" namely that "the misrepresentations [] reach[ed] the [P]laintiff and he [] in fact reasonably rel[ied] on them").

Plaintiffs' Complaint fails to identify any specific statement or omission that Mr. Bannister

actually saw, heard, believed, and/or relied upon to his detriment.  Indeed, Plaintiffs do not tailor their fraudulent concealment allegations to Reynolds' conduct, but instead cast a large net that includes all cigarette manufacturers and their trade associations—entities that are not parties to this case.  *See* Compl. at Count 7 ¶¶2, 9, 11.  The closest Plaintiffs come to making any factual claim with any specificity to Mr. Bannister's smoking decisions is the claim that he "switched to 'light' or 'filtered' cigarettes, including Winston Lights, because he believed that they were safer than regular cigarettes and free from many health risks."  *See* Compl. at Count 7, ¶ 8.  But this allegation is missing crucial facts to plead a cognizable fraud claim, such as, identifying ***what*** misleading statements or omissions Mr. Bannister saw and believed that led him to conclude "light" or "filtered" cigarettes were safer or free from health risks, ***who*** made the statements, and ***when and how*** he received the statements.  Absent these facts, which are uniquely within Plaintiffs' possession, Plaintiffs' claim necessarily fails under Illinois' heightened pleading standard for fraud.

*Second*, Plaintiffs have not sufficiently pleaded that Reynolds had a duty to speak.  Oddly, Plaintiffs argue that "duty is not a pleading requirement under Illinois law unless it is a statutory duty," citing Illinois Supreme Court Rule 133.  *See* Pl.'s Opp. at 2-3.  Plaintiffs' interpretation of Illinois Supreme Court Rule 133 is simply wrong. The Rule does not relieve Plaintiffs of their obligation to plead the duty element with the requisite heightened specificity.  It merely states "[i]f a breach of statutory duty is alleged, the statute shall be cited in connection with the allegation." Ill. S. Ct. R. 133(a).

Contrary to Plaintiffs' argument, Illinois law plainly requires that "to state a cause of action for fraud arising from concealment of an existing material fact, the complaint ***must*** plead that the concealment was done with an intent to deceive ***under circumstances creating a duty to speak***."

*Greene v. First Nat. Bank of Chicago*, 162 Ill. App. 3d 914, 922 (1st Dist. 1987) (dismissing a fraud claim because the complaint failed to allege facts supporting a duty of disclosure, which the court stated was a "necessary element for fraudulent concealment") (emphasis added). It is the Plaintiffs' burden to establish a duty to speak, *see Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 295 Ill. App. 3d 567, 573 (1st Dist. 1998), and Plaintiffs are required to plead ***all*** elements of their fraud claim—including the duty element—with "specificity, particularly, and certainty." *Id.*

Plaintiffs have not pleaded ***facts*** supporting the requisite duty. In response to Reynolds' Motion, Plaintiffs merely direct the Court to Count 7, ¶ 10, which states "[t]hese Defendants had a duty to disclose to the American public, including Plaintiff, all material facts about the health hazards of smoking cigarettes, including their highly addictive qualities." *See* Pls.' Opp. at 2. That allegation recites a legal conclusion—that "Defendants had a duty to disclose . . . "—but omits any factual allegations that would demonstrate that Plaintiffs had a fiduciary relationship or "special relationship" with Reynolds, which is required under the law to give rise to a duty to speak. *See Arbor*, 295 Ill. App. 3d at 573. Plaintiffs ignore Illinois case law that holds an "arms-length transaction" between a seller and customer does not create a special relationship imposing a duty to speak on the seller for the purposes of a fraud claim. *See Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 657 (1st Dist. 2001) (finding the relationship between an individual car dealer and a purchasing customer "did not give rise to a confidential relationship sufficient to impose a general duty of disclosure under the fairly rigorous principles of common law"); *see also Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 500 (1996) (holding a car manufacturer did not have duty to disclose safety risks of car model absent "confidential or fiduciary relationship" with plaintiff).

Plaintiffs likewise cannot establish a duty by alleging that Reynolds had "superior knowledge regarding the health aspects of cigarettes" as a basis for establishing a duty. *See* Compl. at Count 7, ¶ 4. "[A]symmetric information" alone is insufficient under Illinois law to establish a special relationship. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571-72 (7th Cir. 2012). Plaintiffs do not even attempt to differentiate their fraud allegations from those at-issue in *Gorski*—a smoking and health case pending in Cook County—where the court dismissed plaintiff's fraudulent concealment claim with prejudice. *Gorski v. Philip Morris USA Inc.*, et al, No. 2021-L-008024 (Ill. Cir. Ct. Cook Cnty. Mar. 2, 2022) (Senechalle, J.) (Ex. A). There, much like here, Mr. Gorski alleged that the cigarette manufacturer defendants "engaged in a campaign designed to deceive the public and hide the true dangers of smoking cigarettes[,]" and that "the manufacturers denied that cigarettes posed health risks and concealed research and knowledge to the contrary from the public" and that "this effort spanned multiple decades." *Id.* at 2-3. In dismissing the fraud claim in *Gorski*, the court held that "[a] product manufacturer, simply by virtue of its superior knowledge of its product, does not owe a common law duty to disclose information to the consuming public about its knowledge of safety risks or potential dangers of use." *Id.* at 7 (internal citations omitted).

*Third*, the Complaint fails to plead proximate cause. On this point, Plaintiffs' Opposition does nothing more than refer back to portions of their Complaint. *See* Pls.' Opp. at 2 ("However, paragraphs 8-14 of Count 7 of Plaintiff's Complaint allege various relating to the foregoing. (*See* Complaint, Count 7, ¶¶ 8-14)"). Those portions make factual allegations that the tobacco industry as a whole made false statements to the "American Public" writ-large. *See* Compl. Count 7 ¶¶ 11-13. But, as another Illinois trial court recognized in granting a motion to dismiss similar fraud-based claims in a smoking and health case previously pending in Cook County, the problem with

Plaintiffs' Complaint is not that it needs additional generic causation allegations; instead, the problem is that it fails to plead the specific facts necessary to establish a connection between Reynolds' conduct and Plaintiffs' alleged injuries. *See* Mem. Op. and Order at 7, *Prescott v. Philip Morris USA Inc., et al.*, No. 2018-L-003905 (Ill. Cir. Ct. Cook Cnty. Aug. 4, 2020) (Sheahan, J.) (Ex. B); Order on Mot. of Defs.' to Dismiss the Fraud Counts in Pl.'s Third Am. Compl. at 3-5, *Prescott* (June 10, 2021) (Senechalle, J.) (Ex. C). Plaintiffs do not identify which statements Mr. Bannister saw and relied on, or how those specific statements influenced his smoking decisions.

The Court therefore should dismiss Plaintiffs' fraud claim.

## III. Plaintiffs Failed To Plead The Facts Essential To Their ICFA Claim

To support their claim under the Illinois Consumer Fraud Act ("ICFA"), Plaintiffs again simply point the Court to their Complaint without any explanation or case law that rebuts Reynolds' arguments. The "15 detailed paragraphs" Plaintiffs reference merely allege Reynolds engaged in certain deceptive conduct relating to advertising, marketing, manufacturing, and designing cigarettes. *See* Pl. 's Opp. at 3; Compl. at Count 9, ¶ 6(a)-(o). But they are devoid of any factual allegations specific to Mr. Bannister. In analyzing claims under the ICFA, Illinois courts "have consistently rejected the market theory"—that advertising campaigns or statements that have no connection to a plaintiff but that deceived unspecified persons proximately caused plaintiff's injury—and "have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission" made by the defendant to him. *De Bouse v. Bayer*, 235 Ill. 2d 544, 555 (2009). Plaintiffs' ICFA claims should be dismissed because the Complaint lacks these necessary factual allegations.

## IV. Plaintiffs Failed to Plead The Facts Sufficient For A Cognizable Willful And Wanton Misconduct Claim

Because Plaintiffs have failed to plead facts sufficient to establish a negligence claim, their

claim for willful and wanton misconduct is also foreclosed. In their Opposition, Plaintiffs misinterpret Reynolds' argument. The Illinois Supreme Court has made clear that "[t]here is no separate and independent tort of willful and wanton conduct," meaning that willful and wanton conduct is merely a derivative claim of negligence with a heightened intent requirement. *Krywin v. Chicago Transit Auth.*, 238 Ill. 2d 215, 236 (2010) (finding that plaintiff did not have a cognizable claim for willful and wanton conduct where she failed to establish a duty under her negligence claim). Because Plaintiffs have not pleaded a cognizable negligence claim, their derivative claim for willful and wanton misconduct also fails.

**V. Plaintiff Betty Bannister's Loss of Consortium Claim Should Be Dismissed**

In Illinois, an action for loss of consortium is not a separate and distinct action, but instead dependent upon the defendant's liability for the injuries to the family member, here Plaintiff Donald Bannister, being established. Because Plaintiff Donald Bannister failed to properly plead his claims, Plaintiff Betty Bannister's derivative claim for loss of consortium should be dismissed.

## CONCLUSION

For these reasons, the Court should dismiss Counts 5-9, and 11 of Plaintiffs' Complaint.

Dated: June 20, 2023

Respectfully submitted,

/s/ *José A. Isasi, II*

José A. Isasi, II
Jihan Walker
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
jihanwalker@jonesday.com
jisasi@jonesday.com

Kevin C. McGinley
THOMPSON COBURN LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 236-3467
kmcginley@thompsoncoburn.com

*Attorneys for Defendant R.J. Reynolds Tobacco Company*

**Certificate Of Service**

The undersigned states that on the 20th day of June 2023, the Defendant filed the foregoing and served a copy of the foregoing electronically on all counsel of record via the Court's E-Filing System. In addition, a copy was also emailed to the following attorneys of record:

Ted Gianaris
Josh Edelson
Gianaris Trial Lawyers
One Court Street
Alton, Illinois 62002
(618) 816-9999
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
Attorneys for Plaintiff

José A. Isasi, II
Jihan Walker
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
jihanwalker@jonesday.com
jisasi@jonesday.com
Attorneys for Defendant R.J. Reynolds Tobacco Company

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, Illinois 62025
(618) 655-3131
gpinter@smbtrials.com
Attorney for Phillips 66 Company

Laura K. Beasley
Baker Sterchi Cowden & Rice LLC
23 Public Square, Suite 415
Belleville, IL 62220
(618) 257-2674
lbeasley@bakersterchi.com
Attorneys for Tyco Fire Products LP

Ann C. Barron
Heyl, Royster, Voelker & Allen, P.C.
105 West Vandalia Street
Suite 100
Edwardsville, IL 62025
(618) 656-4646
edwecf@heylroyster.com
abarron@heylroyster.com
Attorneys for 3M Company

Elizabeth A. Dahlmann
Walker and Williams, P.C.
4343 West Main Street
Belleville, IL 62226
(618) 277-1000
ead@wawpc.net
Attorneys for National Foam, Inc.

Tyler W. Schwettman
Shook, Hardy & Bacon LLP
190 Carondelet Plaza
Suite 1350
St. Louis , MO 63105
(314) 690-0200
tschwettman@shb.com
AND
Brent Dwerlkotte (PHV)
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550
dbdwerlkotte@shb.com
Attorneys for E.I. du Pont
de Nemours and Company

Matthew B. Champlin
Hepler Broom LLC
130 North Main Street
Edwardsville, IL 62026
(618)-656-0184
mbc@heplerbroom.com
Attorneys for HWRT Oil Co., LLC

Mark I. Tivin
Manning Gross & Massenburg LLP
1 South Dearborn Street
Suite 1430
Chicago, IL 60603
(312) 625-4995
mtivin@mgmlaw.com
Attorneys for John Crane Inc.

K.C.M
______________________________

# Exhibit A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

MICHAEL GORSKI,

Plaintiff,

vs.

PHILIP MORRIS USA INC., R.J. REYNOLDS TOBACCO COMPANY, LIGGETT GROUP LLC, and WALGREEN CO.,

Defendants.

NO. 21 L 8024

Judge Robert E. Senechalle

ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS

**The Subject Motions.**

This matter is before the court on a joint motion filed by defendants, Philip Morris, USA, Inc., (Philip Morris) and R.J. Reynolds Tobacco Company (R.J. Reynolds) to dismiss certain counts of plaintiff's complaint. Defendant, Liggett Group, LLC (Liggett), by a separate filing, has joined in the Philip Morris/R.J. Reynolds partial motion to dismiss. Therefore, the motions to be decided are Philip Morris and R.J. Reynolds' motion to dismiss Counts III thru VIII, and Liggett's motion to dismiss Counts IV, VI and VIII.

The counts at issue seek to state common law claims against Philip Morris and R.J. Reynolds for fraudulent misrepresentation (Count V), fraudulent concealment (Count III) and a statutory claim for fraud under the Illinois Consumer Fraud Act (Count VII). Also at issue in the motions to dismiss are three counts against Philip Morris, R.J. Reynolds and Liggett, alleging conspiracy to commit fraudulent concealment (Count IV), conspiracy to commit fraudulent misrepresentation (Count VI) and conspiracy to violate the Illinois Consumer Fraud Act (Count VIII).

The court has considered the written submissions of the parties and the arguments made at the hearing on the motion. The court is duly advised in the premises.

**Consolidated Cases.**

This case is one of 18 personal injury actions filed by separate plaintiffs against Philip Morris, R.J. Reynolds and Liggett. Walgreen Co. (Walgreen) is a defendant in some of the cases.

The 18 cases have been consolidated for the purpose of being presided over by one judge for motion practice and case management.[1] The allegations in the cases, as they relate to the manufacturer defendants, share a common fact pattern. The plaintiffs are long time cigarette smokers who have contracted serious illness allegedly caused by smoking. In some of the cases, the injured person has died. In those cases, the plaintiffs are estate representatives, bringing wrongful death and survival act claims. In each of the cases, the purported liability of the defendants is premised on allegedly tortious conduct in the manufacture, marketing, and sale of cigarettes over a span of many years.

The claims in the consolidated cases are similar. The majority of the factual assertions, as they relate to the alleged tortious conduct of the defendants, mirror one another in most, if not all, of the cases. This Court heard and decided a motion to dismiss in a previously consolidated case, *Prescott*, 18 L 3905. The *Prescott* case is no longer pending. The motion in *Prescott* raised issues similar to those raised in the instant case. This Court's order in *Prescott* is referenced frequently in defendants' submissions on the instant motion.

This Court will endeavor to apply the law consistently in its rulings on the various motions filed in the consolidated cases. The examination of a complaint for its sufficiency, however, is a fact driven analysis. Thus, prior rulings in *Prescott* are instructive, but not controlling.

**Relevant Facts.**

Plaintiff, Michael Gorski (Gorski), was born in 1960. He began smoking at age 16 and has continued to smoke for 45 years. He has smoked Newport menthol, Camel and Winston cigarettes manufactured by R.J. Reynolds. He has also smoked Marlboro Red cigarettes, manufactured by Philip Morris.[2] Gorski was diagnosed with pharyngeal cancer in 2020. He alleges that despite the cancer diagnosis, he remains unable to stop smoking.

Plaintiff's negligence and product liability claims against Philip Morris and R.J. Reynolds (Counts I and II), and those same claims made against Walgreens (Counts IX and X) are not the subject of these motions. At issue here, are the fraud-based claims asserted in plaintiff's complaint.

Plaintiff contends that the three manufacturer defendants engaged in a campaign designed to deceive the public and hide the true dangers of smoking cigarettes. Plaintiff alleges that the manufacturers denied that cigarettes posed health risks and concealed research and knowledge to the contrary from the public. According to facts set forth in the complaint, this

[1] There may be additional cases that have been filed and consolidated of which this court is not yet aware.

[2] Gorski alleges that he smoked Marlboro Red cigarettes for nearly 40 years.

effort spanned multiple decades. Plaintiff alleges that he relied on the false representations of the defendant manufacturers regarding the safety of cigarettes, smoked his entire adult life and was injured thereby. Although Liggett did not manufacture cigarettes smoked by Gorski, Liggett is alleged to have conspired with Philip Morris, R.J. Reynolds and others to misrepresent the true health dangers of cigarette smoking.

**Analysis**.

Defendants' motions to dismiss are brought pursuant to section 2-615 of the Illinois Code of Civil Procedure. *735 ILCS 5/2-615.* A section 2-615 motion attacks the legal sufficiency of a complaint. *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003). The motion does not raise affirmative factual defenses, but instead, relies on defects apparent on the face of the complaint. *Canel v. Topinka*, 212 IL 2d 311, 317-18 (2004). All well pleaded facts within the four corners of the complaint are regarded as admitted and true, together with all reasonable inferences drawn therefrom; those facts are viewed in the light most favorable to the plaintiff. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006).

*Fraudulent Misrepresentation* (Count V).

The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996).

A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made. *State ex rel. Leibowitz v. Family Vision Care, LLC,* 2019 IL App (1st) 180697, ¶21.

Defendants' motions to dismiss argue that plaintiff has failed to plead facts sufficient to properly allege element four (reliance) and element five (damages proximately caused by that reliance). Defendants contend that "Plaintiff's complaint fails to 'specify with any degree of particularity' which specific statements impacted his smoking decisions **and** importantly, how they allegedly did so." See *Defendants' Partial Motion to Dismiss, pg. 8.*

Plaintiff's complaint, unlike the complaint found insufficient in *Prescott*, does identify specific representations made by defendants, alleged to be false, which plaintiff read or heard and upon which he relied. In paragraph 121, plaintiff pleads eight separate representations

made by defendants which are alleged to be false. Plaintiff identifies when and by whom the representations were made.

In paragraph 124, plaintiff alleges that defendants made false representations in certain print advertisements, including false and misleading representations concerning filtered cigarettes. Copies of the specific ads are contained in paragraph 124. The four ads are each for filtered cigarettes, namely, Winston, Marlboro, and Newport. These are among the cigarettes which plaintiff alleges (paragraph 2) that he smoked.

The four ads each show cigarettes. They accentuate the filter part of the cigarette, displaying the filter prominently. The Marlboro ad says "you get a lot to like with a Marlboro." The Newport message infers that when you smoke Newport you are "alive with pleasure." The manufacturer of Winston boasts that "All Winston will ever give you is real taste." Plaintiff's complaint alleges that the ads were false and deceptive. Besides pleasure and real taste, the complaint alleges that cigarettes also give smokers cancer, emphysema, COPD, heart disease and other adverse health consequences. So the representations in the print ads to the effect that all you get from cigarettes is pleasure or real taste, are, according to the assertions in the complaint, false and misleading.

Plaintiff alleges in paragraph 121 that he heard, read and relied on the false statements made by the defendants which are set forth in paragraphs 121 (a) through (h), or substantially similar statements.

The reasonable inferences the Court draws from the allegations in paragraph 124 are that plaintiff saw, read and relied on the truth of the allegedly false and misleading print advertisements that are depicted in paragraph 124 (e).

Defendants argue in their motion and reply, that Gorski's allegations in his complaint regarding the specific false statements and advertisements he says he heard or read and relied on lack credibility. Defendants' position in this regard arises out of the fact that several plaintiffs in other recently filed tobacco cases allege that they saw or heard and relied upon the exact same false materials which Gorski's complaint asserts were seen or heard and relied upon by Gorski. Seemingly, defendants are suggesting by this argument that Gorski's allegations regarding the specific representations he heard and relied upon should be disregarded by this Court when evaluating the sufficiency of the complaint.

It is well settled law in Illinois that, in evaluating the sufficiency of a complaint on a § 2-615 motion to dismiss, all well-pleaded facts and all reasonable inferences that may be drawn from those facts must be taken as true. *People ex rel. Lindblom v. Sears Brands, LLC*, 2019 IL App (1st) 180588, ¶39. The court does not minimize the seriousness of the suggestion inherent in defendants' argument regarding identical allegations of what materials were seen or heard

and relied upon by different plaintiffs in other tobacco complaints. All the court is concluding at this point, is that the instant argument is not properly raised in a 2-615 motion to dismiss, where the truth or believability of an allegation of fact is not an issue.

As to the causation prong of a fraudulent misrepresentation claim (element five), the court finds that the allegations of paragraphs 126-129 , construed in the light most favorable to the plaintiff, are sufficient to plead the causation element of a common law fraud claim. The assertions which carry the day on pleading proximate cause are those alleging that reliance on the identified statements and specified advertisements resulted in plaintiff not curtailing his smoking at all and him choosing and continuing to smoke filtered cigarettes, believing them to reduce any potential health risk connected to cigarette smoking.

As defendants' point out, the complaint in this case has its share of drafting flaws.[3] The critical inquiry, however, "*is whether the allegations of the complaint, when construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted.*" *Bogenberger v. PiKappa Alpha Corp.*, 2018 IL 120951, ¶ 23. For the reasons stated above, the Court finds that Count V has adequately stated a cause of action for fraudulent misrepresentation against R.J. Reynolds and Philip Morris. The Court, however, expresses no opinion as to the merits of the claim.

*Violation of the Illinois Consumer Fraud Act (Count VII).*

The Illinois Consumer Fraud Act (CFA) provides, in pertinent part as follows:

> *"Unfair..........or deceptive trade acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely,......in the conduct of any trade or commerce are hereby declared unlawful......" (815 ILCS 505/2.*

Section 10a of the CFA provides a private right of action to any person who suffers actual damages as a result of a violation of the Act.

Case law teaches that the CFA expands a consumer's rights beyond those of the common law and provides broader protection than does the common law action of fraud.

---

[3] . Section 2-603 (b) of our Code of Civil Procedure, *735 ILCS 5/2-603 (b)*, requires that each count of a complaint be divided into numbered paragraphs, "each paragraph containing, as nearly as may be, a separate allegation." Many of the paragraphs in Gorski's complaint contain multiple allegations of fact, rendering the complaint cumbersome to read and follow. The frequent combining of the conjunctions "and/or" cast doubt on what the actual allegation of fact is. There are allegations of fact which are, on their face, not sustainable. One example is the allegation in paragraph 129 that, but for the misrepresentations made by defendants, plaintiff would not have started smoking. Plaintiff first smoked at age 16 in 1976. (Complaint, ¶2). The only statement made by the Tobacco manufacturers and allegedly heard by Mr. Gorski **before** he started smoking was made in 1971 when Gorski was 11 years old. (Complaint, ¶121 a.).

*Rubin v. Marshall Field & Co., 232 Ill. App. 3d 522, 533 (1st. Dist. 1992).* It stands to reason that in a case where plaintiff states a common law claim for fraudulent misrepresentation in a consumer transaction, a sufficient CFA claim can also be stated.

This court has found that the allegations of plaintiff's complaint, when construed in a light most favorable to plaintiff, adequately pleads facts supporting the contentions that plaintiff actually heard or read identified statements and saw specific advertisements that were false or deceptive, was deceived by them, and was thereby damaged. That finding distinguishes plaintiff's CFA claim from the one found to be insufficient in *De Bouse v. Bayer AG, 235 Ill. 2d 544 (2009)*, cited by defendants in support of their motion to dismiss.

Plaintiff has pled facts sufficient to state a cause of action against Philip Morris and R.J. Reynolds for violation of the CFA.

*Fraudulent Concealment (Count III).*

In order to establish a common law claim for fraudulent concealment, a plaintiff must prove that the defendant was under a duty to disclose the fact concealed. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996). Most cases involving a duty to disclose arise out of a breach of fiduciary relationship. *Miller v. William Chevrolet/Geo*, 326 Ill. App. 3d 642, 657 (1st. Dist. 2001). Here, no fiduciary relationship existed between the parties at any relevant time.

Courts have on occasion found that a confidential relationship may also give rise to a duty. A confidential relationship exists when a plaintiff puts sufficient trust in a defendant that the latter is in a position of "influence and superiority" over the plaintiff. *Connick*, 174 Ill. 2d at 501. The defendant must be clearly dominant, either because of superior knowledge of the matter derived from overmastering influence on the one side, or from weakness, dependence, or trust justifiably reposed on the other side. *Miller*, 326 Ill. App. 3d 642 at 657. The standard for identifying a special trust relationship is extremely similar to that of a fiduciary relationship. *Squires-Cannon v. Forest Pres. Dist.*, 897 F. 3d 797, 805 (7th Cir. 2018).

Plaintiff's complaint fails to allege facts, which if proven at trial, could establish the existence of a special trust relationship between plaintiff and the defendants. In paragraphs 61 and 63 plaintiff alleges that defendants were "in a superior position to consumers, including Mr. Gorski." The factual allegations, if proven, show the existence of a significant imbalance of information about cigarettes between defendants and the plaintiff. Asymmetric information alone, however, does not show the degree of dominance needed to establish a special trust relationship. *Wigod v. Wells Fargo Bank, N.A., 673 F. 3d 547, 573 (7th Cir. 2012).*

In paragraph 63, plaintiff alleges that he placed his trust and confidence in defendants. This conclusory statement is unsupported by any factual allegations. The special relationship

threshold in a duty to disclose claim is a high one. *Wigod,* 673 F. 3d 547 at 572; *Miller,* 326 Ill. App. 3d 642, 657. It has not been met in plaintiff's Count III.

In its response to defendants' motion, plaintiff argues that defendants voluntarily assumed a duty to disclose material information about cigarette smoking. Plaintiff cites *Union Nat'l Bank & Trust Co. v. Carlstrom*, 134 Ill App. 3d 985 (3d Dist. 1985). This Court first notes that the "duty to disclose" issue in *Union Nat'l* arose in the context of the affirmative defense of equitable estoppel in the Bank's suit on a promissory note. There was no claim for fraudulent concealment by a product seller in *Union Nat'l*. In addition, that case is so factually inapposite as to be of little import to the issue here.

In *Union Nat'l,* Dale and Barbara Carlstrom were long time customers of Union National Bank. The Carlstroms did most of their business with bank vice-president, Elton Bates. Dale filed for divorce. The parties and their lawyers met with Bates to go over the parties' financial situation at the Bank. Bates explained the various loan obligations that the Carlstroms owed to Union National, individually and jointly. No mention was made by Bates of a loan guarantee, previously signed by Barbara, on a $60,000 loan given by the bank to Dale. After the parties divorced, Dale defaulted on the note and the Bank sued Barbara on her guarantee. Barbara asserted the affirmative defense of equitable estoppel. The court at trial found that once the Bank undertook to advise its own bank customers, with whom it had an established relationship, about the status of their financial affairs with the bank, it had the duty not to deliberately conceal or misrepresent. This finding was affirmed on appeal.

The holding in *Union Nat'l* cannot fairly be interpreted as imposing a tort duty of disclosure on a product manufacturer when advertising its product to the public. In Illinois, there is no legal duty to speak absent a fiduciary or other legal relationship between the parties. *Magna Bank v. Jameson,* 237 Ill. App. 3d 614, 618 (1992). A product manufacturer, simply by virtue of its superior knowledge of its product, does not owe a common law duty to disclose information to the consuming public about its knowledge of safety risks or potential dangers of use. *Connick v. Suzuki Motor Co.,* 174 Ill. 2d at 500.

As our Supreme Court has stated on several occasions, the existence of a duty turns in large part on public policy considerations. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436 (2006); *Jones v. Chicago HMO Ltd of Illinois*, 191 Ill. 2d 278, 303 (2000); *Simkins v. CSX Transp., Inc.,* 2012 IL 110662, ¶37 (Justice Freeman's dissenting opinion). Our Supreme Court has not been persuaded to expand the tort duty to disclose product information in the manner proposed by plaintiff, here. Illinois case law does not support the existence of a duty to disclose under the facts alleged by plaintiff.

For the foregoing reasons, defendants, Philip Morris and R.J. Reynolds' motion to dismiss Count III, fraudulent concealment, is granted.

*Conspiracy to Commit Fraudulent Concealment (Count IV).*

This Court has ruled, above, that plaintiff has failed to state a cause of action for fraudulent concealment. Because plaintiff has failed to state an independent cause of action underlying its conspiracy allegations, the claim for conspiracy to commit fraudulent concealment also fails. See *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 772 (2nd Dist. 2007). The motions of Philip Morris, R. J. Reynolds and Liggett to dismiss Count IV are granted.

*Conspiracy to Commit Fraudulent Misrepresentation (Count VI).*
*Conspiracy to Violate the Illinois Consumer Fraud Act (Count VIII).*

Defendants, Philip Morris and R.J. Reynolds, base their motion to dismiss the conspiracy counts entirely on their position that the underlying torts and statutory violation which the parties allegedly conspired to commit, have not been properly pled. Having found that plaintiff has sufficiently pled claims for fraudulent misrepresentation, and for violation of the Illinois Consumer Fraud Act, the motion to dismiss the conspiracy to commit fraudulent concealment claim (count VI) and the motion to dismiss the Illinois Consumer Fraud Act claim (count VIII) filed by Philip Morris and R.J. Reynolds are denied.

Defendant, Liggett , in its joinder motion, adopts the argument made by Philip Morris and R.J. Reynolds that the underlying claims are not properly pled and, therefore, the conspiracy claims premised thereon must also fail. Having found the two aforementioned underlying claims to be sufficiently pled, Liggett's argument to dismiss on this initial ground fails.

Liggett makes two additional arguments. First, it argues that because plaintiff never smoked any cigarettes manufactured by Liggett, plaintiff cannot prove causation on the two conspiracy claims leveled against Liggett.

The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action, either an unlawful purpose or a lawful purpose by unlawful means, (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act. See *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (2004) and *Adcock v. Brakegate,* 164 Ill. 2d 54, 62-63 (1994). The function of a conspiracy claim is to extend tort liability from the active wrongdoer to wrongdoers who may have only planned, assisted or encouraged the active wrongdoer. *Adcock,* 164 Ill. 2d at 62. Thus, it is not necessary for

plaintiff to allege that he smoked Liggett's cigarettes or that he relied on specific representations by Liggett in order to state a claim against Liggett for civil conspiracy.

The key to stating a civil conspiracy claim is to plead facts, which, if proven at trial, would be sufficient to establish the existence of an agreement between the defendant and others to accomplish, through concerted action, an unlawful purpose. As mentioned above, this complaint is not the model of clarity. Nonetheless, when all of the facts alleged in Count VI, including the numerous incorporated allegations from prior paragraphs, and all reasonable inferences drawn from those facts are construed in the light most favorable to plaintiff, the Court concludes that a claim for civil conspiracy is stated in Count VI against Liggett. The facts set forth in Count VI and Count VIII sufficiently allege that Liggett made an arrangement to work together with Philip Morris and R.J. Reynolds to defraud the public about the true dangers of cigarette smoking, and that Liggett participated in concerted action with the others to carry out the fraud.

The Court takes note of Liggett's argument in its Reply about the significance of the U.S. District Court's ruling in the DOJ's RICO action against Liggett and other tobacco manufacturers. *United States v. Philip Morris, USA, Inc.*, 449 F. Supp 2d 1 D.D.C 2006). Liggett contends in its Reply (pg. 4) that the District Court, on page 919 of its opinion, found no basis for conspiracy liability against Liggett and that Liggett was found not liable. Liggett made this argument to garner support for its position that the conspiracy claim brought against it by Gorski should be dismissed. Liggett's interpretation of the District Court's finding is untenable.

This Court has reviewed the relevant portions of the opinion in *United States v. Philip Morris, USA, Inc.* What the District Court actually found was that "*there was clear and convincing evidence that Liggett participated in the RICO Enterprise and conspiracy during its formative years....*" *United States v. Phillip Morris, USA, Inc.* 449 F. Supp 2d at 906. The District Court went on to find that Liggett was liable for its prior substantive violations of 1962 (c). The opinion, on page 869, refers to Liggett as a defendant member of the enterprise who "*shared the common goals of the enterprise and acted in furtherance of those goals.*" The court concluded that Liggett withdrew its participation in the conspiracy in 1997 and was not likely to violate RICO in the future. For this reason, the court declined to enter injunctive relief going forward against Liggett. These findings and rulings in the RICO case do not support Liggett's contention that the District Court found no basis for conspiracy liability against Liggett.

For all of the foregoing reasons, Liggett's motion to dismiss the conspiracy claims asserted against it in Count VI and Count VIII is denied.

**Conclusion and Order.**

1. Defendants', Philip Morris and R.J. Reynolds' motion to dismiss Count III (fraudulent concealment) is granted. This dismissal of Count III is with prejudice.

2. Defendants', Philip Morris, R.J. Reynolds and Liggett's motions to dismiss Count IV (conspiracy to commit fraudulent concealment) are granted. This dismissal of Count IV is with prejudice.

3. Defendants', Philip Morris and R.J. Reynolds' motion to dismiss Count V (fraudulent misrepresentation) is denied.

4. Defendants', Philip Morris, R.J. Reynolds and Liggett's motions to dismiss Count VI (conspiracy to commit fraudulent misrepresentation) are denied.

5. Defendants', Philip Morris and R.J. Reynolds' motion to dismiss Counts VII (Illinois CFA) is denied.

6. Defendants', Philip Morris, R.J. Reynolds and Liggett's motions to dismiss Count VIII (conspiracy to violate the Illinois CFA) are denied.

ENTER: ______________________

ENTERED
Judge Robert E. Senechalle-1915
MAR 02 2022
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

# Exhibit B

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, LAW DIVISION

JOAN PRESCOTT, as Independent Executor of the estate of DAVID P. DOWDLE, deceased,

Plaintiff,

v.

PHILIP MORRIS USA, INC., R.J. REYNOLDS TOBACCO COMPANY, LIGGETT GROUP LLC, ITG BRANDS, LLC, and WALGREEN, CO.,

Defendant.

Case No. 2018 L 3905

**MEMORANDUM OPINION AND ORDER**

Before the Court are several motions to dismiss brought by defendants Phillip Morris USA, Inc., R.J. Reynolds Tobacco Company, Liggett Group LLC, and Walgreen, Co. The motions are fully briefed, and the Court has reviewed all submitted materials and considered the well-articulated arguments made by counsel on both sides during the hearing on this matter.

***Introduction***

This case arises out of allegations that the various defendants manufactured, promoted, and sold unreasonably dangerous cigarettes to plaintiff's decedent, David P. Dowdle. Mr. Dowdle started smoking in elementary school and smoked for much of his life, until he quit in 2007. (Second Am. Compl. ¶ 3). In 2016, Mr. Dowdle was diagnosed with laryngeal cancer, and he died in 2019. (*Id* at ¶¶ 10-11).

Plaintiff has asserted claims for negligence and strict liability against the manufacturer

defendants. Further, plaintiff alleges that the manufacturer defendants engaged in a conspiratorial "campaign designed to deceive the public" and hide "the true dangers of smoking cigarettes." (*Id* at ¶ 104). This campaign spanned decades, and plaintiff asserts defendants both denied that cigarettes posed health risks and concealed research to the contrary. (*Id* at ¶¶ 104, 155). As a result of the alleged campaign, plaintiff alleges Mr. Dowdle became addicted to cigarettes, which ultimately caused him to develop cancer and die.

Additionally, plaintiff alleges that Walgreens is liable because it sold cigarettes to Mr. Dowdle. Plaintiff asserts that Walgreens executives developed a close relationship with tobacco companies in the 1970s. (*Id* at ¶¶ 221-23). According to plaintiff, this relationship gave Walgreens access to superior knowledge about cigarettes' health risks, which it failed to act upon by ceasing to sell cigarettes. (*Id* at ¶¶ 230-33). Plaintiff also seeks to hold Walgreens strictly liable for selling an unreasonably dangerous product.

***Manufacturer Defendants' Motions to Dismiss***

Philip Morris and R.J. Reynolds move to dismiss plaintiff's fraud-based claims against them pursuant to section 2-615, and Liggett Group has joined in the motion. A motion to dismiss under section 2-615 attacks the legal sufficiency of a complaint based upon defects apparent on the face of the complaint. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 23. "The critical inquiry is whether the allegations of the complaint, when construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Id.* In making this determination, the court must take all well-pleaded facts in the complaint as true. *Id.* However, legal conclusions must be disregarded. *Safeway Ins. Co. v. Daddono*, 334 Ill. App. 3d 215, 218 (1st Dist. 2002). Dismissal is appropriate when "it is clear that a plaintiff cannot prove a set of facts that will entitle him to the relief sought." *Id.*

Plaintiff has asserted claims for fraudulent misrepresentation against the manufacturer defendants (Count 9 and Count 10). To establish her fraud claim, plaintiff must establish five elements: "(1) a false statement of material fact; (2)…defendant's knowledge or belief that the statement was false; (3)…defendant's intent that the statement induce the plaintiff to act; (4)…plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement." *Bauer v. Giannis*, 359 Ill. App. 3d 897, 902 (2d Dist. 2005). Plaintiff must also establish that defendants' actions were the proximate cause of the decedent's injury. *See Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶¶ 51-52, 75. While Illinois is a fact-pleading state, fraud claims are subject to "heightened pleading standards" beyond the baseline Illinois pleading requirements. *Bayview Loan Servicing, LLC v. Szpara*, 2015 IL App (2d) 140331, ¶ 35. To survive a section 2-615 motion to dismiss, plaintiff must plead each element of her fraudulent misrepresentation claims with "sufficient specificity, particularity, and certainty." *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15.

In this case, plaintiff attempted to remedy the defects in the first amended complaint with respect to the fraud claims. However, the fraudulent misrepresentation claims asserted in the second amended complaint still suffer from a number of interconnected defects, beginning with the pleading of the fraudulent statements themselves. To adequately plead fraudulent misrepresentation, detailing "what misrepresentations were made" is a basic requirement. *Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428, 457 (1989). Plaintiff's complaint, taken at its face, does not meet this basic requirement. Plaintiff lists some of defendants' statements that she alleges to be false and then notes that "Mr. Dowdle is unable to allege in full the thousands of pre-1969 advertisements, and the continuing press releases, testimony by cigarette manufacturers' officers and employees…that the cigarette manufacturers…have prepared, participated in, given, and

released over the last 50 years." (Compl. ¶¶ 154, 167). Plaintiff insists both that Mr. Dowdle lacked access to all of defendants' false or misleading statements, and that listing all relevant statements would result in lengthy pleadings. (*Id.*). However, finding and listing out any misleading or false statement ever made by the manufacturer defendants was not plaintiff's burden – to adequately plead her fraud claim, plaintiff has to point to the specific statements that induced Mr. Dowdle to act. Instead, plaintiff merely alleges that plaintiff's decedent "heard some or all of" defendants' allegedly false or misleading statements. (Compl. ¶ 176 (emphasis added)). The specific statements that Mr. Dowdle heard is crucial information that only plaintiff could know. Yet, plaintiff has failed to provide this information in the second amended complaint.

Plaintiff similarly fails to plead the decedent's reliance on defendants' statements with the requisite specificity. Throughout the second amended complaint, plaintiff asserts that plaintiff's decedent believed and justifiably relied upon statements made by defendants. However, merely asserting justifiable reliance is not enough to meet the heightened standard of fraud pleading. An "allegation that plaintiffs 'relied' without more is simply a conclusory statement that gives no insight into facts that plaintiffs would ever be able to prove supporting that claim." *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 850 (1st Dist. 2009). Here, plaintiff's pleading of reliance similarly offers the manufacturer defendants and this Court no insight into the facts plaintiff would be able to prove to support the assertion that Mr. Dowdle relied on defendants' statements.

The aforementioned defects permeate the rest of plaintiff's fraudulent misrepresentation claims. For example, plaintiff's failure to pinpoint the specific statements Mr. Dowdle relied upon also affects the pleading of causation for purposes of her fraud claims. Indeed, because plaintiff fails to plead the specific statements that induced plaintiff's decedent, it follows that plaintiff did not and could not adequately plead that those unspecified fraudulent statements were the proximate

cause of Mr. Dowdle's injuries. Individually and altogether, these defects render plaintiff's pleading of her fraudulent misrepresentation claims inadequate.

Plaintiff has also asserted claims for fraudulent concealment against the manufacturer defendants (Count 6 and Count 7). Much like fraudulent misrepresentation, to adequately plead a claim of fraudulent concealment, plaintiff must allege each element of the claim subject to the heightened requirements of fraud pleading. *See Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 419-20 (1st Dist. 2003). The elements of a fraudulent concealment claim are as follows:

> (1) the concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak…; (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

*Schrager v. N. Cmty. Bank*, 328 Ill. App. 3d 696, 706-07 (1st Dist. 2002) (quoting *Stewart v. Thrasher*, 242 Ill. App. 3d 10, 16 (4th Dist. 1993)). Plaintiff must also establish that reliance on defendants' concealment was the proximate cause of plaintiff's decedent's injuries. *See Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶ 84.

In the second amended complaint, plaintiff lays out a number of alleged omissions on the manufacturer defendants' part. However, plaintiff fails to plead with specificity that plaintiff's decedent would have acted differently had he been aware of the concealed information. This defect affects elements four and five of plaintiff's fraudulent concealment claims. *See Schrager*, 328 Ill. App. 3d at 706-07. This defect also affects plaintiff's ability to plead proximate causation vis-avis her fraudulent concealment claims. In the second amended complaint, plaintiff first asserts that had defendants not concealed certain information, plaintiff's decedent would have never started smoking, stopped smoking at some point, or reduced his smoking. Second, plaintiff asserts that

plaintiff's decedent's injuries were a direct and proximate result of the concealment. (Second Am. Compl. ¶¶ 121-22). Neither of these assertions are factual allegations pleaded with specificity in the context of fraud – they are conclusory recitations of cause-in-fact and legal cause. *See Norabuena v. Medtronic, Inc.*, 2017 IL App (1st) 162928, ¶¶ 37-38 (finding plaintiff's pleadings conclusory and thus "insufficient to state a legal claim" under Illinois's fact-pleading standard when the complaint reasserted that plaintiff's injuries occurred "'as a direct and proximate result'" of defendant's actions or omissions). Such conclusory recitations are not enough to allege fraudulent concealment under the heightened requirements of fraud pleading. Accordingly, plaintiff's fraudulent concealment claims are insufficiently pled.

Finally, plaintiff's conspiracy claims are predicated on the fraudulent misrepresentation and fraudulent concealment claims. Because the fraud claims are dismissed, the conspiracy claims lack an underlying tort and therefore also must be dismissed. *See Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 75 ("[P]laintiffs' claim of civil conspiracy was properly dismissed because plaintiffs failed to properly allege an underlying tort.").

Ultimately, the Court finds that plaintiff has failed to adequately plead any fraud claims. Since plaintiff's fraud claims have only been ruled upon once thus far, the Court grants plaintiff leave to amend to remedy the defects identified herein. The Court stresses, however, that plaintiff must make significant changes to adequately plead the fraud counts. The fraudulent misrepresentation claims must include the specific statements that Mr. Dowdle heard, not just any of defendants' statements that plaintiff believes to be false. Additionally, for both the fraudulent misrepresentation and fraudulent concealment claims, plaintiff must allege the specific facts that support the conclusion that Mr. Dowdle relied upon the statements – assurances that he relied upon or believed everything he heard will not suffice. Plaintiff must identify what crucial pieces of

information would have altered Mr. Dowdle's behavior. Did he insist throughout his life that cigarettes were not addictive? Did he assure family members that the specific cigarettes he smoked were better for his health because they had lower tar or nicotine levels? These are the kind of facts that would support plaintiff's conclusory reliance allegations and meet the heightened standard of fraud pleading. Plaintiff must allege the facts that tie the specific statements Mr. Dowdle heard to his decision to smoke. Including these specific facts to support Mr. Dowdle's reliance will also bolster plaintiff's pleading of proximate cause, as the causal link between the statements and his behavior will be clearer.

For the foregoing reasons, the manufacturer defendants' section 2-615 motions are granted and plaintiff's claims for fraudulent misrepresentation (Count 9 and Count 10), fraudulent concealment (Counts 5 and Count 6), and conspiracy (Counts 7, 8, 11, and 12) are hereby dismissed without prejudice with leave for plaintiff to file an amended complaint.

***Walgreens' Motions to Dismiss***

Plaintiff has asserted claims for negligence (Count 13 and Count 14) and strict liability (Count 15 and Count 16) against Walgreens. Walgreens moves to dismiss under section 2-619 and contends that both claims are preempted by the Federal Cigarette Labeling and Advertising Act. The Act prohibits state law claims regarding the advertising or promotion of cigarettes labeled in accordance with the provisions of the statute. However, the United States Supreme Court has held that the Act only preempts "failure to warn" claims relating to advertising cigarettes, and the statute does not preempt state law claims relating to the actual sale of cigarettes as a defective product. *Cippollone v. Liggett Group, Inc.*, 505 U.S. 504, 524-25 (1992). Though many of plaintiff's allegations against Walgreens could be characterized as failure to warn theories, plaintiff has alleged that Walgreens was negligent and breached the standard of care by selling cigarettes

to Mr. Dowdle which it knew were defective and unreasonably dangerous. (Second Am. Compl. ¶ 233). Similarly, plaintiff's strict liability claims relate to the selling of unreasonably dangerous products, and to the extent plaintiff alleges a failure to warn claim, it is based on actions taken before the statute was enacted. *See id.* ¶ 89(b), 246. Accordingly, plaintiff has asserted theories of recovery that are not preempted, and Walgreens' section 2-619 motion based on federal preemption is denied.

Walgreens also moves to dismiss the strict liability claim pursuant to the Illinois Seller's Exception Statute. That statute provides for dismissal when a defendant provides (as Walgreens has done here) "the correct identity of the manufacturer of the product allegedly causing injury, death or damage" (i.e., the manufacturer defendants). 735 ILCS 5/2-621(a)-(b). However, Walgreens acknowledges that a plaintiff can avoid dismissal under the statute when she can establish that the non-manufacturing defendant (1) "exercised some significant control over the design or manufacture of the product," (2) created the purported defect, or (3) had "actual knowledge" of the purported defect. 735 ILCS 5/2-621(c); *see Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 775-76 (1st Dist. 2008).

Plaintiff does not maintain that either of the first two exceptions are applicable here, but does allege that Walgreens had "actual knowledge" that the cigarettes it sold were unreasonably dangerous. Plaintiff's allegations in this respect are sufficient to avoid dismissal under the Seller's Exception Statute. At this point in the litigation, plaintiff cannot be expected to make a more involved "showing" of Walgreens' "actual knowledge" before any discovery has occurred, as Walgreens contends. Plaintiff is not omniscient and is not required to fully explicate Walgreens' institutional knowledge without the benefit of discovery. This makes Walgreens' citation to *Logan v. West Coast Cycle Supply Co.*, 197 Ill. App. 3d 185 (2d Dist. 1990) inapt, because that case

stands for the reasonable proposition that – after the parties have completed discovery – the plaintiff cannot defeat a section 2-621 motion by speculating as to what the evidence may show. Because plaintiff has adequately alleged Walgreens' actual knowledge, Walgreens' motion to dismiss pursuant to the Illinois Seller's Exception Statute is denied.

Lastly, Walgreens moves to dismiss plaintiff's negligence claim against it pursuant to section 2-615. To prove her negligence claim, plaintiff must establish Walgreens' "duty, a breach of that duty, proximate cause, and damages." *Cangemi v. Advocate South Suburban Hosp.*, 364 Ill. App. 3d 446, 458 (1st Dist. 2006). Walgreens offers three arguments as to why plaintiff failed to sufficiently allege both duty and proximate cause. First, Walgreens argues that plaintiff failed to allege that Walgreens designed or manufactured cigarettes. Second, Walgreens contends plaintiff failed to allege specific facts to support her claim that Walgreens had "superior knowledge" of the health risks of cigarettes. And third, Walgreens argues plaintiff has not pled sufficient facts establishing proximate cause. The Court will address each of these arguments in turn.

Walgreens' first argument is easily disposed of. Plaintiff does not allege that Walgreens designed or manufactured the cigarettes at issue. Therefore, plaintiff's negligence claim against Walgreens cannot rest on fault premised on the design or the manufacturing process of cigarettes. Plaintiff instead alleges that Walgreens' duty arose through its superior knowledge of cigarettes' health risks. Neither party disputes that a duty may arise when a seller has superior knowledge of a product's risks. Walgreens contends that plaintiff has not sufficiently alleged that it had superior knowledge of the health risks involved with cigarettes. The Court disagrees. While Illinois law requires plaintiffs to do more than "mere pleading of elements," it does not require plaintiffs to "plead facts with precision when the information needed to plead those facts is within the

knowledge and control of the defendant rather than the plaintiff." *Holton v. Resurrection Hosp.*, 88 Ill. App. 3d 655, 658 (1st Dist. 1980). Indeed, requiring plaintiffs "to allege facts with precision where the necessary information is within the defendant's knowledge, and plaintiff has not had the benefit of discovery" is "'both unrealistic and unnecessary.'" *John Burns Const. Co. v. City of Chicago*, 234 Ill. App. 3d 1027, 1034 (1st Dist. 1992) (quoting *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 25 (1st. Dist. 1979). In her complaint, plaintiff alleges that Walgreens gained superior knowledge through its close relationship with tobacco companies. At the pleading stage – before any discovery has taken place – these allegations are sufficient to establish Walgreens' duty.

Finally, Walgreens argues that plaintiff has failed to sufficiently allege proximate cause with respect to her negligence claims. Plaintiff alleges that if Walgreen had not sold cigarettes to Mr. Dowdle, he would have smoked less or stopped smoking at an earlier age, and thus that his risk of injury would have been reduced or eliminated. While these allegations may not be sufficient to support fraud-based claims, taken in the light most favorable to plaintiff, they sufficiently plead that Walgreens' negligence played a substantial factor in Mr. Dowdle's injury. Proximate cause is typically a question of fact reserved for a jury. *See Rogers v. Reagan*, 355 Ill. App. 3d 527, 532 (1st Dist. 2005). The Court finds no reason to deviate from the general rule in this case, and Walgreens' section 2-615 motion to dismiss is denied.

For the reasons given, Walgreens' motions to dismiss are denied. The manufacturer defendants' motions to dismiss are granted and Counts 5, 6, 7, 8, 9, 10, 11, and 12 are dismissed without prejudice. Plaintiff has 28 days from the date of this order to file an amended complaint.

ENTERED:

Judge Patricia O'Brien Sheahan
AUG 04 2020
Circuit Court - 2136

Judge Patricia O'Brien Sheahan
Circuit Court of Cook County

# Exhibit C

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| **JOAN PRESCOTT, as Independent Executor of the Estate of DAVID P. DOWDLE, deceased.**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**PHILIP MORRIS USA INC.; R.J. REYNOLDS TOBACCO COMPANY; LIGGETT GROUP, LLC.; and WALGREEN, Co.,**<br><br>**Defendants.** | ) | **Case No: 18 L 3905**<br><br>**Judge Robert E. Senechalle, Jr.**<br>**Calendar 33** |

**ORDER ON THE MOTION OF DEFENDANTS', PHILIP MORRIS USA INC., R.J. REYNOLDS TOBACCO COMPANY; AND LIGGETT GROUP, LLC., TO DISMISS THE FRAUD COUNTS IN PLAINTIFF'S THIRD AMENDED COMPLAINT**

This matter is before the court on the motion of Philip Morris USA, INC. (Philip Morris), R.J. Reynolds Tobacco Company (R.J. Reynolds) and Liggett Group, LLC (Liggett) to dismiss the eight fraud-based counts of plaintiff's third amended complaint (TAC). Counts V and VI are premised on fraudulent concealment and Counts VII and VIII on conspiracy to commit fraudulent concealment; Counts IX and X are based on fraudulent misrepresentation and Counts XI and XII on conspiracy to commit fraudulent misrepresentation.[1] The court has considered the motion, response and reply, and the arguments made at the hearing on the motion. The court is duly advised in the premises.

**Background**.[2]

Plaintiff's decedent, David P. Dowdle (Mr. Dowdle) was a long time smoker. This lawsuit arises out of allegations that Philip Morris and R.J. Reynolds manufactured, promoted and sold unreasonably

---

[1] Each of the three tobacco manufacturers is named as a defendant in all eight of the fraud based counts. Philip Morris and Reynolds filed a joint motion to dismiss these counts. Liggett joined in that motion. After briefs were filed and the motion to dismiss was argued before the court, the plaintiff agreed to dismiss Liggett from some of the fraud counts. By virtue of an order entered May 26, 2021, Liggett was dismissed from Counts V, VI, IX and X. Liggett remains a party to Counts VII, VIII, XI and XII. By virtue of its joinder filing, Liggett moves to dismiss those four counts.

[2] Much of the background information is taken from Judge Sheahan's order of August 4, 2020, which is attached as an exhibit to the manufacturer defendants' Motion.

dangerous cigarettes to Mr. Dowdle. He started smoking in elementary school and smoked for much of his life. Mr. Dowdle quit smoking in 2007. He was diagnosed with laryngeal cancer in 2016 and died in 2019.

Plaintiff has asserted claims for negligence and strict liability against two of the manufacturer defendants, Philip Morris and R.J. Reynolds. Those claims are not the subject of this motion.

Plaintiff has also asserted fraud-based claims against Philip Morris and RJ Reynolds. Those fraud counts seek to state causes of action for fraudulent misrepresentation and fraudulent concealment. They are premised on plaintiff's contention that the manufacturer defendants engaged in a campaign designed to deceive the public and hide the true dangers of smoking cigarettes. Plaintiff contends that the manufacturers denied that cigarettes posed health risks and concealed research to the contrary. It is alleged that this effort spanned decades.

Finally, plaintiff includes conspiracy counts against all three manufacturer defendants, including Liggett Group, claiming that all three manufacturers, along with others not named in the complaint, participated in a scheme to misrepresent and conceal facts about the dangers of smoking.

**Analysis.**

*A. The Fraudulent Misrepresentation Counts (IX and X):*

Fraudulent misrepresentation is a form of common-law-fraud. The elements of a cause of action for fraudulent misrepresentation are: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from that reliance. *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750 ¶ 15; *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 847 (1St. Dist. 2009).

Illinois is a fact-pleading jurisdiction. The plaintiff is not required to set forth evidence in the complaint but must allege facts sufficient to bring a claim within a legally recognized cause of action, not simply plead conclusions. *Doe v. Coe,* 2019 IL 123521, ¶ 32.

There is a higher standard of specificity required for pleading claims of fraud. *Bayview Loan Servicing, LLC v. Szpara*, 2015 IL App (2d) 140331, ¶ 34. A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made. *Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 496-97 (1996).*

After a thorough analysis of the allegations in plaintiff's third amended complaint, it is this Court's conclusion that the fraudulent misrepresentation counts (IX and X) fail to meet the factual specificity requirement for pleading claims sounding in common law fraud.

A shortcoming found by Judge Sheahan to exist with the first and second amended complaints was plaintiff's failure to plead with specificity what representations were made that induced Mr. Dowdle to act. Plaintiff's generalized allegations, summarizing statements that were made on a particular subject matter, without specifying what the specific statement was, when it was made, who made it and to whom it was made fall short of a properly pled common law fraud complaint. Such specificity is required to afford defendants the opportunity to understand what exact conduct they must prepare to defend.

In an effort to remedy deficiencies found in her first amended complaint, plaintiff added ¶ 179 to the third amended complaint. Plaintiff cited to this paragraph in multiple places in her response as an illustration of how the insufficiencies in her earlier pleadings had been corrected. Paragraph 179 of the third amended complaint alleges the following:

> *"Mr. Dowdle, during the course of his smoking history, heard some or all of the false or misleading statements and/or similar statements made directly or indirectly by the Defendants, including advertisements and other marketing materials falsely representing or suggesting that cigarettes were not as dangerous from a health standpoint than they actually are, that there was no link between cigarettes and various types of cancer such as laryngeal cancer, that cigarettes were not addictive, and that light cigarettes were safer and less hazardous than other cigarettes."*

It is apparent that the alleged "representations" or "suggestions" which plaintiff says defendant made at an unspecified time, to an unspecified audience, either directly or indirectly, are mere characterizations of an unidentified statement that plaintiff attributes to defendants. For example, paragraph 179 alleges that defendants in some advertisement or marketing material represented that "*cigarettes were not as dangerous from a health standpoint than they actually are*." It is difficult to understand what this even means. What was defendants' statement? Paragraph 179 adds no clarity to plaintiff's pleading of her common law fraud claims.

The third amended complaint is replete with non-specific allegations, conclusions and ambiguous assertions that leave the two named defendants in these counts without notice as to what specific statements each of them made that were heard by Mr. Dowdle, when they were made, over what medium, and to whom they were made. The complaint is also silent on facts showing when Mr. Dowdle heard what statements and what specific actions he took in reliance on those statements.

Counts IX and X fail to state a cause of action for common law fraudulent misrepresentation.

B. *The Fraudulent Concealment Counts (V and VI).*

To state a claim for fraudulent concealment, a plaintiff must plead facts, which, if proven at trial, would establish the following elements: (1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a

representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently, had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages. See *Wolff v. Bethany N. Suburban Grp.*, 2021 IL App (1st) 191858, ¶ 51, and *Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶ 82. In addition to repeating its argument that plaintiff's allegation regarding defendants' alleged fraudulent conduct are too non-specific to meet Illinois' fraud pleading standards, defendants also argue that plaintiff has not, in Counts V and VI, pled sufficient facts to allege the existence of a duty to speak.

A duty to disclose a material fact may arise out of several situations. First, if plaintiff and defendant are in a fiduciary or confidential relationship, then defendant is under a duty to disclose all material facts. Second, a duty to disclose material facts may arise out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500 (1996).

Plaintiff does not allege the existence of a fiduciary or confidential relationship between Mr. Dowdle and the defendants. Likewise, there are no factual averments in the complaint that could support a finding that plaintiff placed trust and confidence in the defendants, thereby placing defendants in a position of influence and superiority over plaintiff. In ¶ 123 of her TAC, plaintiff does allege that knowledge and information was concealed by defendants who had superior knowledge regarding the health aspects of cigarettes. However, case law is clear that plaintiff must show that because of the special relationship of the parties, plaintiff placed trust and confidence in the defendant. Only then, would superior knowledge on defendant's part give rise to a duty to disclose. *Connick* at 500.

The bare allegation that defendants possessed superior knowledge about the product sold to plaintiff by defendant, does not activate the tort duty to speak. For purposes of stating a viable claim for fraudulent concealment, the fact that the parties possessed "asymmetric" information alone does not show the degree of dominance needed to establish a special trust relationship. See *Wigod v. Wells Fargo Bank, N.A., 673 F. 3d 547, 573 (7th Cir. 2012).*

Plaintiff's TAC, ¶ 109, alleges that defendants were involved in the Tobacco Industry Research Committee (TIRC) beginning in 1954 and also in the Council for Tobacco Research (CTR) in 1964, thereby "affirmatively assumed a duty to disclose any adverse information regarding the health hazards of smoking." No case law is cited by plaintiff from which this Court could conclude that a common-law duty to disclose all research results to the public arises, when a manufacturer participates in or is a member of a research program or organization. Plaintiff's "assumption of duty" theory is not factually developed and is unsupported by legal authority.[3]

An additional failing of the plaintiff's fraudulent concealment counts is the absence of any factual allegations which could support the conclusion that defendants' silence about its research was interpreted by Mr. Dowdle as a representation that the fact did not exist. What specific research results

---

[3] By way of contrast, see *Ringlestein v. Johnson & Johnson,* 2017 U.S. Dist. LEXIS 83047 (N.D. IL 2017), where the trial court concluded that under Illinois law, a pharmaceutical company had a duty to disclose known risks of its drugs to patients and their physicians.

did the defendants have that they failed to disclose and when did they have it? What facts does the plaintiff have that lead to the conclusion that Mr. Dowdle was waiting for the Tobacco companies to tell him about research results and at some point he concluded from their non-disclosure that no adverse health information about cigarettes existed. When did he come to that conclusion and what are the supporting facts?

For the reasons set forth above, this court finds that Counts V and VI do not state causes of action for fraudulent concealment.

C. *The Conspiracy Counts (VII, VIII, XI and XII)*.

Plaintiff's conspiracy claims are grounded on the fraudulent misrepresentation and fraudulent concealment counts. The court is dismissing the fraud counts. Conspiracy is not an independent tort and fails if the independent cause of action underlying the conspiracy allegation fails. *Metro Capital Bank & Trust v. Feiner,* 2020 IL App (1st) 190895, ¶ 56. Without an underlying tort claim pending, the conspiracy counts must also be dismissed.

***Leave to Re-Plead.***

Defendants' motion to dismiss requests that the fraud related counts be dismissed with prejudice. Defendants argue that "Plaintiff has had numerous opportunities to cure these deficiencies and has been provided with a roadmap by the Court about how to do so." The court agrees that this statement is correct as to the fraudulent misrepresentation counts. Since the first motion to dismiss was filed, the issue with the misrepresentation counts has been the need to specifically plead the "what, when, where, and to whom" specifics of the alleged misrepresentations and also the need to plead facts, not mere conclusions, on the element of reliance. It is apparent to the Court, that if plaintiff were able to satisfy the heightened pleading requirement for her fraudulent misrepresentation counts, she would have done so in her TAC.

The Court's view on its dismissal of the fraudulent concealment counts is somewhat different. The distinction is that this Court's finding that plaintiff has failed to sufficiently plead the existence of a "duty to speak" is a pleading shortcoming not raised in the dismissal order entered by Judge Sheahan.[4] If plaintiff, consistent with its obligations under Rule 137, concludes that it can write fraudulent concealment counts in a way that states a viable cause of action under Illinois Law, the court, in this order, will not foreclose that possibility.

Dismissal of the fraudulent concealment counts will be without prejudice. However, leave to replead is not being granted. Should plaintiff wish to replead the fraudulent concealment counts, plaintiff must file a motion requesting leave to do so, with the proposed pleading attached. The motion must make readily apparent what changes were made to the proposed amended counts which plaintiff believes makes them now sufficiently state causes of action.

---

[4] The Court notes that this is not the only deficiency that it found to exist with the fraudulent concealment counts. However, the failure of the plaintiff to properly plead facts establishing the "duty to speak" element was a significant shortcoming with these counts.

**Conclusion.**

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. Counts V, VI, VII, and VIII of plaintiff's third amended complaint are hereby dismissed with prejudice.

2. Counts IX, X, XI, and XII of plaintiff's third amended complaint are hereby dismissed without prejudice.

**Order Setting Case Management Conference.**

**IT IS HEREBY FURTHER ORDERED AS FOLLOWS:**

1. This case is set for case management conference via Zoom for June 28, 2021 at 11:00 a.m. Zoom meeting ID: 3047044273 Passcode 755217.

ENTER: ______________________

ENTERED
Judge Robert Senechalle-1915
JUN 10 2021
~~DOROTHY BROWN~~
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK ______

***EFILED***
Case Number 2023LA000191
Date: 6/20/2023 4:47 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

e-Served
by MyDocFileServe
2769703
Jun 20 2023 04:47 PM

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiff,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA-000191

**Defendants Demand Trial by Jury of Twelve (12)**

**DEFENDANT ITG BRANDS LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND NOTICE OF ADOPTION OF AND JOINDER IN DEFENDANT R.J. REYNOLDS TOBACCO COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant, ITG Brands LLC ("ITG"), pursuant to 735 ILCS 5/2-615, hereby files the instant reply in support of its motion dismiss all claims asserted against it in Plaintiffs' Complaint, including negligence (Count 5), strict liability (Count 6), fraudulent concealment (Count 7), willful and wanton misconduct (Count 8), Illinois Consumer Fraud Act ("ICFA") (Count 9), and loss of consortium (Count 11), and further gives notice to the parties and the court of its adoption of and joinder in Defendant R.J. Reynolds Tobacco Company's Reply in Support of Motion to Dismiss ("Reply") filed and served June 20, 2023.

As set forth in the Reply and the initial Motion to Dismiss, R.J. Reynolds Tobacco Company ("RJR") is entitled to dismissal of Plaintiffs' claims for negligence, strict liability, fraudulent

concealment, willful and wanton misconduct, the Illinois Consumer Fraud Act, and loss of consortium (Counts 5, 6, 7, 8, 9, and 11) asserted in Plaintiffs' Complaint. ITG is entitled to dismissal of Plaintiff's claims against it for the same reasons.

WHEREFORE, for the reasons set forth in the RJR's Motion to Dismiss and Reply, ITG respectfully requests this Court dismiss Plaintiffs' claims asserted against it in Counts 5, 6, 7, 8, 9, and 11 with prejudice and for such other and further relief the Court deems just and proper.

Dated: June 20, 2023

Respectfully submitted,

/s/ Kevin C. McGinley
Carl L. Rowley, #6195075
Kevin C. McGinley #6286841
Michael W. Vogel, #6314202
THOMPSON COBURN LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 236-3467
Email: crowley@thompsoncoburn.com
Email: kmcginley@thompsoncoburn.com
Email: mvogel@thompsoncoburn.com

*Attorneys for Defendant ITG Brands LLC*

**Certificate Of Service**

The undersigned states that on the 20th day of June 2023, the Defendant filed the foregoing and served a copy of the foregoing electronically on all counsel of record via the Court's E-Filing System. In addition, a copy was also emailed to the following attorneys of record:

Ted Gianaris
Josh Edelson
Gianaris Trial Lawyers
One Court Street
Alton, Illinois 62002
(618) 816-9999
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
Attorneys for Plaintiff

José A. Isasi, II
Jihan Walker
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
jihanwalker@jonesday.com
jisasi@jonesday.com
Attorneys for Defendant R.J. Reynolds Tobacco Company

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, Illinois 62025
(618) 655-3131
gpinter@smbtrials.com
Attorney for Phillips 66 Company

Laura K. Beasley
Baker Sterchi Cowden & Rice LLC
23 Public Square, Suite 415
Belleville, IL  62220
(618) 257-2674
lbeasley@bakersterchi.com
Attorneys for Tyco Fire Products LP

Ann C. Barron
Heyl, Royster, Voelker & Allen, P.C.
105 West Vandalia Street
Suite 100
Edwardsville, IL 62025
(618) 656-4646
edwecf@heylroyster.com
abarron@heylroyster.com
Attorneys for 3M Company

Elizabeth A. Dahlmann
Walker and Williams, P.C.
4343 West Main Street
Belleville, IL  62226
(618) 277-1000
ead@wawpc.net
Attorneys for National Foam, Inc.

Tyler W. Schwettman
Shook, Hardy & Bacon LLP
190 Carondelet Plaza
Suite 1350
St. Louis , MO  63105
(314) 690-0200
tschwettman@shb.com
AND
Brent Dwerlkotte (PHV)
2555 Grand Boulevard
Kansas City, MO  64108
(816) 474-6550
dbdwerlkotte@shb.com
Attorneys for E.I. du Pont
de Nemours and Company

Matthew B. Champlin
Hepler Broom LLC
130 North Main Street
Edwardsville, IL  62026
(618)-656-0184
mbc@heplerbroom.com
Attorneys for HWRT Oil Co., LLC

Mark I. Tivin
Manning Gross & Massenburg LLP
1 South Dearborn Street
Suite 1430
Chicago, IL  60603
(312) 625-4995
mtivin@mgmlaw.com
Attorneys for John Crane Inc.

/s/ Kevin C. McGinley

/

***EFILED***
Case Number 2023LA000191
Date: 7/17/2023 1:26 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| DONALD BANNISTER and BETTY BANNISTER, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 2023-LA-191 |
| JOHN CRANE, et al., | ) | |
| Defendants. | ) | |

**NOTICE OF HEARING**

COMES NOW Defendant, HWRT Oil Company, LLC, and hereby advises that its ***Motion to Dismiss*** has been set for hearing on **Thursday, July 20, 2023** at **1:30 p.m.** or as soon thereafter as may be heard before the Honorable Judge Ruth, Room 320, at the Madison County Courthouse, at 155 N Main St, Edwardsville, IL 62025.

Respectfully submitted,

**HEPLERBROOM, LLC**

**By:** *_/s/ Matthew B. Champlin_*
Matthew B. Champlin, #6282642
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
Telephone: (618) 656-0184
mbc@heplerbroom.com
***Attorneys for HWRT Oil Company, LLC***

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 17, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system. The undersigned further certifies that a true and correct copy of the foregoing document was served electronically on July 17, 2023 on the following counsel of record:

Ted N. Gianaris
Joshua A. Edelson
GIANARIS TRIAL LAWYERS
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com

***Attorneys for Plaintiff***

/s/ ***Matthew B. Champlin***

***EFILED***
Case Number 2023LA000191
Date: 7/18/2023 3:23 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

Donald Bannister and Betty Bannister,

Plaintiffs,

v.

John Crane, Inc.,
Shell USA, Inc.,
Phillips 66 Company,
3M Company, *f/k/a* Minnesota Mining and Manufacturing Company,
Tyco Fire Products, L.P., successor in interest to The Ansul Company,
Chemguard,
E. I. du Pont de Nemours & Co.,
HWRT Oil Company,
ITG Brands LLC, and,
R.J. Reynolds Tobacco Company,

Defendants.

Case No.: 2023-LA-000191

**MOTION FOR SUBSTITUTION OF JUDGE**

Plaintiff, Betty Bannister ("Plaintiff"), through her attorneys, states as follows for her Motion for Substitution of Judge pursuant to 735 ILCS 5/2-1001(a)(2):

1. This Court has not ruled on any substantial issue in this case.

2. Plaintiff, Betty Bannister, has not previously taken a change of Judge.

3. An application for substitution for judge shall be granted as a matter of right if the Judge before whom the case is assigned has not ruled on any substantial issue in the case. *See* 735 ILCS 5/2-1001(a)(2)(i) and (ii).

WHEREFORE, Plaintiff, Betty Bannister, respectfully requests this Court grant her Motion for Substitution of Judge, enter an Order having this case reassigned, and for all other relief deemed just and necessary under the circumstances.

Respectfully submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: */s/ Ted N. Gianaris*

Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all attorneys of record via this Court's electronic filing system on July 18, 2023.

*/s/ Lori Rippeto*
**Gianaris Trial Lawyers, LLC**

***EFILED***
Case Number 2023LA000191
Date: 7/19/2023 4:11 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

e-Served
by MyDocFileServe
2790388
Jul 19 2023 04:10 PM

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiff,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA-000191

**Defendants Demand Trial by Jury of Twelve (12)**

**MOTION FOR SUBSTITUTION OF JUDGE**
**PURSUANT TO 735 ILCS 5/2-1001(a)(2)**

Defendant, ITG Brands LLC ("ITG"), by its attorneys, Thompson Coburn LLP, and for its Motion for Substitution of Judge Pursuant to 735 ILCS 5/2-1001(a)(2), states as follows:

1. 735 ILCS 5/2-1001(a)(2) of the Illinois Code of Civil Procedure allows a substitution of judge without cause as a matter of right when a party timely exercises its right to a substitution.

2. ITG has not previously exercised its right to a substitution of judge without cause in this case.

3. This matter has been assigned to the Honorable Dennis Ruth.

4. Judge Ruth has not ruled on any substantial issue in the case.

5. ITG hereby applies for a substitution of judge as a matter of right pursuant to 735 ILCS 5/2-1001(a)(2). This motion is timely because it has been presented before trial or hearing and before the judge to whom it is presented has ruled on any substantial issue in the case. 735 ILCS 5/2-1001(a)(2)(ii).

6. Defendant has met all of the requirements of 735 ILCS 5/2-1001(a)(2).

WHEREFORE, for the foregoing reasons, defendant, ITG, moves the Court for an order substituting Judge Ruth and requests that this case be returned to the Chief Judge for reassignment.

Respectfully submitted,

/s/ *Carl L. Rowley*
Carl L. Rowley, #6195075
Kevin C. McGinley #6286841
Michael W. Vogel, #6314202
THOMPSON COBURN LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 236-3467
Email: crowley@thompsoncoburn.com
Email: kmcginley@thompsoncoburn.com
Email: mvogel@thompsoncoburn.com

*Attorneys for Defendant ITG Brands LLC*

**Certificate Of Service**

The undersigned states that on the 13th day of July 2023, the Defendant filed the foregoing and served a copy of the foregoing electronically on all counsel of record via the Court's E-Filing System. In addition, a copy was also emailed to the following attorneys of record:

Ted Gianaris
Josh Edelson
Gianaris Trial Lawyers
One Court Street
Alton, Illinois 62002(618) 816-9999
tgianaris@lawforpeople.com
jedelson@lawforpeople.com Attorneys for Plaintiff

José A. Isasi, II
Jihan Walker
JONES DAY
110 N Wacker Drive, Suite 4800 Chicago,
Illinois 60606
(312) 269-1584
jihanwalker@jonesday.com
jisasi@jonesday.com Attorneys for
Defendant R.J. Reynolds Tobacco
Company

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, Illinois 62025 (618) 655-3131 gpinter@smbtrials.com
Attorney for Phillips 66 Company

Laura K. Beasley
Baker Sterchi Cowden & Rice LLC
23 Public Square, Suite 415
Belleville, IL 62220
(618) 257-2674 lbeasley@bakersterchi.com
Attorneys for Tyco Fire Products LP

Ann C. Barron
Heyl, Royster, Voelker & Allen, P.C. 105 West Vandalia Street
Suite 100
Edwardsville, IL 62025
(618) 656-4646 edwecf@heylroyster.com
abarron@heylroyster.com Attorneys for 3M Company

Elizabeth A. Dahlmann
Walker and Williams, P.C.
4343 West Main Street
Belleville, IL 62226
(618) 277-1000
ead@wawpc.net
Attorneys for National Foam, Inc.

Tyler W. Schwettman
Shook, Hardy & Bacon LLP
190 Carondelet Plaza
Suite 1350
St. Louis , MO 63105
(314) 690-0200
tschwettman@shb.com
AND
Brent Dwerlkotte (PHV)
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550
dbdwerlkotte@shb.com Attorneys for E.I. du Pont de Nemours and Company

Matthew B. Champlin
Hepler Broom LLC
130 North Main Street
Edwardsville, IL 62026
(618)-656-0184 mbc@heplerbroom.com
Attorneys for HWRT Oil Co., LLC

Mark I. Tivin
Manning Gross & Massenburg LLP 1 South Dearborn Street
Suite 1430
Chicago, IL 60603
(312) 625-4995
mtivin@mgmlaw.com
Attorneys for John Crane Inc.

/s/ *Carl L. Rowley*

FILED
JUL 20 2023
CLERK OF CIRCUIT COURT #66
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | |
|---|---|
| DONALD BANNISTER AND BETTY BANNISTER,<br><br>Plaintiff,<br><br>v.<br><br>JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,<br><br>Defendants. | Case No. 2023-LA-000191 |

**ORDER**

This cause coming to be heard on Defendant ITG Brands LLC's Motion for Substitution of Judge Pursuant to 735 ILCS 5/2-1001(a)(2); the Court being fully advised in the premises, hereby GRANTS said Motion.

Cause sent to the Chief Judge for reassignment.

ENTERED this 20TH day of July, 2023.

[signature]
JUDGE

30355918.1



**IN THE CIRCUIT COURT**
**FOR THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

FILED
AUG 02 2023
CLERK OF CIRCUIT COURT #3
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

**DONALD BANNISTER and BETTY BANNISTER,**

**Plaintiff(s)**

**Vs.**

**JOHN CRANE, INC., et al,**

**Defendant(s)**

**Case No: 2023-LA-191**

ORDER

The above-styled case is hereby reassigned to the Honorable Christopher Threlkeld for setting and disposition.

The case was previously assigned to the Honorable Dennis Ruth.

**Clerk to send copies of this Order to the newly assigned Judge, to counsel of record herein, and to all unrepresented parties, if any.**

**DATE: August 1, 2023**

**Honorable Stephen A. Stobbs**
**Chief Judge**

***EFILED***
Case Number 2023LA000191
Date: 9/1/2023 1:35 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

e-Served
by MyDocFileServe
2829780
Sep 01 2023 01:35 PM

DONALD BANNISTER and BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., *et al.*,

Defendants.

No. 23-LA-0191

**APPEARANCE**

J. Yasmin Tayyab Simon of the law firm of Morgan, Lewis & Bockius LLP hereby enters her appearance on behalf of Defendant Shell USA, Inc.

Dated: September 1, 2023

Respectfully submitted,

Brady Edwards ARDC#6322011
J. Yasmin Tayyab Simon ARDC#6279461
Undray Wilks ARDC#6196975
Beth L. Hughes ARDC#6318668
yasmin.simon@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive
Chicago, Illinois 60606
(Phone) 312.324.1000
(Fax) 312.324.1001

ATTORNEYS FOR DEFENDANT
SHELL USA INC.

**CERTIFICATE OF SERVICE**

I, J. Yasmin Tayyab Simon, an attorney, hereby certify that on September 1, 2023 a copy of **Shell Oil Company's Appearance** was served on all counsel of record in this case via *MyDocFileServe* pursuant to court order.

J. Yasmin Tayyab Simon

***EFILED***
Case Number 2023LA000191
Date: 9/1/2023 1:35 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

e-Served
by MyDocFileServe
2829780
Sep 01 2023 01:35 PM

DONALD BANNISTER and BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., *et al*.,

Defendants.

No. 23-LA-0191

**SHELL USA, INC.'S**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant Shell USA, Inc., ("Shell"), by its attorneys, Morgan, Lewis & Bockius LLP, moves this Court pursuant to 735 ILCS 5/2-104, 735 ILCS 5/2-615 and 735 ILCS 5/2-619 for an order dismissing Plaintiffs' Complaint for the following reasons: (1) the Complaint is exceedingly vague and fails to meet the fact pleading requirements under Illinois law; and (2) there are other bases pursuant to 735 ILCS 5/2-619 that mandate dismissal of this action. In support of its Motion, Shell states as follows:

**FACTS**

1. Plaintiffs, Donald Bannister and Betty Bannister ("Plaintiffs"), allege that Plaintiff, Phillip Bannister ("Mr. Bannister"), was exposed to asbestos while working as a general laborer, firefighter, and truck driver for Shell Oil Company and Phillips 66 from 1964 to 2004. *See* Complaint.

2. Plaintiffs allege that during the course of Mr. Bannister's employment, he was exposed to and inhaled, ingested, or otherwise absorbed asbestos fibers emanating from certain products he purportedly worked with and around that were manufactured, sold, distributed, or installed by Shell and the various other defendants named in the Complaint. *See* Complaint.

3.    Plaintiffs fail to meet the fact pleading requirements under Illinois law by relying on vague and unsupported allegations.  *See* Complaint.

4.    Plaintiffs' Complaint is factually insufficient because it fails to adequately identify the jobsites where Mr. Bannister was allegedly exposed to asbestos, fails to adequately identify the time period for each site when the alleged exposure occurred, and fails to adequately identify the specific products of each defendant that allegedly caused Mr. Bannister's injuries.  *See* Complaint.

5.    Plaintiffs' Complaint fails to allege facts that demonstrate a conscious or intentional disregard of known risks of harm by Shell or any other defendant.  *See* Complaint.

6.    Applicable workers' compensation laws provide the exclusive remedy to Plaintiffs' cause of action, and the cause of action is barred by the statute of limitations.

7.    Plaintiffs reside in Illinois.  *See* Complaint.

8.    Plaintiffs fail to allege exposure to any of the defendant's products, premises or services that were or are currently located in Madison County, Illinois, as required by state law. *See* Complaint.

## ARGUMENT

### I.    Plaintiffs' Complaint Fails to Meet Illinois Fact Pleading Requirements and Should Be Dismissed Pursuant to 735 ILCS 5/2-615.

Plaintiffs' Complaint fails to comply with Illinois's fact pleading requirements.  In Illinois, "[a] complaint fails to state a cause of action if it does not contain allegations of each fact that must be proved to sustain a judgment for the plaintiff."  *Schuler v. Abbott Labs.*, 639 N.E.2d 144, 147 (Ill. App. Ct. 1993).  In affirming the circuit court's dismissal of a plaintiff's lawsuit, the *Schuler* court held that a plaintiff's complaint may not rest on factual conclusions not supported by allegations of specific facts.  *Id.*

Plaintiffs' Complaint fails to plead sufficient facts to apprise Shell of the factual basis for an asbestos-related claim. Plaintiffs have the burden of proving more than just minimal contact with asbestos-containing products. *Johnson v. Owens-Corning Fiberglass Corp.*, 672 N.E.2d 885, 890 (Ill. App. Ct. 1996). As noted above, Plaintiffs must provide "some evidence that the defendant's asbestos was put to 'frequent' use in the [defendant's] facility in 'proximity' to where the [plaintiff] 'regularly' worked." *Thacker v. UNR Indus., Inc.*, 603 N.E.2d 449, 459 (Ill. 1992). Mere presence on a job site is insufficient to establish a plaintiff's exposure to the product. *Naden v. Celotex Corp.*, 546 N.E.2d 766, 769 (Ill. App. Ct. 1989). Plaintiffs fail to plead the frequency, regularity, and proximity of Mr. Bannister's alleged exposure to any product for which Shell is allegedly responsible. Plaintiffs only allege that Mr. Bannister was exposed to asbestos-containing products. *See* Complaint. Plaintiffs provide no detail regarding how Mr. Bannister was allegedly exposed to any asbestos or asbestos containing products for which Shell is responsible. *See* Complaint.

Shell cannot defend a lawsuit in which the Plaintiffs cannot even facially establish causation with respect to this Defendant. As a result of Plaintiffs' failure to comply with Illinois's fact pleading requirements, Plaintiffs cannot support their allegations that Shell proximately caused Mr. Bannister's injuries and the Complaint should be stricken.

**II. Plaintiffs' Complaint Is Properly Dismissed Pursuant to Various Other Bases Under 735 ILCS 5/2-619.**

Although Plaintiffs' Complaint is properly subject to dismissal pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-104, it is also subject to dismissal pursuant to 735 ILCS 5/2-619 because Shell owed no duty to Plaintiffs. To the extent possible, applicable workers' compensation laws provide the exclusive remedy for any alleged injury that Plaintiffs might have sustained. Additionally, Plaintiffs' Complaint is barred by the applicable statute of limitations and statute of

repose relative to product liability cases. *See* 735 ILCS 5/13-213; *see also Olson v. Owens-Corning Fiberglass Corp.*, 556 N.E.2d 716, 719 (Ill. App. Ct. 1990) (holding that section 13-213 applies to all strict liability claims involving products, including asbestos products). To the extent Plaintiffs seek successor liability, Plaintiffs' Complaint fails to allege sufficient facts to state a cause of action for the same.

WHEREFORE, for the foregoing reasons, Shell requests that Plaintiffs' Complaint be stricken, and that Plaintiffs' purported causes of action against Shell be dismissed. In the alternative, Shell requests leave to conduct discovery concerning the propriety of venue and to participate in such discovery and hearings as may occur in this action without waiver of and without prejudice to its Motion. Shell further requests that this Court grant all other just and proper relief.

Dated: September 1, 2023

Respectfully submitted,

Brady Edwards ARDC#6322011
J. Yasmin Tayyab Simon ARDC#6279461
Undray Wilks ARDC#6196975
Beth L. Hughes ARDC#6318668
yasmin.simon@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive
Chicago, Illinois 60606
312.324.1000 (phone)
312.324.1001 (fax)

ATTORNEYS FOR DEFENDANT
SHELL USA INC.

**CERTIFICATE OF SERVICE**

I, J. Yasmin Tayyab Simon, an attorney, hereby certify that on September 1, 2023 a copy of **Shell USA Inc.'s Motion to Dismiss Plaintiffs' Complaint** was served on all counsel of record in this case via *MyDocFileServe.*

J. Yasmin Tayyab Simon

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

e-Served
by MyDocFileServe
2834183
Sep 07 2023 06:01 PM

DONALD BANNISTER and BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC, et al.,

Defendants.

No. 23-LA-0191

**AGREED STIPULATION FOR SUBSTITUTION OF COUNSEL**

Defendant **Shell USA, Inc.** requests this Honorable Court to hereby allow Morgan, Lewis & Bockius LLP to withdraw as its counsel of record in the above-entitled cause and to substitute Susan Brice, Kristen L. Gale, and Andrew Nishioka of Nijman Franzetti LLP and Gregg A. Kinney of Practus, LLP as counsel of record for **Shell USA, Inc.** Susan Brice, Kristen L. Gale, and Andrew Nishioka, and Gregg A. Kinney hereby enter their appearance as counsel of record for **Shell USA, Inc** in the above-entitled cause.

J. Yasmin Tayyab Simon, ARDC#6279461
Undray Wilks, ARDC#6196975
Beth L. Hughes, ARDC#6318668
Brady Edwards, ARDC#6322011
MORGAN LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, Illinois 60606
(312) 324-1000
yasmin.tayyab@morganlewis.com

WITHDRAWING ATTORNEYS

*/s/ Kristen L. Gale*

Susan Brice ARDC #6228903
Kristen L. Gale ARDC #6283338
Andrew Nishioka ARDC #6339448
NIJMAN FRANZETTI LLP
10 S La Salle St #3400
Chicago, Illinois 60603
(312) 251-5250
sb@nijmanfranzetti.com
kg@nijmanfranzetti.com
an@nijmanfranzetti.com

Gregg A. Kinney ARDC #6210671
Practus, LLP
P.O. Box 28929
St. Louis, MO 63132
(314) 753-2443
gregg.kinney@practus.com

SUBSTITUTING ATTORNEYS

**PROOF OF SERVICE**

The Undersigned certifies that a copy of the foregoing Agreed Stipulation for Substitution of Counsel was sent to all counsel of Record via Pohlman MyDocFileServe on September 7, 2023.

MORGAN LEWIS & BOCKIUS LLP

***EFILED***
Case Number 2023LA000191
Date: 9/21/2023 1:38 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Donald Bannister and Betty Bannister,<br><br>Plaintiffs,<br><br>v.<br><br>John Crane, Inc.,<br>Shell USA, Inc.,<br>Phillips 66 Company,<br>3M Company, *f/k/a* Minnesota Mining and Manufacturing Company,<br>Tyco Fire Products, L.P., successor in interest to The Ansul Company,<br>Chemguard,<br>E. I. du Pont de Nemours & Co.,<br>HWRT Oil Company,<br>ITG Brands LLC, and,<br>R.J. Reynolds Tobacco Company,<br><br>Defendants. | ) | Case No.: 2023-LA-000191 |

**MOTION FOR SUBSTITUTION OF JUDGE**

Plaintiff, Betty Bannister ("Plaintiff"), through her attorneys, states as follows for her Motion for Substitution of Judge pursuant to 735 ILCS 5/2-1001(a)(2):

1. This Court has not ruled on any substantial issue in this case.

2. Plaintiff has not previously taken a change of Judge that was ruled on by this Court

3. An application for substitution for judge shall be granted as a matter of right if the Judge before whom the case is assigned has not ruled on any substantial issue in the case. *See* 735 ILCS 5/2-1001(a)(2)(i) and (ii).

WHEREFORE, Plaintiff, Betty Bannister, respectfully requests this Court grant her Motion for Substitution of Judge, enter an Order having this case reassigned, and for all other relief deemed just and necessary under the circumstances.

Respectfully submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: */s/ Ted N. Gianaris*
Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all attorneys of record via this Court's electronic filing system on September 21, 2023.

*/s/ Lori Rippeto*
**Gianaris Trial Lawyers, LLC**



SEP 2 2 2023

CLERK OF CIRCUIT COURT #56
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

Donald Bannister and Betty Bannister,

Plaintiffs,

v.

John Crane, Inc.,
Shell USA, Inc.,
Phillips 66 Company,
3M Company, *f/k/a* Minnesota Mining and Manufacturing Company,
Tyco Fire Products, L.P., successor in interest to The Ansul Company,
Chemguard,
E. I. du Pont de Nemours & Co.,
National Foam, Inc.,
HWRT Oil Company,
ITG Brands LLC, and
R.J. Reynolds Tobacco Company,

Defendants.

Case No.: 2023-LA-000191

**ORDER**

THE COURT, being duly advised, hereby Grants Plaintiff Betty Banister's Motion for Substitution of Judge. Case referred to the Chief Judge for reassignment.

So Ordered:

9/22/23
Date

Christopher Threlkeld
Judge

**IN THE CIRCUIT COURT
FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

**Donald Bannister and Betty Bannister,**

**Plaintiff(s)**

**Vs.** **Case No: 2023-LA-191**

**John Crane, Inc., Shell USA, Inc., Phillips 66 Company, 3M Company, f/k/a Minnesota Mining and Manufacturing Company, Tyco Fire Products, L.P., successor in interest to The Ansul Company, Chemguard, E.I. du Pont de Nemours, & Co., National Foam, Inc., HWRT Oil Company, ITG Brands LLC, and R.J. Reynolds Tobacco Company,**

**Defendant(s)**

FILED
SEP 26 2023
CLERK OF CIRCUIT COURT #3
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

ORDER

The above-styled case is hereby reassigned to the Honorable Ronald Foster for setting and disposition.

The case was previously assigned to the Honorable Christopher Threlkeld..

**Clerk to send copies of this Order to the newly assigned Judge, to counsel of record herein, and to all unrepresented parties, if any.**

**DATE: September 25, 2023**

**Honorable Stephen A. Stobbs
Chief Judge**

***EFILED***
Case Number 2023LA000191
Date: 10/2/2023 4:16 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| DONALD BANNISTER and BETTY BANNISTER, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 2023-LA-191 |
| JOHN CRANE, et al., | ) | |
| Defendants. | ) | |

**NOTICE OF HEARING**

COMES NOW Defendant, HWRT Oil Company, LLC, and hereby advises that its ***Motion to Dismiss*** has been set for hearing on **Thursday, November 9, 2023** at **9:30 a.m.** or as soon thereafter as may be heard before the Honorable Judge Ronald Foster, at the Madison County Courthouse, 155 N Main St., Edwardsville, IL 62025.

Respectfully submitted,

**HEPLERBROOM, LLC**

**By:** ***/s/ Matthew B. Champlin***
Matthew B. Champlin, #6282642
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
Telephone: (618) 656-0184
mbc@heplerbroom.com
***Attorneys for HWRT Oil Company, LLC***

**CERTIFICATE OF SERVICE**

The undersigned certifies that on October 2, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system. The undersigned further certifies that a true and correct copy of the foregoing document was served electronically on October 2, 2023 on the following counsel of record:

Ted N. Gianaris
Joshua A. Edelson
GIANARIS TRIAL LAWYERS
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
***Attorneys for Plaintiff***

Ann C. Barron
Heyl, Royster, Voelker & Allen, P.C.
105 West Vandalia Street
Mark Twain Plaza III, Suite 100
Edwardsville, IL 62025
edwecf@heylroyster.com
abarron@heylroyster.com
*Attorneys for 3M Company*

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Ste. 215
Edwardsville, IL 62025
gpinter@smbtrials.com
*Attorneys for Phillips 66 Company*

Tyler W. Schwettman
Shook, Hardy & Bacon, LLP
The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
tschwettman@shb.com

Brent Dwerlkotte
Amy M. Crouch
Jennifer E. Hackman
2555 Grand Boulevard
Kansas City, MO 64108

dbdwerlkotte@shb.com
amcrouch@shb.com
jhackman@shb.com

Molly H. Craig
James B. Hood
Virginia Rogers Floyd
molly.craig@hoodlaw.com
james.hood@hoodlaw.com
virginia.floyd@hoodlaw.com
*Attorneys for E.I. du Pont de Nemours and Company*

Carl L. Rowley
Kevin C. McGinley
Michael W. Vogel
Thompson Coburn LLP
525 West Main Street, Suite 300
Belleville, IL 62220
crowley@thompsoncoburn.com
kmcginley@thompsoncoburn.com
mvogel@thompsoncoburn.com

Jose A. Isasi, II
Jihan Walker
Jones Day
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
jihanwalker@jonesday.com
jisasi@jonesday.com
*Attorneys for R.J. Reynolds Tobacco Company*

Laura K. Beasley
Baker Sterchi Cowden & Rice LLC
23 Public Square, Suite 415
Belleville, IL 62220
lbeasley@bakersterchi.com
*Attorneys for Tyco Fire Products LP and Chemguard Inc.*

Mark I. Tivin
Manning Gross & Massenburg LLP
1 South Dearborn Street, Suite 1430
Chicago, IL 60603
mtivin@mgmlaw.com
*Attorneys for John Crane Inc.*

J. Yasmin Tayyab Simon
Morgan Lewis
110 North Wacker Dr.
Chicago, IL 60606
yasmin.simon@morganlewis.com
*Attorneys for Shell USA Inc.*

/s/ *Matthew B. Champlin*

***EFILED***
Case Number 2023LA000191
Date: 10/4/2023 6:57 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

DONAL BANNISTER and BETTY BANNISTER )
Plaintiffs, )
v. ) No. 23-LA-191
JOHN CRANE, INC., *et al.*, )
Defendants )

**SHELL USA, INC.'S AMENDED MOTION TO DISMISS PLAINTIFFS COMPLAINT**

Defendant Shell USA, Inc., ("Shell"), by its attorneys, Nijman Franzetti, LLP, amends its Motion to Dismiss and moves this Court pursuant to 735 ILCS 5/2-619 and 735 ILCS 5/2-615 for an order dismissing Plaintiffs' Complaint with prejudice for the following reasons: (1) the Plaintiffs' claims were not commenced within the time limited by law; (2) the Complaint impermissibly contains a request for punitive damages masquerading as a claim for "willful and wanton" conduct that does not exist in Illinois law; and (3) the Complaint is exceedingly vague and fails to meet the fact pleading requirements under Illinois law. In support of its Amended Motion, Shell states as follows:

1. On February 16, 2023, Plaintiffs, Donald Bannister and Betty Bannister ("Plaintiffs"), filed an eleven-count Complaint against eleven defendants. Only Counts 3, 4 and 11 are related and against Shell.

2. On September 1, 2023, Shell filed a Motion to Dismiss under 735 ILCS 5/2-619 and 5/2-615. This Amended Motion to Dismiss incorporates by reference the original Motion to Dismiss and provides supplemental support in favor of dismissing Plaintiffs' Complaint against Shell with prejudice.

3. Relevant to Plaintiffs' claim against Shell, Plaintiffs allege that Donald Bannister was employed by "Shell Oil Company, Phillips 66 Company, and HWRT Oil Company from 1967-2004." Compl., Count 3, ¶ 3.[1]

4. Plaintiffs allege that during the course of Mr. Bannister's employment, which he claims ceased in 2004, he was "routinely exposed to various toxic substances known to be cancer-causing agents, including asbestos, PFAS/AFFF, PAHs…" (collectively "toxic substances") that allegedly caused him to contract prostate, skin, and bladder cancer over several years. Compl., ¶ 2; Compl., Count 3, ¶¶ 2, 7; Count 4, ¶¶2, 5, Count 11. He also alleges that "his last occupational exposure to the foregoing toxic substances was on or about 2004." Compl., Count 3, ¶ 3.

5. The Complaint contains a negligence count (Count 3), a count alleging willful and wanton conduct that requests punitive damages (Count 4), and a loss of consortium claim (Count 11) against the Employer Defendants.

6. The Complaint should be dismissed as it is barred by the Illinois Worker's Occupational Disease Act, 820 ILCS 310/1(f), because the Complaint was filed more than two-years after Mr. Bannister's last exposure and any alleged manifestation of disablement.[2] Count 4 should also be dismissed as it does not state a claim under Illinois law and violates Section 735 ILCS 5/2-604.1, requiring leave to plead punitive damages. Finally, the overall Complaint fails to meet Illinois pleading standards in part because it groups all three "Employer Defendants" together along with exposure to three different products and neglects to identify how and when Mr.

---

[1] Earlier in the Complaint, he claims this employment ran from 1964-2004. Compl., ¶ 3.

[2] Mr. Bannister does not identify whether, how or when he became disabled as that term is defined in the Disease Act as a result of his exposure to products somehow attributable to any of the Employer Defendants, including Shell. However, his concession that the Disease Act would normally preclude his claim, suggests that no disablement occurred within the operative time frames. Compl., Count 3, ¶ 3. If no such disability occurred, his claim is barred.

Bannister was exposed to any asbestos, PFAS/AFFF or PAHs attributable to Shell. The Complaint also targets tobacco manufacturers for cigarette exposure and causing his same cancers.

**I. Plaintiffs' Complaint Should Be Dismissed Under 735 ILCS 5/2-619 Because It Was Not Commenced in the Time Limited By Law.**

7. Mr. Bannister alleged he was employed by Shell, as well as the other two Employer Defendants, from 1967-2004. Compl., Count 3, ¶ 1. This allegation must be taken as true for purposes of this Motion to Dismiss.

8. Illinois Workers' Compensation Act, 820 ILCS 305/5(a) and 820 ILCS 305/11, "bars an employee from recovering damages [outside of the established compensation system] from the employer or its agents or employees for accidental injuries incurred in the course of employment." *Harrington-Grant v. Loomis, Fargo & Co.*, No. 01 C 6344, 2002 U.S. Dist. LEXIS 329 (N.D. Ill. Jan. 9, 2002) (applying Illinois law). The Workers' Compensation Act, in most cases, serves as the exclusive remedy for injuries in the workplace. *Id.*

9. However, in the case of an occupational disease suffered during employment, the Illinois Workers' Occupational Disease Act ("Disease Act"), 820 ILCS 310/1, governs. The Disease Act applies to "Occupational Diseases" that are defined as "a disease arising out of and in the course of the employment or which has become aggravated and rendered disabling as a result of the exposure of [sic] the employment. Such aggravation shall arise out of a risk peculiar to or increased by the employment and not common to the general public." 820 ILCS 310/1(d).

10. Like the Workers' Compensation Act, the Disease Act contains exclusivity provisions: [t]here is no common law or statutory right to recover compensation or damages from the employer . . . , for or on account of any injury to health, disease, or death therefrom, other than for the compensation herein provided." 820 ILCS 310/5(a); *see also*, 820 ILCS 310/11. Stated

differently, the Disease Act governs all claims for occupational diseases arising out of the course of employment.

11.    Mr. Bannister alleges that he contracted prostate and bladder cancers as a result of his occupational exposure to asbestos, PFAS/AFFF or PAHs attributable to the Employer Defendants. Compl., Count 3, ¶ 7; Count 4, ¶ 5.

12.    In recognition of the exclusivity provisions of the Disease Act, Mr. Bannister alleges that while the Disease Act would typically act to preclude his claims, a 2019 amendment saves them. More specifically, Mr. Bannister claims that because his "last occupational exposure" to the toxic substances was on or about 2004, he normally "would be precluded for recovery benefits under the Disease Act." Compl, Count 3, ¶ 3.

13.    Section 820 ILCS 310/1(f) of the Disease Act contains time limitations upon which an action must be commenced based upon the timing of the last exposure and the timing of disablement from an occupational disease. 820 ILCS 310/1(f).[3] Mr. Bannister concedes that this provision, if it were effective, would apply and preclude his claim because at the time of Mr. Bannister's alleged exposure, employers were not liable for occupational diseases that manifested themselves (i.e., disablement occurring) more than 2 years after the last exposure. *See* 820 ILCS 310/1(f).

14.    Mr. Bannister, however, contends that this time bar provision is inapplicable because a 2019 amendment to the Disease Act eliminated Disease Act exclusivity under certain circumstances, including his circumstance. The 2019 Amendment provides that "Section 5 and

---

[3]    Generally, Section 1(f) provides that "[n]o compensation shall be payable for *** any occupational disease unless disablement *** occurs within two years after the last day of the last exposure to the hazards of the disease." 820 ILCS 310/1(f). Specifically, in cases of occupational disease caused by the inhalation of asbestos dust, no compensation is payable unless disablement occurs "within [three] years after the last day of the last exposure to the hazards of such disease." *Id.*

Section 11 [the exclusivity provisions of the Disease Act] do not apply to any injury or death resulting from an occupational disease as to which the recovery of compensation benefits under this Act would be precluded due to the operation of *any period of repose or repose provision*," 820 ILCS 310/1.1, and permits him to bring a "*civil action* pursuant to 820 ILCS 305/1.2.7." Compl., Count 3, ¶ 3 (emphasis added). As an aside, the Illinois Code does not contain any provision numbered 820 ILCS ¶ 305/1.2.7. Thus, the basis for Mr. Bannister's claim is unclear.

15.    Nonetheless, for the 2019 Amendment to apply here, two requirements must be met: (1) Section 310/1(f) must be a statute of repose; and (2) the May 17, 2019, amendment, Section 310/1.1, must apply retroactively. But Section 310/1(f) acts more as a statute of limitations than one of repose. In *Folta v. Ferro Eng'g,* 2015 IL 118070, ¶¶ 31-32, 397 Ill. Dec. 781, 789, 43 N.E.3d 108, 116 (2015), the Illinois Supreme Court defined a "statute of repose" as a time limitation barring a claim after a certain act transpired and described a "statute of limitations" as a time bar tied to the accrual of a "cause of action." *Id.* (holding that the asbestos provision in Section 6(c) under the Disease Act is a statute of repose).[4] Here, Section 310/1(f) operates more like a statute of limitations as the time limit is based on exposure plus an injury/accrual of a cause of action, "disablement." *See* 820 ILCS 310/1(f) (allowing claims to be brought unless disablement occurs more than two to three years after the last exposure).

---

[4]    Depending upon the date Mr. Bannister was allegedly disabled or his last exposure to asbestos during his employment with Shell, his claim might be barred by 820 ILCS 310/6(c). This provision provides, in part, "[I]n any case, other than injury or death caused by exposure to radiological materials or equipment or asbestos, unless application for compensation is filed with the Commission within 3 years after the date of the disablement, where no compensation has been paid, or within 2 years after the date of the last payment of compensation, where any has been paid, whichever shall be later, the right to file such application shall be barred. … In cases of disability caused by exposure to radiological materials or equipment or asbestos, unless application for compensation is filed with the Commission within 25 years after the employee was so exposed, the right to file such application shall be barred." *Id.*

This Section also provides that "[t]here shall be given notice to the employer of disablement arising from an occupational disease as soon as practicable after the date of the disablement. If the Commission shall find that the failure to give such notice substantially prejudices the rights of the employer the Commission in its discretion may order that the right of the employee to proceed under this Act shall be barred." *Id.* It is unknown if such notice was provided.

16. Unlike a statute of repose, a statute of limitations, like 310/1(f), "does not begin to run when a specific event occurs, 'regardless of whether an action has accrued or whether an injury has resulted.'" *Folta*, 2015 IL 118070 at ¶33. Indeed, a statute of repose is "not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered." *Id*. Under Section 310/1(f), the manifestation of an injury must have been discovered and must have led to disablement. As a result, Section 310/1(f) is not a "statute of repose" but rather a "statute of limitations" and the 2019 amendment that specifically addresses only statutes of repose does not apply to 310/1(f). As a result, Mr. Bannister's claim is barred by Section 310/1(f).

17. But assuming this court were to find that 310/1(f) serves as a statute of repose (which it does not), in the alternative, Shell contends that 310/1.1 cannot apply retroactively.

18. The Illinois Supreme Court has adopted the approach set forth by the United States Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244 (1994) to determine whether a statute applies retroactively. *Commonwealth Edison Co. v. Will County Collector,* 196 Ill. 2d 27, 37-39 (2001). The *Commonwealth Edison* court held that the *Landgraf* analysis consists of two steps.

19. First, "if the legislature has clearly indicated the temporal reach of the amended statute, that expression of legislative intent must be given effect, absent a constitutional prohibition." *People ex rel. Madigan v. J.T. Einoder, Inc*., 215 Ill. LEXIS 324, ¶ 29 (March 19, 2015). Second, "[i]f, however, the amended statute contains no express provision regarding its temporal reach, the court must go on to determine whether applying the statute would have a retroactive impact, 'keeping in mind the general principle that prospectivity is the appropriate default rule.'" *Id.* In making this determination, a court will consider whether retroactive application of the new statute "would impair rights a party possessed when he acted, increase a

party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at ¶30 "If the court finds that retrospective application of the new law would have a retroactive impact or result in inequitable consequences, 'the court must presume that the legislature did not intend that it be so applied.'" *Id.* Here, 310/1.1 fails both tests. It does not indicate a temporal reach, thus, it must be viewed under the general principle that prospectivity is the appropriate default rule as set forth in *Landgraf.* Second, the amendment plainly would impair the rights of Shell when acting because, at that time, the statute precluded certain claims after the date of last exposure. Second, the amendment would increase Shell's potential liability for alleged past conduct. And, third, the amendment would impose new duties on Shell, in that a duty owed to the employee is expanded by eliminating the statute of repose defense. The statute plainly applies only prospectively.

20.     The Illinois Supreme Court in *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 330-332 (2006), after adopting the *Landgraf* framework, also considered the effect of the Statute on Statutes, Section 4 on the retroactivity analysis.  That section provides:

> No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding.

5 ILCS 70/4.

*Allegis* held that Section 4 demonstrated "a clear legislative directive as to the temporal reach of statutory amendments and repeals when none is otherwise specified: those that are procedural may be applied retroactively, while those that are substantive may not." *Allegis,* 223 Ill. 2d at 331, *citing*

*Caveney v. Bower,* 207 Ill. 2d 82 (2003); *see also People v. Glisson*, 202 Ill. 2d 499, 506-07 (2002). Here, as 310/1.1 is plainly substantive, it may not be applied retroactively.

21. As described above, 310/1.1 is substantive as it clearly impacts "any right accrued, or claim arising under the former law," such as a defense to liability. Moreover, under the prior law, Shell was subject to an Occupational Disease claim by plaintiff within a short timeframe after his last exposure and could not be sued in a civil action against Shell. But now, relying on the 310/1.1 amendment, Plaintiff seeks to bring a civil suit against Shell, a suit even plaintiff acknowledges would not be available but for the amendment. Thus, there can be no argument that this amendment is substantive.

22. The case here is analogous to the matter *In Harraz v. Snyder*, 283 Ill. App. 3d 254 (2d Dist. 1996). In that case, the court held that the statute in question "represented a substantive change in the law, because the amendment operated to make HMOs parties to malpractice suits where formerly they could not have been made parties and it created new obligations and liabilities which did not previously exist." *Id.* at 260. This is precisely the situation in the case at bar.

23. Further, it is well-established that the "legislature lacks the power to reach back and breathe life into a time-barred claim." *Sepmeyer v. Holman,* 162 Ill. 2d 249, 254 (1994). This long-standing principle is centered upon the view that a defendant has a constitutionally protected right not to be sued after a plaintiff's claim becomes barred by the applicable statute. *See Bd. of Educ. of Normal Sch. Dist. v. Blodgett*, 155 Ill. 441, 446 (1895) ("when the bar of a statute of limitations has become complete by the running of the full statutory period, the right to plead the statue as a defense is a vested right, which cannot be destroyed by legislation…"), *M.E.H. v. L.H.*, 177 Ill. 2d 207, 218 (1997) ("a defense based on the expiration of a limitations period is a vested right protected by the constitution and beyond legislative interference.") Thus, the expiration of a

prescribed statutory period for a cause of action creates a vested right protected by the State's constitution. *M.E.H.*, 177 Ill. 2d at 218; *Sepmeyer*, 162 Ill. 2d at 255.

24. In summary, even if Section 310/1.1 could be read as a statute of repose that invalidated Section 310/1(f)'s time limitation, it would be of no consequence, as Illinois law would not allow Section 310/1.1 to apply retroactively. Consequently, Plaintiffs' Complaint must be dismissed pursuant to 735 ILCS 5/2-619 because it was not commenced within the time limited by law.

**II. In the Alternative, Plaintiffs' Claim is Barred by Illinois' General Statute of Limitations for Personal Injury and/or Product Liability Statute of Limitations.**

25. If this Court were to find neither the Disease Act nor the Workers' Compensation Act apply, Plaintiffs' Complaint would be barred by the two-year statute of limitations for personal injuries since Plaintiffs failed to file the lawsuit within two years of the date the alleged cause of action accrued. 735 ILCS 5/13-202 and 13-203. Mr. Bannister, in an effort to take advantage of the discovery rule, claims his last cancer was diagnosed in 2013, Compl., ¶ 2, but alleged he did not connect this cancer to his exposure to substances attributed to Shell until 2022. Compl., ¶ 9. But his claim does not pass muster. A Plaintiff cannot avail itself of the "discovery rule" and toll the statute of limitations until Plaintiff claims he or she knew or should have known of the existence of his or her right to sue unless he or she "plead facts necessary to explain why the cause of action was not discovered sooner." *Pratt v. Sears Roebuck & Co.*, 71 Ill. App. 3d 825, 829 (1st Dist. 1979): *Kartch v. Retirement Bd. of the Firemen's Annuity & Benefit Fund*, 265 Ill. App. 3d 618, 622 (1st Dist. 1994); *Scheinblum v. Schain Banks Kenny & Schwartz, Ltd.*, 2021 IL App (1st) 200798-U, ¶13 (1st Dist. 2021) (plaintiff must plead facts to invoke discovery rule, attached as Exhibit A). Plaintiffs' Complaint pleads no facts concerning why it took, at the earliest, ten years to connect a third cancer to exposure to chemicals somehow attributed to Shell.

26. To the extent the Complaint is somehow construed to contain a "product liability action" against Shell, Plaintiffs' Complaint is also barred by the statute of repose relative to product liability cases, which limits claims to those brought within 10 years of the date of possession of the use of the product claimed to have caused the injury. *See* 735 ILCS 5/13-213; *see also Olson v. Owens-Corning Fiberglass Corp.*, 198 Ill. App. 3d, 1039, 1043 (1st Dist. 1990) (holding that section 13-213 applies to all strict liability claims involving products, including asbestos products). Mr. Bannister claims his last exposure was about 2004, over 19 years ago, which exceeds the ten-year statute of repose.

**III. Count 4 of the Complaint Fails to State a Claim Pursuant to 735 ILCS 5/2-619.**

27. Count IV of the Complaint alleges that Employer Defendants had knowledge concerning the hazards of the "toxic substances;" owed Plaintiff a duty to refrain from willfully and wantonly subjecting its employees to unreasonable risk; and "willfully, wantonly, and in reckless and conscious disregard for the health, safety and well-being of Plaintiff breached said duty" in various ways, which should afford Plaintiff an award of "punitive damages." Compl., Count 4, ¶¶ 2-4, 6. But no such claim exists.

28. The Illinois Supreme Court has specifically stated that "[t]here is no separate and independent tort of willful and wanton misconduct." *Ziarko v. Soo Line R. Co.*, 161 Ill. 2d 267, 274 (1994); *Krywin v. Chi. Transit Auth.*, 238 Ill. 2d 215, 235 (2010). "Willful and wanton conduct is regarded as an aggravated form of negligence." *Doe v. Coe,* 2019 IL 123521, ¶ 34, 434 Ill. Dec. 117, 128, 135 N.E.3d 1, 12 (2019). Thus, the claim against the Employer Defendants sounds in negligence only and Count 4 should be dismissed.

29. Moreover, Count 4 improperly seeks punitive damages. In Illinois, "for complaints alleging negligence and involving personal injury, plaintiffs must demonstrate at a pretrial hearing

that the evidence would support a punitive damages award before they may submit a claim for punitive damages." *Doe v. Catholic Bishop of Chi.*, 2017 IL App (1st) 162388, ¶ 10, 415 Ill. Dec. 683, 686-87, 82 N.E.3d 1229, 1232-33 (1st Cir. 2017). In fact, the Illinois Code expressly prohibits such disguised claims. Section 2-604.1 of the Code states in relevant part:

> In all actions on account of bodily injury or physical damage to property, based on negligence, or product liability based on strict tort liability, where punitive damages are permitted no complaint shall be filed containing a prayer for relief seeking punitive damages. However, a plaintiff may, pursuant to a pretrial motion and after a hearing before the court, amend the complaint to include a prayer for relief seeking punitive damages.

735 ILCS 5/2-604.1; s*ee also Griffith v. Doan*, 2021 Ill. Cir. LEXIS 206, *1 (Ill. Cir. Ct., 2021).

30. "[S]ection 2-604.1 precludes plaintiffs from requesting punitive damages on the face of any complaint based, even in part, on a negligence theory." *McCann v. Presswood*, 308 Ill. App. 3d 1058, 1072 (4th Dist. 1999). Rather, Section 2-604.1 requires such plaintiff to file a pretrial motion and seek leave of court to include a prayer for relief seeking punitive damages. *Penn v. Gerig*, 334 Ill. App. 3d 345, 355-56 (4th Dist. 2002). Because section 2-604.1 applies to an entire action, a prayer for punitive damages is prohibited where even part of the complaint sounds in negligence. *Id.* at 356. When negligence is pleaded, such as here, plaintiff must seek leave to amend the complaint upon a showing of facts sufficient to support a punitive damages award. *McCann*, 308 Ill. App. 3d at 1072. Consequently, Count 4 and its prayer for punitive damages must be dismissed.

**IV. The Complaint Must be Dismissed Under 725 ILCS 2-615 for Failure to Plead Facts.**

31. A Section 2-615 motion to dismiss tests the sufficiency of a complaint and the questions presented is whether the well-plead facts are sufficient to state a cause of action upon which relief may be granted. *O'Keefe v. Walgreens Boots All., Inc.*, 2020 IL App (5th) 190448, ¶ 13, 447 Ill. Dec. 155, 158, 172 N.E.3d 1159, 1162 (5th Dist. 2020). "Because Illinois is a fact-

pleading jurisdiction, a plaintiff is required to set forth a legally recognized claim and plead facts in support of each element that bring the claim within the cause of action alleged." *Rodriguez v. Ill. Prisoner Rev. Bd.*, 376 Ill. App. 3d 429, 434 (5th Dist. 2007). The Code of Civil Procedure does not "authorize notice pleading," *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 167-68 (1st Dist. 2003), and "[c]onclusions of fact will not suffice to state a cause of action regardless of whether they generally inform the defendant of the nature of the claim against him." *Rodriguez*, 376 Ill. App. 3d at 434. "The court will not fill in the blanks" of an insufficiently pleaded complaint. *Id.*

32.    Here, Plaintiffs lump the Employer Defendants together, making general and conclusory allegations against all of them. Shell cannot tell from the Complaint exactly how, when, or where it allegedly committed the tortious acts. Other than claiming he worked at the refinery and for Shell from 1964 to 2004, the Complaint does not even alleged facts sufficient to allow the court to analyze whether "the plaintiff and the defendant stood in such a relationship to each other that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Chandler v. Ill. Cent. R. Co.*, 207 Ill. 2d 331, 349 (2003). Under Illinois' pleading standards, "[i]t is insufficient to allege that a defendant had a duty and that it was breached and the breach resulted in injury. The pleader must allege *specific facts* from which the law will raise a duty and from which it can conclude that the duty was breached and this resulted in injury to the plaintiff." *In re Petition to Annex Certain Prop. to City of Wood Dale*, 244 Ill. App. 3d 820, 835 (2d Dist. 1993) (emphasis added).

33.    But the Complaint lacks this detail. Instead, it consolidates all the allegations of duty, breach and causation and imposes them on all Employer Defendants. As a result, Shell has no idea when Mr. Bannister allegedly worked for Shell, what type of work he allegedly did for

Shell, what products he allegedly worked with during his employment and when, or how he was allegedly exposed to any hazardous products somehow attributable to Shell, at what dosage and for how long. A complaint, such as this, tantamount to a guessing game cannot be condoned under Illinois law.

34. Indeed, separate claims must be set forth using separate allegations of fact. *See* 735 ILCS 5/2- 603(b); *Hartshorn v. State Farm Ins. Co.*, 361 Ill. App. 3d 731, 735 (2d Dist. 2005) (plaintiff improperly mixed allegations against separate defendants in the same count). Plaintiffs cannot combine their vague allegations against a number of parties and still state a claim against Shell because Shell's liability necessarily depends on Shell-specific facts, not conclusory allegations about the actions of all Employer Defendants generally.

35. Similarly, Plaintiffs are mixing products by alleging that four product types — PFAS, PAHs, asbestos, (and tobacco as to other defendants) — caused Mr. Bannister's injuries. Without more information, Shell has no way to determine whether it could potentially be held liable under any of these theories as it cannot begin to assess proximate cause, sole proximate cause, intervening cause, and superseding causation. The lack of specificity in the Complaint makes it impossible for Shell to defend itself.

36. Indeed, at one point, Mr. Bannister claims he was exposed to PFAS hazards through his work in a coal mine. Compl., Count 2, ¶ 2. Under Illinois' fact-pleading regime, ambiguous allegations "are insufficient under Illinois law" and require dismissal. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 35, 368 Ill. Dec. 407, 419, 984 N.E.2d 132, 144 (1st Dist. 2013).

## V. <u>Betty Bannisters Count 11 Must Be Dismissed for Failure to State a Claim</u>

37. Count 11 asserts a loss-of-consortium claim against all Defendants, including Shell, for Betty Banister. Compl., Count 11. Although a loss-of-consortium claim is legally separate from

the directly injured spouse's causes of action, it is nonetheless "necessarily predicated on the claim of a directly injured spouse in that it arises from the same operative facts. . . ." *Monroe v. Trinity Hosp.-Advocate*, 345 Ill. App. 3d 896, 899 (1st Dist. 2003). Mrs. Bannister's loss-of-consortium claim against Shell derives from Plaintiffs' deficient negligence and willful and wonton misconduct claims and thus must be dismissed as well.

WHEREFORE, for the foregoing reasons, Shell requests that Plaintiffs' Complaint be dismissed with prejudice and for such further just and proper relief.

**DEFENDANT DEMANDS TRIAL BY JURY**

Respectfully Submitted,

By: */s/Susan E. Brice*

Susan E. Brice #6228903
Kristen L. Gale #6283338
Andrew T. Nishioka #6339448
**NIJMAN FRANZETTI LLP**
10 S. LaSalle Street, Suite 3400
Chicago, IL 60603
T: (312) 251-5271
sb@nijmanfranzetti.com
kg@nijmanfranzetti.com
dn@nijmanfranzetti.com

Gregg A. Kinney #6210671
Practus, LLP
P.O. Box 28929
St. Louis, MO 63132
T. 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
gregg.kinney@paractus.com

***Counsel for Defendant Shell USA, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4th, 2023 I electronically filed the foregoing with the Clerk of the Court using Odyssey Efile IL system. A courtesy copy was emailed to all attorneys of record.

/s/ Gregg A. Kinney

***EFILED***
Case Number 2023LA000191
Date: 10/26/2023 2:33 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| DONAL BANNISTER and BETTY BANNISTER<br><br>Plaintiffs,<br><br><br>v.<br><br><br>JOHN CRANE, INC., *et al.*,<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br>No. 23-LA-191 |

**NOTICE OF HEARING**

Please take notice that on ***November 9, 2023, at 9:30 a.m.*** or as soon thereafter as same may be heard, Defendant Shell USA, Inc. will call for hearing its Amended Motion to Dismiss Plaintiffs' Complaint before the Honorable Ronald Foster.

By: */s/Susan E. Brice*
Susan E. Brice #6228903
Kristen L. Gale #6283338
Andrew T. Nishioka #6339448
**NIJMAN FRANZETTI LLP**
10 S. LaSalle Street, Suite 3400
Chicago, IL 60603
T: (312) 251-5271
sb@nijmanfranzetti.com
kg@nijmanfranzetti.com
dn@nijmanfranzetti.com

Gregg A. Kinney #6210671
Practus, LLP
P.O. Box 28929
St. Louis, MO 63132
T. 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
gregg.kinney@paractus.com

***Counsel for Defendant Shell USA, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26th, 2023 I electronically filed the foregoing with the Clerk of the Court using Odyssey Efile IL system. A courtesy copy was emailed to all attorneys of record.

/s/ Gregg A. Kinney

***EFILED***
Case Number 2023LA000191
Date: 11/3/2023 2:57 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiff,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA-000191

**MOTION TO ALLOW HYBRID ATTENDANCE AT HEARING**

Defendant, R.J. Reynolds Tobacco Company ("Reynolds"), by its attorneys, Thompson Coburn LLP, and for its Motion to Allow Hybrid Attendance at Hearing, states as follows:

1. HWRT Oil Company and Shell USA, Inc. noticed their motions to dismiss for hearing on Thursday, November 9, 2023. Said hearing is scheduled to be conducted in-person.

2. Counsel for Reynolds wishes to attend this hearing via Zoom in order to save time and cost of travel.

3. Therefore, Reynolds requests the Court allow a Zoom option to attend HWRT Oil Company's and Shell USA, Inc.'s hearing on their motions to dismiss.

4. Allowing a Zoom option does not prejudice any party in this case. All parties may still appear in-person and Reynolds is simply requesting a hybrid attendance option.

WHEREFORE, for the foregoing reasons, defendant, Reynolds, respectfully requests the Court allow a Zoom option to attend HWRT Oil Company's and Shell USA, Inc.'s hearing on their motions to dismiss.

Respectfully submitted,

/s/ *Carl L. Rowley*

José A. Isasi, II, #6211214
Jihan Walker, #6328896
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
Email: jihanwalker@jonesday.com
Email: jisasi@jonesday.com

Carl L. Rowley, #6195075
Kevin C. McGinley #6286841
Michael W. Vogel, #6314202
THOMPSON COBURN LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 236-3467
Email: crowley@thompsoncoburn.com
Email: kmcginley@thompsoncoburn.com
Email: mvogel@thompsoncoburn.com

*Attorneys for Defendant R.J. Reynolds Tobacco Company*

**Certificate Of Service**

The undersigned states that on the 3rd day of November, 2023, the Defendant filed the foregoing and served a copy of the foregoing electronically on all counsel of record via the Court's E-Filing System. In addition, a copy was also emailed to the following attorneys of record:

Ted Gianaris
Josh Edelson
Gianaris Trial Lawyers
One Court Street
Alton, Illinois 62002(618) 816-9999
tgianaris@lawforpeople.com
jedelson@lawforpeople.com Attorneys for Plaintiff

Tyler W. Schwettman
Shook, Hardy & Bacon LLP
190 Carondelet Plaza
Suite 1350
St. Louis , MO 63105
(314) 690-0200 tschwettman@shb.com
AND
Brent Dwerlkotte (PHV)
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550 dbdwerlkotte@shb.com Attorneys for E.I. du Pont de Nemours and Company

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215 Edwardsville, Illinois 62025 (618) 655-3131
gpinter@smbtrials.com
Attorney for Phillips 66 Company

Matthew B. Champlin
Hepler Broom LLC
130 North Main Street
Edwardsville, IL 62026
(618)-656-0184 mbc@heplerbroom.com
Attorneys for HWRT Oil Co., LLC

Laura K. Beasley
Baker Sterchi Cowden & Rice LLC
23 Public Square, Suite 415 Belleville, IL 62220
(618) 257-2674 lbeasley@bakersterchi.com
Attorneys for Tyco Fire Products LP

Mark I. Tivin
Manning Gross & Massenburg LLP 1 South Dearborn Street
Suite 1430
Chicago, IL 60603
(312) 625-4995
mtivin@mgmlaw.com
Attorneys for John Crane Inc

Ann C. Barron
Heyl, Royster, Voelker & Allen, P.C. 105 West Vandalia Street
Suite 100
Edwardsville, IL 62025
(618) 656-4646 edwecf@heylroyster.com
abarron@heylroyster.com
Attorneys for 3M Company

Elizabeth A. Dahlmann
Walker and Williams, P.C.
4343 West Main Street
Belleville, IL 62226
(618) 277-1000
ead@wawpc.net
Attorneys for National Foam, Inc.

*Carl L. Rowley*

***EFILED***
Case Number 2023LA000191
Date: 11/7/2023 3:07 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

1012821

**IN THE CIRCUIT COURT**
**THRID JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Donald Bannister and Betty Bannister, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2023LA000191 |
| | ) | |
| John Crane, et al., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**DEFENDANT 3M COMPANY'S**
**MOTION FOR SUBSTITUTION OF JUDGE**

NOW COMES the Defendant, 3M Company, and pursuant to 735 ILCS 5/2-1001(a)(2)(i) of the Illinois Civil Practice Act, hereby moves for a substitution of judge, as a matter of right, from the Honorable Ronald Foster.

3M Company, Defendant

BY: /s/ Ann C. Barron
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
Ann C. Barron, ARDC #6224429

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
105 West Vandalia Street
Mark Twain Plaza III, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 309.420.0402
PRIMARY E-MAIL: edwecf@heylroyster.com
SECONDARY E-MAIL #1: abarron@heylroyster.com

1012821

**CERTIFICATE OF FILING AND PROOF OF SERVICE**

I certify that on **November 7, 2023**, at or before 5:00 p.m., I electronically filed and transmitted the foregoing **Defendant 3M Company's Motion for Substitution of Judge** with the Clerk of the Court for the Third Judicial Circuit, Madison County, Illinois by using the Odyssey eFileIL system.

I further certify that the individuals named below have been served by transmitting a copy from my e-mail address to all primary and secondary e-mail addresses of record designated by these individuals on **November 7, 2023.**

Ted N. Gianaris
Joshua A. Edelson
Gianaris Trial Lawyers, LLC
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
***Attorneys for Plaintiff***

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, IL 62025
gpinter@smbtrials.com
***Attorneys for Phillips 66 Company***

Matthew B. Champlin
Emilee M. Bramstedt
HeplerBroom LLC
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
mbc@heplerbroom.com
emb@heplerbroom.com
***Attorneys for HWRT Oil Company, LLC***

1012821

Tyler W. Schwettman
Shook, Hardy & Bacon, L.L.P.
The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
tschwettman@shb.com

Brent Dwerlkotte
Amy M. Crouch
Jennifer E. Hackman
Shook, Hardy & Bacon, L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
dbdwerlkotte@shb.com
amcrouch@shb.com
jhackman@shb.com

Molly H. Craig
James B. Hood
Virginia Rogers Floyd
Hood Law Firm
172 Meeting Street
Post Office Box 1508
Charleston, SC 29402
Molly.craig@hoodlaw.com
James.hood@hoodlaw.com
Virginia.floyd@hoodlaw.com

***Attorneys for E.I. du Pont de Nemours and Company***

Alexander J. Baker
Mark I. Tivin
Manning Gross + Massenburg LLP
1 South Dearborn St., Suite 1430
Chicago, IL 60603
mtivin@mgmlaw.com
***Attorneys for John Crane Inc.***

1012821

Carl L. Rowley
Kevin C. McGinley
Michael W. Vogel
Thompson Coburn LLP
525 West Main Street, Suite 300
Belleville, IL 62220
crowley@thompsoncoburn.com
kmcginley@thompsoncoburn.com
mvogel@thompsoncoburn.com
***Attorneys for ITG Brands LLC***

Jose A. Isasi, II
Jihan Walker
Jones Day
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
jisasi@jonesday.com
jihanwalker@jonesday.com
***Attorneys for Defendant R. J. Reynolds Tobacco Company***

Laura K. Beasley
Baker Sterchi Cowden & Rice LLC
23 Public Square, Suite 415
Belleville, IL 62220
lbeasley@bakersterchi.com
***Attorneys for Tyco Fire Products LP and Chemguard, Inc.***

Susan E. Brice
Kristen L. Gale
Andrew T. Nishioka
Nijman Franzetti LLP
10 S. Lasalle Street, Suite 3400
Chicago, IL 60603
ab@nijmanfranzetti.com
kg@nijmanfranzetti.com
dn@nijmanfranzetti.com

1012821

Gregg A. Kinney
Practus, LLP
P.O. Box 28929
St. Louis, MO 63132
Gregg.kinney@practus.com

***Attorneys for Shell USA, Inc.***

Under penalties as provided by law pursuant to section 1-109 of the Illinois Code of Civil Procedure [735 ILCS 5/1-109], I certify that the statements set forth in this **Certificate of Filing and Proof of Service** are true and correct, except as to matters therein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

/s/ Marti Smith
HEYL, ROYSTER, VOELKER & ALLEN, P.C.

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
105 West Vandalia Street
Mark Twain Plaza III, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 309.420.0402
PRIMARY E-MAIL: edwecf@heylroyster.com
SECONDARY E-MAIL #1: abarron@heylroyster.com

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiff,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA-000191

FILED
NOV 08 2023

CLERK OF CIRCUIT COURT #68
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

**ORDER ALLOWING HYBRID ATTENDANCE AT HEARING**

R.J. Reynolds Tobacco Company's Motion to Allow Hybrid Attendance at Hearing is hereby GRANTED. Parties may attend the hearings on HWRT Oil Company's and Shell USA, Inc.'s motions to dismiss in-person or via Zoom. The Zoom call-in information is detailed below.

ID: 876 4845 0514

Password 170572

Dated: 11/8/23

Judge

31277778.1

***EFILED***
Case Number 2023LA000191
Date: 11/8/2023 4:20 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF**
**THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Donald Bannister and Betty Bannister,<br><br>Plaintiffs,<br><br>v.<br><br>John Crane, Inc.,<br>Shell USA, Inc.,<br>Phillips 66 Company,<br>3M Company, *f/k/a* Minnesota Mining and Manufacturing Company,<br>Tyco Fire Products, L.P., successor in interest to The Ansul Company,<br>Chemguard,<br>E. I. du Pont de Nemours & Co.,<br>National Foam, Inc.,<br>HWRT Oil Company,<br>ITG Brands LLC, and<br>R.J. Reynolds Tobacco Company,<br><br>Defendants. | ) | Case No.: 2023-LA- 000191 |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE AN**
***AMENDED* COMPLAINT TO JOIN ADDITIONAL PARTIES**

Plaintiffs, Donald Bannister and Betty Bannister ("Plaintiff" or "Plaintiffs"), through Ted N. Gianaris and Joshua A. Edelson of Gianaris Trial Lawyers, LLC, state as follows for their Motion for Leave to File an *Amended* Complaint and to Join Additional Parties:

1. This case was filed on February 16, 2023.

2. Plaintiff has recently discovered additional products that he was exposed to while working at the Wood River Refinery as well as additional entities that are believed to have manufactured and sold such products and the products previously known to Plaintiffs.

3. Accordingly, Plaintiffs are seeking to amend their Complaint to add the manufacturers of these products.

4. Plaintiff is not seeking to add or alter any claims or theories of liability.

5. Thus, this motion is not only made in the interest of justice but also for the purpose judicial economy and efficiency, not delay; it is made for good cause and upon just and reasonable terms.

6. Plaintiffs' *Amended* Complaint is attached hereto as Exhibit A.

WHEREFORE, Plaintiffs, Donald Bannister and Betty Bannister, respectfully request this Honorable Court grant Plaintiffs' Motion for Leave to File an *Amended* Complaint to Join Additional Parties, *instanter*.

Respectfully submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: */s/ Joshua A. Edelson*
Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all attorneys of record via this Court's electronic filing system on November 8, 2023.

*/s/ Lori Rippeto*
**Gianaris Trial Lawyers, LLC**

1012821

IN THE CIRCUIT COURT
THRID JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

Donald Bannister and Betty Bannister, )
)
Plaintiffs, )
)
) No. 2023LA000191
v. )
)
John Crane, et al., )
)
Defendants. )

**ORDER**

Cause comes to be heard on 3M Company's Motion for Substitution of Judge from the Honorable Ronald Foster. Said motion is hereby granted. This matter is sent to the Chief Judge for re-assignment.

Dated: 11/9/23

Honorable Ronald Foster

**IN THE CIRCUIT COURT**
**FOR THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

FILED
NOV 16 2023
CLERK OF CIRCUIT COURT #3
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

**DONALD BANNISTER and BETTY BANNISTER,**

**Plaintiff (s)**

vs.

**JOHN CRANE, et al.,**

**Defendant (s)**

**Case No: 2023-LA-191**

ORDER

The above-styled case is hereby reassigned to the Honorable Ronald Motil for setting and disposition.

The case was previously assigned to the Honorable Ronald Foster.

**Clerk to send copies of this Order to the newly assigned Judge, to counsel of record herein, and to all unrepresented parties, if any.**

**DATE: November 16, 2023**

**Honorable Stephen A. Stobbs**
**Chief Judge**

***EFILED***
Case Number 2023LA000191
Date: 12/7/2023 3:53 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Donald Bannister and Betty Bannister, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 2023-LA-191 |
| | ) | |
| John Crane, Inc., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

Plaintiffs certify that a copy of the following:

1. Plaintiff's Interrogatories and Requests for Production to Tyco Fire Products and Chemguard, and;
2. Certificate of Service.

have been served on this 7th day of December 2023, via email to the following:

**Baker Sterchi Cowden & Rice LLC**

Laura K. Beasley #6274537
23 Public Square Suite 415
Belleville, Illinois 62220
Telephone: 618-257-2674
Facsimile: 618-257-2678
lbeasley@bakersterchi.com
**Attorneys for Tyco Fire Products LP and Chemguard, Inc.**

Respectfully,

**GIANARIS TRIAL LAWYERS, LLC**

By: /s/ Joshua A. Edelson
Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848

One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I hereby certify that a copy of the foregoing documents listed on Plaintiff's Certificate of Service were served on the above-named counsel of record via email on this 7th day of December 2023.

/s/ Joshua A. Edelson

***EFILED***
Case Number 2023LA000191
Date: 1/2/2024 9:49 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

MATTHEW B. CHAMPLIN
LICENSED IN ILLINOIS AND MISSOURI
DIRECT DIAL: 618-307-2453
MBC@HEPLERBROOM.COM

EDWARDSVILLE (Madison County), IL
SAINT LOUIS, MO ▪ CHICAGO, IL
SPRINGFIELD, IL ▪ CRYSTAL LAKE, IL
HAMMOND (Lake County), IN
DUPAGE COUNTY, IL
www.heplerbroom.com

130 N. MAIN ST.
PO BOX 510
EDWARDSVILLE, IL 62025
PH: 618-656-0184
FX: 618-656-1364

January 2, 2024

Honorable Judge Ronald Motil
Madison County Courthouse
155 North Main Street
Edwardsville, IL 62025

Re: Donald Bannister and Betty Bannister vs. John Crane, et al.
Madison County, IL No. 2023-LA-191

Dear Judge Motil:

On November 16, 2023, the above matter was reassigned to Your Honor. My client, HWRT Oil Company, has a pending Motion to Dismiss filed on March 16, 2023. We respectfully request that our motion be set for hearing on the Court's next available docket.

Thank you for your attention to this matter.

Sincerely,

Matthew B. Champlin

MBC/tf

cc: Counsel of Record

IN THE CIRCUIT COURT FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

FILED
JAN 05 2024
CLERK OF CIRCUIT COURT #52
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BANNISTER, ET AL.,
Plaintiff/Petitioner,

vs.

JOHN CRANE, INC., ET AL.,
Defendant/Respondent.

No: 2023-LA-191

**ORDER**

Defendant's, HWRT Oil Company, Motion to Dismiss and other pending motions are set for hearing on February 2, 2024 at 10:00 am in Courtroom #320. Clerk to send copies.

JANUARY 5, 2024
**DATE**

**JUDGE**

***EFILED***
Case Number 2023LA000191
Date: 2/1/2024 3:14 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | |
|---|---|
| **DONALD BANNISTER and BETTY BANNISTER,**<br><br>**Plaintiffs,**<br>**vs.**<br><br>**JOHN CRANE, INC., et al.,**<br><br>**Defendants.** | **Case No. 2023LA000191** |

**MOTION FOR SUBSTITUTION OF JUDGE**

Defendant Tyco Fire Products LP ("Tyco"), by and through its attorney's, for its Motion for Substitution of Judge pursuant to 735 ILCS 5/2-1001(a)(2), states as follows:

1. Judge Motil has not ruled on any substantial issue in this case.

2. Tyco has not previously taken a change of Judge that was ruled on by this Court.

3. 735 ILCS 5/2-1001(a)(2) of the Illinois Code of Civil Procedure allows an application for substitution of Judge without cause which shall be granted as a matter of right when the party timely exercises its right to a substitution.

4. Tyco hereby applies for a substitution of Judge as a matter of right pursuant to 735 ILCS 5/2-1001(a)(2).

5. Defendant has met all requirements pursuant to 735 ILCS 5/2-1001(a)(2).

WHEREFORE, for the foregoing reasons, Defendant Tyco, moves this Court for an order substituting Judge Motil and requests that this case be returned to the Chief Judge for reassignment.

Respectfully Submitted,

/s/ Laura K. Beasley
Laura K. Beasley #6274537
Baker Sterchi Cowden & Rice LLC
23 Public Square Suite 415
Belleville, Illinois 62220
Telephone: 618-257-2674
Facsimile: 618-257-2678
lbeasley@bakersterchi.com

*Attorneys for Tyco Fire Products LP*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was electronically filed with File & Serve*Illinois* this 31st day of January 2024 which will send notification of such filing(s) to all counsel of record.

Ted N. Gianaris
Joshua A. Edelson
Gianaris Trial Lawyers
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiff*

Jose A. Isasi, II
Jihan Walker
JONES DAY
110 N. Wacker Drive, Suite 4800
Chicago, Illinois 60606
jihanwalker@jonesday.com
jisasi@jonesday.com
Attorneys for Defendant R.J. Reynolds Tobacco

Carl L. Rowley
Kevin C. McGinley
Michael W. Vogel
Thompson Coburn LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
Crowley@thompsoncoburn.com
Kmcginley@thompsoncoburn.com
mvogel@thompsoncoburn.com
Attorneys for Defendant ITG Brands LLC

/s/ Laura K. Beasley__________________

THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

BANNISTER
Plaintiff/Petitioner

vs.

JOHN CRANE, ETAL
Defendant/Respondent

FILED
FEB 02 2024
CLERK OF CIRCUIT COURT #66
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

No. 2023
Div. LA
000191

ORDER

Upon Motion for Substitution of Judge filed by the Defendant TYCO FIRE PRODUCTS pursuant to 735 ILCS 5/2-1001 A2, Judge Ronald Motil is substituted as judge. The above-captioned case is referred to the Chief Judge for reassignment.

Date 2/2/24

[signature]
Judge

**IN THE CIRCUIT COURT**
**FOR THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

FILED
FEB 06 2024
CLERK OF CIRCUIT COURT #3
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

**DONALD BANNISTER and BETTY BANNISTER,**

**Plaintiff(s)**

**Vs.**

**JOHN CRANE, et al.,**

**Defendant(s)**

**Case No: 2023-LA-191**

ORDER

The above-styled case is hereby reassigned to the Honorable Ronald Slemer for setting and disposition.

The case was previously assigned to the Honorable Ronald Motil.

**Clerk to send copies of this Order to the newly assigned Judge, to counsel of record herein, and to all unrepresented parties, if any.**

**DATE: February 6, 2024**

**Honorable Stephen A. Stobbs**
**Chief Judge**

***EFILED***
Case Number 2023LA000191
Date: 3/22/2024 2:08 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BANNISTER and BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M, f/k/a MINNESOTA MINING AND MANUFACUTURING COMPANY, TYCO FIRE PRODUCTS, L.P. successor in interest To the Ansul Company, CHEMGUARD E.I. DU PONT DE NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No: 2023LA-000191

**CERTIFICATE OF SERVICE**

Defendant Tyco Fire Products LP and Chemguard, Inc., by and through its undersigned counsel, hereby certifies that the following were served by electronic mail on March 22, 2024, on all counsel of record.

1. Objections and Responses of Defendants Tyco Fire Products LP and Chemguard, Inc. to Plaintiffs' Interrogatories; and
2. Objections and Responses of Defendants Tyco Fire Products LP and Chemguard, Inc. to Plaintiffs' Requests for Production.

Pursuant to the applicable Rules, the originals of these pleadings are being retained in Defendants' file. I further certify that I signed, or caused my electronic signature to be placed upon, the original of the foregoing document.

Respectfully Submitted,

/s/ Laura K. Beasley
Laura K. Beasley #6274537
Baker Sterchi Cowden & Rice LLC
23 Public Square Suite 400
Belleville, Illinois 62220
Telephone: 618-257-2674
Facsimile: 618-257-2678
lbeasley@bakersterchi.com

*Attorneys for Tyco Fire Products LP and Chemguard, Inc.*

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was electronically filed with File & Serve*Illinois* this 22nd day of March, 2024 which will send notification of such filing(s) to all counsel of record.

/s/ Laura K. Beasley

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BANNISTER,
Plaintiff,

v.

JOHN CRANE, et al,
Defendants.

23 LA 191

FILED
JUN 21 2024
CLERK OF CIRCUIT COURT # 84
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

ORDER

With the retirement of Judge Ronald R. Slemer, it is necessary for this matter to go to Chief Judge Stobbs for re-assignment.

Entered this 21 day of June, 2024.

JUDGE

**IN THE CIRCUIT COURT**
**FOR THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

FILED

JUL 02 2024

CLERK OF CIRCUIT COURT #68
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | | | |
|---|---|---|---|
| **DONALD BANNISTER,** | ) | | |
| | ) | | |
| **Plaintiff(s)** | ) | | |
| | ) | | |
| **Vs.** | ) | **Case No:** | **2023-LA-191** |
| | ) | | |
| **JOHN CRANE, et al.,** | ) | | |
| | ) | | |
| **Defendant(s)** | ) | | |

ORDER

The above-styled case is hereby reassigned to the Honorable Timothy Berkley for setting and disposition.

The case was previously assigned to the Honorable Ronald Slemer.

**Clerk to send copies of this Order to the newly assigned Judge, to counsel of record herein, and to all unrepresented parties, if any.**

**DATE: July 2, 2024**

**Honorable Stephen A. Stobbs**
**Chief Judge**

***EFILED***
Case Number 2023LA000191
Date: 9/9/2024 3:31 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Donald Bannister and Betty Bannister, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: 2023-LA-000191 |
| | ) | |
| John Crane, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**COMBINED MOTION TO SUBSTITUTE PARTY, TO APPOINT SPECIAL ADMINISTRATOR, AND FOR LEAVE TO FILE AN *AMENDED* COMPLAINT**

Plaintiff, Betty Bannister ("Plaintiff"), through undersigned counsel, hereby moves this Court to substitute her as Plaintiff in this matter, to appoint her Special Administrator, and for leave to file an *Amended* Complaint:

1. On July 31, 2024, Plaintiff, Donald Bannister, died.

2. At the time of his death, Donald Bannister had the right to pursue claims relating to personal injury which claims survive pursuant to 755 ILCS 5/27-6 and give rise to an action pursuant to 740 ILCS 180/0.01-180/2.2.

3. Pursuant to 735 ILCS 5/2-1008(b)(1), the court may appoint a special representative for Donald Bannister for the purpose of prosecuting the action.

4. Betty Bannister is the surviving spouse of Donald Bannister.

5. Betty Bannister is a resident of the State of Illinois and is a proper person to represent the Estate of Donald Bannister.

6. No petition for letters of office has been filed.

7. Plaintiff also requests leave to file an Amended Complaint to convert and conform the Complaint to the proper party and causes of action now that Donald Bannister has died.

WHEREFORE, Movant, Betty Bannister, prays that this Honorable Court enter an Order appointing her as Special Administrator, grant leave to file an Amended Complaint, and further grant the Movant any and all relief as this Court deems just and equitable.

Respectfully submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: */s/ Joshua A. Edelson*
Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all attorneys of record via this Court's electronic filing system on September 9th, 2024.

*/s/ Parris Diggs*
**Gianaris Trial Lawyers, LLC**

***EFILED***
Case Number 2023LA000191
Date: 9/9/2024 3:31 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Donald Bannister and Betty Bannister, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: 2023-LA-000191 |
| | ) | |
| John Crane, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**SUGGESTION OF DEATH**

COMES NOW Counsel for the deceased party to this action and states:

On July 31, 2024, Plaintiff, Donald Bannister, died. Pursuant to 735ILCS 5/2-1008, and other applicable statutes and rules, the death is suggested of record and the action shall proceed against the remaining parties. Action will be taken to have the proper party or parties substituted.

Respectfully submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: */s/ Joshua A. Edelson*

Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all attorneys of record via this Court's electronic filing system on September 9th, 2024.

*/s/ Parris Diggs*
**Gianaris Trial Lawyers, LLC**

***EFILED***
Case Number 2023LA000191
Date: 9/10/2024 1:47 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| DONALD BANNISTER and BETTY BANNISTER, Plaintiffs, | ) | |
| v. | ) | No. 23-LA-191 |
| JOHN CRANE, INC., *et al.*, Defendants | ) | |

**SHELL USA, INC.'S MOTION FOR SUBSTITUTION OF JUDGE**

COMES NOW Defendant, Shell USA, Inc., by its attorneys, and for its Motion for Substitution of Judge Pursuant to 735 ILCS 5/2-1001(a)(2), states as follows:

1. 735 ILCS 5/2-1001(a)(2) of the Illinois Code of Civil Procedure allows a substitution of judge without cause as a matter of right when a party timely exercises its right to a substitution.

2. Shell USA, Inc. has not previously exercised its right to a substitution of judge without cause in this case.

3. This matter has been assigned to the Honorable Timothy Berkley.

4. Judge Berkley has not ruled on any substantial issue in the case.

5. Shell USA, Inc. hereby applies for a substitution of judge as a matter of right pursuant to 735 ILCS 5/2-1001(a)(2). This motion is timely because it has been presented before trial or hearing and before the judge to whom it is presented has ruled on any substantial issue in the case. 735 ILCS 5/2-1001(a)(2)(ii).

6. Defendant has met all of the requirements of 735 ILCS 5/2-1001(a)(2).

WHEREFORE, for the foregoing reasons, defendant, Shell USA, Inc., moves the Court for an order substituting Judge Berkley and requests that this case be returned to the Chief Judge for reassignment.

Respectfully Submitted,

By: */s/Susan E. Brice*

Susan E. Brice #6228903
Kristen L. Gale #6283338
Andrew T. Nishioka #6339448
**NIJMAN FRANZETTI LLP**
10 S. LaSalle Street, Suite 3400
Chicago, IL 60603
T: (312) 251-5271
sb@nijmanfranzetti.com
kg@nijmanfranzetti.com
dn@nijmanfranzetti.com

Gregg A. Kinney #6210671
Practus, LLP
P.O. Box 28929
St. Louis, MO 63132
T. 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
gregg.kinney@paractus.com

***Counsel for Defendant Shell USA, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2024, I electronically filed the foregoing with the Clerk of the Court using Odyssey Efile IL system. A courtesy copy was emailed to all attorneys of record.

/s/ Gregg A. Kinney

IN THE CIRCUIT COURT
FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

FILED

OCT 15 2024

CLERK OF CIRCUIT COURT #58
THIRD JUDICIAL CIRCUIT
MADISON COUNTY ILLINOIS

| | | |
|---|---|---|
| **DONALD BANNISTER and BETTY BANNISTER,** | ) | |
| **Plaintiff(s)** | ) | |
| **vs.** | ) | **Case No: 2023-LA-191** |
| **JOHN CRANE, INC, et al.,** | ) | |
| **Defendant(s)** | ) | |

ORDER

The above-styled case is hereby reassigned to the Honorable Andrew Carruthers for setting and disposition.

The case was previously assigned to the Honorable Timothy Berkley.

**Clerk to send copies of this Order to the newly assigned Judge, to counsel of record herein, and to all unrepresented parties, if any.**

**DATE: October 10, 2024**

**Honorable Stephen A. Stobbs**
**Chief Judge**

IN THE CIRCUIT COURT FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

FILED
NOV 07 2024
CLERK OF CIRCUIT COURT #68
THIRD JUDICIAL CIRCUIT
MADISON COUNTY ILLINOIS

DONALD BANNISTER
Plaintiff/Petitioner,

vs.

No: 2023 LA 191

JOHN CRANE et al
Defendant/Respondent.

**ORDER**

The Court sets this matter for a Zoom case management conference to occur on November 20, 2024 at 3:30 p.m. The Court's Zoom information is below and the link for can also be found on the website of the Madison County Circuit Clerk. Clerk to send copies.

Zoom ID: 841 4383 6668
Password: 443806

Nov 7, 2024
**DATE**

**JUDGE**

FILED
NOV 20 2024
CLERK OF CIRCUIT COURT #66
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

IN THE CIRCUIT COURT FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

DONALD BANNISTER
Plaintiff/Petitioner,

vs.

JOHN CRANE et al
Defendant/Respondent.

No: 2023 LA 191

**ORDER**

Cause comes for a case management conference by Zoom. Counsel appears for all parties. At a prior setting, the Court disclosed its prior service as legal counsel for Phillips 66, one of the defendants in this matter, more than four years ago but less than seven years and asked counsel to consider whether they would waive disqualification. About a week later, Plaintiff's counsel emailed the Court to confirm that all parties indicated they would waive disqualification per Rule 2.11(C) of the Illinois Code of Judicial Conduct of 2023. Thereafter, the Court scheduled this setting to allow all parties to waive on the record and to conduct a general case management conference. On this date, the Court again disclosed the prior representation of a party in this matter within the past seven years, as required by Rule 2.11 (A)(5), on the record with all counsel waiving disqualification of the Court.

Plaintiff to file a modified motion for leave to file an amended complaint within 14 days, with all defendants to file any objections within 14 days thereafter. If any objections are filed the Court will schedule a hearing. If none, the Court will grant the motion, the amended complaint will be file stamped, and the defendants will have until January 31, 2025 to file responsive pleadings.

Cause is set for CMC, either by Zoom or in person, on February 20, 2025 at 9:00 a.m.

Clerk to send copies.

Nov 20, 2024
**DATE**

**JUDGE**

***EFILED***
Case Number 2023LA000191
Date: 12/4/2024 4:43 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Betty Bannister, Individually, and as Special Administrator for the Estate of Donald Bannister, deceased. | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No.: 2023-LA-000191 |
| John Crane, et al., | ) | |
| Defendants. | ) | |

**AMENDED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Plaintiff, Betty Bannister ("Plaintiff"), through undersigned counsel, hereby moves this Court for leave to file an *Amended* Complaint, filed separately, and states as follows:

1. On February 16, 2023, Plaintiffs, filed their Complaint against Defendants.

2. Plaintiffs seek to amend the allegations to conform to the facts of this case, now that Plaintiff, Donald Bannister is deceased.

3. Leave here would not prejudice any of the Defendants as the allegations are more detailed and virtually the same as the original, would be in the interest of justice, and meets the requirements of 735 ILCS 5/2-616.

WHEREFORE, Plaintiffs respectfully request this Court grant Plaintiffs' Motion for Leave to File an *Amended* Complaint, filed separately, *instanter*, and for such other relief as this Court deems just and proper.

Respectfully submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: */s/ Joshua A. Edelson*

Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all attorneys of record via this Court's electronic filing system on December 4th, 2024.

*/s/ Parris Diggs*
**Gianaris Trial Lawyers, LLC**

***EFILED***
Case Number 2023LA000191
Date: 12/4/2024 2:15 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Betty Bannister, Individually, and as Special Administrator for the Estate of Donald Bannister, deceased. | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No.: 2023-LA-000191 |
| John Crane, et al., | ) | |
| Defendants. | ) | |

**AMENDED MOTION TO APPOINT SPECIAL ADMINISTRATOR**

Plaintiff, Betty Bannister ("Plaintiff"), through undersigned counsel, hereby moves this Court to appoint her Special Administrator and states as follows:

1. On July 31, 2024, Plaintiff, Donald Bannister, died.

2. At the time of his death, Donald Bannister had the right to pursue claims relating to personal injury which claims survive pursuant to 755 ILCS 5/27-6 and give rise to an action pursuant to 740 ILCS 180/0.01-180/2.2.

3. Pursuant to 735 ILCS 5/2-1008(b)(1), the court may appoint a special representative for Donald Bannister for the purpose of prosecuting the action.

4. Betty Bannister is the surviving spouse of Donald Bannister.

5. Betty Bannister is a resident of the State of Illinois and is a proper person to represent the Estate of Donald Bannister.

6. No petition for letters of office has been filed.

7. Pursuant to Donald Bannister's will, the only legatee is Betty Bannister and no other person requires notice under 740 ILCS 180/2.1, since no other person is entitled to a recovery at this time.

WHEREFORE, Movant, Betty Bannister, prays that this Honorable Court enter an Order appointing her as Special Administrator and further grant the Movant any and all relief as this Court deems just and equitable.

Respectfully submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: *_/s/ Joshua A. Edelson_*

Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all attorneys of record via this Court's electronic filing system on December 4th, 2024.

*/s/ Parris Diggs*
**Gianaris Trial Lawyers, LLC**

IN THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

e-Served
by MyDocFileServe
3201245
Dec 18 2024 09:48 AM

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY,

Defendants.

Case No. 2023-LA-000191

**DEFENDANT R.J. REYNOLDS TOBACCO COMPANY'S OPPOSITION AND OBJECTIONS TO PLAINTIFF'S AMENDED MOTION TO APPOINT SPECIAL ADMINISTRATOR**

Defendant R.J. Reynolds Tobacco Company ("Reynolds") opposes Plaintiff's Amended Motion to Appoint Special Administrator as it fails to comply with the statutory requirements of 735 ILCS 5/2-1008(b)(1). In support of its opposition and objections, Reynolds states:

1. Donald and Betty Bannister filed the initial Complaint in this action on February 16, 2023. Donald Bannister died on July 31, 2024. Pl.'s Am. Mot. at ¶1.

2.      On September 9, 2024, Plaintiff filed a Motion to Substitute Party to Appoint Special Administrator and for Leave to File an Amended Complaint.  9/9/24 Pl.'s Mot. to Substitute Party.

3.      On November 20, 2024, the parties appeared for a Case Management Conference before the Court and discussed the deficiencies in Plaintiff's September 9th Motion to Substitute and Appoint a Special Administrator.  This Court ordered Plaintiff to "file a modified motion for leave to file an amended complaint within 14 days" and that Defendants should assert any objections 14 days thereafter. 11/20/24 Order.

4.      On December 4, 2024, Plaintiff filed an Amended Motion to Appoint Special Administrator and proposed Amended Complaint.  Under this Court's November 20th Order, Defendants' objections are due by December 18, 2024.

5.      Plaintiff's Amended Motion, again, fails to meet the statutory requirements. Plaintiff brings her Amended Motion pursuant to 735 ILCS 5/2-1008(b)(1), which states the request "***shall be on verified motion of any party*** who appears entitled to participate in the deceased's estate, ***reciting the names and last known addresses*** of all known heirs and the legatees and executor named in any will that has been filed. 735 ILCS 5/2-1008(b)(1) (emphasis added); *see also Mohica v. Cvejin,* 2013  IL App (1st) 111695 (2013) ¶¶ 36, 39-40 (interpreting the statute and holding that its "mandatory language" requires that "an interested party verify the motion," among the statute's other requirements, for it to be properly granted).

6.      Plaintiff's Amended Motion is not verified and does not list the last known address of all known heirs.  Thus, it fails to meet the clear statutory requirements of 735 ILCS 5/2-1008(b)(1).

7. On December 11-13, Counsel for Plaintiff and Reynolds discussed the deficiencies in Plaintiff's Amended Motion, and, while Plaintiff intends to file another amended request, Reynolds objects to the pending Amended Motion pursuant to the deadline in this Court's November 20, 2024 Order.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Amended Motion to Appoint Special Administrator and deny Plaintiff leave to file her pending Amended Complaint.

Respectfully submitted,

/s/ *José A. Isasi, II*

José A. Isasi, II, #6211214
Jihan Walker, #6328896
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
Email: jisasi@jonesday.com
Email: jihanwalker@jonesday.com

Carl L. Rowley, #6195075
Kevin C. McGinley #6286841
Michael W. Vogel, #6314202
THOMPSON COBURN LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 236-3467
Email: crowley@thompsoncoburn.com
Email: kmcginley@thompsoncoburn.com
Email: mvogel@thompsoncoburn.com

*Attorneys for Defendant R.J. Reynolds Tobacco Company*

**Certificate Of Service**

The undersigned states that on the 18th day of December, 2024, the Defendant filed the foregoing and served a copy of the foregoing electronically on all counsel of record via the Court's E-Filing System.  In addition, a copy was also emailed to the following attorneys of record:

Ted Gianaris
Josh Edelson
Gianaris Trial Lawyers LLC
One Court Street
Alton, Illinois 62002
(618) 816-9999
(618) 259-2251 (fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiff*

Tyler W. Schwettman
Shook, Hardy & Bacon LLP
The Plaza in Clayton
190 Carondelet Plaza, Suite 1350
St. Louis , MO  63105
Tel: 314.690.0200
Fax: 314.690.0249
tschwettman@shb.com
AND
Brent Dwerlkotte (PHV)
Amy M. Crouch (PHV)
Jennifer E. Hackman (PHV)
2555 Grand Boulevard
Kansas City, MO  64108
Tel: (816) 474-6550
Fax: (816) 421-5547
dbdwerlkotte@shb.com
amcrouch@shb.com
jhackman@shb.com
*Attorneys for E.I. du Pont de Nemours and Company (now known as "EIDP, Inc.")*

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, Illinois 62025
Office: 618-655-3131
Direct: 618-655-3119
gpinter@smbtrials.com
*Attorney for Phillips 66 Company*

Matthew B. Champlin
Hepler Broom LLC
130 North Main Street
P.O. Box 510
Edwardsville, IL  62025
Tel: 618-656-0184
mbc@heplerbroom.com
*Attorneys for HWRT Oil Company, LLC*

Laura K. Beasley
Baker Sterchi Cowden & Rice LLC
23 Public Square, Suite 415
Belleville, IL  62220
Tel: 618-257-2674
Fax: 618-257-2678
lbeasley@bakersterchi.com

Alexander J. Baker
Mark I. Tivin
mtivin@mgmlaw.com
Pamela R. Gamble
Anthony D. Danhelka
Megha H. Rana
Manning Gross + Massenburg LLP
1 South Dearborn Street

*Attorneys for Tyco Fire Products LP and Chemguard, Inc.*

Suite 1430
Chicago, IL  60603
Tel: (312) 625-4995
Fax: (312) 291-9396
*Attorneys for John Crane Inc*

Ann C. Barron
Heyl, Royster, Voelker & Allen, P.C.
105 West Vandalia Street
Mark Twain Plaza III, Suite 100
Edwardsville, IL 62025
Tel: 618.656.4646
Fax: 309.420.0402
edwecf@heylroyster.com
abarron@heylroyster.com
*Attorneys for 3M Company*

Susan Brice
Kristen L. Gale
Andrew Nishioka
Nijman Franzetti LLP
10 S. La Salle St., #3400
Chicago, IL 60603
(312) 251-5250
sb@nijmanfranzetti.com
kg@nijmanfranzetti.com
an@nijmanfranzetti.com
AND
Gregg A. Kinney
Practus, LLP
P.O. Box 28929
St. Louis, MO 63132
(314) 753-2443
gregg.kinney@practus.com
*Attorneys for Shell USA Inc.*

*/s/ Kevin C. McGinley*

***EFILED***
Case Number 2023LA000191
Date: 12/18/2024 2:32 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

1012821

**IN THE CIRCUIT COURT**
**THRID JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Donald Bannister and Betty Bannister, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2023LA000191 |
| | ) | |
| John Crane, et al., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**DEFENDANT 3M COMPANY'S JOINDER IN R.J. REYNOLDS TOBACCO COMPANY'S OPPOSITION AND OBJECTIONS TO PLAINTIFF'S AMENDED MOTION TO APPOINT SPECIAL ADMINISTRATOR**

NOW COMES the Defendant, 3M Company, by and through its counsel, and hereby joins in the Opposition and Objections to Plaintiff's Amended Motion to Appoint Special Administrator as filed by R.J. Reynolds Tobacco Company. For the reasons stated in that pleading, Plaintiff's Motion to Appoint Special Administrator fails to comply with the statutory requirements of 735 ILCS 5/2-1008(b)(1). The Court should deny Plaintiff's Motion and deny Plaintiff leave to file her pending Amended Complaint.

3M Company, Defendant

BY: /s/ Ann C. Barron
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
Ann C. Barron, ARDC #6224429

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
105 West Vandalia Street, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 309.420.0402
PRIMARY E-MAIL: edwecf@heylroyster.com
SECONDARY E-MAIL #1: abarron@heylroyster.com

**CERTIFICATE OF FILING AND PROOF OF SERVICE**

I certify that on December 18, 2024, at or before 5:00 p.m., I electronically filed and transmitted the foregoing **Defendant 3M Company's Joinder** with the Clerk of the Court for the Third Judicial Circuit, Madison County, Illinois by using the Odyssey eFileIL system.

I further certify that the individuals named below have been served by transmitting a copy from my e-mail address to all primary and secondary e-mail addresses of record designated by those individuals on December 18, 2024**.**

Ted N. Gianaris
Joshua A. Edelson
Gianaris Trial Lawyers, LLC
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
***Attorneys for Plaintiff***

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, IL 62025
gpinter@smbtrials.com
***Attorneys for Phillips 66 Company***

Matthew B. Champlin
Emilee M. Bramstedt
HeplerBroom LLC
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
mbc@heplerbroom.com
emb@heplerbroom.com
***Attorneys for HWRT Oil Company, LLC***

1012821

Tyler W. Schwettman
Shook, Hardy & Bacon, L.L.P.
The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
tschwettman@shb.com

Brent Dwerlkotte
Amy M. Crouch
Jennifer E. Hackman
Shook, Hardy & Bacon, L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
dbdwerlkotte@shb.com
amcrouch@shb.com
jhackman@shb.com

Molly H. Craig
James B. Hood
Virginia Rogers Floyd
Hood Law Firm
172 Meeting Street
Post Office Box 1508
Charleston, SC 29402
Molly.craig@hoodlaw.com
James.hood@hoodlaw.com
Virginia.floyd@hoodlaw.com
***Attorneys for E.I. du Pont de Nemours and Company***

Alexander J. Baker
Mark I. Tivin
Manning Gross + Massenburg LLP
1 South Dearborn St., Suite 1430
Chicago, IL 60603
mtivin@mgmlaw.com
***Attorneys for John Crane Inc.***

Carl L. Rowley
Kevin C. McGinley
Michael W. Vogel
Thompson Coburn LLP
525 West Main Street, Suite 300
Belleville, IL 62220
crowley@thompsoncoburn.com
kmcginley@thompsoncoburn.com
mvogel@thompsoncoburn.com
***Attorneys for ITG Brands LLC***

Jose A. Isasi, II
Jihan Walker
Jones Day
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
jisasi@jonesday.com
jihanwalker@jonesday.com
***Attorneys for Defendant R. J. Reynolds Tobacco Company***

Laura K. Beasley
Baker Sterchi Cowden & Rice LLC
23 Public Square, Suite 415
Belleville, IL 62220
lbeasley@bakersterchi.com
***Attorneys for Tyco Fire Products LP and Chemguard, Inc.***

Susan E. Brice
Kristen L. Gale
Andrew T. Nishioka
Nijman Franzetti LLP
10 S. Lasalle Street, Suite 3400
Chicago, IL 60603
ab@nijmanfranzetti.com
kg@nijmanfranzetti.com
dn@nijmanfranzetti.com

1012821

Gregg A. Kinney
Practus, LLP
P.O. Box 28929
St. Louis, MO 63132
Gregg.kinney@practus.com

***Attorneys for Shell USA, Inc.***

Under penalties as provided by law pursuant to section 1-109 of the Illinois Code of Civil Procedure [735 ILCS 5/1-109], I certify that the statements set forth in this **Certificate of Filing and Proof of Service** are true and correct, except as to matters therein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

_/s/ Brenda Wallace_
HEYL, ROYSTER, VOELKER & ALLEN, P.C.

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
105 West Vandalia Street, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 309.420.0402
PRIMARY E-MAIL: edwecf@heylroyster.com
SECONDARY E-MAIL #1: abarron@heylroyster.com

***EFILED***
Case Number 2023LA000191
Date: 12/18/2024 3:39 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

DONALD BANNISTER AND BETTY BANNISTER,

Plaintiffs,

v.

JOHN CRANE, INC., SHELL USA, INC., PHILLIPS 66 COMPANY, 3M COMPANY, f/k/a MINNESOTA MINING and MANUFACTURING COMPANY, TYCO FIRE PRODUCTS, L.P., successor in interest to THE ANSUL COMPANY, CHEMGUARD, E.I. du PONT de NEMOURS & CO., NATIONAL FOAM, INC., HWRT OIL COMPANY, ITG BRANDS LLC, and, R.J. REYNOLDS TOBACCO COMPANY

Defendants.

Case No. 2023-LA-000191

**E. I. DU PONT DE NEMOURS AND COMPANY'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED**
**COMPLAINT AND AMENDED MOTION TO APPOINT SPECIAL ADMINISTRATOR**

Defendant E. I. du Pont de Nemours and Company (now known as EIDP, Inc., and referred to as "EIDP") states as follows in opposition to Plaintiff's Amended Motion for Leave to File Amended Complaint and Amended Motion to Appoint Special Administrator:

EIDP adopts and incorporates by reference the arguments asserted in Defendant R.J. Reynolds Tobacco Company's Opposition and Objection to Plaintiff's Amended Motion to Appoint Special Administrator, filed today. In addition, EIDP states that Plaintiff moved for appointment as a special administrator only under the substitution of parties statute (735 ILCS 5/2-1008) and not under the Wrongful Death Act (740 ILCS 180/2.1). Nor did Plaintiff attempt to satisfy the requirements to be appointed special administrator under the Wrongful Death Act. *See*

740 ILCS 180/2.1 (providing that a special administrator may be appointed to bring a cause of action under the Wrongful Death Act only when "the only asset of the deceased is a cause of action arising under [the Wrongful Death Act], and no petition for letters of office for his or her estate has been filed . . ."); *see also Kubian v. Alexian Bros. Med. Ctr.*, 272 Ill. App. 3d 246, 252, 651 N.E.2d 231, 234 (1995) (revoking appointment of special administrator where estate had assets valued at $33,000). Without appointment as a special administrator under the Wrongful Death Act, Plaintiff cannot bring the wrongful death claims she attempts to bring via Counts 1 and 3 in her Amended Complaint.

Regardless, neither Count 1 nor Count 3 is viable under Illinois law for an independent reason. Count I is for "Wrongful Death – Negligence," and Count 3 is for "Wrongful Death – Strict Liability: Design Defect & Failure to Warn." But a wrongful death claim under Illinois law is an independent cause of action, not a mechanism by which other causes of action may be brought. *See* 740 ILCS 180/1; *Bovan v. American Family Life Insurance Co.*, 386 Ill.App.3d 933, 938, 897 N.E.2d 288 (2008) (In order to maintain a claim under the Wrongful Death Act, plaintiff must allege: (1) defendant owed a duty to the decedent; (2) defendant breached that duty; (3) the breach of duty proximately caused the decedent's death; and (4) that pecuniary damages occurred to persons designated under the Wrongful Death Act.). Plaintiff's attempt to bring "negligence" and "strict liability" claims under the guise of "wrongful death" is not appropriate under Illinois law. Plaintiff's inclusion of these claims within the proposed Amended Complaint subjects the Amended Complaint to immediate dismissal and, as such, Plaintiff's Amended Motion for Leave to File the Amended Complaint and Amended Motion to Appoint a Special Administrator should be denied. *See Zubi v. Acceptance Indem. Ins. Co.*, 323 Ill. App. 3d 28, 40, 751 N.E.2d 69, 80 (2001) (finding that a motion for leave to amend a complaint may be denied where, as a matter of

law, the proposed amended complaint would be subject to immediate dismissal, due to some inherent defect).

Dated: December 18, 2024

SHOOK, HARDY & BACON L.L.P.

*/s/ Amy Crouch*
Tyler W. Schwettman (6333327)
The Plaza in Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
Telephone: 314.690.0200
Fax: 314.690.0249
tschwettman@shb.com

Brent Dwerlkotte (admitted *pro hac vice*)
Amy M. Crouch (admitted *pro hac vice*)
Jennifer E. Hackman (admitted *pro hac vice*)
2555 Grand Boulevard,
Kansas City, MO 64108
Tel: (816) 474-6550
Fax: (816) 421-5547
dbdwerlkotte@shb.com
amcrouch@shb.com
jhackman@shb.com

***Attorneys for Defendant E.I. du Pont de Nemours and Company (now known as "EIDP, Inc.")***

**CERTIFICATE OF SERVICE**

I certify that on this 18th day of December, 2024, the Defendant filed the foregoing and served a copy of the foregoing electronically on all counsel of record via the Court's E-Filing System. In addition, a copy was also emailed to the following attorneys of record:

Ted Gianaris
Josh Edelson
Gianaris Trial Lawyers LLC
One Court Street
Alton, Illinois 62002
(618) 816-9999
(618) 259-2251 (fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
***Attorneys for Plaintiff***

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, Illinois 62025
Office: 618-655-3131
Direct: 618-655-3119
gpinter@smbtrials.com
***Attorney for Phillips 66 Company***

Matthew B. Champlin
Hepler Broom LLC
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
Tel: 618-656-0184
mbc@heplerbroom.com
***Attorneys for HWRT Oil Company, LLC***

Laura K. Beasley
Baker Sterchi Cowden & Rice LLC
23 Public Square, Suite 415
Belleville, IL 62220
Tel: 618-257-2674
Fax: 618-257-2678
lbeasley@bakersterchi.com
***Attorneys for Tyco Fire Products LP and Chemguard, Inc.***

Alexander J. Baker
Mark I. Tivin
mtivin@mgmlaw.com
Pamela R. Gamble
Anthony D. Danhelka
Megha H. Rana
Manning Gross + Massenburg LLP
1 South Dearborn Street
Suite 1430
Chicago, IL 60603
Tel: (312) 625-4995
Fax: (312) 291-9396
***Attorneys for John Crane Inc***

Ann C. Barron
Heyl, Royster, Voelker & Allen, P.C.
105 West Vandalia Street
Mark Twain Plaza III, Suite 100
Edwardsville, IL 62025
Tel: 618.656.4646
Fax: 309.420.0402
edwecf@heylroyster.com
abarron@heylroyster.com
***Attorneys for 3M Company***

Susan Brice
Kristen L. Gale
Andrew Nishioka
Nijman Franzetti LLP
10 S. La Salle St., #3400
Chicago, IL 60603
(312) 251-5250
sb@nijmanfranzetti.com
kg@nijmanfranzetti.com
an@nijmanfranzetti.com

AND

Gregg A. Kinney
Practus, LLP
P.O. Box 28929
St. Louis, MO 63132
(314) 753-2443
gregg.kinney@practus.com
***Attorneys for Shell USA Inc.***

José A. Isasi, II, #6211214
Jihan Walker, #6328896
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
(312) 269-1584
Email: jisasi@jonesday.com
Email: jihanwalker@jonesday.com

Carl L. Rowley, #6195075
Kevin C. McGinley #6286841
Michael W. Vogel, #6314202
THOMPSON COBURN LLP
525 West Main Street, Suite 300
Belleville, Illinois 62220
(618) 236-3467
Email: crowley@thompsoncoburn.com
Email: kmcginley@thompsoncoburn.com
Email: mvogel@thompsoncoburn.com
***Attorneys for Defendant R.J. Reynolds Tobacco Company***

*/s/ Amy Crouch*
Amy Crouch

***Attorney for Defendant E.I. du Pont de Nemours and Company (now known as "EIDP, Inc.")***

FILED
FEB 20 2025
CLERK OF CIRCUIT COURT #18
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

Barnsdale, Plaintiff,

v.

John Crane, Defendant.

Case No: 23 LA 191

CMC/MOTION SETTING ORDER

The Court sets this matter for an appearance to occur on 3/27/25 at 9:00 Am in Courtroom #327. The parties or counsel are directed to appear at this setting ready to either discuss the general status of the case or argue the specific motion at issue detailed below.

X This matter is set for a case management conference.

______ The ________________ filed by __________ on ______ shall be called for hearing.

Plaintiff to amend w/f/L/A complaint within 21 days.

2/20/25
DATE

JUDGE ANDREW CARRUTHERS

***EFILED***
Case Number 2023LA000191
Date: 2/21/2025 3:27 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Betty Bannister, Individually, and as Special Administrator for the Estate of Donald Bannister, deceased. | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No.: 2023-LA-000191 |
| John Crane, et al., | ) | |
| Defendants. | ) | |

**VERIFIED SECOND *AMENDED* MOTION TO APPOINT SPECIAL ADMINISTRATOR**

Plaintiff, Betty Bannister ("Plaintiff"), through undersigned counsel, hereby files this Verified Second Amended Motion to Appoint Special Administrator and states as follows:

1. On July 31, 2024, Plaintiff, Donald Bannister, died.

2. At the time of his death, Donald Bannister had the right to pursue claims relating to personal injury which claims survive pursuant to 755 ILCS 5/27-6 and give rise to an action pursuant to 740 ILCS 180/0.01-180/2.2.

3. Pursuant to 735 ILCS 5/2-1008(b)(1), the court may appoint a special representative for Donald Bannister for the purpose of prosecuting the action.

4. Betty Bannister is the surviving spouse of Donald Bannister.

5. Betty Bannister is a resident of the State of Illinois and is a proper person to represent the Estate of Donald Bannister.

6. No petition for letters of office has been filed.

7. Pursuant to Donald Bannister's will, Betty Bannister is the only legatee entitled to a recovery under 740 ILCS 180/2.1. Donald Bannister's surviving heirs are as follows: Jeff

Bannister with a last known address of 823 Vernon Drive, East Alton, IL 62024; Jason Bannister, with a last known address of 3819 Oscar Ave., Alton, IL 62002. Donald Bannister has one other heir that is deceased, Steven Bannister.

WHEREFORE, Movant, Betty Bannister, prays that this Honorable Court enter an Order appointing her as Special Administrator and further grant the Movant any and all relief as this Court deems just and equitable.

Respectfully submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: */s/ Joshua A. Edelson*
Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all attorneys of record via this Court's electronic filing system on February 21, 2025.

*/s/ Parris Diggs*
**Gianaris Trial Lawyers, LLC**

**VERIFICATION**

STATE OF Illinois )
) ss.
COUNTY OF Madison )

I, Betty M Bannister being fully duly sworn on oath, state that I have read the foregoing document, and that the answers made herein are true, correct and complete to the best of my knowledge and belief.

Betty M. Bannister
SIGNATURE

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

FILED
MAR 27 2025
CLERK OF CIRCUIT COURT #18
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

Betty Bannister, Individually, and as Special Administrator for the Estate of Donald Bannister, deceased.

Plaintiffs,

vs.

John Crane, et al.,

Defendants.

Case No.: 2023-LA-000191

**ORDER**

The Court, having reviewed Betty Bannister's Verified Second Amended Motion to be Appointed Special Administrator of the Estate of Donald Bannister, deceased, and being apprised that due notice has been provided to all heirs and legatees by movant, hereby **GRANTS** the Verified Second Amended Motion and appoints Betty Bannister as the Special Administrator of the Estate of Donald Bannister, deceased, and gives movant the full power and authority to prosecute any and all actions under the Wrongful Death Act, 740 ILCS 180/1, *et seq*. for the death of Donald Bannister.

**SO ORDERED.**

Date: 3-27-25

Judge

FILED
MAR 27 2025
CLERK OF CIRCUIT COURT #18
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

FILED
MAR 2025
CLERK OF CIRCUIT COURT #18
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

Banister,
Plaintiff,

v.

Shell, et al.,
Defendant.

Case No: 23-LA-191

## CMC/MOTION SETTING ORDER

The Court sets this matter for an appearance to occur on April 24 2025 at 9:30 a.m. in Courtroom #327. The parties or counsel are directed to appear at this setting ready to either discuss the general status of the case or argue the specific motion at issue detailed below.

✓ This matter is set for a case management conference.

____ The __________ filed by __________ on ______ shall be called for hearing.

3-27-25
DATE

JUDGE ANDREW CARRUTHERS

***EFILED***
Case Number 2023LA000191
Date: 3/28/2025 3:12 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| Betty Bannister, Individually, and as Special Administrator for the Estate of Donald Bannister, deceased. | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No.: 2023-LA-000191 |
| John Crane, et al., | ) | |
| Defendants. | ) | |

## ***AMENDED*** **COMPLAINT**

Plaintiff, Betty Bannister ("Plaintiff"), through undersigned counsel, states and alleges as follows for her *Amended* Complaint against the Defendants named herein:

1. Plaintiff currently resides in Alton, Madison County, Illinois and is the lawful widow of Donald Bannister ("Decedent") and was appointed special administrator by this Court.

2. This is a case for damages based on Decedent's Prostate Cancer, Skin Cancer, Bladder Cancer diagnoses in 2005, 2006, and 2013, respectively, that were caused or contributed to by exposures, and failures to protect from exposures to cancer-causing chemicals, namely PFAS/AFFF, asbestos, tobacco smoke, Polyaromatic Hydrocarbons ("PAHs"), and other toxic chemicals manufactured, sold, distributed, marketed, designed, supplied, and/or used by Defendants.

3. From 1964 to 2004, Decedent worked at the Wood River Refinery in Wood River, Madison County, Illinois as a general laborer, firefighter, and truck driver for Shell Oil Company and Phillips 66 on general cleaning, testing, and repair crews, catalytic cracking units, power units, tanks, equipment operating and repairs, fuel tanks, motors, furnaces, fire extinguishing with PFAS/AFFF, and many other job duties where he was regularly and routinely exposed to

PFAS/AFFF, asbestos, PAHs, and other cancer-causing chemicals. Decedent was also sent by his employers to firefighting school for training where he worked utilized and was exposed to PFAS/AFFF.

4.      There is increasing risk for the development of PFAS-associated health effects - both cancerous and non-cancerous - as evidence by the substantial human, animal, and experimental studies. PFAS, the main chemical in AFFF firefighting products, are extremely stable compounds, resistant to degradation, and as a result they persist in the environment for many years. (OECD 2013; ATSDR 2015; NTP 2016). Once humans are exposed to PFAS, these compounds remain in the body for extended periods. PFAS cannot be broken down or metabolized by the human body and there is associated and increased risk for developing Prostate Cancer and Bladder Cancer.

5.      In 1963, Decedent had his first cigarette that was designed, manufactured, advertised, marketed, distributed, and sold by ITG Brands LLC and R.J. Reynolds Tobacco Company, and immediately became addicted and smoking such cigarettes regularly therefrom.

6.      The cigarette products designed, manufactured, advertised, marketed, distributed, and sold by ITG Brands LLC and R. J. Reynolds Tobacco Company that Decedent began to smoke in 1963 did not contain any warnings whatsoever.

7.      Decedent also purchased and smoked Winston Light cigarettes designed, manufactured, advertised, marketed, distributed, and sold by ITG Brands LLC and R.J. Reynolds Tobacco Company with the belief and in reliance that such products were a safer alternative to unfiltered cigarettes as advertised by such manufacturers; but they were not safer alternatives.

8.      Decedent had previously attempted to quit smoking on many occasions but was unable to do so because of his addiction from an early age to the cigarettes manufactured and/or sold by ITG Brands LLC and R.J. Reynolds Tobacco Company.

9.      As a direct and proximate result of said PFAS/AFFF, asbestos, PAHs, other toxic chemicals, and/or cigarette use and purchases, Decedent developed Prostate Cancer, Skin Cancer, and/or Bladder Cancer and first became aware during 2022 that such specific cancers were wrongfully caused by Defendants.

10.     Defendant John Crane, Inc. is a corporation either organized under the laws of the State of Illinois or with their principal place of business located within the State of Illinois.

11.     Venue in this matter is proper in the Circuit Court of Madison County, Illinois, pursuant to 735 ILCS 5/2-101 (1), in that, at all relevant times herein, Defendants Shell USA, Inc., 3M, John Crane, Inc., and Phillips 66 were and are residents, for the purposes of 735 ILCS 5/2-102(a), of Madison County, Illinois in that each maintains a fixed place of business at which the affairs of Defendants and each of them are conducted in furtherance of defendants' corporate activity.

12.     Venue in this matter is also proper in the Circuit Court of Madison County, Illinois, pursuant to 735 ILCS 5/2-101 (2), in that, at all relevant times herein, it is the county in which the transaction or some part thereof occurred out of which this cause of action arises.

13.     This Court has jurisdiction over all Defendants pursuant to 735 ILCS 5/2-209 because Decedent was exposed to and/or purchased the cancer-causing chemicals in the State of Illinois and each Defendant committed a tortious act within this State.

**COUNT 1**
**VS. PFAS DEFENDANTS**
**(WRONGFUL DEATH – NEGLIGENCE)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. Plaintiff brings Count 1 against Defendants 3M Company, *f/k/a* Minnesota Mining and Manufacturing Company ("3M"), Tyco Fire Products, L.P., successor in interest to The Ansul Company ("Tyco"), Chemguard ("Chemguard"), and E. I. du Pont de Nemours & Co. ("Dupont") (collectively the "PFAS Defendants").

3. At all times herein set forth, the PFAS Defendants collectively manufactured, sold, distributed, or supplied materials/products containing synthetic and toxic per- and polyfluoroalkyl substances, collectively known as "PFAS," which were highly utilized in coal mines where Decedent worked and by Decedent himself in the manner and for the purposes for which they were intended by the PFAS Defendants. These materials and/or products included, but are not limited to, the sale, manufacture, distribution, and/or supply of firefighting and fire suppression materials/products.

4. PFAS binds to proteins in the blood of animals and humans exposed to such materials and not only remain and persist over long periods of time, but, due to their unique chemical structure, accumulate and build up in the blood/body of the exposed individuals with each additional exposure, no matter how small. PFAS can travel long distances, move through soil, seep into groundwater, or be carried through air.

5. Decedent's exposure to and inhalation, ingestion, and absorption of PFAS from said products/materials were completely foreseeable and could or should have been anticipated by the PFAS Defendants.

6. The PFAS Defendants knew or should have known that PFAS and its

materials/products that contained PFAS were hazardous and had a toxic, poisonous, and highly deleterious effect upon the health of persons, including Decedent, inhaling, ingesting, absorbing through the skin or otherwise absorbing them.

7.      By at least the end of the 1980s, the PFAS Defendants, including at least 3M and DuPont, understood that, not only did PFAS (including at least PFOA and PFOS) get into and persist and accumulate in human blood and in the human body, but that once in the human body and blood, particularly longer-chain PFAS, such as PFOS and PFOA, had a long half-life, meaning that they would take a very long time (years) before even half of the material would start to be eliminated (assuming no further exposures), which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposures continued.

8.      By at least 2010, additional research and testing performed by the PFAS Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers, like Decedent, exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts, which such Defendants' own scientists, lawyers, and advisors recommended be studied further to assess the extent to which PFAS exposures were causing those effects.

9.      When the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials first began learning of PFAS exposures in the United States and potential associated adverse health effects, the PFAS Defendants repeatedly assured and represented to such entities and the public that such exposures presented no risk of harm and were of no legal, toxicological, or medical significance of any kind.

10.     The PFAS Defendants, especially 3M and Dupont, withheld and concealed its

knowledge of the health hazards of PFAS, including its ability to cause cancer and fatal blood

diseases, such as Prostate Cancer and Bladder Cancer, with the intent, expectation, and

foreseeability that Decedent, his employers, and others similarly situated, as well as its customers,

would rely upon its statements and omissions in determining whether to work with, around, and/or

use its materials/products containing PFAS.

11.    Decedent was unaware of the hazards of exposure to PFAS, specifically the effects

of long-term exposure.

12.    At all times herein relevant, the PFAS Defendants had a duty to exercise reasonable

care and caution for the safety of Decedent and others who worked with and/or around PFAS and

materials/products containing PFAS.

13.    The PFAS Defendants failed to exercise ordinary care and caution for the safety of

Decedent in one or more of the following respects:

      a. Included PFAS in their materials and/or products, and/or specified the use of
        PFAS, even though it was completely foreseeable and could or should have
        been anticipated that persons, such as Decedent, working with or around them
        would inhale, ingest or otherwise absorb PFAS;

      b. Included PFAS in their materials and/or products, and/or specified the use of
        PFAS, when they knew or should have known that the same would have a toxic,
        poisonous and highly deleterious effect upon the health of persons, such as
        Decedent, inhaling, ingesting or otherwise absorbing it;

      c. Included PFAS in their materials and/or products, and/or specified the use of
        the same, when adequate substitutes were available;

      d. Failed to provide any or adequate warnings to persons, such as Decedent,
        working with and around its products/materials containing PFAS of the dangers
        of inhaling, ingesting or otherwise absorbing the same;

      e. Failed to provide any or adequate instructions concerning safe and/or safer
        methods of working with and around its materials/products containing PFAS to
        Decedent, Decedent's employers, and/or others similarly situated, including
        specific instructions on how to avoid inhaling, ingesting, or otherwise absorbing
        the same; and/or,

      f. Failed to conduct tests on their respective materials/products containing PFAS
        to determine the hazards to which persons, such as Decedent, who might be

exposed while working with and around the same.

14.    As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the PFAS Defendants, Decedent was exposed to and inhaled, ingested, or otherwise absorbed PFAS in a sufficient amount to cause and/or contribute to his Prostate Cancer and Bladder Cancer diagnoses.

15.    As a direct and proximate result of one or more of the foregoing acts or omissions on the part of the PFAS Defendants, Decedent was disabled and disfigured, compelled to expend and become liable for large sums of money for hospital, medical, and other healthcare services necessary for the treatment of his Prostate Cancer and Bladder Cancer, and caused him to experience great physical pain and mental anguish.

16.    The PFAS Defendants in this case knew of the risks PFAS presented to the health of human beings, especially those like Decedent who worked with and around PFAS, and instead of informing those like Decedent about the risks associated with exposure to PFAS and giving them a chance to choose if the risk was worth the use, the PFAS Defendants simply took that agency away from people like Decedent.

17.    The PFAS Defendants believed that their bottom lines were more important than the health and lives of people like Decedent and believed that their bottom lines were more important than Decedent's health and the love and comfort that the rest of Decedent's family received from him. The PFAS Defendants were wrong.

WHEREFORE, Plaintiff, Betty Bannister, prays this Court to enter judgment in her favor and against the PFAS Defendants named herein jointly and severally, to award compensatory damages in excess of the jurisdictional limit for this court, and to grant such other and further relief as this Court deems appropriate.

**COUNT 2**
**VS. PFAS DEFENDANTS**
**(SURVIVAL ACT – NEGLIGENCE)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. As a direct and proximate result of PFAS Defendants' acts and omissions alleged above, Decedent was exposed to PFAS, as alleged above, which caused Decedent to develop cancers, experience conscious pain and suffering before his death, and result in Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Betty Bannister, prays this Court to enter judgment in her favor and against the PFAS Defendants named herein jointly and severally, to award compensatory damages in excess of the jurisdictional limit for this court, and to grant such other and further relief as this Court deems appropriate.

**COUNT 3**
**VS. PFAS DEFENDANTS**
**(WRONGFUL DEATH – STRICT LIABILITY: DESIGN DEFECT & FAILURE TO WARN)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. At all times herein set forth, the PFAS Defendants collectively manufactured, sold, distributed, or supplied PFAS or materials/products containing PFAS that were utilized in the coal mines where Decedent worked and by Decedent himself in the manner and for the purposes for which they were intended by the PFAS Defendants. These materials and/or products included, but are not limited to, the sale, manufacture, distribution, and/or supply of firefighting and fire suppression materials/products.

3. PFAS binds to proteins in the blood of animals and humans exposed to such materials and not only remain and persist over long periods of time, but, due to their unique chemical structure, accumulate and build up in the blood/body of the exposed individuals with

each additional exposure, no matter how small. PFAS can travel long distances, move through soil, seep into groundwater, or be carried through air.

4.     By at least the end of the 1980s, the PFAS Defendants, including at least 3M and DuPont, understood that, not only did PFAS (including at least PFOA and PFOS) get into and persist and accumulate in human blood and in the human body, but that once in the human body and blood, particularly longer-chain PFAS, such as PFOS and PFOA, had a long half-life, meaning that they would take a very long time (years) before even half of the material would start to be eliminated (assuming no further exposures), which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposures continued.

5.     By at least 2010, additional research and testing performed by the PFAS Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers, like Decedent, exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts, which such Defendants' own scientists, lawyers, and advisors recommended be studied further to assess the extent to which PFAS exposures were causing those effects.

6.     When the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials first began learning of PFAS exposures in the United States and potential associated adverse health effects, the PFAS Defendants repeatedly assured and represented to such entities and the public that such exposures presented no risk of harm and were of no legal, toxicological, or medical significance of any kind.

7.     The PFAS Defendants, especially 3M and Dupont, withheld and concealed its knowledge of the health hazards of PFAS, including its ability to cause cancer and fatal blood

diseases, such as Prostate Cancer and Bladder Cancer, with the intent, expectation, and

foreseeability that Decedent, his employers, and others similarly situated, as well as its customers,

would rely upon its statements and omissions in determining whether to work with, around, and/or

use its materials/products containing PFAS.

        8.      Decedent's exposure to and inhalation, ingestion, and absorption of PFAS from said

products/materials were completely foreseeable and could or should have been anticipated by the

PFAS Defendants.

        9.      The PFAS and said materials/products containing PFAS were in a defective and

unreasonably dangerous condition at the time they left the control of the PFAS Defendants in that:

      a.   They contained and incorporated PFAS, a synthetic and highly toxic substance, and materials/products containing PFAS in a manner that would be inhaled, ingested, or absorbed by end-users and were not accompanied by any, or adequate, warnings or instructions regarding the hazards associated with the regular, expected and intended use of said materials/products and/or any such warning or instructions were not adequate;

      b.   They designed and/or manufactured PFAS and materials/products containing PFAS when it knew or should have known that the unique chemical structure of PFAS was highly toxic to humans and resistant to environmental degradation and bind to proteins in the blood of humans exposed to PFAS where PFAS would not only remain and persist over long periods of time but would accumulate and build up in the blood/body of the exposed individual with each additional exposure, no matter how small and cause adverse health effects;

      c.   They designed and/or manufactured PFAS and materials/products containing PFAS when it knew or should have known that the unique chemical structure of PFAS was resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment;

      d.   They repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind;

      e.   They continued to collectively manufacture, sell, distribute, and/or supply PFAS or materials/products containing PFAS that were utilized in coal mines and by Decedent after it knew or should have known that exposure to PFAS caused or contributed to many adverse health outcomes; and/or,

     f.   They contained and incorporated, PFAS, a synthetic and highly toxic substance, and materials/products containing PFAS in a manner that would be inhaled, ingested, or absorbed by end-users and were more dangerous than an ordinary consumer would anticipate.

10.    The materials/products containing PFAS that Decedent was supplied, used, and worked around did not contain a warning of the health risks associated with PFAS and were defective in design and formulation and thus unreasonably dangerous when they left the hands of the PFAS Defendants, the manufacturers and suppliers, and reached the end user of the products, including Decedent, without substantial alteration in the condition in which they were sold and/or left the control of the PFAS Defendants.

11.    The PFAS Defendants, which are engaged in the business of selling materials/products containing PFAS, placed the materials/products containing PFAS into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the materials/products.

12.    The materials/products containing PFAS manufactured by the PFAS Defendants were unreasonable and dangerously defective beyond the extent contemplated by ordinary users with ordinary knowledge regarding these products.

13.    At all relevant times, said materials/products containing PFAS were used by Decedent in the manners and environments anticipated, expected, and intended by the PFAS Defendants, and which were reasonably foreseeable to the PFAS Defendants.

14.    The PFAS Defendants, through the foregoing acts and/or omissions, breached their duty to Decedent.

15.    The product defects alleged above were a substantial contributing cause of the injuries and damages suffered by Decedent and as a direct and proximate result of one or more of the foregoing acts or omissions on the part of the PFAS Defendants, Decedent was exposed to and

inhaled, ingested, or otherwise absorbed PFAS in a sufficient amount to cause and/or contribute
to Decedent's Prostate Cancer and Bladder Cancer diagnosis.

16.     As a direct and proximate result of one or more of the foregoing acts or omissions
on the part of the PFAS Defendants, Decedent has been disabled and disfigured, compelled to
expend and become liable for large sums of money for hospital, medical and other healthcare
services necessary for the treatment of his Prostate Cancer and Bladder Cancer, and caused to
experience great physical pain and mental anguish and will continue to incur these damages in the
future.

17.     The PFAS Defendants in this case knew of the risks PFAS presented to the health
of human beings, especially those like Decedent who worked with and around PFAS, and instead
of informing those like Decedent about the risks associated with exposure to PFAS and giving them
a chance to choose if the risk was worth the use, the PFAS Defendants simply took that agency
away from people like Decedent.

18.     The PFAS Defendants believed that their bottom lines were more important than
the health and lives of people like Decedent and believed that their bottom lines were more
important than Decedent's health and the love and comfort that the rest of Decedent's family
received from him. The PFAS Defendants were wrong.

WHEREFORE, Plaintiff, Betty Bannister, prays this Court to enter judgment in her favor
and against the PFAS Defendants named herein jointly and severally, to award compensatory
damages in excess of the jurisdictional limit for this court, and to grant such other and further relief
as this Court deems appropriate.

**COUNT 4**
**VS. PFAS DEFENDANTS**
**(SURVIVAL ACT – STRICT LIABILITY: DESIGN DEFECT & FAILURE TO WARN)**

1.      Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.      As a direct and proximate result of PFAS Defendants' acts and omissions alleged above, Decedent was exposed to PFAS, as alleged above, which caused Decedent to develop cancers, experience conscious pain and suffering before his death, and result in Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

        WHEREFORE, Plaintiff, Betty Bannister, prays this Court to enter judgment in her favor and against the PFAS Defendants named herein jointly and severally, to award compensatory damages in excess of the jurisdictional limit for this court, and to grant such other and further relief as this Court deems appropriate.

**COUNT 5**
**VS. EMPLOYER DEFENDANTS**
**(WRONGFUL DEATH – NEGLIGENCE)**

1.      Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2.      Decedent was employed by Shell USA, Inc. and Phillips 66 Company from 1967 – 2004 (collectively "Employer Defendants").

3.      Daily and throughout Decedent's employment with the Employer Defendants, Decedent was regularly and routinely exposed to various toxic substances known to be cancer-causing agents, including asbestos, PFAS/AFFF, PAHs, and potentially others that may be discovered during litigation (collectively the "toxic substances" or "toxic-containing substances, materials, products, and/or equipment").

4.      Decedent's last occupational exposure to the foregoing toxic substances was on or about 2004. Accordingly, Decedent would be precluded from recovery of benefits under the Illinois

Workers Compensation and Occupational Disease Acts and, therefore, Decedent is entitled to bring this civil action pursuant to 820 ILCS 305/1.2.7 against these Defendants.

5.    Plaintiff's exposure to the toxic substances was foreseeable and could or should have been anticipated by the Employer Defendants, including that Decedent would be exposed at times and places outside the course of employment by the Employer Defendants.

6.    The Employer Defendants created an unreasonable risk of harm to Decedent and others by using toxic substances and toxic-containing materials, products, and/or equipment. As a result of creating such risk of harm, the Employer Defendants owed a duty to Decedent and others to use ordinary care in conducting any operations or activities in a manner designed to prevent or reduce exposure to toxic substances including, but not limited to, an affirmative duty to warn and/or communicate the hazards of the same. The Employer Defendants had a duty to see that areas in which Decedent worked were reasonably safe and to protect Decedent from harm in conducting any operations or activities including, but not limited to, harm arising from said operations or activities but occurring away from such locations.

7.    The Employer Defendants breached its duties to Decedent and were negligent in one or more of the following respects:

    a.  Specified/required the use, application, and/or removal of toxic substances and/or toxic-containing materials, products, and/or equipment by Decedent and others, including coworkers of Decedent and other contractors, in the vicinity of Decedent and/or in areas in which Decedent worked;

    b.  Required Decedent to perform work in the vicinity of those using, applying, and/or removing toxic substances and/or toxic-containing materials, products, and/or equipment;

    c.  Purchased and/or provided toxic substances and/or toxic-containing materials, products, and/or equipment for use by its employees, including Decedent, and in its operations;

    d.  Failed to replace toxic substances and/or toxic-containing materials and/or products with non-toxic substitutes;

e. Failed to warn and/or communicate to Decedent that he was working with and/or around toxic substances and/or toxic-containing materials, products, and/or equipment and of the hazards associated therewith, including that Decedent was being exposed and the adverse health effects thereof;
f. Failed to require and/or advise Decedent and others including Decedent's co-workers and other contractors to use equipment and practices designed to prevent or reduce the release, ingestion, inhalation, and/or exposure to toxic substances and/or toxic-containing materials;
g. Failed to provide equipment and controls designed to prevent or reduce the release of toxic substances and/or toxic-containing materials and exposure to such;
h. Failed to provide employees, including Decedent, with appropriate and/or adequate personal respiratory protection;
i. Failed to conduct medical monitoring of employees, including Decedent, and/or failed to advise employees, including Decedent, of the results of medical examinations and/or to do so completely and accurately;
j. Failed to require and/or advise its employees of practices designed to reduce and/or prevent carrying toxic substances and/or toxic-containing materials away from work; and/or,
k. Violated federal, state and/or local laws and regulations with regard to the above.

8. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions on the part of the Employer Defendants, Decedent was exposed to toxic substances as described, causing Decedent to develop Prostate Cancer and Bladder Cancer, and thereby causing him to sustain damages as outlined above.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against the Employer Defendants named herein and for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems appropriate.

**COUNT 6**
**VS. EMPLOYER DEFENDANTS**
**(SURVIVAL ACT – NEGLIGENCE)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. As a direct and proximate result of Employer Defendants' acts and omissions alleged above, Decedent was exposed to various toxic substances, as alleged above, which caused Decedent to develop cancers, experience conscious pain and suffering before his death, and result in Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against the Employer Defendants named herein and for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems appropriate.

**COUNT 7**
**VS. EMPLOYER DEFENDANTS**
**(WRONGFUL DEATH – WILLFUL AND WANTON MISCONDUCT)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. The Employer Defendants possessed actual knowledge concerning the hazards of toxic substances including, but not limited to, that workers exposed to toxic substances are highly likely to be harmed in some manner. The Employer Defendants also possessed actual knowledge concerning the utilization of the toxic substances at the facilities where Decedent worked.

3. The Employer Defendants' knowledge concerning the hazards of the toxic substances and its utilization at the locations where Decedent worked was superior to any knowledge, information, or notice on the part of Decedent concerning the same. At all relevant times, Decedent lacked knowledge and information concerning the hazards of the toxic substances and had no or incomplete knowledge and information as to when and where toxic substances were utilized at the locations where he worked.

4.      The Employer Defendants had a duty to refrain from willfully and wantonly subjecting its employees, including Decedent, to an unreasonable risk of harm.

5.      The Employer Defendants willfully, wantonly, and in reckless and conscious disregard for the health, safety, and well-being of Decedent breached said duty in one or more of the following respects:

   a. Specified/required the use, application, and/or removal of toxic substances and/or toxic-containing materials, products, and/or equipment by Decedent and others, including coworkers of Decedent and other contractors, in the vicinity of Decedent and/or in areas in which Decedent worked;
   b. Required Decedent to perform work in the vicinity of those using, applying, and/or removing toxic substances and/or toxic-containing materials, products, and/or equipment;
   c. Purchased and/or provided toxic substances and/or toxic-containing materials, products, and/or equipment for use by its employees, including Decedent, and in its operations;
   d. Failed to replace toxic substances and/or toxic-containing materials and/or products with non-toxic substitutes;
   e. Failed to warn and/or communicate to Decedent that he was working with and/or around toxic substances and/or toxic-containing materials, products, and/or equipment and of the hazards associated therewith, including that Decedent was being exposed and the adverse health effects thereof;
   f. Failed to require and/or advise Decedent and others including Decedent's co-workers and other contractors to use equipment and practices designed to prevent or reduce the release, ingestion, inhalation, and/or exposure to toxic substances and/or toxic-containing materials;
   g. Failed to provide equipment and controls designed to prevent or reduce the release of toxic substances and/or toxic-containing materials and exposure to such;
   h. Failed to provide employees, including Decedent, with appropriate and/or adequate personal respiratory protection;
   i. Failed to conduct medical monitoring of employees, including Decedent, and/or failed to advise employees, including Decedent, of the results of medical examinations and/or to do so completely and accurately;
   j. Failed to require and/or advise its employees of practices designed to reduce and/or prevent carrying toxic substances and/or toxic-containing materials away from work; and/or,
   k. Violated federal, state and/or local laws and regulations with regard to the above.

l. Concealed and/or misrepresented the hazards of the toxic substances to its employees, including Decedent; and/or,

m. Concealed from and/or misrepresented to their employees, including Decedent, some and/or all of the times, places, and ways in which the toxic substances were used at such locations and/or exposure levels at the same;

6. As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions on the part of the Employer Defendants, Decedent was exposed to toxic substances as described, causing Decedent to develop Prostate Cancer and Bladder Cancer, and thereby causing him to sustain damages as outlined above.

7. An award of punitive damages is necessary and appropriate to punish the Employer Defendants for its willful, wanton, and/or intentional misconduct and/or reckless disregard for the wrongful death of Decedent and the health, safety and well-being of others, and to deter these Defendants and others similarly situated from engaging in like misconduct in the future.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against the Employer Defendants named herein and for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems appropriate. Plaintiff further prays for an award of punitive damages separately as to these Defendants.

**COUNT 8**
**VS. EMPLOYER DEFENDANTS**
**(SURVIVAL ACT – WILLFUL AND WANTON MISCONDUCT)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. As a direct and proximate result of Employer Defendants' acts and omissions alleged above, Decedent was exposed to various toxic substances, as alleged above, which caused Decedent to develop cancers, experience conscious pain and suffering before his death, and result in Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against the Employer Defendants named herein and for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems appropriate. Plaintiff further prays for an award of punitive damages separately as to these Defendants.

**COUNT 9 – WRONGFUL DEATH – NEGLIGENCE**
**(VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. Starting in 1963, Decedent smoked cigarette products that were designed, manufactured, advertised, marketed, distributed, and/or sold by these Defendants.

3. These Defendants, prior to selling and/or distributing their cigarette products that Decedent purchased and smoked, knew that exposure, inhalation, and ingestion of cigarette smoke was harmful to human beings and that it could cause injuries, including Prostate Cancer, Skin Cancer, and Bladder Cancer.

4. These Defendants' cigarette products, including contained latent characteristics and/or latent functional defects at the time they were manufactured and at the time Decedent was exposed to them in that said product contained tar, nicotine, and other harmful substances that these Defendants knew or in the exercise of reasonable care, should have known would cause injuries to those who regularly used them.

5. These Defendants were in the business of designing, manufacturing, advertising, marketing, distributing, and/or selling cigarette products during the times pertinent to this suit, and knew that Decedent and others similarly situated would encounter its cigarette products, and would be exposed to the inhalation of the smoke from said products and result in the development of life-

threatening or fatal injuries including, but not limited to, Prostate Cancer, Skin Cancer, and Bladder Cancer.

    6.    These Defendants were negligent in the following respects:

    a.  Prior to 1966 and after Decedent had already been exposed to and hooked on these Defendants' cigarette products, failing to warn of the addictive nature of its cigarette products and the adverse health effects from using such products and/or the potential to develop a habit or an addiction and suffer health effects from consistent exposure to cigarette smoke from its cigarette products as a bystander;

    b.  Designing, manufacturing, developing, selling, and marketing cigarette products that were milder, had better taste, and contained nicotine so that foreseeable users, such as Decedent, would find smoking these Defendants' products pleasurable and in turn would lead Decedent, and others similarly situated, to begin smoking and/or to increase consumption;

    c.  Designing, manufacturing, selling, and marketing cigarette products as "light" or "filtered" that it knew were no safer, and were even more hazardous than other "regular" cigarettes;

    d.  Failing to disclose and/or warn that its "light" or "filtered" cigarettes would not be less hazardous as smokers would smoke more and/or alter their smoking habits such that their intake of tar, nicotine, and other harmful substances would not be reduced;

    e.  Continuing to fraudulently market and sell multiple brands as "light" or "filtered" cigarettes and causing smokers, such as Decedent, to wrongly believe that its "light" or "filtered" cigarettes reduce the harms of smoking;

    f.  Failing to develop and utilize alternative design, manufacturing methods, and/or materials to reduce and/or eliminate harmful materials and/or characteristics from the cigarette products these Defendants designed, manufactured, advertised, marketed, distributed, and/or sold;

    g.  Continuing to manufacture, distribute, and sell cigarette products when these Defendants knew at the time of said manufacture, distribution, and/or sale that such products could cause, and in fact were more likely to cause injuries, including EC, to foreseeable users, such as Decedent, when used as intended;

    h.  Concealing information while affirmatively misrepresenting to Decedent and other members of the public through advertising, "informational" communications, sponsorship of sports activities, concerts, and other events, testimony and public statements by officers, agents, and employees of the cigarette manufacturers, by labels and otherwise, that its cigarette products manufactured, distributed and/or sold were safe and/or not proven to be

dangerous in their ordinary and foreseeable use, which material misrepresentations induced Decedent to use and/or continue to use these Defendants' cigarette products and expose himself to the hazards of developing disease and/or suffering injuries, including EC;

i.  Failing to test and/or adequately test its cigarette products before offering them for sale and use by Decedent, and other persons similarly situated;

j.  Failing to remove and recall all said cigarette products from the stream of commerce and the marketplace upon ascertaining that said products would cause serious injuries, including EC, which is permanent and likely fatal;

k.  Manipulating, failing to reduce, and/or eliminating nicotine from its cigarette products to prevent Decedent, who was likely addicted to the nicotine in these Defendants' cigarette products, from quitting and/or reducing consumption;

l.  Including nicotine, or artificially high levels of nicotine, in its cigarette products to prevent Decedent, and other persons similarly situated, from quitting and/or reducing consumption;

m.  Utilizing tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances deleterious, poisonous, and highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

n.  Designing and manufacturing cigarettes to be inhalable and thus unreasonably dangerous; and/or,

o.  Placing additives and ingredients in its cigarettes to make them easier to inhale and unreasonably addictive.

7.    These Defendants' cigarette products that Decedent was exposed to were used by Decedent in the manner in which they were intended or reasonably foreseeable to these Defendants.

8.    These Defendants' cigarette products failed to perform as safely as Decedent expected it would in that they caused him to develop Prostate Cancer and Bladder Cancer because of his life-long exposure and inhalation of cigarette smoke from these Defendants' cigarette products.

9.    These Defendants' cigarette products suffered from a manufacturing and design defect in that they contained arsenic, carcinogens, toxic chemicals, toxic gases, nicotine, tars, and other substances that Defendants knew or should have known were extremely harmful in that exposure to such substances causes injuries and death, and for which there were available materials

to substitute and/or manufacturing methods to reduce and/or eliminate these substances in the design and manufacture of the product.

10. As a direct and proximate result of these Defendants' negligent acts and/or omissions, Decedent developed Prostate Cancer, Skin Cancer, and Bladder Cancer and was compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of his cigarette induced disease and conditions and experienced great physical pain and mental anguish, as a result of the inhalation, ingestion, and absorption of these Defendants' cigarette products.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest and such other and further relief as this Court deems appropriate.

**COUNT 10 – SURVIVAL ACT – NEGLIGENCE**
**(VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. As a direct and proximate result of Defendants' acts and omissions alleged above, Decedent was exposed to various toxic substances, as alleged above, which caused Decedent to develop cancers, experience conscious pain and suffering before his death, and result in Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest and such other and further relief as this Court deems appropriate.

**COUNT 11 – WRONGFUL DEATH – STRICT LIABILITY: DESIGN DEFECT & FAILURE TO WARN (VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. These Defendants, referenced above, were and have been designers, manufacturers, advertisers, distributors, and/or sellers of cigarette products.

3. The products complained of were cigarette products designed, manufactured, advertised, distributed, and/or sold by these Defendants and used by Decedent.

4. The aforesaid products were distributed, supplied, sold, and/or otherwise placed into the stream of commerce, and/or caused to be placed into the stream of commerce, by these Defendants.

5. Decedent was exposed to these Defendants' cigarette products over many years during which time smoke from these Defendants' cigarette products were breathed in and inhaled by Decedent, which caused or contributed to him developing Prostate Cancer, Skin Cancer, and Bladder Cancer.

6. At the time these Defendants designed, manufactured, advertised, marketed, distributed, and/or sold the aforesaid cigarette products, such products were expected to, and did, reach Decedent in a condition without substantial change from that in which such products were when within the possession of these Defendants.

7. These Defendants' cigarette products were in a condition unreasonably dangerous to users, like Decedent, and said products were expected to and did reach Decedent without substantial change affecting that condition.

8. These Defendants' cigarette products were, by way of defective design and failures to warn of the health hazards of its "light" or "filtered" cigarette products, in a condition

unreasonably dangerous to users, like Decedent, and said products were expected to and did reach Decedent without substantial change affecting that condition.

9. These Defendants' cigarette products were unreasonably dangerous due to their design and failures to warn and the risk of danger to users, like Decedent, outweighed the benefits.

10. These Defendants' cigarette products were dangerous beyond the expectation of the ordinary user or consumer when used as intended or in a manner reasonably foreseeable by these Defendants.

11. These Defendants' cigarette products were unreasonably dangerous because a less dangerous design and/or modification was economically and scientifically feasible and because these Defendants could have warned of the health hazards associated with its "light" or "filtered" cigarette products.

12. These Defendants' cigarette products were in an unreasonably dangerous and defective condition in that such products:

a. Contained, by design, tar, nicotine, carcinogens, toxic gasses, and other substances deleterious, poisonous, and highly harmful to Decedent;
b. Contained by design tar, nicotine, carcinogens, toxic gasses, and other substances deleterious, poisonous, and highly harmful when and after it became feasible to design and manufacture reasonably comparable products not containing those substances or containing less of them;
c. Failed to filter the harmful substances so that during ordinary use, such materials would not be liberated into the air and/or breathed by the smoker such as Decedent;
d. Through the use of filters, manufacturing methods, engineering methods, and/or the materials utilized were designed in such a way to make smoking its cigarette products more tasteful, pleasurable and less likely to trigger the smoker's own biological self defense mechanisms which otherwise may have limited and/or altered the smoker's behavior in such a way that the smoker may have smoked less, inhaled less deeply or not at all;
e. Prior to 1966 and after Decedent had already been exposed to and hooked on these Defendants' cigarette products, failing to warn of the addictive nature of its cigarette products and the adverse health effects from using such products

and/or the potential to develop an addiction and suffer health effects from consistent exposure to cigarette smoke from its cigarette products as a bystander;

f.  Designing, manufacturing, selling, and marketing cigarette products as "light" or "filtered" that it knew were no safer, and were even more hazardous than other "regular" cigarettes;

g.  Failing to disclose and/or warn that its "light" or "filtered" cigarettes would not be less hazardous as smokers would smoke more and/or alter their smoking habits such that their intake of tar, nicotine, and other harmful substances would not be reduced;

h.  Continuing to fraudulently market and sell multiple brands as "light" or "filtered" and causing smokers, such as Decedent, to wrongly believe that its "light" or "filtered" cigarettes reduce the harms of smoking;

i.  Utilized tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances deleterious, poisonous, and highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

j.  The nature and degree of the danger of Defendants' cigarette products were beyond the expectation of the ordinary consumer when used as intended or in a reasonably foreseeable manner;

k.  Designing and manufacturing their cigarettes to be inhalable and thus unreasonably dangerous; and/or,

l.  Placing additives and ingredients in cigarettes to making them easier to inhale and addictive.

13.    Decedent, unaware of the defective and unreasonably dangerous condition of these Defendants' cigarette products, and at a time when such products were being used for the purposes for which they were intended, was constantly exposed to, and breathed, smoke from these Defendants' cigarette products.

14.    These Defendants knew that their cigarette products would be used without inspection for defects.

15.    As a direct and proximate result of the foregoing acts or omissions on the part of these Defendants and the unreasonably dangerous condition of its cigarette products, by way of design defect and failures to warn, these Defendants are strictly liable to Decedent for his injuries therefrom, including Decedent's development of Prostate Cancer, Skin Cancer, and Bladder Cancer

and the large sums of monies for hospital, medical, and other health care services necessary for the treatment of his cigarette induced disease and the great physical pain and mental anguish, as a result of the inhalation, ingestion, and absorption of these Defendants' cigarette products.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest and such other and further relief as this Court deems appropriate.

**COUNT 12 – SURVIVAL ACT – STRICT LIABILITY: DESIGN DEFECT & FAILURE TO WARN**
**(VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. As a direct and proximate result of Defendants' acts and omissions alleged above, Decedent was exposed to various toxic substances, as alleged above, which caused Decedent to develop cancers, experience conscious pain and suffering before his death, and result in Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest and such other and further relief as this Court deems appropriate.

**COUNT 13 – WRONGFUL DEATH – FRAUDULENT CONCEALMENT**
**(VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. The cigarette manufacturers, including Defendants herein, have concealed vast amounts of knowledge regarding the health hazards of cigarettes and their addictive nature over the course of the last 66 years.

3.      The cigarette manufacturers, including Defendants herein, fraudulently market(ed) and sell and sold multiple brands as "filtered" or "light" knowing that smokers wrongly believe that such cigarettes reduce the harms of smoking and despite knowing internally that such cigarettes are just as addictive, dangerous, and deadly as non-filtered cigarettes.

4.      Decedent was unaware of the extent of danger of these Defendants' cigarette products, the addictive nature of these Defendants' cigarette products, and that light, low tar, low nicotine, and/or filtered cigarettes were just as dangerous as unfiltered cigarettes. The knowledge and information concealed by the cigarette manufacturers, including the Defendants named herein, was concealed by entities which had superior knowledge regarding the health aspects of cigarettes than Decedent.

5.      Indeed, Decedent was not aware of any dangers of smoking cigarettes when he first began to smoke.

6.      Had these Defendants not for many years concealed and/or suppressed their knowledge of the dangers of their cigarette products or spread false information designed to cause confusion, including that the products caused cancer and other serious health issues, Decedent would not have started smoking or been hooked at an early age and/or would have been able to stop earlier and thereby his risk of injury from cigarettes, including Prostate Cancer, Skin Cancer, and Bladder Cancer, would have been eliminated or greatly reduced.

7.      By the time Decedent started smoking and was hooked on these Defendants' cigarette products he was also not aware that the cigarettes were as addictive as they are. Had these Defendant not concealed and/or suppressed its knowledge of the addictiveness of its cigarette products from Decedent and the public, Decedent would not have started smoking or been hooked at an early age and/or would have significantly reduced his cigarette intake and thereby his risk of

injury from cigarettes, including Prostate Cancer, Skin Cancer, and Bladder Cancer, would have been greatly reduced or eliminated.

8. Decedent switched to “light” or “filtered” cigarettes, including Winston Lights, because he believed that they were safer than regular cigarettes and free from many health risks. Decedent continued his cigarette intake believing that such cigarettes were less of a health risk. Had these Defendants not concealed and/or suppressed their aforementioned knowledge of the dangers of their cigarette products from Decedent and the public, including the dangers of such cigarettes, Decedent would have stopped smoking entirely, been more likely to be able to stop smoking, or significantly reduced his cigarette intake rather than switch to such cigarettes and thereby his risk of injury from such cigarettes, including Prostate Cancer, Skin Cancer, and Bladder Cancer, would have been reduced or eliminated.

9. The knowledge and information concealed by the cigarette manufacturers, including the Defendants named herein, was concealed by entities that had superior knowledge regarding the health aspects of cigarettes than Decedent.

10. These Defendants had a duty to disclose to the American public, including Decedent, all material facts about the health hazards of smoking cigarettes, including their highly addictive qualities.

11. These Defendants directly, and indirectly through its trade associations, repeatedly made representations and statements about the safety of cigarettes and their effect on human health and the issue of nicotine addiction, and repeatedly and consistently made public statements: (A) denying that cigarettes were hazardous; (B) denying that cigarettes caused cancer or other serious illnesses; (C) denying that cigarettes contained any harmful ingredients; (D) denying that the ingredients of cigarettes including nicotine and other chemicals were manipulated to cause people

to continue to smoking or initiate or sustain addiction; (E) denying that nicotine in cigarettes is addictive.

12. Such statements and representations were materially false, incomplete, and fraudulent at the time these Defendants, and their agents, made them and knew of their falsity.

13. These Defendants intended for the American Public, including Decedent, to rely upon such false statements so that: people would start smoking; current smokers would continue to smoke; fewer smokers would attempt to quit or recognize the urgent need to quit; and lawmakers would not pass laws intended to reduce smoking and/or exposure to cigarette smoke.

14. As a direct and proximate result of the aforementioned concealment and/or suppression of material information by the cigarette manufacturers, including Defendant herein, Decedent smoked and/or continued to smoke and was otherwise exposed to these Defendants' cigarette products that caused or contributed to him developing Prostate Cancer, Skin Cancer, and Bladder Cancer and becoming liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of his cigarette induced disease and the great physical pain and mental anguish.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest and such other and further relief as this Court deems appropriate.

**COUNT 14 – SURVIVAL ACT – FRAUDULENT CONCEALMENT**
**(VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. As a direct and proximate result of Defendants' acts and omissions alleged above, Decedent was exposed to various toxic substances, as alleged above, which caused Decedent to

develop cancers, experience conscious pain and suffering before his death, and result in Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest and such other and further relief as this Court deems appropriate.

**COUNT 15 – WRONGFUL DEATH – WILLFUL AND WANTON MISCONDUCT (VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. These Defendants had a duty to refrain from willful and wanton acts, omissions, and/or misconduct which would foreseeably expose Decedent and others similarly situated to an unreasonable risk of harm.

3. These Defendants willfully, wantonly, and in reckless and conscious disregard for the health, safety, and well-being of Decedent breached said duty in one or more of the following respects:

a. Prior to 1966 and after Decedent had already been exposed to and addicted to its cigarette products, failed to warn of the addictive nature of its cigarette products and the adverse health effects from using such products;
b. Designing and developing cigarette products that were milder, had better taste and contained nicotine so that foreseeable users, such as Decedent, would find smoking these Defendants' products pleasurable which in turn would lead the Decedent, and others similarly situated, to begin smoking and/or to increase consumption;
c. Failing to develop and utilize alternative design, manufacturing methods, and/or materials to reduce and/or eliminate harmful materials and/or characteristics from the cigarette products it designed, manufactured, advertised, marketed, distributed and/or sold;
d. Continuing to manufacture, distribute, and sell cigarette products when it knew at the time of said manufacture, distribution and/or sale that such products could

cause, and in fact were more likely to cause cancer to foreseeable users, such as Decedent, when used as intended;

e.  Concealing information while affirmatively misrepresenting to Decedent and other members of the public in advertising, "informational" communications, sponsorship of sports activities, concerts, and other events, testimony and public statements by officers, agents and employees of the cigarette manufacturers, by labels and otherwise, that the cigarette products manufactured, distributed and/or sold were safe and/or not proven to be dangerous in their ordinary and foreseeable use, which material misrepresentations induced Decedent to unknowingly use and/or continue to use the Defendants' cigarette products himself and expose himself to the hazards of developing disease and/or suffering injuries such as Prostate Cancer, Skin Cancer, and Bladder Cancer;

f.  Failing to test and/or adequately test its cigarette products before offering them for sale and use by Decedent, and other persons similarly situated;

g.  Failing to remove and recall all said cigarette products from the stream of commerce and the marketplace upon ascertaining that said products would cause injuries;

h.  Manipulating, failing to reduce, and/or eliminating nicotine from its cigarette products to prevent Decedent, who was addicted to the nicotine in its cigarette products, from quitting and/or reducing consumption;

i.  Including nicotine, or artificially high levels of nicotine, in its cigarette products to prevent Decedent and other persons similarly situated from quitting and/or reducing consumption;

j.  Utilizing tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances deleterious, poisonous, and, highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

k.  Designing and manufacturing its cigarettes to be inhalable and thus unreasonably dangerous; and/or,

l.  Placing additives and ingredients in cigarettes to making them easier to inhale and addictive.

4.    As a direct and proximate result of the Defendants' willful and wanton acts and/or omissions, Decedent developed Prostate Cancer, Skin Cancer, and Bladder Cancer and was compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of his cigarette induced disease and conditions

now, and in the future, and has experienced great physical pain and mental anguish as a result of the inhalation, ingestion, and absorption of said cigarette products.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems appropriate.

**COUNT 16 – SURVIVAL ACT – WILLFUL AND WANTON MISCONDUCT (VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. As a direct and proximate result of Defendants' acts and omissions alleged above, Decedent was exposed to various toxic substances, as alleged above, which caused Decedent to develop cancers, experience conscious pain and suffering before his death, and result in Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest and such other and further relief as this Court deems appropriate.

**COUNT 17 – WRONGFUL DEATH – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT (VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. At all times relevant herein, there was a statute in effect entitled the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*. (the "Act").

3. These Defendants are subject to the provisions of the Act, and Decedent is one of the persons the Act was enacted to protect.

4. The Act makes it unlawful for a business to use "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact" in the conduct of any trade or commerce. 815 ILCS 505/2. The Act also makes unlawful "the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act." *Id.*

5. These Defendants advertised and sold cigarette products without any warning and/or filtered cigarettes products, which touted or implied health benefits.

6. However, these Defendants knew that their cigarette products were dangerous and that the purported benefits of "filtered" or "light" cigarette products were illusory, and that the public - even the US government and physicians - were being misled by such false promises.

7. As described above, these Defendants violated the Act by making, disseminating, and causing to make and disseminate untrue, false, and misleading statements to Decedent and other Illinois consumers to promote the sale and use of tobacco products. These untrue, false, and misleading statements included, but were not limited to:

a. Prior to 1966, failed to warn of the addictive nature of its cigarette products and the adverse health effects from using such products when it knew of such adverse health effects and addictiveness;
b. Continuing to manufacture, distribute, and sell cigarette products when it knew at the time of said manufacture, distribution and/or sale that such products could cause, and in fact were more likely to cause cancers when used as intended;
c. Concealing information while affirmatively misrepresenting to Decedent and other members of the public in advertising, "informational" communications, sponsorship of sports activities, concerts, and other events, testimony and public statements by officers, agents and employees of the cigarette manufacturers, by labels and otherwise, that the cigarette products manufactured, distributed and/or sold were safe and/or not proven to be dangerous in their ordinary and foreseeable use, which material

misrepresentations induced Decedent to unknowingly use and/or continue to use these Defendants' cigarette products;

d. Failing to test and/or adequately test its cigarette products before offering them for sale and use by Decedent, and other persons similarly situated;

e. Failing to remove and recall all said cigarette products from the stream of commerce and the marketplace upon ascertaining that said products would cause injuries;

f. Manipulating, failing to reduce, and/or eliminating nicotine from its cigarette products to prevent Decedent, who was addicted to the nicotine in its cigarette products, from quitting and/or reducing consumption;

g. Including nicotine, or artificially high levels of nicotine, in its cigarette products to prevent Decedent and other persons similarly situated from quitting and/or reducing consumption;

h. Utilizing tobacco and/or re-constituted tobacco that was high in nitrosamines, nitrates, nicotine, carcinogens, and other substances deleterious, poisonous, and, highly harmful when alternative, less dangerous, materials were available to be used in the manufacturing process;

i. Purposely placing additives and ingredients in cigarettes to making them easier to inhale and addictive;

j. Marketing and/or advertising filters as safer or less hazardous to health than non-filtered cigarettes when it knew such cigarette products were not;

k. Knowingly concealing from the public that filtered cigarettes were no safer or even more hazardous than other cigarettes;

l. Designing, selling, and marketing brands as "light" or "filtered" knowing that smokers wrongly believed that light or filtered cigarettes reduce the harms of smoking when they further know that filtered cigarettes are no safer or healthier than non-filtered cigarettes;

m. Maintaining and failing to disclose and/or warn of their superior knowledge not only to consumers but even to the FDA in that it knew the FDA's methodology of measuring tar from filtered cigarettes did not accurately measure tar-intake in actual consumer use;

n. Failing to disclose and/or warn that switching to filtered or light cigarettes would not be less hazardous because smokers would smoke more and/or alter their smoking habits such that their intake of tar, nicotine and other harmful substances would not be reduce; and/or,

o. Continuing even today to fraudulently market and sell multiple brands as "filtered" causing smokers to believe that filtered cigarettes reduce the harms of smoking.

8.    As described above, these Defendants violated the Act by omitting or concealing material facts to deceptively promote the sale and use of filtered and light cigarettes to Decedent and other Illinois consumers.

9.    These Defendants knew at the time of making or disseminating these misstatements and material omissions or causing or contributing to these misstatements and material omissions to be made or disseminated, that they were untrue, false, or misleading there therefore likely to deceive Illinois consumers.

10.    Additionally, these Defendants knew or should have known that its marketing and promotional efforts created an untrue, false, and misleading impression of the risks and benefits of filtered and light cigarettes.

11.    These Defendants' practices as described herein are deceptive business practices that violate the Act because the practices were and are intended to deceive consumers, including Decedent, and occurred and continue to occur in the course of conduct involving trade and commerce throughout Illinois.

12.    These Defendants' conduct was intended to deceive Illinois consumers and to get them to begin to use and continue to use in perpetuity its cigarette products and in the belief that they were a safer and healthy alternative.

13.    These Defendants' conduct deceived Decedent into beginning to purchase and smoke its cigarettes.

14.    Had these Defendants not concealed and/or suppressed their aforementioned knowledge of the dangers of their filtered and non-filtered cigarette products from Decedent and the public, Decedent would not have purchased these Defendants' filtered and non-filtered cigarettes and/or stopped smoking filtered cigarettes or entirely or significantly reduced his

cigarette intake rather than continue to smoke, and his risk of injury from filtered cigarettes, including Prostate Cancer, Skin Cancer, and Bladder Cancer, would have been reduced or eliminated.

15. The consumer fraud acts of these Defendants as described above caused injury to Decedent and were performed willfully, intentionally, and/or with reckless disregard for the rights and safety of Decedent, and the public, and were in violation of the Act thus entitling Decedent to actual and treble damages, attorney fees, as well as any other relief the Court deems just and proper.

WHEREFORE, Plaintiff, Betty Bannister, respectfully requests that this Court enter judgment against these Defendants for compensatory damages in an amount in excess of $50,000, including treble damages and attorneys' fees as appropriate under the Illinois Consumer Fraud and Deceptive Business Practices Act, together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper.

**COUNT 18 – SURVIVAL ACT – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT**
**(VS. ITG BRANDS LLC/R.J. REYNOLDS TOBACCO COMPANY)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. As a direct and proximate result of Defendants' acts and omissions alleged above, Decedent was exposed to various toxic substances, as alleged above, which caused Decedent to develop cancers, experience conscious pain and suffering before his death, and result in Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Betty Bannister, respectfully requests that this Court enter judgment against these Defendants for compensatory damages in an amount in excess of $50,000, including treble damages and attorneys' fees as appropriate under the Illinois Consumer Fraud and

Deceptive Business Practices Act, together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper.

**COUNT 19 – WRONGFUL DEATH – NEGLIGENCE**
**(VS. JOHN CRANE, INC.)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. On and prior to 1979, John Crane, Inc. ("John Crane"), was engaged in the business of designing, processing, manufacturing, selling, and distributing asbestos-containing gaskets and packing, and other asbestos products.

3. Among the asbestos containing products manufactured, distributed, and/or sold by John Crane were asbestos-containing gaskets and packing.

4. Decedent was employed during the period of time between 1964 and 1979 and during this time period Decedent was exposed to John Crane asbestos-containing gaskets and packing while working at the Wood River Refinery in Wood River, Madison County, Illinois.

5. At all times mentioned herein, the asbestos-containing gaskets and packing produced by John Crane was being used in a manner for which they were intended and in a manner which was reasonably foreseeable.

6. At all times mentioned herein, John Crane owed Decedent the duty of ordinary care in its marketing, designing, selling, labeling, manufacturing, and/or distributing of asbestos-containing products.

7. John Crane breached its duty of ordinary care and was negligent in that it knew and/or should have known that its asbestos containing products were likely to injure and cause respiratory disease in persons who were exposed to its products without warnings or without adequate warnings; that exposure to John Crane asbestos containing products was likely to cause injury and respiratory disease and failed to place warnings or adequate warnings on its products,

although it knew or in the exercise of ordinary care, should have known, that such warnings were necessary to avoid injury to individuals, including Decedent.

   8.  In addition, John Crane was negligent in that it:

    a. Marketed a product containing asbestos fibers;
    b. Failed to advise the plaintiff of the dangers of asbestos fibers, although it knew of the dangers;
    c. Failed to provide instruction as to what wearing apparel, if any, would be safe to wear while using and/or working in proximity to the its products;
    d. Failed to publish a safe plan for handling its asbestos products;
    e. Failed to place adequate warnings on their containers, although the Defendants knew of the danger to persons working near asbestos containing products, including the Plaintiff;
    f. Failed to develop alternative, non-asbestos containing products in a timely manner when adequate substitutes were available;
    g. Continued to sell a known cancer-causing product to wit;
    h. Failed to inform users that asbestos containing products caused mesothelioma and cancer in laboratory animals and humans;
    i. Failed to provide safe packaging for its products; and/or,
    j. Negligently designed the asbestos containing products.

   9.  As a proximate result of the Decedent's frequent and regular exposure to the asbestos containing products sold, designed, labeled, distributed, marketed, and/or manufactured by John Crane, Decedent developed asbestos-related diseases.

   10. As a direct and proximate result of the aforementioned said wrongful acts/or omissions of John Crane, Decedent developed said asbestos-caused diseases and suffered severe shocks to the nervous and respiratory system and became sick and disabled and was caused great pain, discomfort and physical impairment, all of which injuries are permanent, and became liable to large sums of money for medical and hospital care.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against Defendant, John Crane, Inc., for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems appropriate.

**COUNT 20 – SURVIVAL ACT – NEGLIGENCE**
**(VS. JOHN CRANE, INC.)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. As a direct and proximate result of Defendants' acts and omissions alleged above, Decedent was exposed to various toxic substances, as alleged above, which caused Decedent to develop cancers, experience conscious pain and suffering before his death, and result in Decedent's Estate to incur medical expenses by way of doctors, hospitals, and drugs, before his untimely death.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against Defendant, John Crane, Inc., for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems appropriate.

**COUNT 21 – LOSS OF CONSORTIUM**
**(VS. ALL DEFENDANTS)**

1. Plaintiff incorporates by reference the above paragraphs as if fully asserted herein.

2. As a direct result of the acts and omissions, willful and wanton misconduct, deceptive practices, as described above, and resulting injuries sustained by Decedent, as described above, Plaintiff, Betty Bannister, has suffered and will continue to suffer a loss of consortium, society, services, capacity to exchange love, and companionship of her and Decedent's marital relationship.

WHEREFORE, Plaintiff, Betty Bannister, prays judgment be entered against these Defendants for compensatory damages in excess of Fifty Thousand ($50,000.00) Dollars and for costs, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems appropriate.

Respectfully submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: *_/s/ Joshua A. Edelson_*
Ted N. Gianaris, IL #6237156
Joshua A. Edelson, IL #6326848
One Court Street
Alton, IL 62002
(618) 619-0010
(618) 259-2251 (Fax)
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all attorneys of record via this Court's electronic filing system on March 28, 2025.

*_/s/ Parris Diggs_*
**Gianaris Trial Lawyers, LLC**

***EFILED***
Case Number 2023LA000191
Date: 4/21/2025 12:00 AM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

BETTY BANNISTER, INDIVIDUALLY, AND AS SPECIAL ADMINISTRATOR FOR THE ESTATE OF DONALD BANNISTER, DECEASED,

Plaintiffs,

v.

JOHN CRANE, INC., *et al*.

Defendants.

Case No. 2023-LA-000191

**EIDP, INC.'S MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

EIDP, Inc. (formerly known as "E. I. du Pont de Nemours & Company", and hereinafter "EIDP") moves, pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-301, to dismiss Plaintiffs' First Amended Complaint for failure to state a cause of action and failure to allege a *prima facie* basis for this Court to exercise personal jurisdiction over EIDP. In support, EIDP states as follows:

1. On February 16, 2023, Donald and Betty Bannister filed an eleven-count Complaint against eleven defendants seeking damages based on Donald Bannister's diagnosis of prostate cancer, skin cancer, and bladder cancer. Compl. ¶ 2.

2. On September 9, 2024, Plaintiffs filed Suggestions of Death, notifying the remaining parties that original Plaintiff Donald Bannister had died on July 31, 2024. Plaintiffs contemporaneously filed a Motion to Substitute Betty Bannister as Special Administrator of Donald Bannister's estate and For Leave to File an Amended Complaint. On March 27, 2025, Betty Bannister was appointed as Special Administrator of Donald Bannister's estate and granted leave to file an amended complaint.

3. On April 1, 2025, Plaintiffs filed a twenty-one count First Amended Complaint against ten defendants. Plaintiffs assert Counts 1 through 4 and 21 against EIDP—wrongful death: negligence, survival act: negligence, wrongful death - strict liability: design defect and failure to warn, survival act – strict liability: design defect and failure to warn, and Betty Bannister's claim for loss-of-consortium. Plaintiffs claim that Mr. Bannister's injuries were "caused or contributed to" by exposures to chemicals, "namely PFAS/AFFF, asbestos, tobacco smoke, Polyaromatic Hydrocarbons ("PAHs"), and other toxic chemicals" allegedly manufactured, sold, distributed, marketed, designed, supplied, and/or used by Defendants. Am. Compl. at p. 1, ¶ 2.

4. Plaintiffs' claims against EIDP should be dismissed for two reasons. *First*, Counts 1, 2, 3, 4, and 21 fail to include facts necessary to state a cause of action against EIDP. *Second*, Plaintiffs' Amended Complaint fails to allege any facts supporting personal jurisdiction over EIDP.

**I. The Complaint Fails to Plead Specific Facts Necessary to State a Cause of Action Against EIDP, Nor Any Individual "PFAS Defendant."**

5. Counts 1 through 4 should be dismissed because Plaintiffs fail to plead the specific facts necessary to state a cause of action against EIDP, nor any specific "PFAS Defendant." Count 21 for loss-of-consortium is a derivative claim and must be dismissed along with Plaintiffs' other claims.

6. Illinois is a fact-pleading jurisdiction. *Simpkins v. CSX Transp., Inc.*, 2012 IL 110662, ¶ 26, 965 N.E.2d 1092, 1099 (Ill. 2012). "A plaintiff may not rely on conclusions of law or fact unsupported by specific factual allegations." *Id.* (finding plaintiff's complaint "insufficient because it relied on the 'conclusory allegation' that defendant 'knew or should have known' of the dangers of secondhand asbestos exposure."). Indeed, the Illinois Code of Civil Procedure does not authorize notice pleading. *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App.

3d 156, 167, 788 N.E.2d 740, 750 (Ill. App. Ct. 2003). "Conclusions of fact will not suffice to state a cause of action regardless of whether they generally inform the defendant of the nature of the claim against him. Rather, under Illinois fact pleading, the pleader is required to set out ultimate facts that support his or her cause of action." *Id.* (internal citations omitted).

7.       Here, the Amended Complaint fails to raise any specific claim against any individual Defendant in Counts 1 through 4. Instead, the Amended Complaint lumps together five Defendants—the so-called "PFAS Defendants"—and alleges these Defendants "collectively manufactured, sold, distributed, or supplied materials/products containing synthetic and toxic per- and polyfluoroalkyl substances . . ." Am. Compl., at p. 4, Count 1 ¶ 3. The Amended Complaint also alleges the "PFAS Defendants knew or should have known that PFAS and its materials/products that contained PFAS were hazardous and had a toxic, poisonous, and highly deleterious effect upon the health of persons, including [Mr. Bannister], inhaling, ingesting, absorbing through the skin or otherwise absorbing them." *Id.* at ¶ 6. Nowhere do Plaintiffs make *any* allegation that is specific to EIDP. Plaintiffs fail to satisfy Illinois' pleading standards.

8.       Counts 1 and 3 assert claims against the four "PFAS Defendants," including EIDP, under the Wrongful Death Act. Am. Compl. Counts 1, 3. To state a claim under the Wrongful Death Act, a plaintiff must allege: (1) defendant owed a duty to the decedent; (2) defendant breached that duty; (3) the breach of duty proximately caused the decedent's death; and (4) that pecuniary damages occurred to persons designated under the Wrongful Death Act. *Bovan v. Am. Family Life. Ins. Co.*, 386 Ill. App. 3d 933, 938, 897 N.E.2d 288 (2008). Under the Wrongful Death Act, "pecuniary damages" include damages for "grief, sorrow, and mental suffering . . ." 740 ILCS 180/2 § 2(a). Here, Plaintiffs exclusively plead injuries incurred by Mr. Bannister, and fail to plead any pecuniary damages *incurred by Mr. Bannister's survivors* resulting from Mr. Bannister's

death. *See* Am. Compl. at p. 7, Count 1 ¶¶ 14-7, p. 11-12, Count 3 ¶¶ 15-18. As such, Plaintiffs fail to adequately plead claims under the Wrongful Death Act.

9.      Counts 1 and 2 assert "wrongful death – negligence" and "survival act – negligence" claims against the four "PFAS Defendants," including EIDP. Am. Compl. Counts 1-2. To state a claim for negligence, "a plaintiff must set out sufficient facts to establish that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused injury to the plaintiff." *Weidner v. Midcon Corp.*, 328 Ill. App. 3d 1056, 1060, 767 N.E.2d 815, 819 (Ill. App. Ct. 2002); *see also In re Petition to Annex Certain Prop. to City of Wood Dale*, 244 Ill. App. 3d 820, 834-35, 611 N.E.2d 606, 617 (Ill. App. Ct. 1993) (same). Here, Plaintiffs do not identify: (i) any specific products EIDP manufactured; (ii) the time, place, or manner in which Mr. Bannister was exposed to those products; (iii) what actions or inactions EIDP (as opposed to "the PFAS Defendants") allegedly took; or (iv) how the unnamed EIDP products proximately caused any injury to Plaintiffs. Plaintiffs do not allege specific facts to establish any, let alone all, of the elements of a negligence cause of action against EIDP. *See Weidner*, 328 Ill. App. 3d at 1060, 767 N.E.2d at 819 (dismissing complaint where, "regardless of which defendant is listed, plaintiffs state[d] the exact same allegations of fault" and no "facts were pleaded to support the claims that defendants had a duty"); *see also Lewis v Lead Indus. Ass'n, Inc.*, 342 Ill. App. 3d 95, 102-04, 793 N.E.2d 869, 874-75 (Ill. App. Ct. 2003) (affirming dismissal of negligence claim against manufacturers of lead paint where plaintiffs failed to identify the specific defendant that manufactured the product).

10.      Counts 3 and 4 allege "wrongful death – strict liability" and "survival act – strict liability" claims against the "PFAS Defendants." Am. Compl. Counts 3-4. A strict liability plaintiff must plead "that the injury resulted from a condition of the product, that the condition was an

unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control." *Sollami v. Eaton*, 201 Ill. 2d 1, 7, 772 N.E.2d 215, 219 (Ill. 2002). A strict liability plaintiff also must satisfy a "causation-in-fact element" that "establish[es] a causative link between the tortious acts of a specific defendant and the injuries for which recovery is sought." *Lewis*, 342 Ill. App. 3d at 104, 793 N.E.2d at 876. Here, Counts 3 and 4 are just as deficient as Counts 1 and 2; there are no specific allegations of fact against EIDP that set forth which EIDP products Mr. Bannister was allegedly exposed to, when and how the exposures occurred, what actions EIDP allegedly took or did not take, or how EIDP caused any harm to Plaintiffs. *See id.* (dismissing strict liability claim where plaintiff failed to identify the defendant that manufactured the product).

11.    In Count 21, Plaintiff Betty Bannister, in her individual capacity, asserts a loss-of-consortium claim against all Defendants, including EIDP. Am. Compl. Count 21. As an initial matter, Mrs. Bannister's loss-of-consortium claim should join with her wrongful death claim. *Brown v. Metzger*, 104 Ill. 2d 30, 34-36, 470 N.E.2d 302, 304-05 (Ill. 1984) (adopting a mandatory joinder rule for wrongful death and loss of consortium claims). Mrs. Bannister's loss-of-consortium claim should otherwise be dismissed due to the same deficiencies in Counts 1 through 4. Although a loss-of-consortium claim is legally separate from the directly injured spouse's causes of action, it is nonetheless "necessarily predicated on the claim of a directly injured spouse in that it arises from the same operative facts . . ." *Monroe v. Trinity Hosp.-Advocate*, 345 Ill. App. 3d 896, 899, 803 N.E.2d 1002, 1005 (Ill. App. Ct. 2003). Mrs. Bannister's loss-of-consortium claim against EIDP derives from Plaintiffs' factually deficient negligence and strict liability claims and, as such, fails due to the same factual deficiencies. Plaintiff Betty Bannister's loss-of-consortium claim should be dismissed along with Plaintiffs' other claims against EIDP.

## II. Plaintiffs' Amended Complaint Fails to Establish Personal Jurisdiction over EIDP.

12. Plaintiffs have the burden of establishing a *prima facie* basis that personal jurisdiction exists over EIDP. *Rios v. Bayer Corp.*, 2020 IL 125020, ¶ 16, 178 N.E.3d 1088, 1094 (Ill. 2020).

13. Plaintiffs' claims against EIDP should be dismissed pursuant to 735 ILCS 5/2-301 because the Complaint fails to meet Plaintiffs' burden to allege specific facts supporting the extension of personal jurisdiction over EIDP.

14. Illinois' long-arm statute, 735 ILCS 5/2-209, stretches only as far as the U.S. Constitution allows. *Rios*, 2020 IL 125020, ¶ 17, 178 N.E.3d at 1094. "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

15. Illinois courts may "exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (internal quotation marks and citation omitted).

16. Illinois recognizes two types of personal jurisdiction: general and specific. *Rios*, 2020 IL 125020, ¶ 19, 178 N.E.3d at 1094. General jurisdiction applies where the jurisdiction is "one in which the corporation is fairly regarded as at home," and specific jurisdiction applies where the suit arises out of or relates to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 582 U.S. 255, 262 (2017) (citation omitted).

17. The Complaint includes no facts suggesting that EIDP is "essentially at home in Illinois." *See Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 18, 90 N.E.3d

440, 446 (Ill. 2017). "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG*, 571 U.S. at 118. Plaintiffs do not allege that EIDP is an Illinois corporation, because it is not. Nor do Plaintiffs allege that any of EIDP's members is a citizen of Illinois, because they are not.[1]

18. Plaintiffs allege only that personal jurisdiction is appropriate over EIDP under 735 ILCS 5/2-209, because "Plaintiff was exposed to and/or purchased the cancer-causing chemicals in the State of Illinois and each Defendant committed a tortious act within this state." Am. Compl. at p. 3, ¶ 13. But, "a state may assert specific personal jurisdiction over an out-of-state defendant only 'if the defendant has purposefully directed activities at residents of the forum' and if 'the litigation results from alleged injuries that arise out of or relate to those activities.'" *Rios*, 2020 IL 125020, ¶ 20, 178 N.E.3d at 1094 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (internal quotation marks and citations omitted).

19. The Amended Complaint contains no allegation that EIDP purposely directed any activity at residents of Illinois or at Plaintiffs, and, as detailed above, Plaintiffs identify no product sold in Illinois by EIDP that allegedly caused Mr. Bannister's injury. *See* Am. Compl. 3–13; *Malevitis v. Expedia Grp., Inc*., 2021 IL App (1st) 200820-U, ¶ 27; *Morrison v. JSK Transp., Ltd.*, 2022 IL App (4th) 210542-U, ¶ 42.

20. Plaintiffs make one vague and solitary allegation seemingly related to EIDP's activity within Illinois-that "each Defendant committed a tortious act within this State." Am. Compl. at p. 3, ¶ 13 This claim is unsupported by any specific factual allegations at all, let alone any directed at EIDP specifically, and is insufficient to support personal jurisdiction over EIDP.

[1] Although EIDP is registered to do business in Illinois, "the fact that a foreign corporation has registered to do business . . . does not mean that the corporation has thereby consented to general jurisdiction over all causes of action . . . ." *Aspen Am. Ins. Co.*, 2017 IL 121281, ¶ 26, 90 N.E.3d at 447.

*See Forrester v. Seven Seventeen HB St. Louis Redevelopment Corp.*, 336 Ill. App. 3d 572, 581, 784 N.E.2d 834, 840 (2002); IL R S CT Rule 191.

21. The allegations in Plaintiffs' First Amended Complaint do not establish a *prima facie* case that personal jurisdiction exists over EIDP.

Wherefore, EIDP respectfully requests that this Court dismiss Plaintiffs' Complaint as to EIDP (Counts 1, 2, 3, 4 and 21), and requests such other relief as is proper.

**JURY DEMAND**

EIDP hereby demands a trial by jury in this cause if the action is not dismissed.

Dated: April 18, 2025

**SHOOK, HARDY & BACON L.L.P.**

*/s/ Tyler W. Schwettman*

Tyler W. Schwettman (6333327)
tschwettman@shb.com
The Plaza in Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
Telephone: 314.690.0200
Fax: 314.690.0249
tschwettman@shb.com

Brent Dwerlkotte (admitted *pro hac vice*)
Amy M. Crouch (admitted *pro hac vice*)
Jennifer E. Hackman (admitted *pro hac vice*)
2555 Grand Boulevard
Kansas City, MO 64108
Tel: (816) 474-6550
Fax: (816) 421-5547
dbdwerlkotte@shb.com
amcrouch@shb.com
jhackman@shb.com

***Attorneys for Defendant E.I. du Pont de Nemours and Company (now known as "EIDP, Inc.")***

**CERTIFICATE OF SERVICE**

I certify that on this 18th day of April 2025 a true and correct copy of the foregoing was electronically filed using the Court's electronic filing system.

*/s/ Tyler W. Schwettman*
Tyler W. Schwettman

***EFILED***
Case Number 2023LA000191
Date: 4/21/2025 11:17 AM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| BETTY BANNISTER, Individually, and as Special Administrator for the Estate of Donald Bannister, deceased, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 23-LA-191 |
| JOHN CRANE, INC., *et al*., | ) | |
| Defendants | ) | |

**SHELL USA, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW Defendant Shell USA, Inc., ("Shell"), by its attorneys, Nijman Franzetti, LLP, and for its Motion to Dismiss Plaintiff's Amended Complaint moves this Court pursuant to 735 ILCS 5/2-619 and 735 ILCS 5/2-615 for an order dismissing Plaintiff's Amended Complaint with prejudice for the following reasons: (1) Plaintiff's claims were not commenced within the time limited by law; (2) the Amended Complaint impermissibly contains requests for punitive damages masquerading as claims for "willful and wanton" conduct that does not exist in Illinois law; and (3) the Amended Complaint is exceedingly vague and fails to meet the fact pleading requirements under Illinois law. In support of its Motion, Shell states as follows:

1. On February 16, 2023, Plaintiffs, Donald Bannister and Betty Bannister filed an eleven-count Amended Complaint against eleven defendants, including Shell.

2. On September 1, 2023, Shell filed a Motion to Dismiss, and on October 4, 2023, filed an Amended Motion to Dismiss under 735 ILCS 5/2-619 and 5/2-615.

3. Following the death of Donald Bannister, Plaintiff Betty Bannister, Individually, and as Special Administrator for the Estate of Donald Bannister, filed a twenty-one count

Amended Complaint on March 28, 2025, against 10 defendants, including Shell. Only Counts 5, 6, 7, 8 and 21 are related and against Shell who is referred to as an "Employer Defendant".

4. Relevant to Plaintiff's claims against Shell, Plaintiff alleges that Donald Bannister was employed by "Shell Oil Company and Phillips 66 Company from 1967-2004." Compl., Count 5, ¶ 2.[1]

5. Plaintiff alleges that during the course of Mr. Bannister's employment, which plaintiff claims ceased in 2004, he was regularly and routinely exposed to various toxic substances known to be cancer-causing agents, including PFAS/AFFF, asbestos, PAHs, and other cancer-causing chemicals (collectively "toxic substances") that allegedly caused him to contract prostate, skin, and bladder cancer over several years. Compl., ¶¶ 2, 3; Compl., Count 5, ¶¶ 2, 8; Count 6, ¶ 2; Count 7, ¶ 6; Count 8, ¶ 2; Count 21. Plaintiff also alleges that "Decedent's last occupational exposure to the foregoing toxic substances was on or about 2004." Compl., Count 5, ¶ 4.

6. The Amended Complaint contains a negligence count (Count 5), a count alleging negligence under the Survival Act (Count 6), a count for Wrongful death alleging willful and wanton conduct that requests punitive damages (Count 7), a count under the Survival Act alleging willful and wanton conduct that requests punitive damages (Count 8), and a loss of consortium claim (Count 21) against the Employer Defendants.

7. The Amended Complaint should be dismissed as it is barred by the Illinois Worker's Occupational Disease Act, 820 ILCS 310/1(f), because the Amended Complaint was filed more than two years after Mr. Bannister's last exposure and any alleged manifestation of

[1] Earlier in the Amended Complaint, Plaintiff claims this employment ran from 1964-2004. Compl., ¶ 3.

disablement.[2] Counts 7 and 8 should also be dismissed as those counts do not state a claim under Illinois law and violate Section 735 ILCS 5/2-604.1, requiring leave to plead punitive damages. Finally, the overall Amended Complaint fails to meet Illinois pleading standards in part because it groups two "Employer Defendants" together along with exposure to at least three different products and neglects to identify how and when Mr. Bannister was exposed to any asbestos, PFAS/AFFF or PAHs attributable to Shell. The Amended Complaint also targets tobacco manufacturers for cigarette exposure and causing the same cancers.

**I. Plaintiff's Amended Complaint Should Be Dismissed Under 735 ILCS 5/2-619 Because It Was Not Commenced in the Time Limited By Law.**

8. Plaintiff alleges Mr. Bannister was employed by Shell, as well as the other Employer Defendant, from 1967-2004. Compl., Count 5, ¶ 2. This allegation must be taken as true for purposes of this Motion to Dismiss.

9. Illinois Workers' Compensation Act, 820 ILCS 305/5(a) and 820 ILCS 305/11, "bars an employee from recovering damages [outside of the established compensation system] from the employer or its agents or employees for accidental injuries incurred in the course of employment." *Harrington-Grant v. Loomis, Fargo & Co.*, No. 01 C 6344, 2002 U.S. Dist. LEXIS 329 (N.D. Ill. Jan. 9, 2002) (applying Illinois law). The Workers' Compensation Act, in most cases, serves as the exclusive remedy for injuries in the workplace. *Id.*

10. However, in the case of an occupational disease suffered during employment, the Illinois Workers' Occupational Disease Act ("Disease Act"), 820 ILCS 310/1, governs. The Disease Act applies to "Occupational Diseases" that are defined as "a disease arising out of and in

[2] Plaintiff does not identify whether, how or when decedent became disabled as that term is defined in the Disease Act as a result of decedent's exposure to products somehow attributable to either of the Employer Defendants, including Shell. However, the concession that the Disease Act would normally preclude the claim, suggests that no disablement occurred within the operative time frames. Compl., Count 5, ¶ 4. If no such disability occurred, Plaintiff's claim is barred.

the course of the employment or which has become aggravated and rendered disabling as a result of the exposure of [sic] the employment. Such aggravation shall arise out of a risk peculiar to or increased by the employment and not common to the general public." 820 ILCS 310/1(d).

11. Like the Workers' Compensation Act, the Disease Act contains exclusivity provisions: [t]here is no common law or statutory right to recover compensation or damages from the employer . . . , for or on account of any injury to health, disease, or death therefrom, other than for the compensation herein provided." 820 ILCS 310/5(a); *see also*, 820 ILCS 310/11. Stated differently, the Disease Act governs all claims for occupational diseases arising out of the course of employment.

12. Plaintiff alleges Mr. Bannister contracted prostate and bladder cancers as a result of his occupational exposure to asbestos, PFAS/AFFF or PAHs attributable to the Employer Defendants. Compl., Count 5, ¶ 8; Count 6, ¶ 2; Count 7, ¶ 6; Count 8, ¶ 2.

13. In recognition of the exclusivity provisions of the Disease Act, Plaintiff alleges that while the Disease Act would typically act to preclude these claims, a 2019 amendment saves them. More specifically, Plaintiff claims that because decedent's "last occupational exposure" to the toxic substances was on or about 2004, decedent normally "would be precluded for recovery benefits under the Disease Act." Compl, Count 5, ¶ 4.

14. Section 820 ILCS 310/1(f) of the Disease Act contains time limitations upon which an action must be commenced based upon the timing of the last exposure and the timing of disablement from an occupational disease. 820 ILCS 310/1(f).[3] Plaintiff concedes that this

[3] Generally, Section 1(f) provides that "[n]o compensation shall be payable for *** any occupational disease unless disablement *** occurs within two years after the last day of the last exposure to the hazards of the disease." 820 ILCS 310/1(f). Specifically, in cases of occupational disease caused by the inhalation of asbestos dust, no compensation is payable unless disablement occurs "within [three] years after the last day of the last exposure to the hazards of such disease." *Id*.

provision, if it were effective, would apply and preclude this claim because at the time of Mr. Bannister's alleged exposure, employers were not liable for occupational diseases that manifested themselves (i.e., disablement occurring) more than 2 years after the last exposure. *See* 820 ILCS 310/1(f).

15. Plaintiff, however, contends that this time bar provision is inapplicable because a 2019 amendment to the Disease Act eliminated Disease Act exclusivity under certain circumstances, including decedent's circumstance. The 2019 Amendment provides that "Section 5 and Section 11 [the exclusivity provisions of the Disease Act] do not apply to any injury or death resulting from an occupational disease as to which the recovery of compensation benefits under this Act would be precluded due to the operation of *any period of repose or repose provision*," 820 ILCS 310/1.1, and permits decedent to bring a "*civil action* pursuant to 820 ILCS 305/1.2.7." Compl., Count 5, ¶ 4 (emphasis added). As an aside, the Illinois Code does not contain any provision numbered 820 ILCS ¶ 305/1.2.7. Thus, the basis for Plaintiff's claim is unclear.

16. Nonetheless, for the 2019 Amendment to apply here, two requirements must be met: (1) Section 310/1(f) must be a statute of repose; and (2) the May 17, 2019, amendment, Section 310/1.1, must apply retroactively. But Section 310/1(f) acts as a statute of limitations, not a statute of repose. In *Folta v. Ferro Eng'g,* 2015 IL 118070, ¶¶ 31-32, 397 Ill. Dec. 781, 789, 43 N.E.3d 108, 116 (2015), the Illinois Supreme Court defined a "statute of repose" as a time limitation barring a claim after a certain act transpired and described a "statute of limitations" as a time bar tied to the accrual of a "cause of action." *Id*. (holding that the asbestos provision in Section 6(c) under the Disease Act is a statute of repose).[4] Here, Section 310/1(f) is a statute of limitations

[4] Depending upon the date Mr. Bannister was allegedly disabled or his last exposure to asbestos during his employment with Shell, this claim might be barred by 820 ILCS 310/6(c). This provision provides, in part, "[I]n any case, other than injury or death caused by exposure to radiological materials or equipment or asbestos, unless

as the time limit is based on exposure plus an injury/accrual of a cause of action, "disablement." *See* 820 ILCS 310/1(f) (allowing claims to be brought unless disablement occurs more than two to three years after the last exposure).

17. Unlike a statute of repose, a statute of limitations, like 310/1(f), "does not begin to run when a specific event occurs, 'regardless of whether an action has accrued or whether an injury has resulted.'" *Folta*, 2015 IL 118070 at ¶33. Indeed, a statute of repose is "not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered." *Id*. Under Section 310/1(f), the manifestation of an injury must have been discovered and must have led to disablement. As a result, Section 310/1(f) is not a "statute of repose," but rather a "statute of limitations" and the 2019 amendment that specifically addresses only statutes of repose does not apply to 310/1(f). As a result, Plaintiff's claim is barred by Section 310/1(f).

18. But assuming this court were to find that 310/1(f) serves as a statute of repose (which it does not), in the alternative, Shell contends that 310/1.1 cannot apply retroactively.

19. The Illinois Supreme Court has adopted the approach set forth by the United States Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244 (1994) to determine whether a statute applies retroactively. *Commonwealth Edison Co. v. Will County Collector,* 196 Ill. 2d 27, 37-39 (2001). The *Commonwealth Edison* court held that the *Landgraf* analysis consists of two steps.

---

application for compensation is filed with the Commission within 3 years after the date of the disablement, where no compensation has been paid, or within 2 years after the date of the last payment of compensation, where any has been paid, whichever shall be later, the right to file such application shall be barred. … In cases of disability caused by exposure to radiological materials or equipment or asbestos, unless application for compensation is filed with the Commission within 25 years after the employee was so exposed, the right to file such application shall be barred." *Id.*

This Section also provides that "[t]here shall be given notice to the employer of disablement arising from an occupational disease as soon as practicable after the date of the disablement. If the Commission shall find that the failure to give such notice substantially prejudices the rights of the employer the Commission in its discretion may order that the right of the employee to proceed under this Act shall be barred." *Id*. It is unknown if such notice was provided.

20. First, "if the legislature has clearly indicated the temporal reach of the amended statute, that expression of legislative intent must be given effect, absent a constitutional prohibition." *People ex rel. Madigan v. J.T. Einoder, Inc*., 215 Ill. LEXIS 324, ¶ 29 (March 19, 2015). Second, "[i]f, however, the amended statute contains no express provision regarding its temporal reach, the court must go on to determine whether applying the statute would have a retroactive impact, 'keeping in mind the general principle that prospectivity is the appropriate default rule.'" *Id*. In making this determination, a court will consider whether retroactive application of the new statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id*. at ¶ 30 "If the court finds that retrospective application of the new law would have a retroactive impact or result in inequitable consequences, 'the court must presume that the legislature did not intend that it be so applied.''" *Id*. Here, 310/1.1 fails both tests. It does not indicate a temporal reach; thus, it must be viewed under the general principle that prospectivity is the appropriate default rule as set forth in *Landgraf*. Second, the amendment plainly would impair the rights of Shell when acting because, at that time, the statute precluded certain claims after the date of last exposure. Second, the amendment would increase Shell's potential liability for alleged past conduct. And, third, the amendment would impose new duties on Shell, in that a duty owed to the employee is expanded by eliminating the statute of repose defense. The statute plainly applies only prospectively.

21. The Illinois Supreme Court in *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 330-332 (2006), after adopting the *Landgraf* framework, also considered the effect of the Statute on Statutes, Section 4 on the retroactivity analysis. That section provides:

> No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or

> as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding.

5 ILCS 70/4.

*Allegis* held that Section 4 demonstrated "a clear legislative directive as to the temporal reach of statutory amendments and repeals when none is otherwise specified: those that are procedural may be applied retroactively, while those that are substantive may not." *Allegis,* 223 Ill. 2d at 331*, citing Caveney v. Bower,* 207 Ill. 2d 82 (2003); *see also People v. Glisson*, 202 Ill. 2d 499, 506-07 (2002). Here, as 310/1.1 is plainly substantive, it may not be applied retroactively.

22. As described above, 310/1.1 is substantive as it clearly impacts "any right accrued, or claim arising under the former law," such as a defense to liability. Moreover, under the prior law, Shell was subject to an Occupational Disease claim by decedent within a short timeframe after his last exposure and could not be sued in a civil action against Shell. But now, relying on the 310/1.1 amendment, Plaintiff seeks to bring a civil suit against Shell, a suit even plaintiff acknowledges would not be available but for the amendment. Thus, there can be no argument that this amendment is substantive.

23. The case here is analogous to the matter *In Harraz v. Snyder*, 283 Ill. App. 3d 254 (2d Dist. 1996). In that case, the court held that the statute in question "represented a substantive change in the law, because the amendment operated to make HMOs parties to malpractice suits where formerly they could not have been made parties and it created new obligations and liabilities which did not previously exist." *Id.* at 260. This is precisely the situation in the case at bar.

24. Further, it is well-established that the "legislature lacks the power to reach back and breathe life into a time-barred claim." *Sepmeyer v. Holman,* 162 Ill. 2d 249, 254 (1994). This long-

standing principle is centered upon the view that a defendant has a constitutionally protected right not to be sued after a plaintiff's claim becomes barred by the applicable statute. *See Bd. of Educ. of Normal Sch. Dist. v. Blodgett*, 155 Ill. 441, 446 (1895) ("when the bar of a statute of limitations has become complete by the running of the full statutory period, the right to plead the statue as a defense is a vested right, which cannot be destroyed by legislation…"), *M.E.H. v. L.H.*, 177 Ill. 2d 207, 218 (1997) ("a defense based on the expiration of a limitations period is a vested right protected by the constitution and beyond legislative interference.") Thus, the expiration of a prescribed statutory period for a cause of action creates a vested right protected by the State's constitution. *M.E.H.*, 177 Ill. 2d at 218; *Sepmeyer*, 162 Ill. 2d at 255.

25. In summary, even if Section 310/1.1 could be read as a statute of repose that invalidated Section 310/1(f)'s time limitation, it would be of no consequence, as Illinois law would not allow Section 310/1.1 to apply retroactively. Consequently, Plaintiff's Amended Complaint must be dismissed pursuant to 735 ILCS 5/2-619 because it was not commenced within the time limited by law.

**II. In the Alternative, Plaintiff's Claim is Barred by Illinois' General Statute of Limitations for Personal Injury and/or Product Liability Statute of Limitations.**

26. If this Court were to find neither the Disease Act nor the Workers' Compensation Act apply, Plaintiff's Amended Complaint would be barred by the two-year statute of limitations for personal injuries since Plaintiffs failed to file the original lawsuit within two years of the date that the alleged cause of action accrued. 735 ILCS 5/13-202 and 13-203. Plaintiff, in an effort to take advantage of the discovery rule, claims decedent's last cancer was diagnosed in 2013, Compl., ¶ 2, but alleged decedent did not connect this cancer to his exposure to substances attributed to Shell until 2022. Compl., ¶ 9. But his claim does not pass muster. A Plaintiff cannot avail itself of the "discovery rule" and toll the statute of limitations until Plaintiff claims he or she knew or

should have known of the existence of his or her right to sue unless he or she "plead facts necessary to explain why the cause of action was not discovered sooner." *Pratt v. Sears Roebuck & Co*., 71 Ill. App. 3d 825, 829 (1st Dist. 1979): *Kartch v. Retirement Bd. of the Firemen's Annuity & Benefit Fund*, 265 Ill. App. 3d 618, 622 (1st Dist. 1994); *Scheinblum v. Schain Banks Kenny & Schwartz, Ltd*., 2021 IL App (1st) 200798-U, ¶13 (1st Dist. 2021) (plaintiff must plead facts to invoke discovery rule, attached as Exhibit A). Plaintiff's Amended Complaint pleads no facts concerning why it took, at the earliest, ten years to connect a third cancer to exposure to chemicals somehow attributed to Shell.

27. Further, to the extent the Amended Complaint is somehow construed to contain a "product liability action" against Shell, Plaintiff's Amended Complaint is also barred by the statute of repose relative to product liability cases, which limits claims to those brought within 10 years of the date of possession of the use of the product claimed to have caused the injury. *See* 735 ILCS 5/13-213; *see also Olson v. Owens-Corning Fiberglass Corp.*, 198 Ill. App. 3d, 1039, 1043 (1st Dist. 1990) (holding that section 13-213 applies to all strict liability claims involving products, including asbestos products). Plaintiff claims Mr. Bannister's last exposure was about 2004, over 19 years ago, which exceeds the ten-year statute of repose.

**III. Counts 7 and 8 of the Amended Complaint Fail to State a Claim Pursuant to 735 ILCS 5/2-619**.

28. Count 7 of the Amended Complaint alleges that Employer Defendants had knowledge concerning the hazards of the "toxic substances;" owed Plaintiff a duty to refrain from willfully and wantonly subjecting its employees to unreasonable risk; and "willfully, wantonly, and in reckless and conscious disregard for the health, safety and well-being of Decedent breached said duty" in various ways, which should afford Plaintiff an award of "punitive damages." Compl.,

Count 7, ¶¶ 2-5, 7. Count 8 of the Amended Complaint alleges that as a result of Employer Defendants' willful and wanton acts and omissions, Decedent was exposed to various toxic substances which caused Decedent to develop cancers, which should afford Plaintiff an award of "punitive damages." Compl., Count 8, ¶ 2. But no such claims exist.

29. The Illinois Supreme Court has specifically stated that "[t]here is no separate and independent tort of willful and wanton misconduct." *Ziarko v. Soo Line R. Co.*, 161 Ill. 2d 267, 274 (1994); *Krywin v. Chi. Transit Auth.*, 238 Ill. 2d 215, 235 (2010). "Willful and wanton conduct is regarded as an aggravated form of negligence." *Doe v. Coe,* 2019 IL 123521, ¶ 34, 434 Ill. Dec. 117, 128, 135 N.E.3d 1, 12 (2019). Thus, the claims against the Employer Defendants sound in negligence only and Counts 7 and 8 should be dismissed.

30. Moreover, Counts 7 and 8 improperly seek punitive damages. In Illinois, "for Complaints alleging negligence and involving personal injury, plaintiffs must demonstrate at a pretrial hearing that the evidence would support a punitive damages award before they may submit a claim for punitive damages." *Doe v. Catholic Bishop of Chi*., 2017 IL App (1st) 162388, ¶ 10, 415 Ill. Dec. 683, 686-87, 82 N.E.3d 1229, 1232-33 (1st Cir. 2017). In fact, the Illinois Code expressly prohibits such disguised claims. Section 2-604.1 of the Code states in relevant part:

> In all actions on account of bodily injury or physical damage to property, based on negligence, or product liability based on strict tort liability, where punitive damages are permitted no Complaint shall be filed containing a prayer for relief seeking punitive damages. However, a plaintiff may, pursuant to a pretrial motion and after a hearing before the court, amend the Complaint to include a prayer for relief seeking punitive damages.

735 ILCS 5/2-604.1; s*ee also Griffith v. Doan*, 2021 Ill. Cir. LEXIS 206, *1 (Ill. Cir. Ct., 2021).

31. "[S]ection 2-604.1 precludes plaintiffs from requesting punitive damages on the face of any Complaint based, even in part, on a negligence theory." *McCann v. Presswood*, 308 Ill. App. 3d 1058, 1072 (4th Dist. 1999). Rather, Section 2-604.1 requires such plaintiff to file a

pretrial motion and seek leave of court to include a prayer for relief seeking punitive damages. *Penn v. Gerig*, 334 Ill. App. 3d 345, 355-56 (4th Dist. 2002). Because section 2-604.1 applies to an entire action, a prayer for punitive damages is prohibited where even part of the Complaint sounds in negligence. *Id*. at 356. When negligence is pleaded, such as here, plaintiff must seek leave to amend the Complaint upon a showing of facts sufficient to support a punitive damages award. *McCann*, 308 Ill. App. 3d at 1072. Consequently, counts 7 and 8 and the prayers for punitive damages must be dismissed.

**IV. The Amended Complaint Must be Dismissed Under 725 ILCS 2-615 for Failure to Plead Facts.**

32. A Section 2-615 motion to dismiss tests the sufficiency of a Complaint and the questions presented is whether the well-pled facts are sufficient to state a cause of action upon which relief may be granted. *O'Keefe v. Walgreens Boots All., Inc.*, 2020 IL App (5th) 190448, ¶ 13, 447 Ill. Dec. 155, 158, 172 N.E.3d 1159, 1162 (5th Dist. 2020). "Because Illinois is a fact-pleading jurisdiction, a plaintiff is required to set forth a legally recognized claim and plead facts in support of each element that bring the claim within the cause of action alleged." *Rodriguez v. Ill. Prisoner Rev. Bd*., 376 Ill. App. 3d 429, 434 (5th Dist. 2007). The Code of Civil Procedure does not "authorize notice pleading," *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 167-68 (1st Dist. 2003), and "[c]onclusions of fact will not suffice to state a cause of action regardless of whether they generally inform the defendant of the nature of the claim against him." *Rodriguez*, 376 Ill. App. 3d at 434. "The court will not fill in the blanks" of an insufficiently pleaded Complaint. *Id*.

33. Here, Plaintiff lumps the Employer Defendants together, making general and conclusory allegations against them. Shell cannot tell from the Amended Complaint exactly how,

when, or where it allegedly committed the tortious acts. Other than claiming Mr. Bannister worked at the refinery and for Shell from 1964 to 2004, the Amended Complaint does not even allege facts sufficient to allow the court to analyze whether "the plaintiff and the defendant stood in such a relationship to each other that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Chandler v. Ill. Cent. R. Co*., 207 Ill. 2d 331, 349 (2003). Under Illinois' pleading standards, "[i]t is insufficient to allege that a defendant had a duty and that it was breached and the breach resulted in injury. The pleader must allege *specific facts* from which the law will raise a duty and from which it can conclude that the duty was breached and this resulted in injury to the plaintiff." *In re Petition to Annex Certain Prop. to City of Wood Dale*, 244 Ill. App. 3d 820, 835 (2d Dist. 1993) (emphasis added).

34. But the Amended Complaint lacks any modicum of detail. Instead, it consolidates all the allegations of duty, breach and causation and imposes them on all Employer Defendants. As a result, Shell has no idea (1) when Mr. Bannister allegedly worked for Shell; (2) the product or even the type of product ("PFAS/AFFF, asbestos, PAHs, and other cancer-causing chemicals") he was allegedly exposed to that caused his injuries; (3) where, how, and to what extent he was allegedly exposed to this product at Shell; and (4) how Shell is responsible for this exposure. An Amended Complaint such as this, tantamount to a guessing game, cannot be condoned under Illinois law.

35. Indeed, separate claims must be set forth using separate allegations of fact. *See* 735 ILCS 5/2- 603(b); *Hartshorn v. State Farm Ins. Co*., 361 Ill. App. 3d 731, 735 (2d Dist. 2005) (plaintiff improperly mixed allegations against separate defendants in the same count). Plaintiff cannot combine the vague allegations against a number of parties and still state a claim against

Shell because Shell's liability necessarily depends on Shell-specific facts, not conclusory allegations about the actions of all Employer Defendants generally.

36. Similarly, Plaintiff is mixing products by alleging that four product types ─ PFAS, PAHs, asbestos, (and tobacco as to other defendants) ─ caused Mr. Bannister's injuries. Without more information, Shell has no way to determine whether it could potentially be held liable under any of these theories as it cannot begin to assess proximate cause, sole proximate cause, intervening cause, and superseding causation. The lack of specificity in the Amended Complaint makes it impossible for Shell to defend itself.

37. Indeed, at one point, Plaintiff claims that Mr. Bannister was exposed to PFAS hazards through his work in a coal mine. Compl., Count 1, ¶ 3. Under Illinois' fact-pleading regime, ambiguous allegations "are insufficient under Illinois law" and require dismissal. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 35, 368 Ill. Dec. 407, 419, 984 N.E.2d 132, 144 (1st Dist. 2013).

**V. <u>Betty Bannisters Count 21 Must Be Dismissed for Failure to State a Claim</u>**

38. Count 21 asserts a loss-of-consortium claim against all Defendants, including Shell, for Betty Banister. Compl., Count 21. Although a loss-of-consortium claim is legally separate from the directly injured spouse's causes of action, it is nonetheless "necessarily predicated on the claim of a directly injured spouse in that it arises from the same operative facts. . . ." *Monroe v. Trinity Hosp.-Advocate*, 345 Ill. App. 3d 896, 899 (1st Dist. 2003). Mrs. Bannister's loss-of-consortium claim against Shell derives from Plaintiff's deficient negligence and willful and wanton misconduct claims and thus must be dismissed as well.

WHEREFORE, for the foregoing reasons, Shell requests that Plaintiff's Amended Complaint be dismissed with prejudice and for such further just and proper relief.

**DEFENDANT DEMANDS TRIAL BY JURY**

Respectfully Submitted,

By: */s/Susan E. Brice*

Susan E. Brice #6228903
Kristen L. Gale #6283338
Andrew T. Nishioka #6339448
**NIJMAN FRANZETTI LLP**
10 S. LaSalle Street, Suite 3400
Chicago, IL 60603
T: (312) 251-5271
sb@nijmanfranzetti.com
kg@nijmanfranzetti.com
dn@nijmanfranzetti.com

Gregg A. Kinney #6210671
Practus, LLP
P.O. Box 28929
St. Louis, MO 63132
T. 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
gregg.kinney@paractus.com

***Counsel for Defendant Shell USA, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2025 I electronically filed the foregoing with the Clerk of the Court using Odyssey Efile IL system. A courtesy copy was emailed to all attorneys of record.

/s/ Gregg A. Kinney

***EFILED***
Case Number 2023LA000191
Date: 4/21/2025 11:23 AM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

BETTY BANNISTER, Individually, and as Special Administrator for the Estate of Donald Bannister, deceased,

*Plaintiff*,

v.

JOHN CRANE, INC. et al.,

*Defendants*.

Case No. 2023-LA-000191

**Verified Statement of Out-of-State Attorney Pursuant to Supreme Court Rule 707**

I, Lauren R. Goldman, submit this Verified Statement pursuant to Illinois Supreme Court Rule 707.

1. My full name is Lauren Rosenblum Goldman. The address of offices from which I practice law and related email address and telephone numbers are as follows:

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0005
(212) 351-2375
lgoldman@gibsondunn.com

2. I represent Defendant 3M Company in the above-captioned matter.

3(a). I have not filed any other appearance pursuant to this rule during this calendar year.

3(b). My ARDC registration number is 6331025.

4(a). I list each jurisdiction of admission, including any state, territory, or commonwealth of the United States, the State of New York, or in a foreign country, and my full admission name and license number.

New York State: Lauren Rosenblum Goldman, 2952422

4(b). I attach a letter or certificate of good standing for each of the jurisdictions listed in paragraph 4(a) above.

5.      I have no office or other presence in Illinois for the practice of law.

6.      I submit to the disciplinary authority of the Supreme Court of Illinois;

7.      I have undertaken to become familiar with and to comply, as if admitted to practice in
Illinois, with the rules of the Supreme Court of Illinois, including the Illinois Rules of Professional
Conduct and the Supreme Court Rules on Admission and Discipline of Attorneys, and other
Illinois law and practices that pertain to the proceeding;

(8)      The full name, business address and ARDC number of the Illinois attorney with whom I
have associated in the matter is:

        Ann C. Barron
        HEYL, ROYSTER, VOELKER & ALLEN, P.C.
        105 West Vandalia Street
        Mark Twain Plaza III, Suite 100
        Edwardsville, IL 62025
        (618) 656-4646
        abarron@heylroyster.com
        ARDC#: 6224429

9.      I certify that this Statement has been served upon the following and that these parties are
all entitled to service under this rule.

Ted N. Gianaris
Joshua A. Edelson
GIANARIS TRIAL LAWYERS, LLC
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com

*Counsel for Plaintiff*

Gary C. Pinter
SWANSON, MARTIN & BELL, LLP
103 West Vandalia St., Suite 215
Edwardsville, IL 62025
gpinter@smbtrials.com

*Counsel for Defendant Phillips 66 Company*


Matthew B. Champlin
Emilee M. Bramstedt

HEPLERBROOM LLC
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
mbc@heplerbroom.com
emb@heplerbroom.com

*Counsel for Defendant HWRT Oil Company,
LLC*

Tyler W. Schwettman
SHOOK, HARDY & BACON L.L.P.
The Plaza In Clayton
190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
tschwettman@shb.com

Brent Dwerlkotte
Amy M. Crouch
Jennifer E. Hackman
SHOOK, HARDY & BACON L.L.P.

2555 Grand Boulevard
Kansas City, MO 64108
dbdwerlkotte@shb.com
amcrouch@shb.com
jhackman@shb.com

Molly H. Craig
James B. Hood
Virginia Rogers Floyd
HOOD LAW FIRM, LLC
172 Meeting Street
Post Office Box 1508
Charleston, SC 29401
molly.craig@hoodlaw.com
james.hood@hoodlaw.com
virginia.floyd@hoodlaw.com

*Counsel for Defendant E.I. du Pont de Nemours and Company*

Mark I. Tivin
MANNING GROSS + MASSENBURG LLP
1 South Dearborn St., Suite 1430
Chicago, IL 60603
mtivin@mgmlaw.com

*Counsel for Defendant John Crane Inc.*

Carl L. Rowley
Kevin C. McGinley
Michael W. Vogel
THOMPSON COBURN LLP
525 West Main Street, Suite 300
Belleville, IL 62220
crowley@thompsoncoburn.com
kmcginley@thompsoncoburn.com
mvogel@thompsoncoburn.com

*Counsel for Defendant ITG Brands LLC*

Jose A. Isasi, II
Jihan Walker
JONES DAY
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
jisasi@jonesday.com
jihanwalker@jonesday.com

*Counsel for Defendant R. J. Reynolds Tobacco Company*

Laura K. Beasley
BAKER STERCHI COWDEN & RICE LLC
23 Public Square, Suite 415
Belleville, IL 62220
lbeasley@bakersterchi.com

*Counsel for Defendant Tyco Fire Products LP and Chemguard, Inc.*

Susan E. Brice
Kristen L. Gale
Andrew T. Nishioka
NIJMAN FRANZETTI LLP
10 S. Lasalle Street, Suite 3400
Chicago, IL 60603
sb@nijmanfranzetti.com
kg@nijmanfranzetti.com
dn@nijmanfranzetti.com

Gregg A. Kinney
PRACTUS, LLP
P.O. Box 28929
St. Louis, MO 63132
gregg.kinney@practus.com

*Counsel for Defendant Shell USA, Inc.*

Verification

I verify the accuracy and completeness of each of the above statements.

/s/ Lauren R. Goldman
Lauren R. Goldman

Date: April 21, 2025



# Appellate Division of the Supreme Court of the State of New York First Judicial Department

I, Susanna M. Rojas, Clerk of the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, do hereby certify that

## Lauren Rosenblum Goldman

was duly licensed and admitted to practice as an Attorney and Counselor at Law in all the courts of this State on **January 26, 1999**, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors at Law on file in this office, is duly registered with the Office of Court Administration, and according to the records of this Court is currently in good standing as an Attorney and Counselor-at-Law.

In Witness Whereof, I have hereunto set my hand in the City of New York on February 27, 2025.

Clerk of the Court

CertID-00216868

# Supreme Court of the State of New York
# Appellate Division, First Department

DIANNE T. RENWICK
PRESIDING JUSTICE

SUSANNA MOLINA ROJAS
CLERK OF THE COURT

MARGARET SOWAH
DEPUTY CLERK OF THE COURT

DOUGLAS C. SULLIVAN
DEPUTY CLERK OF THE COURT

To Whom It May Concern

An attorney admitted to practice by this Court may request a certificate of good standing, which is the only official document this Court issues certifying to an attorney's admission and good standing.

An attorney's registration status, date of admission and disciplinary history may be viewed through the attorney search feature on the website of the Unified Court System.

New York State does not register attorneys as active or inactive.

An attorney may request a disciplinary history letter from the Attorney Grievance Committee of the First Judicial Department.

Bar examination history is available from the New York State Board of Law Examiners.

Instructions, forms and links are available on this Court's website.

Susanna Rojas
Clerk of the Court

Revised October 2020

27 MADISON AVENUE NEW YORK, NEW YORK 10010-2201
TEL.: (212) 340 0400 INTERNET: WWW.NYCOURTS.GOV/COURTS/AD1/

**CERTIFICATE OF FILING AND PROOF OF SERVICE**

I certify that on April 21, 2025, at or before 5:00 p.m., I electronically filed and transmitted the foregoing **Verified Statement of Out-of-State Attorney Pursuant to Supreme Court Rule 707** with the Clerk of the Court for the Third Judicial Circuit, Madison County, Illinois by using the Odyssey eFileIL system.

I further certify that the individuals named below have been served by transmitting a copy from my e-mail address to all primary and secondary e-mail addresses of record designated by those individuals on April 21, 2025.

Ted N. Gianaris
Joshua A. Edelson
Gianaris Trial Lawyers, LLC
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
***Attorneys for Plaintiff***

Gary C. Pinter
Swanson, Martin & Bell, LLP
103 West Vandalia St., Suite 215
Edwardsville, IL 62025
gpinter@smbtrials.com
***Attorneys for Phillips 66 Company***

Matthew B. Champlin
Emilee M. Bramstedt
HeplerBroom LLC
130 North Main Street
P.O. Box 510
Edwardsville, IL 62025
mbc@heplerbroom.com
emb@heplerbroom.com
***Attorneys for HWRT Oil Company, LLC***

Tyler W. Schwettman
Shook, Hardy & Bacon, L.L.P.
The Plaza In Clayton - 190 Carondelet Plaza, Suite 1350
St. Louis, MO 63105
tschwettman@shb.com

Brent Dwerlkotte
Amy M. Crouch
Jennifer E. Hackman
Shook, Hardy & Bacon, L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
dbdwerlkotte@shb.com
amcrouch@shb.com
jhackman@shb.com

Molly H. Craig
James B. Hood
Virginia Rogers Floyd
Hood Law Firm
172 Meeting Street
Post Office Box 1508
Charleston, SC 29402
Molly.craig@hoodlaw.com
James.hood@hoodlaw.com
Virginia.floyd@hoodlaw.com
***Attorneys for E.I. du Pont de Nemours and Company***

Mark I. Tivin
Manning Gross + Massenburg LLP
1 South Dearborn St., Suite 1430
Chicago, IL 60603
mtivin@mgmlaw.com
***Attorneys for John Crane Inc.***

Carl L. Rowley
Kevin C. McGinley
Michael W. Vogel
Thompson Coburn LLP
525 West Main Street, Suite 300
Belleville, IL 62220
crowley@thompsoncoburn.com
kmcginley@thompsoncoburn.com
mvogel@thompsoncoburn.com
***Attorneys for ITG Brands LLC***

Jose A. Isasi, II
Jihan Walker
Jones Day
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
jisasi@jonesday.com
jihanwalker@jonesday.com
***Attorneys for Defendant R. J. Reynolds Tobacco Company***

Laura K. Beasley
Baker Sterchi Cowden & Rice LLC
23 Public Square, Suite 415
Belleville, IL 62220
lbeasley@bakersterchi.com
***Attorneys for Tyco Fire Products LP and Chemguard, Inc.***

Susan E. Brice
Kristen L. Gale
Andrew T. Nishioka
Nijman Franzetti LLP
10 S. Lasalle Street, Suite 3400
Chicago, IL 60603
ab@nijmanfranzetti.com
kg@nijmanfranzetti.com
dn@nijmanfranzetti.com

Gregg A. Kinney
Practus, LLP
P.O. Box 28929
St. Louis, MO 63132
Gregg.kinney@practus.com

***Attorneys for Shell USA, Inc.***

Under penalties as provided by law pursuant to section 1-109 of the Illinois Code of Civil Procedure [735 ILCS 5/1-109], I certify that the statements set forth in this **Certificate of Filing and Proof of Service** are true and correct, except as to matters therein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

/s/ Brenda Wallace
HEYL, ROYSTER, VOELKER & ALLEN, P.C.

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
105 West Vandalia Street, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 309.420.0402
PRIMARY E-MAIL: edwecf@heylroyster.com
SECONDARY E-MAIL #1: abarron@heylroyster.com

***EFILED***
Case Number 2023LA000191
Date: 4/23/2025 3:54 PM
Patrick McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

BETTY BANNISTER, Individually, and as Special Administrator for the Estate of Donald Bannister, deceased,

*Plaintiff*,

v.

JOHN CRANE, INC. et al.,

*Defendants*.

Case No. 2023-LA-000191

**DEFENDANT 3M COMPANY'S MOTION TO DISMISS
PURSUANT TO 735 ILCS 5/2-619.1**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 1

ARGUMENT ..... 4

I. Under Section 2-615, The Complaint Fails To Allege Facts Connecting 3M To Mr. Bannister's Injury ..... 4

II. Each Of Plaintiff's Claims Against 3M Fails For At Least One Additional Reason ..... 7

A. Under Section 2-619, The Product-Liability Statute Of Repose Bars The Strict-Liability Claims (Counts 3 & 4) ..... 7

B. Under Section 2-615, The Negligence And Strict-Liability Failure-To-Warn Claims Should Be Dismissed Because The Complaint Fails To Allege Facts Establishing That 3M Knew Of The Alleged Risks Of PFAS At The Relevant Time (Counts 1–4) ..... 8

C. Under Section 2-615, The Loss-Of-Consortium Claim (Count 21) Is Precluded By The Wrongful Death Act And, Regardless, Is "Derivative" And Falls With The Other Claims ..... 9

CONCLUSION ..... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Chi. v. Am. Cyanamid Co.*,
355 Ill. App. 3d 209 (2005) .....5

*City of Chi. v. Beretta U.S.A. Corp.*,
213 Ill. 2d 351 (2004) .....6

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
87 F.4th 315 (6th Cir. 2023) .....3, 6

*Elliott v. Willis*,
92 Ill. 2d 530 (1982) .....9

*Jablonski v. Ford Motor Co.*,
2011 IL 110096 .....8

*Kucinsky v. Pfister*,
2020 IL App (3d) 170719 .....6

*Leng v. Celotex Corp.*,
196 Ill. App. 3d 647 (1990) .....5

*Lewis v. Lead Indus. Ass'n, Inc.*,
342 Ill. App. 3d 95 (2003) .....5

*People ex rel. Madigan v. Excavating & Lowboy Servs., Inc.*,
388 Ill. App. 3d 554 (2009) .....6

*Marshall v. Burger King Corp.*,
222 Ill. 2d 422 (2006) .....4

*Mayle v. Urb. Realty Works, LLC*,
2022 IL App (1st) 210470 .....6

*Mitsias v. I-Flow Corp.*,
2011 IL App (1st) 101126 .....7

*Moon v. Liu*,
2015 IL App (1st) 143606 .....4, 9

*Norabuena v. Medtronic, Inc.*,
2017 IL App (1st) 162928 .....4, 5, 9

*Olson v. Owens-Corning Fiberglas Corp.*,
198 Ill. App. 3d 1039 (1990) .......... 7

*Patrick Eng'g, Inc. v. City of Naperville*,
2012 IL 113148 .......... 4

*Ramirez v. City of Chi.*,
2019 IL App (1st) 180841 .......... 9

*Scheinblum v. Schain Banks Kenny & Schwartz, Ltd.*,
2021 IL App (1st) 200798 .......... 4

*Schmid v. Fairmont Hotel Co.-Chi.*,
345 Ill. App. 3d 475 (2003) .......... 8

*Sherman v. Ryan*,
392 Ill. App. 3d 712 (2009) .......... 6

*Smith v. Eli Lilly & Co.*,
137 Ill. 2d 222 (1990) .......... 4, 5

*Stone v. Paddock Publ'ns, Inc.*,
2011 IL App (1st) 093386 .......... 4

*Weidner v. Midcon Corp.*,
328 Ill. App. 3d 1056 (2002) .......... 4, 6

*Woodill v. Parke Davis & Co.*,
79 Ill. 2d 26 (1980) .......... 8

*Zimmerman v. Abbott Lab'ies, Inc.*,
189 Ill. App. 3d 744 (1989) .......... 7

**Statute**

735 ILCS 5/13-213 .......... 7

## INTRODUCTION

Plaintiff Betty Bannister fails to allege that 3M Company ("3M") had anything to do with the manufacture or sale of unspecified products containing per- and polyfluoroalkyl substances ("PFAS") that she claims contributed—along with a history of smoking and alleged workplace exposures to asbestos, polyaromatic hydrocarbons, and other toxic substances—to her husband Donald Bannister's illnesses and death.  3M is one of nine Defendants named in this action, alongside two operators of the oil refinery where Mr. Bannister worked, two cigarette manufacturers, an asbestos manufacturer, and three other PFAS manufacturers.  The Amended Complaint ("Complaint") fails to identify any role that 3M allegedly played in this case, instead treating the "PFAS Defendants" as an undifferentiated collective.  The Complaint therefore lacks factual allegations that exposure to a product that 3M manufactured—as opposed to a product manufactured by some other company—contributed to Mr. Bannister's illnesses and death.  The Complaint fails to state a claim as to 3M for this fundamental reason.

The claims against 3M also fail for other, independent reasons.  The strict-liability claims are barred by the statute of repose because the Bannisters filed suit nearly twenty years after Mr. Bannister's last alleged exposure to PFAS.  The negligence and strict-liability failure-to-warn claims are legally deficient because the Complaint does not allege that 3M knew, or should have known, of the alleged risks of PFAS until years after any relevant sale could have occurred.  And Plaintiff's loss-of-consortium claim is precluded by her claims under the Wrongful Death Act and is, in any event, derivative of the other claims and falls along with them.

This Court should dismiss all of the claims against 3M with prejudice.

## BACKGROUND

According to the Complaint, Donald Bannister worked for "Shell Oil Company and Phillips 66" at "the Wood River Refinery" from 1964 (or 1967) until 2004 as a "general laborer,

firefighter, and truck driver." Compl. ¶ 3; *id.* (Count 5) ¶ 2 (Mar. 28, 2025). The Complaint alleges that Mr. Bannister's work at the refinery exposed him to asbestos, "PFAS/AFFF," polyaromatic hydrocarbons, and other allegedly "toxic chemicals." *Id.* ¶¶ 2–3.[1] Mr. Bannister's last such exposure came in 2004 when he retired from the refinery. *Id.* (Count 5) ¶¶ 2, 4. Apart from his work at the refinery, starting in 1963, Mr. Bannister also allegedly became addicted to cigarettes manufactured by ITG Brands and R.J. Reynolds; he regularly smoked those cigarettes from then on. *Id.* ¶ 5.

Mr. Bannister was allegedly diagnosed with prostate cancer in 2005, skin cancer in 2006, and bladder cancer in 2013. Compl. ¶ 2. The Complaint alleges that Mr. Bannister's smoking, as well as his occupational exposure to PFAS, polyaromatic hydrocarbons, and other purportedly toxic chemicals contributed to his prostate and bladder cancer diagnoses. *Id.* (Count 1) ¶ 14; *id.* (Count 5) ¶ 8; *id.* (Count 9) ¶ 10. The Complaint attributes Mr. Bannister's skin cancer diagnosis exclusively to smoking. *Id.* (Count 9) ¶ 10. Mr. Bannister also allegedly suffered from "asbestos-related diseases" and experienced "severe shocks to the nervous and respiratory system," which he attributed to exposure to Defendant John Crane's asbestos-containing gaskets at the refinery. *Id.* (Count 19) ¶¶ 4, 9–10. Mr. Bannister passed away after the Bannisters had filed an initial complaint in 2023; the Complaint does not attribute his death to any particular disease or other cause. *Id.* ¶ 1.

Plaintiff Betty Bannister was Mr. Bannister's spouse and is the special administrator of his estate. Compl. ¶ 1; *id.* at p. 1. She amended the Complaint to bring this action against nine defendants: Mr. Bannister's two employers (Shell and Phillips 66); the two cigarette manufacturers

[1] AFFF (or aqueous film-forming foam) products are lifesaving, PFAS-containing products used to extinguish fires. Compl. ¶ 4.